Joshua Arce, Esq. (State Bar No. 218563)
josh@brightlinedefense.org
BRIGHTLINE DEFENSE PROJECT
240 Golden Gate Avenue, Ste. 102
San Francisco, CA 94102
415-837-0600
Fax 415-837-0660

Attorney for Plaintiffs
SAN FRANCISCO CHAPTER OF THE
A. PHILIP RANDOLPH INSTITUTE,
LYNNE BROWN, REGINA HOLLINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C 07 4936

| | |
|---|---|
| SAN FRANCISCO CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, LYNNE BROWN, REGINA HOLLINS, on behalf of themselves, all others similarly situated, and the general public<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN JOHNSON, BAY AREA AIR QUALITY MANAGEMENT DISTRICT, MARK ROSS,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This case challenges a proposed combustion turbine power plant to be built in a low-income, mostly minority neighborhood in San Francisco. Known as the San Francisco Electric Reliability Project ("SFERP"), the facility would consist of a nominal 145 megawatt simple-cycle plant, using three natural gas-fired LM 6000 gas turbines and associated infrastructure.

2. As described herein, not only does the SFERP power plant place a further environmental burden upon the city's low-income, minority residents, but the project will also

significantly increase emissions of greenhouse gases responsible for global warming. The United States Supreme Court has affirmed that "[t]he harms associated with climate change are serious and well recognized," Massachusetts v. EPA, 549 U.S. ___, 127 S. Ct. 1438, 1455 (April 2, 2007). Projects such as the SFERP accelerate climate change and eliminate the market for cleanly generated electricity.

3. The Massachusetts case resulted from a 2003 decision of the United States Environmental Protection Agency ("EPA") that it lacked authority under the Clean Air Act ("CAA") to regulate carbon dioxide and other greenhouse gases ("GHGs"), and that even if the EPA did have such authority it declined to regulate carbon dioxide and other GHGs.

4. The Supreme Court, however, ruled in the Massachusetts case that the EPA's current rationale for refusing to regulate GHGs was not valid and ordered it to "ground its reasons for action or inaction in the statute," referring to the CAA. Massachusetts, at 1463. The Court argued that "greenhouse gases fit well within the Clean Air Act's capacious definition of 'air pollutant'." Id., at 1462.

5. Despite the urging of citizens and activists from around the country, the EPA has neither re-assessed its refusal to regulate GHGs nor accepted the logic stressed by the Supreme Court: that greenhouse gases must be regulated.

6. The CAA requires the proponent of any new major stationary sources of air pollution such as the SFERP to obtain a construction permit before commencing construction. 42 U.S.C § 7411. This process is known as New Source Review ("NSR"). The EPA has reviewed and approved the Bay Area Air Quality Management District's ("BAAQMD") regulations and has delegated to the BAAQMD the implementation of the federal NSR program in regard to the SFERP, Application Number 12344.

7. On July 19, 2005 the BAAQMD issued its Preliminary Determination of Compliance in regard to the SFERP and its Final Determination of Compliance on approximately February 25, 2006. The next and final step for the BAAQMD under its delegated power from the EPA is the issuance of "Authority to Construct" the SFERP plant under BAAQMD Regulation 2, Rule 3, Section 301.

8. Plaintiffs, however, request that this Court stay further review of the SFERP power plant until the EPA has complied with the Supreme Court's rule in the Massachusetts case.

9. If the EPA begins to regulate GHGs as air pollutants, the BAAQMD must completely re-assess the SFERP project. Of particular concern is the fact that if and, as the Supreme Court has suggested, the SFERP may come under the definition of a "Major Facility" as that term is used by the BAAQMD in Regulation 2, Rule 6, Section 212. Section 212.1 defines a "Major Facility" as a facility that "has the potential to emit 10 tons per year or more of a single hazardous air pollutant, 25 tons per year or more of a combination of hazardous air pollutants, or such lesser quantity as the EPA Administrator may establish by rule."

10. Depending on the EPA's response to the Supreme Court, there may be a comprehensive reassessment of the SFERP required by regulations that the EPA may promulgate.

11. For example, if the SFERP becomes a "Major Facility" the SFERP becomes subject to "Major Facility Review" under BAAQMD Regulation 2, Rule 6, Section 213 including Title V of the CAA and Prevention of Significant Deterioration ("PSD") analysis.

12. The PSD process is designed, according to the EPA, to "protect public health and welfare" and "assure that any decision to permit increased air pollution…is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation."

13. This Court should issue an order that all EPA New Source Review for projects in this Court's district must cease until the agency responds to the Supreme Court's holding in the Massachusetts case. In addition, plaintiffs ask that this Court enjoin any further BAAQMD action, including the issuance of Authority to Construct, in regard to the SFERP until the EPA is in compliance and all newly promulgated regulations have been applied to the SFERP power plant.

14. The City of San Francisco proposes the SFERP power plant as a means of shutting down the aging Mirant Power Plant, which is a goal shared by all San Franciscans

1. including plaintiffs. However, neither the City of San Francisco, the San Francisco Public Utilities Commission, nor the California Independent System Operator that manages California's electrical grid can guarantee that the SFERP will lead to closure of the Mirant Plant. In fact, the Mirant Corporation that owns the Mirant Plant has indicated that the SFERP will not influence its decision to shut down its plant.

15. In fact, the City of San Francisco has recently approved a project called the Transbay Cable, which will bring 400 megawatts of power to San Francisco in 2010 thus making the SFERP even less worthy of the risks involved with building a new power plant in the proposed neighborhood which, as the City anticipates, will operate for a minimum of ten years.

16. The very real possibility of two polluting power plants in the same neighborhood is a cost too great for plaintiffs, and indeed the community at large, to bear.

## JURISDICTION AND VENUE

17. This action arises under 28 U.S.C. § 1361, this being an action in the nature of mandamus to compel an officer or employee of the United States or an agency of the United States to perform a duty owed to plaintiffs.

18. This action arises under 5 U.S.C. §§ 701 to 706, this being an action brought by persons suffering legal wrongs because of agency action unlawfully withheld and unreasonably delayed, pursuant to the Administrative Procedure Act.

19. This action seeks an order requiring the Administrator of the Environmental Protection Agency ("the Administrator") to make a timely determination whether greenhouse gases constitute a class of pollutants that are required to be regulated under the federal Clean Air Act ("CAA"), 42 U.S.C § 7401 et seq.

20. This action seeks an order requiring the Administrator, upon his affirmative decision that greenhouse gases constitute a class of pollutants that are required to be regulated under the CAA, to promulgate regulations for greenhouse gases in a timely manner.

21. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201-2202.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

22. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to this case occurred in this District, because defendants Bay Area Air Quality Management District ("BAAQMD") and Mark Ross reside in this District.

23. Venue is proper in the Northern District of California pursuant to § 304(c) of the Clean Air Act, 42 U.S.C. § 7604(c), because the BAAQMD defendants reside in this District and the stationary source of greenhouse gases at issue in this case is located in this District.

## PARTIES

24. Plaintiff San Francisco Chapter of the A. Philip Randolph Institute ("APRI") is a non-profit community-based organization with a mission to fight for racial equality and economic justice. Its role is unique in that in representing and working with African-American workers, it serves as a link between labor and the black community. APRI's constituents live within the vicinity of the proposed SFERP location and workers who are members of APRI will work as near as across the street from the proposed SFERP site. Thus, APRI's members would have standing to bring this action in their own right. APRI was closely involved with efforts that successfully shut down the Hunters Point Power Plant and is once again dedicated to shutting down the Mirant Power Plant, but not at the cost of the SFERP which will contaminate its members both at work and at home.

25. Lynne Brown ("Brown") is a community activist and resident of Bayview Hunters Point. As a resident of that neighborhood he will be directly affected by air pollutants discharged by the SFERP, as the SFPUC pollution distribution study shows that the majority of SFERP pollution will be distributed amongst the Bayview Hunters Point and Potrero communities. Since 2003 Brown has continuously lodged his objections to the proposed SFERP, both on the basis of his status as resident affected by its pollutants and in his capacity as Vice-President of Californians for Renewable Energy, a non-profit public benefit corporation dedicated to next-generation energy projects and environmental conservation.

26. Plaintiff Regina Hollins ("Hollins") is a community activist and resident of Potrero. As a resident of that neighborhood she will be directly affected by air pollutants

discharged by the SFERP, as SFPUC's pollution distribution study shows that the majority of SFERP pollution will be distributed amongst the Bayview Hunters Point and Potrero communities. Since 2003, Hollins has regularly registered her disapproval of the proposed SFERP as yet another project in which her community bears the sole burden of a city-wide benefit.

27. Plaintiffs are and will be affected adversely by EPA and BAAQMD permitting the construction of the SFERP in the absence of EPA regulation of greenhouse gases. If the BAAQMD issues Authority to Construct the SFERP before the EPA has complied with the Supreme Court's directive in <u>Massachusetts</u>, plaintiffs will be denied the benefit of the implementation of the CAA's PSD requirements, which will apply in the event that the SFERP's pollution levels increase beyond its threshold lilmits. This regulation, or the abandoning of the SFERP altogether, would help prevent the deleterious medical effects of greenhouse gases and other pollutants on plaintiffs and APRI's constituent members, as well as the community at large who live in proximity to this project.

28. Defendant United States Environmental Protection Agency ("EPA") was established in the executive branch as an independent agency pursuant to Reorganization Plan No. 3 of 1970 (5 U.S.C. app.), effective December 2, 1970. EPA is an agency within the meaning of 5 U.S.C. § 522(f) and is responsible for the administration and enforcement of the CAA.

29. Defendant Stephen Johnson ("Johnson") is the Administrator of EPA, and is being sued in his official capacity. The Administrator has the statutory authority to administer the CAA.

30. Defendant Johnson, as the Administrator of the EPA is obligated to carry out the directives of the United States Supreme Court.

31. Defendants Johnson and EPA are referred to collectively herein as "EPA Defendants."

32. Defendant Bay Area Air Quality Management District ("BAAQMD") is, by statute, a public agency of the state of California. BAAQMD is the agency responsible for the

1  adoption and enforcement of certain rules to attain and maintain the air quality standards set
2  under the Clean Air Act in the Bay Area, which includes the City and County of San Francisco.
3  In regard to the proposed SFERP, EPA has delegated to BAAQMD responsibility for
4  administering the federal New Source Review ("NSR") program.

    33.    Defendant Mark Ross ("Ross") is the Chair of BAAQMD, and is being sued in his official capacity. The Chair has management responsibility for the actions of the BAAQMD, including the agency's compliance with the permitting regulations of BAAQMD, the California Air Resources Board ("CARB"), and the CAA, including application of the strict Prevention of Significant Deterioration ("PSD") requirements.

    34.    Defendants Ross and BAAQMD are referred to collectively herein as "BAAQMD Defendants."

## BACKGROUND STORY

    35.    As discussed above, the BAAQMD on July 19, 2005 issued its Preliminary Determination of Compliance for the SFERP and issued a final determination on or about February 25, 2006.

    36.    On October 3, 2006 the California Energy Commission ("CEC") granted a license to the City and County of San Francisco for the construction and operation the SFERP power plant.

    37.    According to the CEC, the SFERP is "being pursued by the City to reduce the need for existing unreliable and highly-polluting in-City generation while maintaining reliability of the electric system."

    38.    The San Francisco Public Utilities Commission ("SFPUC") has stated that its support for the SFERP stems from its understanding that the California Independent System Operator requires the turbine power plant if the Mirant Power Plant is to be shut down. Since the SFERP has been approved however, the City has finalized the 400 megawatt Trans Bay Cable and, together with plans for renewable energy generation projects within San Francisco and demand side management proposals, the SFERP appears to be unnecessary.

39. Plaintiffs object to the proposed power plant on two bases: one, that the CEC improperly rejected alternative, non-polluting proposals to meet San Francisco's future energy needs, as well as alternative sites for the SFERP that would not endanger residents, and the SFERP is thus unnecessary; and two, that in light of the Massachusetts case the SFERP has not been properly reviewed by the EPA and its delegate, the BAAQMD.

40. The first issue regarding lack of functional necessity of the SFERP is not before this Court.

41. Plaintiffs urge in regard to their second argument, however, that this Court protect them and their community by enjoining the SFERP until the EPA complies with the Massachusetts ruling, comes to the inevitable decision embraced by the Supreme Court that GHGs must be regulated, and conducts a new review of the SFERP power plant and applies the PSD requirements if need be.

## STATUTORY SCHEME

42. The Clean Air Act ("CAA") is a comprehensive program for controlling and improving the nation's air quality. Under the CAA, the EPA identifies air pollutants that endanger the public health or welfare, determines what concentrations of those pollutants are safe, and promulgates those determinations as national ambient air quality standards ("NAAQS"). See 42 U.S.C. §§ 7408, 7409. Each state bears responsibility for ensuring that its ambient air meets the appropriate NAAQS. See 42 U.S.C. § 7407(a).

43. Section 111 of the Act requires the mandatory duty that the EPA set emission performance standards for stationary sources that "cause[] or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A). The language of section 111 repeatedly refers to the regulation of *any* air pollutants emitted by sources subject to regulation under this section. See 42 U.S.C. § 7411(a)(3) ("stationary source" is defined as any building, etc., "which emits or may emit *any* air pollutant.")(emphasis added); 42 U.S.C. § 7411(a)(4) ("modification" is defined as a physical or operational change "which increases the amount of *any* air pollutant emitted by such source or which results in the emission of *any* air pollutant not previously emitted.")(emphasis added).

44. The Supreme Court in the Massachusetts v. EPA 127 S. Ct. 1438, 1462 stated that "under the clear terms of the Clean Air Act, EPA can avoid taking further action only if it determines that greenhouse gases do not contribute to climate change or if it provides some reasonable explanation as to why it cannot or will or will not exercise its discretion to determine whether they do."

45. The Supreme Court also argued that "greenhouse gases fit well within the Clean Air Act's capacious definition of 'air pollutant'." Id., 127 S. Ct. at 1462.

46. The CAA requires the proponent of any new major stationary sources of air pollution such as the SFERP to obtain a construction permit before commencing construction. 42 U.S.C § 7411. This review process, known as New Source Review ("NSR") was delegated to the BAAQMD in regard to the SFERP, Application Number 12344.

47. On July 19, 2005 the BAAQMD issued its Preliminary Determination of Compliance in regard to the SFERP and its Final Determination of Compliance on approximately February 25, 2006. The next and final step for the BAAQMD under its delegated power from the EPA is the issuance of "Authority to Construct" the SFERP plant under BAAQMD Regulation 2, Rule 3, Section 301.

48. Regulations to be promulgated by the EPA may bring the SFERP into the definition of a "Major Facility" as that term is used by the BAAQMD in Regulation 2, Rule 6, Section 212. Section 212.1 defines a "Major Facility" as a facility that "has the potential to emit 10 tons per year or more of a single hazardous air pollutant, 25 tons per year or more of a combination of hazardous air pollutants, or such lesser quantity as the EPA Administrator may establish by rule."

49. If the SFERP is a "Major Facility" the SFERP becomes subject to "Major Facility Review" under BAAQMD Regulation 2, Rule 6, Section 213 including Title V of the CAA and Prevention of Significant Deterioration ("PSD") analysis.

50. PSD process is designed, according to the EPA, to "protect public health and welfare" and "assure that any decision to permit increased air pollution…is made only after

careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation."

## THE SFERP'S ENVIRONMENTAL IMPACTS

51. The SFERP was initially to be located at the location of the existing Mirant Power Plant in Potrero. An amendment to the project application, Supplement A, was filed by the City of San Francisco with the CEC on March 25, 2005 and the proposed project was relocated to a site approximately 1/4 mile south of the original project site, on a 4-acre parcel owned by the City and County of San Francisco and located south of 25th Street and approximately 900 feet east of Illinois Street.

52. The nearest residence to the SFERP is located approximately 1,600 feet west of the site. There are over 500 sensitive receptors including 233 schools and day care facilities, 15 hospitals, 32 senior care facilities, 221 churches, and 57 parks and recreation centers within a 3-mile radius. There also appear to be some transient residents at Warm Water Cove Park located about 700 feet northeast of the project site. The closest church is located just 474 feet southwest of the project site.

53. The SFERP plant will emit 39.7 tons of nitrogen oxides, 27.9 tons of carbon monoxide, 7.7 tons of precursor organic compounds, 18 tons of particulate matter, and 2.7 tons of sulfur dioxide into the community. In terms of the SFERP's greenhouse gas emissions, the United States Department of Energy noted in its Environmental Impact Statement regarding combustion turbines involved in the PacifiCorp Capacity Power Sale Contract that:

> "as in all combustion technologies, significant amounts of $CO_2$, a 'greenhouse' gas, and waste heat are produced. Simple-cycle [combustion turbine's] reject waste heat directly to the atmosphere, so cooling water is not required. Because [combustion turbines] are often sited close to where gas transportation and transmission lines meet, effects on urban environments need to be considered."

PacifiCorp Capacity Power Sale Contract Final Environmental Impact Statement, Appendix C: Air Quality

//
//

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## THE SFERP'S HEALTH EFFECTS

54. In addition to the health risks that have been contemplated by the BAAQMD in issuing its Determination of Compliance, greenhouse gases such as ozone pose further risks for plaintiffs and the community.

55. Ozone is created at ground-level by a chemical reaction between oxides of nitrogen and volatile organic compounds in the presence of sunlight and has the same chemical structure whether it occurs miles above the earth or at ground-level.

56. Ground-level ozone is the primary constituent of smog and breathing ozone can trigger a variety of health problems including chest pain, coughing, throat irritation, and congestion. It can worsen bronchitis, emphysema, and asthma.

57. Ground-level ozone also can reduce lung function and inflame the linings of the lungs. Repeated exposure may permanently scar lung tissue.

58. The CAA requires EPA to set air quality standards to protect both public health and the public welfare. This is the rationale behind the Supreme Court's holding in the Massachusetts case and a compelling reason for this Court to enjoin the SFERP until the full effects of the proposed power plant can be studied and discussed.

## FIRST CLAIM FOR RELIEF

### As to EPA Defendants

59. Plaintiffs adopt and incorporate by reference Paragraph 1-58 of this Complaint.

60. The EPA's failure to respond to the demand of the United States Supreme Court to "ground its reasons for action or inaction in the statute" (Massachusetts v. EPA, 127 S. Ct. at 1463) constitutes agency action unlawfully withheld as well as unreasonably delayed in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1).

61. As a result of EPA's refusal to either justify its continued failure to regulate greenhouse gases or, in lieu of such justification, regulate greenhouse gases because they "fit well within the Clean Air Act's capacious definition of 'air pollutant'," (Massachusetts, at 1462) plaintiffs are poised to receive in their neighborhood a power plant whose full environmental and health effects have not been assessed or made available for public comment.

62. As a result of the EPA's inaction, plaintiffs are needlessly in danger of the BAAQMD issuing Authority to Construct the SFERP power plant that will lead to the commencement of construction in December.

63. Unless this Court orders the EPA defendants to respond to the Supreme Court's directive, projects like the SFERP will continue to be built in possible disregard of the order of this nation's highest court.

64. Plaintiffs have no remedy at law.

## SECOND CLAIM FOR RELIEF

### As to BAAQMD Defendants

65. Plaintiffs adopt and incorporate by reference Paragraph 1-64 of this complaint.

66. If the BAAQMD defendants issue Authority to Construct the SFERP power plant without waiting for the EPA to respond to the Supreme Court's mandate in the Massachusetts case, there is the risk that the SFERP power plant would be constructed before the EPA implements a greenhouse gas regulation scheme.

67. If the EPA promulgates greenhouse gas emission rules and regulations after BAAQMD issues the SFERP an Authority to Construct permit, such rules and regulations will not have been incorporated into the analysis that led to the issuance of the permit.

68. In the event that the SFERP is constructed before the EPA responds to the Supreme Court and begins greenhouse gas regulation, there will be no way to retroactively undo the harm caused by the construction of the SFERP in an environment of lack of greenhouse gas analysis, public comment, and review.

69. In any scenario involving the issuance of Authority to Construct, or actual construction of, the SFERP power plant before the EPA responds to the Supreme Court, plaintiffs will suffer great and irreparable injury, for which plaintiffs have no adequate remedy at law.

//
//
//

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

WHEREFORE, Plaintiffs request that this Court:

1. Declare that the EPA must respond to the United State Supreme Court's demand in Massachusetts v. EPA before any New Source Review under the Clean Air Act can be conducted on project within this Court's jurisdiction;

2. Grant an order enjoining the BAAQMD defendants from taking any action, including the issuance of Authority to Construct, in connection with the San Francisco Electric Reliability Project, Application Number 12344, until such time as the EPA defendants have complied with the Supreme Court's demand in Massachusetts v. EPA;

3. Grant an order enjoining the EPA defendants from taking any action in connection with the San Francisco Electric Reliability Project, Application Number 12344 until such time as defendants have complied with the Supreme Court's demand in Massachusetts v. EPA and, if no justification for non-regulation of greenhouse gases exists, promulgate greenhouse gas regulations under the Clean Air Act ;

4. Grant an order enjoining all defendants from taking any further action with the respect to the San Francisco Electric Reliability Project, Application Number 12344, without undertaking subsequent environmental review of the project in the event that the EPA defendants determine that greenhouse gas pollutants must be regulated;

5. Grant an order enjoining construction of the San Francisco Electric Reliability Project pending resolution of this action and compliance with the regulations promulgated pursuant thereto;

6. Grant plaintiffs their costs of suit herein and reasonable attorney and expert witness fees, and such other and further relief as may be proper.

//
//
//
//
//
//

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Respectfully submitted this 24th day of September, 2007,

                                              BRIGHTLINE DEFENSE PROJECT

                                              _/s/ Joshua Arce_

                                              Joshua Arce, Esq.
                                              Attorney for Plaintiffs
                                              SAN FRANCISCO CHAPTER OF THE A.
                                              PHILIP RANDOLPH INSTITUTE,
                                              LYNNE BROWN, REGINA HOLLINS