Joshua Arce, Esq. (State Bar No. 218563)
josh@brightlinedefense.org
BRIGHTLINE DEFENSE PROJECT
240 Golden Gate Avenue, Ste. 102
San Francisco, CA 94102
415-837-0600
Fax 415-837-0660

Martin Homec (State Bar No. 085798)
martinhomec@gmail.com
P. O. Box 4471
Davis, CA 95617
530-867-1850

Attorneys for Plaintiffs
SAN FRANCISCO CHAPTER OF THE
A. PHILIP RANDOLPH INSTITUTE,
CALIFORNIANS FOR RENEWABLE ENERGY,
LYNNE BROWN, REGINA HOLLINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, CALIFORNIANS FOR RENEWABLE ENERGY, LYNNE BROWN, REGINA HOLLINS,<br><br>on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN JOHNSON, BAY AREA AIR QUALITY MANAGEMENT DISTRICT, CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants. | Case No.:   C-07-4936-CRB<br><br>MEMORANDUM IN OPPOSITION TO EPA'S MOTION TO DISMISS<br><br>Date:   Friday, March 21, 2008<br>Time:   10:00 a.m.<br>Place:   450 Golden Gate Avenue<br>            Courtroom 8, 19th Floor<br>            San Francisco, California |

Mem. in Opposition to Mot. to Dismiss
C-07-4936-CRB

**INTRODUCTION**

Defendants United States Environmental Protection Agency ("EPA") and EPA Administrator Stephen L. Johnson ("Johnson," collectively known as the "EPA Defendants") have moved this court for an order dismissing plaintiffs' first claim for relief, for mandamus, and second claim for relief, under the Administrative Procedure Act ("APA"), as to EPA Defendants.

In arguing that a citizen suit under the Clean Air Act, 42 U.S.C. § 7604, is the proper remedy for plaintiff's allegations EPA Defendants ignore the entire purpose of this litigation: plaintiffs require the relief requested precisely because, despite the order of the United States Supreme Court, there is no remedy under the Clean Air Act to combat the life-threatening and devastating effects of global warming caused by greenhouse gas emissions.

Plaintiffs' allegations of EPA and Johnson inaction do not exist in a vacuum; one month ago California Attorney General Jerry Brown wrote to defendant Johnson in a letter signed by seventeen other state attorneys general that "the Artic is melting faster than ever before, yet the EPA stubbornly refuses to do its job…the EPA should obey the Supreme Court's landmark decision and issue regulations to curb greenhouse gas pollutants without further delay."  See January 23, 2008 Attorney General Letter, attached as Exhibit A of Declaration of Michael Boyd.

There is no preclusion in this instance for the reason that Johnson has failed to take the steps necessary, steps demanded of him by the highest court in this nation, to allow citizens to address global warming through the Clean Air Act.  EPA Defendants' motion fails because it seeks to fault plaintiffs for failure to employ a remedy that, because of EPA Defendants' own failure to act, does not exist.

**BACKGROUND**

This case is as much about two proposed power plants to be built in and around San Francisco as it is about the EPA's failure to address global warming in a way that endangers every citizen of this country, including plaintiffs.  In fact, the EPA's longstanding refusal to regulate greenhouse gas emissions under the Clean Air Act has led to the recent intervention of the United States Supreme Court in the landmark case of Massachusetts v. EPA, 127 S. Ct. 1438 (2007).

- 1 -

In <u>Massachusetts</u> the Supreme Court wrote that "greenhouse gases fit well within the Clean Air Act's capacious definition of 'air pollutant'" (<u>Massachusetts v. EPA</u>, 127 S. Ct. at 1462) and ordered the agency to "ground its reasons for action or inaction in the statute," referring to the Clean Air Act. <u>Id.</u> at 1463.

Nearly one year later, the EPA Defendants have taken no action in response to the Supreme Court as alleged in ¶¶ 12, 92, and 103 of plaintiffs' First Amended Complaint. By the time this motion will be heard by this court, six months shall have passed since the <u>Massachusetts</u> case was remanded to the EPA, and this motion shall be heard over two months since eighteen state attorneys general called upon the EPA Defendants to act. See Mem. In Support of Mot. To Dismiss, p. 3, ln. 13-14; Jan. 28 Letter, attached as Ex. A of Decl. of Boyd.

EPA Defendants do not dispute that plaintiffs have successfully pled standing and damages in their first and second claims, as alleged in ¶¶ 81-83 and ¶¶ 84-88. Instead, EPA Defendants advance the argument that plaintiffs' requested relief is too remote in light of the holding in the <u>Massachusetts</u> case. In actuality, the relief plaintiffs require flows naturally from the Supreme Court's directive.

Plaintiffs' requested relief will result from Johnson's finding of "endangerment," that emissions of greenhouse gases such as carbon dioxide in "[Johnson's] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. Section 202.

In <u>Massachusetts</u> the Supreme Court noted that "we need not and do not reach the question whether on remand EPA must make an endangerment finding," but dictated that the EPA "must ground its reasons for action or inaction in the statute." <u>Massachusetts</u> at 1463. After noting that "the harms associated with climate change are serious and well recognized" (<u>Id.</u> at 1455) the Supreme Court next suggested that an endangerment finding is inevitable, stating, "EPA can avoid taking further action only if it determines that greenhouse gases do not contribute to climate change or if it provides some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do." <u>Id.</u> at 1462.

EPA Defendants suggest that Johnson's endangerment finding under Clean Air Act section 202, which applies to emissions from motor vehicles, will not enable plaintiffs' requested relief from greenhouse gas emissions from power plants.  While defendants do not challenge plaintiffs' standing as victims of carbon emissions from motor vehicles defendants do suggest that Johnson's section 202 endangerment finding will not affect power plants.

However, section 111 of the Clean Air Act, which applies to "stationary sources" such as power plants, employs the exact same "endangerment" language as section 202 and regulates emissions that "may reasonably be anticipated to endanger public health or welfare." Therefore, once EPA begins regulating greenhouse gas emissions under section 202 it must necessarily began regulating the same emissions under section 111.  See First Amen. Complaint, ¶¶ 60-64.

That same endangerment finding will result in carbon dioxide and other greenhouse gases being placed on a list of air pollutants that "endanger public health and welfare," pursuant to section 108, and lead to simultaneous changes in the EPA's National Ambient Air Quality Standards under Clean Air Act section 109, forcing states to develop State Implementation Plans for metropolitan areas to meet the new standard as required by section 110.  ¶¶ 65-67.

An entirely new scheme of regulation of greenhouse gas sources ranging from cars to power plants results from EPA Defendants' compliance with the Supreme Court's directive in Massachusetts v. EPA and EPA compliance is plaintiffs' requested relief.

## **ARGUMENT**

EPA Defendants attack plaintiffs' claims for relief under mandamus and the APA on three grounds:  1) that failure to comply with a Supreme Court decision is not a cognizable claim under the APA; 2) that even if a nondiscretionary statutory duty to act existed, plaintiffs' APA claim fails; and 3) that this Court lacks jurisdiction over plaintiffs' federal mandamus claim.

The court should note that defendants make no challenge to plaintiffs' standing in this case as imminent victims of the immediate danger posed by defendants' continued failure to regulate greenhouse gas emissions.  See January 3, 2008 Stanford Report, "Study links carbon dioxide emissions to increased deaths," attached as Ex. B of Decl. of Boyd.  Indeed standing can be deemed to spring from the hazards caused by motor vehicle emissions discussed in

- 3 -

1  Massachusetts v. EPA as well as from the hazards caused by power plants that will be regulated
2  under section 111 of the Clean Air Act as equally as motor vehicles under section 202 of the Act.
3        Plaintiffs begin their opposition to this motion by highlighting their first claim for relief
4  under mandamus, thus responding to the arguments raised in section III of defendants' brief.

**I.   Despite Defendants' Assertion To The Contrary, Mandamus Can Be Granted To Compel A Discretionary Act From An Official.**

7        Plaintiffs' first claim for relief against the EPA Defendants is for mandamus because
8  currently the only act of defendants that can be compelled is discretionary.
9        Plaintiffs require relief under mandamus, 28 U.S.C. § 1361, because "Congress left to the
10 discretion of the Administrator the threshold determination of which substances are hazardous air
11 pollutants." Natural Resources Defense Council, Inc. v. Thomas, 689 F. Supp. 246, 254
12 (S.D.N.Y 1988). The court in NRDC v. Thomas continued that "a hazardous air pollutant is one
13 which '*in the judgment of the Administrator* causes, or contributes to, air pollution which may
14 reasonably be anticipated to result in an increase in mortality or an increase in serious
15 irreversible, or incapacitating reversible, illness.' 42 U.S.C. § 7412(a)(1) (emphasis added)." Id.
16       Mandamus provides that the district court shall have original jurisdiction over any action
17 "to compel an officer or employee of the United States or any agency thereof to perform a duty
18 owed to the plaintiff." 28 U.S.C. § 1361. EPA Defendants argue that the statutory phrase "a
19 duty owed to the plaintiff" requires the presence of a "nondiscretionary" duty in order for
20 plaintiff to state a claim for mandamus, citing Stang v. IRS, 788 F.2d 564, 565 (9th Cir. 1986).
21       Yet defendants' argument would operate to insulate defendant Johnson from judicial
22 review of his indefinite disregard of the Supreme Court's directive in Massachusetts v. EPA
23 simply because the first threshold finding of endangerment is defined by the courts as a
24 "discretionary" duty. See NRDC v. Thomas at 254.
25       In advancing its rigid interpretation of the phrase "duty owed to the plaintiff" EPA
26 Defendants ignore the long-standing rule that mandamus is appropriate even where an official's
27 responsibility may be discretionary. See Carpet Linoleum and Resilient Tile Layers, Local
28 Union No. 419 v. Brown, 656 F.2d 564, 566 (10th Cir. 1981).

- 4 -

In <u>Carpet</u>, the Court held that:

> "it is the court's duty in a mandamus action to measure the allegations in the complaint against the statutory and constitutional framework to determine whether the particular official actions complained of fall within the scope of the discretion which Congress accorded the administrators.... In other words, even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated." <u>Carpet</u>, 656 F.2d at 566.

The recent case of <u>Huli v. Way</u>, 393 F. Supp.2d, 266, 270 (S.D.N.Y 2005) highlights the contrast between the "orthodox" view that "mandamus relief is limited to compelling nondiscretionary actions" and the "reformed" view that "mandamus provides jurisdiction to review for abuse of discretion."

Though defendants cite cases from 1986 and 1993 to stand for the proposition that an act must be "nondiscretionary" to support a mandamus action, the most recent cases from within the 9th Circuit suggest that federal courts in California follow the "reformed" view. The Court in <u>Blackman v. Taxdahl</u>, 2007 WL 613862 (E.D. Cal. 2007) held that "even where an official's responsibilities are in some respects discretionary, mandamus is appropriate if 'statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised ... have been ignored or violated.' <u>Carpet, Linoleum and resilient Tile Layers, Local Union No. 419 v. Brown</u>, 656 F.2d 564, 566 (10th Cir.1981) (citation omitted); see, also, <u>Work v. United States ex rel Rives</u>, 267 U.S. 175, 177, 45 S.Ct. 252, 253 91925, 69 L.Ed. 561) (mandamus is appropriate if an official transgresses the limits of her discretion)." <u>Blackman</u> at 3.

The Court in <u>Reeves v. Shalala</u>, 1998 WL 289312 (N.D. Cal. 1998) wrote "even if the duty is in some respects discretionary, mandamus is appropriate if statutory standards limiting the scope of discretion are ignored or violated. See <u>Silveyra v. Moschorak</u>, 989 F.2d 1012, 1014-15 (9th Cir.1992)." <u>Reeves</u> at 7.

Mandamus was also a proper claim to review discretionary acts in <u>Carlson v. Schlesinger</u>, 364 F. Supp. 626, 631 fn. 10 (D.C.D.C. 1973) ("mere categorization of a duty as discretionary does not, in and of itself foreclose judicial inquiry") and <u>Davis Associates, Inc. v. Secretary, Dept. of Housing and Urban Development</u>, 498 F.2d 385, 389 fn. 5 (C.A.N.H. 1974) ("even in

- 5 -

1  an area generally left to agency discretion there may well exist statutory or regulatory standards
2  delimiting scope or manner in which such discretion can be exercised, and mandamus will lie in
3  such situations when standards have been ignored or violated").

4  Perhaps the key element in mandamus review of a discretionary duty is laid out in
5  <u>Abbruzzese v. Berzak</u>, 412 F. Supp. 201,203 (D.C.N.J. 1976), and has been followed by
6  plaintiffs in the drafting of their complaint: "mandamus…is a proper remedy to compel an
7  official to act, even where the performance of the act involves discretion, so long as it does not
8  direct him how to exercise it."

9  Plaintiffs have therefore not prayed for an "endangerment finding" itself, but merely for
10 EPA Defendants to follow the Supreme Court's directive in <u>Massachusetts v. EPA</u> to "ground
11 [their] reasons for action or inaction in the statute." <u>Massachusetts</u>, 127 S. Ct. at 1463.  That
12 Johnson's endangerment finding will seemingly result from EPA Defendants' compelled action
13 is but an ancillary benefit to plaintiffs.

14 Another case from the 1970's involving Natural Resources Defense Council, <u>Natural
15 Resources Defense Council, Inc. v. Train</u>, 545 F.3d 320 (C.A.N.Y 1976) contained a very similar
16 prayer for relief and compelled action by the EPA Administrator, at that time in regard to lead
17 emissions.  The court ruled that once the EPA Administrator determines that a particular
18 pollutant has an adverse effect on public health or welfare and originates from one or more
19 numerous or diverse mobile or stationary sources then "provisions of Clean Air Act
20 Amendments of 1970 are to be automatically invoked, and promulgation of national air quality
21 standards and implementation thereof by states within a limited, fixed time schedule becomes
22 mandatory."  <u>Id.</u> at 325.

23 The Court is similarly asked to grant plaintiffs' relief in mandamus and simultaneously
24 generate the same wealth of protective regulations for carbon dioxide and greenhouse gases that
25 were prompted by the <u>NRDC v. Train</u> ruling in regard to lead.  See <u>id.</u> at 328 (stating "the
26 Congress sought to eliminate, not perpetuate, opportunity for administrative foot-dragging.  Once
27 the conditions of [Clean Air Act] ss 108(a) (1)(A) and (B) have been met, the listing of lead and
28 the issuance of air quality standards for lead become mandatory.")

- 6 -

1  Plaintiffs should be permitted to have their claim for mandamus heard on the merits, to determine whether standards governing Johnson's discretion to deem greenhouse gases hazardous "have been ignored or violated" as those terms are used in the Carpet case. See Carpet, 656 F.2d at 566.

Because the Court in ruling on this motion must accept all factual allegations in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party (Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336-337-38 (9th Cir. 1996)), the Court must accept plaintiffs' allegation that EPA Defendants' failure to respond to the Supreme Court is a failure to "perform a duty owed to plaintiffs." First Amen. Complaint ¶¶ 29, 92.

Defendants' assertion that plaintiffs have an adequate remedy in the citizen suit provision of the Clean Air Act (Mem. In Support of Mot. to Dismiss, p. 8, ln. 22-p. 9, ln. 5) is misguided because citizen suits are authorized only to challenge the "failure of the Administrator to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2) (emphasis added).

Johnson's inaction on the subject of greenhouse gas emissions has been shielded by this nuanced "loophole" in the Clean Air Act, leaving mandamus as the only possible relief available to force Johnson to make a discretionary decision with respect to the endangerment posed by greenhouse gas emissions.

**II. EPA Defendants Ignore Their Statutory Duty To Regulate Emissions That "May Be Reasonably Anticipated To Endanger Public Health Or Welfare."**

Plaintiffs' second claim for relief under the APA flows from the Court's granting of relief under plaintiffs' first claim for mandamus. As discussed above, Johnson's duty to declare air pollutants "hazardous" is discretionary and his decision regarding whether or not greenhouse gases endanger public health must be prompted under plaintiffs' mandamus claim.

However, defendant Johnson's duty "to list pollutants under section 108 [of the Clean Air Act] is mandatory, once it is determined by the Administrator that a pollutant 'has an adverse effect on public health or welfare' and comes from the requisite numerous or diverse sources." Natural Resources Defense Council, Inc. v. Train, 411 F. Supp 864, 867 (D.C.N.Y. 1976).

- 7 -

Defendants argue in section I of their legal argument that the Supreme Court's directive in Massachusetts v. EPA does not meet the requirement that an APA claim must be based on a duty owed by statute. Mem. in Support of Mot. To Dismiss, p. 5, ln. 14-15. Defendants are correct that under the APA, "for a claim of unreasonably delay to survive, the agency must have a statutory duty in the first place." San Francisco BayKeeper v. Whitman, 297 F.3d 877, 885 (9th Cir. 2002).

Once Johnson makes his initial endangerment finding as requested in the First Amended Complaint, EPA Defendants then have a statutory duty under several sections of the Clean Air Act (sections 108-110, 111, 202) to regulate sources of emissions "which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. sections 108-110, 111, 202.

Defendants' citation to Madison-Hughes v. Shalala, 80 F.3d 1121 (6th Cir. 1996) is therefore misplaced. EPA Defendants' statutory duty to regulate sources of emissions that "endanger" under the Clean Air Act constitutes a "mandatory legal requirement" as the term is used in Madison-Hughes, 80 F.3d at 1125. Plaintiffs first require relief under their claim for mandamus to vest Johnson with the nondiscretionary duty to regulate greenhouse gas emissions once these pollutants are deemed to endanger.

Subsequently, the EPA Defendants must be ordered to comply with their statutory duty under the Clean Air Act sections 202, 111, and 108-110 to regulate greenhouse gas emissions from cars and power plants, and to establish new National Ambient Air Quality Standards. See First Amen. Complaint ¶¶ 60-67.

**III.    Having Demonstrated A Statutory Duty To Act, Plaintiffs Prevail Over Defendants' Claim Of Sovereign Immunity Because No Adequate Remedies are Elsewhere Available.**

Defendants in Part II of their legal argument suggest that even if EPA Defendants are held to be under a nondiscretionary duty to act by virtue of plaintiffs' claim for mandamus, plaintiffs' claims are invalidated by the rule that plaintiffs' APA claim must instead be brought pursuant to the Clean Air Act. Mem. in Support of Mot. to Dismiss, p. 6, ln. 25-p. 7, ln. 14.

- 8 -

This argument assumes that the Clean Air Act is an "adequate remedy" that precludes plaintiffs' APA claim by virtue of 5 U.S.C. § 704.  As discussed above, however, Johnson's decision to declare greenhouse gas emissions hazardous is discretionary and renders unavailable any citizen suit, in any venue, under the Clean Air Act, 42 U.S.C. § 7604(a).

Plaintiffs admittedly require their relief under mandamus to finally charge Johnson with a <u>non</u>discretionary duty to move his agency, the EPA, to begin regulating greenhouse gas emissions from sources such as motor vehicles and power plants, assuming that the Supreme Court is correct and an endangerment finding is inevitable.

Yet relief under plaintiffs' first claim for mandamus simultaneously warrants plaintiffs' relief under their APA claim.  The Court will be able to link plaintiff's relief under the APA with Johnson's compelled order to ground his action or inaction in the Clean Air Act.  Johnson's decision that greenhouse gas emissions "endanger public health and welfare" necessarily creates plaintiffs' relief under the APA for Johnson's nondiscretionary duty to promulgate greenhouse gas regulations from a broad range of sources, as described herein.

## **CONCLUSION**

EPA Defendants' failure to act is prolonged by the fact that defendant Johnson's discretionary power to determine which substances are hazardous renders him immune from a citizen suit under the Clean Air Act.  As discussed above, relief under the Administrative Procedure Act is available as soon as the Court places Johnson and the EPA under a nondiscretionary duty to promulgate regulations for greenhouse gases that have been deemed to "endanger health and welfare" as that phrase is used throughout the Clean Air Act, 42 U.S.C. 7401 et. seq.

Until Johnson's endangerment finding, mandamus provides the only claim for relief for these plaintiffs, or for any plaintiffs anywhere in the country.  The 9th Circuit allows plaintiffs to state a claim for mandamus because Johnson has ignored his duty to determine hazardous air pollutants, in defiance of the Supreme Court, despite the fact that defendant's stated duty is discretionary.

//

- 9 -

At a minimum plaintiffs must be allowed to pursue their mandamus claim against EPA Defendants because plaintiffs' inability to access the right to a citizen suit under the Clean Air Act prevents any judicial review of Johnson and the EPA for their failure to act swiftly to protect our people and our environment from the hazards of global warming caused by greenhouse gas emissions.

Respectfully submitted,

Dated: February 29, 2007

BRIGHTLINE DEFENSE PROJECT

_____
Joshua Arce, Esq.
Attorney for Plaintiffs
San Francisco Chapter of the A. Philip Randolph Institute, Californians for Renewable Energy, Lynne Brown, Regina Hollins

CALIFORNIANS FOR RENEWABLE ENERGY

_____
Martin Homec, Esq.
Attorney for Plaintiff
Californians for Renewable Energy

- 10 -

**CERTIFICATE OF SERVICE**

On February 29, 2008, a true and correct copy of the foregoing MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS was served electronically via the Court's e-filing system to Counsel of Record.

BRIGHTLINE DEFENSE PROJECT

_____
Joshua Arce, Esq.