Joshua Arce, Esq. (State Bar No. 218563)
josh@brightlinedefense.org
BRIGHTLINE DEFENSE PROJECT
240 Golden Gate Avenue, Ste. 102
San Francisco, CA 94102
415-837-0600
Fax 415-837-0660

Martin Homec (State Bar No. 085798)
martinhomec@gmail.com
P. O. Box 4471
Davis, CA 95617
530-867-1850

Attorneys for Plaintiffs
SAN FRANCISCO CHAPTER OF THE
A. PHILIP RANDOLPH INSTITUTE,
CALIFORNIANS FOR RENEWABLE ENERGY,
LYNNE BROWN, REGINA HOLLINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, CALIFORNIANS FOR RENEWABLE ENERGY, LYNNE BROWN, REGINA HOLLINS,

on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

vs.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN JOHNSON, BAY AREA AIR QUALITY MANAGEMENT DISTRICT, CITY AND COUNTY OF SAN FRANCISCO,

Defendants.

Case No.: C-07-4936-CRB

DECLARATION OF MICHAEL BOYD IN OPPOSITION TO EPA'S MOTION TO DISMISS

Date: Friday, March 21, 2008
Time: 10:00 a.m.
Place: 450 Golden Gate Avenue
Courtroom 8, 19th Floor
San Francisco, California

**DECLARATION OF MICHAEL BOYD**

I, Michael Boyd, being duly sworn, declare:

1. I am the president of CAlifornians for Renewable Energy ("CARE"), a non-profit public benefit corporation organized and operating under the laws of California for the primary purpose of educating the public about, and encouraging public agencies to consider, alternative forms of renewable energy as a means of avoiding dependence on declining fossil fuel supplies, and the harmful air emissions caused by their use.

2. CARE is a plaintiff in this action and I submit this declaration in opposition to the Environmental Protection Agency ("EPA") and EPA Administrator Stephen L. Johnson's ("Johnson") motion to dismiss plaintiffs' first and second claims for relief as to the EPA and Johnson. I have personal knowledge of the matters stated herein, and if called as a witness could testify competently thereto.

3. Attached as Exhibit A is a true and accurate copy of a January 23, 2008 letter sent by California Attorney General Jerry Brown and seventeen other state attorneys general indicating the signatories' belief that "EPA is unreasonably delaying action on the remand" of Massachusetts v. EPA, 127 S. Ct. 1438 (2007). That letter notes at the top of page 3 that "it is past time for EPA to take action on the Massachusetts v. EPA remand" and the parties "urge [EPA] to move forward at once."

4. Attached as Exhibit B is a true and accurate copy of a January 3, 2008 Stanford Report of a scientific study linking carbon dioxide emissions to increased deaths. That study notes at page 1 that "for each increase of 1 degree Celsius caused by carbon dioxide, the resulting air pollution would lead annually to about a thousand additional deaths and many more cases of respiratory illness and asthma in the United States."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 29th day of February, 2008, at Sunnyvale, California.

Michael E. Boyd

Michael Boyd

# EXHIBIT A

**ATTORNEYS GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS, THE STATES OF ARIZONA, CALIFORNIA, CONNECTICUT, DELAWARE, ILLINOIS, IOWA, MAINE, MARYLAND, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON, THE CITY SOLICITOR FOR THE CITY OF BALTIMORE AND THE CORPORATION COUNSEL FOR THE CITY OF NEW YORK**

January 23, 2008

Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
United States Environmental Protection Agency 1101A
U.S. EPA Headquarters
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Re: *Massachusetts v. EPA* remand

Dear Administrator Johnson:

We are writing today because of our concern about the progress of the administrative proceedings on remand from last year's U.S. Supreme Court ruling in *Massachusetts v. EPA*, 549 U.S. ___, 127 S.Ct. 1438 (2007). For the reasons set forth below, we believe that EPA is unreasonably delaying action on the remand, and we request a response by February 27, 2008, regarding the agency's specific intentions for moving that remand forward.

As you know, in *Massachusetts v. EPA*, we and other parties challenged EPA's refusal to regulate greenhouse gas emissions from motor vehicles pursuant to the federal Clean Air Act. The Court ruled that EPA had authority to regulate greenhouse gases under the Clean Air Act. 127 S.Ct. at 1459-62. The Court also ruled that EPA had relied on improper policy grounds in denying a rulemaking petition that had been filed under Section 202 of the Act, and it ordered the agency to revisit the rulemaking petition based on proper statutory factors. *Id*. at 1462-63. As EPA itself described the Court's mandate just last month:

> On April 2, 2007, the Supreme Court ruled that the EPA must determine, under Section 202(a) of the Clean Air Act, whether greenhouse gas emissions (GHG) from new motor vehicles cause or contribute to air pollution that endangers public health or welfare.

72 Fed. Reg. 69934 (December 10, 2007).

In response to the Court's ruling, you repeatedly indicated that the agency would be moving forward with regulation under Section 202 and other provisions of the Clean Air Act. *See e.g.,* Statement of Stephen L. Johnson, to House Select Committee on Energy Independence and Global Warming (June 8, 2007). In this manner, you acknowledged that the agency has concluded that the endangerment threshold has in fact been crossed. In order to keep the regulatory process on track, we urged you immediately to begin the formal process of making a determination of endangerment through publishing a formal notice to that effect. *See e.g.,* Testimony of Attorney General Martha Coakley to House Select Committee on Energy Independence and Global Warming (June 8, 2007). While you declined to take this step, you did on numerous occasions state that the agency would formally propose new regulations pursuant to the Clean Air Act, including under Section 202, by the end of 2007, with final regulations in place by the end of October 2008. Indeed, you reaffirmed that intent in a formal "regulatory plan" published on December 10, 2007. 72 Fed. Reg. 69934. Nevertheless, the end of 2007 has come and gone without any regulatory action by the agency and without any new commitment as to when the agency would act.

We are aware that Congress has enacted the Energy Independence and Security Act of 2007, which President Bush signed into law on December 19, 2007. That act tightened the fuel economy standards for motor vehicles under the Energy Policy and Conservation Act (EPCA). But such changes to EPCA do not affect EPA's authority or duties under Section 202 of the Clean Air Act or under the Supreme Court's remand. As the Supreme Court has emphasized, EPA's statutory obligation to protect public health and welfare is "wholly independent" from EPCA's "mandate to promote energy efficiency." 127 S.Ct. at 1462. Moreover, in enacting the new legislation, Congress could not have been clearer that it was not modifying EPA's existing obligations under other statutes. *See* P.L. 110-140, 2007 HR slip, § 3 ("Except to the extent expressly provided in this Act, or an amendment made by this Act, nothing in this Act or an amendment made by this Act supersedes, limits the authority provided or responsibility conferred by, or authorizes violation of any provision of law (including a regulation), including any energy or environmental law or regulation.").

The rulemaking petition at issue in *Massachusetts v. EPA* was filed in 1999, now almost a decade ago. EPA's failure to exercise its clear authority under the Clean Air Act and to act on the petition constitutes an abdication of its regulatory responsibility. We once again urge EPA immediately to begin the regulatory process by publishing formal notice of EPA's conclusion that greenhouse gas emissions from motor vehicles and other sources "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." *See* 42 U.S.C. 7521(a). There is no valid reason for EPA to continue to delay moving the regulatory process forward in this manner. We note, for example, that immediately beginning the formal process of making an endangerment determination will still allow the agency additional time to deliberate over regulatory design issues involved in actually setting the applicable emissions standards.

In sum, according to EPA's own schedule, it is past time for EPA to take action on the *Massachusetts v. EPA* remand, and we urge you to move forward at once. If EPA continues unreasonably to delay its actions on the remand, we intend to take action to enforce the D.C. Circuit's mandate. Please let us know in writing by February 27, 2008, specifically what EPA's plans are to comply with the mandate.

If you would like to discuss this further, feel free to contact us directly or to have your staff follow up with Massachusetts Assistant Attorney General James R. Milkey. His contact information is: James R. Milkey, Assistant Attorney General, Chief, Environmental Protection Division, Massachusetts Office of the Attorney General, One Ashburton Place, Boston, MA 02108; [redacted]

Thank you very much.

Very truly yours,

[redacted]

Martha Coakley
Massachusetts Attorney General

[redacted]

Terry Goddard
Arizona Attorney General

[redacted]

Edmund G. Brown Jr.
California Attorney General

[redacted]

Richard Blumenthal
Connecticut Attorney General

[redacted]

Joseph R. Biden, III
Delaware Attorney General

[redacted]

Lisa Madigan
Illinois Attorney General



Tom Miller
Iowa Attorney General



G. Steven Rowe
Maine Attorney General



Douglas F. Gansler
Maryland Attorney General



Lori Swanson
Minnesota Attorney General



Anne Milgram
New Jersey Attorney General



Gary King
New Mexico Attorney General



Andrew M. Cuomo
New York Attorney General

Hardy Myers
Oregon Attorney General



Patrick C. Lynch
Rhode Island Attorney General



William H. Sorrell
Vermont Attorney General



Rob McKenna
Washington Attorney General





George A. Nilson
Baltimore City Solicitor

Michael A. Cardozo
New York City Corporation Counsel

cc. Honorable Michael B. Mukasey
Attorney General

# EXHIBIT B

*Stanford Report, January 3, 2008*

# Study links carbon dioxide emissions to increased deaths

BY LOUIS BERGERON



A Stanford scientist has spelled out for the first time the direct links between increased levels of carbon dioxide in the atmosphere and increases in human mortality, using a state-of-the-art computer model of the atmosphere that incorporates scores of physical and chemical environmental processes. The new findings, to be published in *Geophysical Research Letters*, come to light just after the Environmental Protection Agency's recent ruling against states setting specific emission standards for this greenhouse gas based in part on the lack of data showing the link between carbon dioxide emissions and their health effects.



Mark Jacobson

While it has long been known that carbon dioxide emissions contribute to climate change, the new study details how for each increase of 1 degree Celsius caused by carbon dioxide, the resulting air pollution would lead annually to about a thousand additional deaths and many more cases of respiratory illness and asthma in the United States, according to the paper by Mark Jacobson, a professor of civil and environmental engineering at Stanford. Worldwide, upward of 20,000 air-pollution-related deaths per year per degree Celsius may be due to this greenhouse gas.

"This is a cause and effect relationship, not just a correlation," said Jacobson of his study, which on Dec. 24 was accepted for publication in *Geophysical Research Letters*. "The study is the first specifically to isolate carbon dioxide's effect from that of other global-warming agents and to find quantitatively that chemical and meteorological changes due to carbon dioxide itself increase mortality due to increased ozone, particles and carcinogens in the air."

Jacobson said that the research has particular implications for California. This study finds that the effects of carbon dioxide's warming are most significant where the pollution is already severe. Given that California is home to six of the 10 U.S. cities with the worst air quality, the state is likely to bear an increasingly disproportionate burden of death if no new restrictions are placed on carbon dioxide emissions.

On Dec. 19, the Environmental Protection Agency denied California and 16 other states a waiver that would have allowed the states to set their own emission standards for carbon dioxide, which are not currently regulated. The EPA denied the waiver partly on the grounds that no special circumstances existed to warrant an exception for the states.

Stephen L. Johnson, the EPA administrator, was widely quoted as saying that California's petition was denied because the state had failed to prove the "extraordinary and compelling conditions" required to qualify for a waiver. While previous published research has focused on the global effect on pollution—but not health—of all the greenhouse gases combined, the EPA noted that, under the Clean Air Act, it has to be shown that there is a reasonable anticipation of a specific pollutant endangering public health in the United States for the agency to regulate that pollutant.

Jacobson's paper offers concrete evidence that California is facing a particularly dire situation if carbon dioxide emissions increase. "With six of the 10 most polluted cities in the nation being in California, that alone creates a special circumstance for the state," he said, explaining that the health-related effects of carbon dioxide emissions are most pronounced in areas that already have significant pollution. As such, increased warming due to carbon dioxide will worsen people's health in those cities at a much faster clip than elsewhere in the nation.

According to Jacobson, more than 30 percent of the 1,000 excess deaths (mean death rate value) due to each degree Celsius increase caused by carbon dioxide occurred in California, which has a population of about 12 percent of the United States. This indicates a much higher effect of carbon-dioxide-induced warming on California health than that of the nation as a whole.

Jacobson added that much of the population of the United States already has been directly affected by climate change through the air they have inhaled over the last few decades and that, of course, the health effects would grow worse if temperatures continue to rise.

Jacobson's work stands apart from previous research in that it uses a computer model of the atmosphere

**RELATED INFORMATION**

- More carbon dioxide equals more deaths
- Jacobson's website
- The paper to be published *Geophysical Research Letters*

*Click on photo(s) to enlarge.*

that takes into account many feedbacks between climate change and air pollution not considered in previous studies. Developed by Jacobson over the last 18 years, it is considered by many to be the most complex and complete atmospheric model worldwide. It incorporates principles of gas and particle emissions and transport, gas chemistry, particle production and evolution, ocean processes, soil processes, and the atmospheric effects of rain, winds, sunlight, heat and clouds, among other factors.

For this study, Jacobson used the computer model to determine the amounts of ozone and airborne particles that result from temperature increases caused by increases in carbon dioxide emissions. Ozone causes and worsens respiratory and cardiovascular illnesses, emphysema and asthma, and many published studies have associated increased ozone with higher mortality. "[Ozone] is a very corrosive gas; it erodes rubber and statues," Jacobson said. "It cracks tires. So you can imagine what it does to your lungs in high enough concentrations." Particles are responsible for cardiovascular and respiratory illness and asthma.

Jacobson arrived at his results of the impact of carbon dioxide globally and, at higher resolution, over the United States by modeling the changes that would occur when all current human and natural gas and particle emissions were considered versus considering all such emissions except human-emitted carbon dioxide.

Jacobson simultaneously calculated the effects of increasing temperatures on pollution. He observed two important effects:

- Higher temperatures due to carbon dioxide increased the chemical rate of ozone production in urban areas.
- Increased water vapor due to carbon dioxide-induced higher temperatures boosted chemical ozone production even more in urban areas.

Interestingly, neither effect was so important under the low-pollution conditions typical of rural regions, though other factors, such as higher organic gas emissions from vegetation, affected ozone in low-pollution areas. Higher emissions of organic gases also increased the quantity of particles in the air, as organic gases can chemically react to form particles.

And in general, where there was an increase in water vapor, particles that were present became more deadly, as they swelled from absorption of water. "That added moisture allows other gases to dissolve in the particles—certain acid gases, like nitric acid, sulfuric acid and hydrochloric acid," Jacobson said. That increases the toxicity of the particles, which are already a harmful component of air pollution.

Jacobson also found that air temperatures rose more rapidly due to carbon dioxide than did ground temperatures, changing the vertical temperature profile, which decreased pollution dispersion, thereby concentrating particles near where they formed.

In the final stage of the study, Jacobson used the computer model to factor in the spatially varying population of the United States with the health effects that have been demonstrated to be associated with the aforementioned pollutants.

"The simulations accounted for the changes in ozone and particles through chemistry, transport, clouds, emissions and other processes that affect pollution," Jacobson said. "Carbon dioxide definitely caused these changes, because that was the only input that was varied."

"Ultimately, you inhale a greater abundance of deleterious chemicals due to carbon dioxide and the climate change associated with it, and the link appears quite solid," he said. "The logical next step is to reduce carbon dioxide: That would reduce its warming effect and improve the health of people in the U.S. and around the world who are currently suffering from air pollution health problems associated with it."





STANFORD
News Service

© Stanford University. All Rights Reserved. Stanford, CA 94305. (650) 723-2300.

**CERTIFICATE OF SERVICE**

On February 29, 2008, a true and correct copy of the foregoing DECLARATION OF MICHAEL BOYD IN OPPOSITION TO MOTION TO DISMISS was served electronically via the Court's e-filing system to Counsel of Record.

BRIGHTLINE DEFENSE PROJECT

Joshua Arce, Esq.