1    DENNIS J. HERRERA, State Bar #139669
     City Attorney
2    OWEN J. CLEMENTS, State Bar #141805
     Chief of Special Litigation
3    THERESA L. MUELLER, State Bar #172681
     Chief Energy and Telecommunications Deputy
4    WILLIAM K. SANDERS, State Bar #154156
     Deputy City Attorney
5    City Hall Room 234
     1 Dr. Carlton B. Goodlett Place
6    San Francisco, California 94102-4682
     Telephone:    (415) 554-6771
7    Facsimile:     (415) 554-4757
     E-Mail:       william.sanders@sfgov.org
8

9    Attorneys for Defendant
     CITY AND COUNTY OF SAN FRANCISCO

10

11               UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

14

| | |
|---|---|
| SAN FRANCISCO CHAPTER OF THE A. PHILLIP RANDOLPH INSTITUTE, CALIFORNIANS FOR RENEWABLE ENERGY, LYNNE BROWN, REGINA HOLLINS, <br><br> on behalf of themselves and others similarly situated and the general public <br><br>              Plaintiffs, <br><br>        vs. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN JOHNSON, BAY AREA AIR QUALITY MANAGEMENT DISTRICT, MARK ROSS, CITY AND COUNTY OF SAN FRANCISCO, <br><br>              Defendants. | Case No. C-07-4936-CRB <br><br> **NOTICE OF MOTION AND MOTION OF DEFENDANT THE CITY AND COUNTY OF SAN FRANCISCO TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date:  April 11, 2008 <br> Time: 10:00 a.m. <br> Place:  Courtroom 8, 19th Floor |

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

NOTICE OF MOTION........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

   I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................1

   II.     STATEMENT OF FACTS ....................................................................4

         A.     The San Francisco Action Plan and the Development of the SFERP .........4

         B.     The City's Approval of the SFERP ...........................................................5

         C.     *Massachusetts v. Environmental Protection Agency*..................................6

   III.    LEGAL STANDARD ...........................................................................7

   IV.    ARGUMENT.........................................................................................8

         A.     This Court Should Dismiss Plaintiffs' Federal Claims for Lack of
              Subject Matter Jurisdiction.......................................................................8

              1.     Plaintiffs' claims against the City based on *Massachusetts* are
                    not ripe for review ........................................................................8

              2.     Plaintiffs' procedural due process claim is not ripe for review ......9

              3.     Plaintiffs have not alleged a sufficient property interest .................9

         B.     The Court Should Dismiss Plaintiffs' Federal Claims Against the City
              for Failure To State a Claim ...................................................................10

               1.     Plaintiffs cannot obtain injunctive relief against the City under
                    28 U.S.C. § 1361 or the Administrative Procedure Act ...............10

               2.     Plaintiff cannot obtain injunctive relief against the city based on
                    the EPA's purported failure to "comply" with *Massachusetts*......11

              3.     Plaintiffs have failed to properly plead a procedural due process
                    claim ...........................................................................................12

         C.     The Court Should Decline Supplemental Jurisdiction..............................12

         D.     The Court Should Dismiss Plaintiffs' Nuisance Claim Against the City
              on Justiciability and Ripeness Grounds....................................................13

         E.     This Court Should Dismiss Plaintiffs' State Law Claims Against the
              City for Failure to State a Claim...............................................................15

               1.     Plaintiffs have failed to state a claim for a public nuisance ..........15

               2.     Plaintiffs have failed to state a claim for a writ of mandamus ......16

   V.     CONCLUSION....................................................................................18

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Abbott Laboratories v. Gardner*
4
    387 U.S. 136 (1967)...................................................................8

5
*Baker v. Carr*
    369 U.S. 186 (1962)..................................................................14
6

*Beverly Hills Federal Savings and Loan Association v. Webb*
7
    406 F.2d 1275 (9th Cir. 1969) ....................................................12

8
*Branch v. Tunnel*
    14 F.3d 449  (9th Cir. 1994) ........................................................7
9

*Carson Harbor Village, Ltd. v. Unocal Corp.*
10
    270 F.3d 863 (9th Cir. 2001)......................................................16

11
*Clark v. Washington*
12
    366 F.2d 678 (9th Cir. 1966) ......................................................10

13
*Conley v. Gibson*
    355 U.S. 41 (1957)......................................................................7
14

15
*Connecticut v. American Electric Power Co.*
    406 F. Supp 2d 265 (S.D.N.Y. 2005) .....................................13, 14
16

*E.E.O.C. v Peabody Western Co.*
17
    400 F.3d 774 (9th Cir. 2005) ......................................................12

18
*Emrich v. Touche Ross & Co.*
19
    846 F.2d 1190 (9th Cir. 1988). ....................................................7

20
*Executive Software North America, Inc. v. United States District Court*
    24 F.3d 1545 (9th Cir. 1994) ......................................................13
21

22
*Herman Family Revocable Trust v. Teddy Bear*
    254 F.3d 802 (9th Cir. 2001) ......................................................13

23
*Hunter v. Underwood*
    362 F.3d 468 (8th Cir. 2004) ......................................................11
24

25
*Jarrett v. Resor*
    426 F.2d 213 (9th Cir. 1970) ......................................................11
26

27
*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ........................................................7

28

*Massachusetts v. Environmental Protection Agency*
   127 S. Ct. 1438 (2007).................................................................................passim

*Massachusetts v. Environmental Protection Agency*
   249 Fed. App'x. 829 (D.C. Cir. 2007)............................................................7

*National Park Hospitality Association v. Department of Interior*
   538 U.S. 803 (2003)........................................................................................8

*National Wildlife Federation v. Espy*
   45 F.3d 1337 (9th Cir. 1995) ........................................................................12

*Natural Resources Defense Council v. Train*
   545 F.2d 320 (2d Cir. 1976)...........................................................................9

*People of State of California v. General Motors Corp.*
   2007 WL 2726871 (N.D. Cal., Sept. 17, 2007)............................................13

*Plan For Arcadia, Inc. v. Anita Associates*
   501 F.2d 390 (9th Cir. 1974)..........................................................................9

*Portman v. County of Santa Clara*
   995 F.2d 898 (9th Cir. 1993)..........................................................................9

*Powers v. Ohio*
   499 U.S. 400 (1991)......................................................................................10

*Taliferro v. Darby Township Zoning Board*
   458 F.3d 181 (3d Cir. 2006) .........................................................................10

*Thornhill Publishing Co. v. General Telephone & Electronics. Corp.*
   594 F.2d 730 (9th Cir. 1979) ..........................................................................7

*United States v. James Daniel Good Real Property*
   510 U.S. 43 (1993)........................................................................................12

*United States v. Weber*
   451 F.3d 552 (9th Cir. 2006) ..........................................................................7

*Verizon California Inc. v. Peevey*
   413 F.3d 1069 (9th Cir. 2005) ........................................................................7

*Warren v. Fox Family Worldwide, Inc.*
   328 F.3d 1136 (9th Cir. 2003) ........................................................................7

*White v. Lee*
   227 F.3d 1214 (9th Cir. 2000) ........................................................................7

**State Cases**

*Alliance for a Better Downtown Millbrae v. Wade*
    108 Cal. App. 4th 123 (2003) ..................................................................17

*Excelsior College v. California Board of Registered Nursing*
    136 Cal. App. 4th 1218 (2006) ..............................................................17

*People ex rel. Gallo v. Acuna*
    14 Cal. 4th 1090 (1997) ........................................................................15

*State Board of Education v. Honig*
    13 Cal. App. 4th 720 (1993) ..................................................................17

*Unnamed Physician v. Board of Trustees of Saint Agnes*
    93 Cal. App. 4th 607 (2001) ..................................................................17

**Federal Statutes**

5 United States Code
    Section 701(b)(1) ...................................................................................11
    Section 706(1) .......................................................................................11

28 United States Code
    Section 1361 .....................................................................................2, 10
    Section 1367(a) ..................................................................................1, 13
    Section 1367(c) ..................................................................................1, 13
    Section 1367(c)(1) .................................................................................13
    Section 1367(c)(1), (3) ..........................................................................13
    Section 1367(c)(3) .................................................................................13

42 United States Code
    Section 1983 ...........................................................................................9
    Section 7607(b) ......................................................................................8

Federal Rule of Civil Procedure
    Section 12(b)(1) ..................................................................................1, 7
    Section 12(b)(6) ..................................................................................1, 7
    Section 19(b) ...................................................................................11, 12

**State Statutes & Codes**

California Civil Code
    Section 3479 ..........................................................................................15
    Section 3480 ..........................................................................................15
    Section 3482 ..........................................................................................15
    Section 3493 ..........................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

California Code of Civil Procedure
    Section 1085(a).................................................................................17

California  Public Resources Code
    Section 25500 .................................................................................4

**San Francisco Statutes, Codes & Ordinances**

San Francisco Charter
    Section 4.112 .................................................................................5

San Francisco Environment Code
    Section 101 .................................................................................16
    Section 104 .................................................................................17

# NOTICE OF MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 11, 2008, at 10:00 a.m. or as soon thereafter as counsel may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant the City and County of San Francisco (the "City") will move this Court, before the Honorable Charles R. Breyer, United States District Judge, for an order, pursuant to: (i) Federal Rule of Civil Procedure 12(b)(1), dismissing certain of plaintiffs' claims on the ground that the Court lacks subject matter jurisdiction over them; and/or (ii) Federal Rule of Civil Procedure 12(b)(6), dismissing all of plaintiffs' claims on the ground that plaintiffs have failed to state a claim therein; (iii) 28 U.S.C. § 1367(a), dismissing plaintiffs' state law claims because the Court does not have subject matter jurisdiction over plaintiffs' federal claims; and/or (iv) 28 U.S.C. § 1367(c), declining to exercise supplemental jurisdiction over plaintiffs' state law claims.  The motion is based upon this notice of motion, the attached memorandum of points and authorities, the request for judicial notices submitted herewith, and upon such other matters as may be presented to the Court at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

For a number of years now, the City has worked diligently with community members to replace old, inefficient and dirty electric generating plants located in the southeast part of San Francisco with a modern, clean facility powered by three combustion turbine ("CT") generators (the San Francisco Electric Reliability Project ("SFERP")).  In order to do so, the City had to obtain a number of permits, one of which was from defendant Bay Area Air Quality Management District ("BAAQMD").  After a lengthy process, the City has obtained most of those permits, including a Final Determination of Compliance from BAAQMD.  The only regulatory permit still required is an Authority to Construct ("ATC") from BAAQMD.

Plaintiffs San Francisco Chapter of the A. Phillip Randolph Institute, *et al.* are among a small number of entities, groups and individuals that oppose the SFERP.  Because all of their legal efforts to challenge the City's permits directly, either administratively or through the state courts, have been

1    exhausted, plaintiffs have filed this federal court complaint seeking to enjoin BAAQMD from issuing

2    the ATC, and the City from constructing the SFERP, for reasons unrelated to the City's compliance

3    with *existing* federal and state air quality control standards.

4          In fact, plaintiffs do not allege that the SFERP will violate any existing federal or state air

5    quality laws.  Instead, plaintiffs allege that in *Massachusetts v. Environmental Protection Agency* the

6    Supreme Court recently ordered defendants United States Environmental Protection Agency and

7    Stephen L. Johnson (hereinafter "EPA") to reassess their prior determination that the EPA did not

8    have the authority under the Clean Air Act to regulate greenhouse gas emissions from new motor

9    vehicles. (Amended Complaint at ¶¶ 91-94.)  Plaintiffs further allege that, once the EPA makes the

10   *required* endangerment finding, the EPA will then regulate greenhouse gas emissions from both

11   automobiles and stationary sources. (Amended Complaint at ¶ 95.)  They claim that this Court,

12   therefore, should enjoin BAAQMD from issuing the ATC, and the City from constructing the

13   SFERP, until the EPA has issued its new regulations. (Amended Complaint at p. 24 ¶¶ 3-4.)

14   Although the City shares plaintiffs' desire to promote aggressive greenhouse gas regulation, such

15   desire provides no basis for this complaint. As discussed below, this Court should dismiss all of

16   plaintiffs' claims because they are deficient in one or more ways.

17         As set forth in the EPA's motion to dismiss filed on February 15, 2008, which the City adopts

18   by this reference, this Court should dismiss plaintiffs' first and second claims for relief against the

19   EPA for lack of subject matter jurisdiction and failure to state a claim. In addition, to the extent

20   plaintiffs are seeking to require the EPA to regulate greenhouse gas emissions from stationary

21   sources, based on its finding on remand from the Supreme Court that greenhouse gases are air

22   pollutants that will endanger public health, that claim is not ripe for review. It must first await the

23   EPA's order following the remand. Finally, neither the Administrative Procedure Act nor 28 U.S.C.

24   § 1361, on which these claims are pleaded, provide a legal basis for plaintiffs to obtain any relief

25   against the City. That the City might be an "indispensable" party to the plaintiffs' federal claims,

26   does not mean that plaintiffs can obtain injunctive relief against the City based on those claims.

27         In their third claim for relief, plaintiffs claim that the manner in which the City will "build and

28   operate its power plants constitutes a [public] nuisance." (Amended Complaint at ¶ 115.)  Plaintiffs

1   allege that the SFERP is "injurious to plaintiffs' health and to the health of the public in general, and

2   interfere[s] with plaintiffs' comfortable enjoyment of life and property." (Amended Complaint at ¶

3   110.) Plaintiffs allege that they will be "specially injured" by the City's proposed power plant.

4   (Amended Complaint at ¶ 113.)

5        This Court should dismiss that claim for a number of reasons. First, as with plaintiffs' first

6   and second claims for relief, such a claim is not ripe to the extent plaintiffs are asking the EPA to

7   regulate greenhouse gas emissions from stationary sources. Second, this Court does not have subject

8   matter jurisdiction over this claim because, as two other district courts have held, a public nuisance

9   claim based on greenhouse gas emissions raises political questions that are non-justiciable. Third, if

10  this Court dismisses plaintiffs' federal claims, as all of the defendants are asking the Court to do, the

11  Court: (i) will not have supplemental jurisdiction over plaintiffs' state law claims if the dismissal is

12  for lack of subject matter jurisdiction; or (ii) should decline to exercise supplemental jurisdiction if

13  the dismissal is for failure to state a claim. Finally, plaintiffs have failed to state a claim upon which

14  relief can be granted. Plaintiffs' allegations that ozone emissions from the SFERP would be a public

15  nuisance fail to meet the objective standard this Court must apply to such a claim. Indeed, two

16  government agencies have determined the SFERP will not make significant contributions to ozone

17  levels.

18       In their fourth claim for relief, plaintiffs allege that the City deprived them of their property

19  without due process of law. (Amended Complaint at ¶¶ 124-33.) Plaintiffs claim that they have been

20  deprived of their right to procedural due process because City officials purportedly: (i) made certain

21  "misrepresentations" about the SFERP; and (ii) "failed to disclose facts that would have discouraged

22  public and legislative support" for the SFERP. (Amended Complaint at ¶¶ 127-33.) Plaintiffs claim

23  that by so doing the City has diminished the value of their property. (Amended Complaint at ¶ 124.)

24       This Court should dismiss plaintiffs' due process claim for two reasons. First, this Court does

25  not have subject matter jurisdiction of this claim because plaintiffs have failed to allege that they *own*

26  any property in the vicinity of the SFERP. Second, plaintiffs have failed to state a claim upon which

27  relief can be granted because the City gave plaintiffs ample notice and an opportunity to be heard,

28  which is what the Due Process Clause requires.

1    In the fifth claim for relief, plaintiffs seeks a writ of mandamus under California law based on

2    the City's purported failure to review the SFERP in light of the City's precautionary principle.

3    (Amended Complaint at 138-43.) This Court should dismiss this claim for failure to state a claim

4    because: (i) the evidence before this Court is that the City fully complied with the precautionary

5    principle; and (ii) the application of the precautionary principle to the SFERP was an exercise of

6    discretion. Therefore, a writ of mandamus would not an appropriate remedy.

7    ## II.    STATEMENT OF FACTS

8    ### A.    The San Francisco Action Plan and the Development of the SFERP

9    For decades the City's electric reliability has depended on two old, polluting power plants –

10   the Hunters Point Power Plant (owned by Pacific Gas and Electric Co.) and the Potrero Power Plant

11   (owned by Mirant Potrero, LLC). (*See* Amended Complaint at ¶¶ 48-50.)

12   In November 2004, the California Independent System Operator ("CAISO")[1] adopted the San

13   Francisco Action Plan, which detailed the need for the SFERP, another City owned CT plant to be

14   located near San Francisco International Airport, and a number of transmission projects to replace

15   these two existing plants. (Defendant's Request for Judicial Notice ("RJN") at Exhibit A.)

16   On October 3, 2006, the California Energy Commission ("CEC")[2] approved the City's

17   Application for Certification ("AFC") to construct and operate the SFERP. (CEC Order, and excerpts

18   from CEC Final Decision on the SFERP related to air quality) (RJN Exhibit B).) In approving the

19   AFC, the CEC found that the SFERP will "provide a degree of economic benefits and electricity

20   reliability to the local area." (*Id.* at p. 1.) The CEC further found that the conditions of certification

21   imposed by the CEC would: (i) "ensure that the project will be designed, sited, and operated in

22   conformity with applicable local, regional, state, and federal laws, ordinances, regulations, and

23   standards, including applicable public health and safety standards, and air and water quality

24

25   [1] The CAISO manages the flow of electricity across the high-voltage, long-distance power lines that make up California's power grid. (*See* www.caiso.com/1c28/1c28acdd2a170.pdf.)

26   [2] The CEC is the state's primary energy policy and planning agency. (*See* www.energy.ca.

27   gov/commission/index.html.) The CEC has the exclusive "power to certify all sites and related facilities in the state" used to supply electric power. Cal. Pub. Res. Code § 25500.

28

1  standards;" and (ii) "assure that the project will neither result in, nor contribute substantially to, any

2  significant direct, indirect, or cumulative adverse environmental impacts." (*Id.* at pp. 1-2.)

3       Air quality concerns were an important part of the CEC certification process. The CEC

4  required the City to obtain a Determination of Compliance from BAAQMD. On November 22, 2005,

5  BAAQMD issued a Final Determination of Compliance ("FDOC"), which was then revised and

6  reissued on January 19, 2006. (RJN Exhibit C.)  In the FDOC, BAAQMD found that the SFERP

7  would comply with all applicable federal and state air quality laws, provided that the City complied

8  with the conditions of compliance contained therein. (*Id.* at p. 1.)  The CEC then included those

9  conditions in the CEC Order and Final Decision. (*See* RJN Exhibit B at pp. 112-36.)

10      Before the City can begin construction of the SFERP, BAAQMD must issue the City the

11  ATC. (*See* Amended Complaint at ¶ 72.)  Under BAAQMD Rules and Regulations, BAAQMD must

12  issue the ATC if the CEC Order contains all of the conditions required by BAAQMD. (BAAQMD

13  Regulation 2-3-301 and 2-3-405  (RJN Exhibit D).)  Plaintiffs do not claim that the CEC Order and

14  Final Decision are not complete in this regard.

15  **B.      The City's Approval of the SFERP**

16      The San Francisco Public Utilities Commission ("SFPUC") is established by the San

17  Francisco Charter. (S.F. Charter § 4.112) (RJN Exhibit E).)  The SFPUC has "charge of the

18  construction, management, supervision, maintenance, extension, operation, use and control of all

19  water and energy supplies and utilities of the City as well as the real, personal and financial assets"

20  used for these purposes. (*Id.*)

21      On October 23, 2007 and October 31, 2007, the SFPUC held public meetings to consider a

22  resolution authorizing the General Manager of the SFPUC to complete negotiations and execute

23  certain agreements necessary to construct the SFERP. (*See* SFPUC Minutes for Meetings on October

24  23, 2007) (RJN Exhibit F) and October 30, 2007 (RJN Exhibit G.)  During the meeting on October

25  31st, the SFPUC approved the resolution. (SFPUC Resolution No. 07-0188) (RJN Exhibit H).)  The

26  resolution states that the City's Board of Supervisors would have to approve the SFERP. (*Id.*)

27      During the meeting on October 23rd a representative from BAAQMD made certain statements

28  about the existing power plants in the City that plaintiffs claim show that the SFPUC had been

1  misleading the public about the SFERP. (*See* RJN Exhibit F at p. 7; Amended Complaint at ¶¶ 128-

2  29.) Nonetheless, plaintiffs and their supporters were free to attend that meeting, as well as the

3  October 31st meeting. During those meetings, plaintiffs and their supporters could voice their

4  concerns about the SFERP and challenge the accuracy of any statements City employees had made to

5  the SFPUC about the SFERP. At least one of the plaintiffs, and their attorney, joined other project

6  opponents in doing just that. (*See* RJN Exhibit F at p. 9, RJN Exhibit G at pp. 3-4.)

7          On October 30, 2007, the Board of Supervisors approved a resolution that, among other

8  things, urged the SFPUC to move forward with the SFERP in an expeditious manner so that the

9  necessary documents could be presented to the Board of Supervisors for its approval. (Board of

10  Supervisors Resolution No. 617-07) (RJN Exhibit I).) The Board of Supervisors held public hearings

11  before approving this resolution. (*See* Minutes of Board of Supervisors Meeting on October 31,

12  2007) (RJN Exhibit J at p. 14).) During the same meeting, Supervisor Alioto-Pier requested a hearing

13  on alternatives to the SFERP. (*See* RJN Exhibit J at p. 21.) On January 28, 2008, the Board of

14  Supervisors held that hearing. (Minutes of San Francisco Board of Supervisors Land Use Committee

15  Meeting on January 28, 2008 (RJN Exhibit K).) Thus, the Board of Supervisors also gave the

16  plaintiffs the opportunity to speak out against the SFERP.

17          C.    ***Massachusetts v. Environmental Protection Agency***

18          In *Massachusetts v. Environmental Protection Agency*, 127 S. Ct. 1438 (2007), petitioners

19  sought review of an EPA order denying a petition asking the EPA to open a rulemaking to regulate

20  greenhouse gas emissions from new motor vehicles under the Clean Air Act. The Court found that

21  the EPA had a duty under the Clean Air Act to make a "judgment . . . whether an air pollutant causes

22  or contributes to . . . air pollution which may reasonably be anticipated to endanger public health or

23  welfare." *Id.* (internal quotation marks and alterations omitted). Because the EPA offered no

24  "reasoned explanation for its refusal" to act, the Court remanded the matter to the D.C. Circuit for

25  "further proceedings consistent with this opinion." *Id.* at 1463. The Court found, however, that it did

26  not need to address, nor did its decision actually address, "the question whether on remand EPA must

27  make an endangerment finding, or whether policy concerns can inform EPA's actions in the event

28  that it makes such a finding." *Id.*

1    The D. C. Circuit then remanded the proceeding to the EPA for "further proceedings

2    consistent with the Supreme Court's opinion." *Massachusetts v. Environmental Protection Agency,*

3    249 Fed. App'x. 829, 829 (D.C. Cir. 2007).

4    **III.    LEGAL STANDARD**

5        The City moves to dismiss certain claims for lack of subject matter jurisdiction. Fed. R. Civ.

6    P. 12(b)(1). Those grounds include lack of standing and ripeness. See *White v. Lee*, 227 F.3d 1214,

7    1242 (9th Cir. 2000) (standing); *United States v. Weber*, 451 F.3d 552, 556 (9th Cir. 2006) (ripeness).

8    Plaintiffs bear the burden of proving that this Court has jurisdiction to decide their claims. *Thornhill*

9    *Publishing Co. v. General Telephone & Electronics. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). To

10   survive a Rule 12(b)(1) motion to dismiss, plaintiffs must allege "facts demonstrating the

11   appropriateness of invoking judicial resolution of the dispute." *Verizon California Inc. v. Peevey,*

12   413 F.3d 1069, 1084 (9th Cir. 2005) (internal quotation marks omitted) (ripeness); see also *Warren v.*

13   *Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003) (similar holding for standing).

14       The City also moves to dismiss certain claims in the complaint for failure to state a claim

15   upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) should be

16   granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his

17   claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

18       While the Court should accept the well-pleaded allegations in the complaint as true in

19   deciding a motion to dismiss, the Court need not accept as true conclusory allegations of law. See

20   *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). The Court may consider documents

21   submitted by the defendants if such documents are referred to in the complaint. See *Branch v.*

22   *Tunnel*, 14 F.3d 449, 453-54 (9th Cir. 1994). This Court may also consider documents that are

23   matters of public record subject to judicial notice. See *Emrich v. Touche Ross & Co.*, 846 F.2d 1190,

24   1198 (9th Cir. 1988).

25

26

27

28

IV.   **ARGUMENT**

A.   **This Court Should Dismiss Plaintiffs' Federal Claims for Lack of Subject Matter Jurisdiction**

1.   **Plaintiffs' claims against the City based on *Massachusetts* are not ripe for review**

In the first and second claims for relief alleging violations of federal law, plaintiffs seek to have this Court order the EPA to make an endangerment finding for greenhouse gas emissions, and to enjoin the City from constructing the City project until the EPA takes such action.   (Amended Complaint at pp. 24,  ¶¶ 2, 4.)

The ripeness doctrine stems from the Article III case and controversy requirement.  *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803, 808 (2003).  "[I]njunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967).  A challenge to administrative agency action is ripe only if: (i) the question presented is "a purely legal one;" (ii) the challenged action constitutes "final agency action;" and (iii) "further factual development would [not] significantly advance [the court's] ability to deal with the legal issues presented."  *National Park Hospitality Association*, 538 U.S. at 812 (internal quotation marks omitted).

The application of those criteria to the facts at bar require this Court to find that plaintiffs' claims based on *Massachusetts* are not ripe for review.  Until there is a *final determination* from the EPA on the endangerment issue, following the remand from the Supreme Court and the D.C. Circuit (at least as it relates to motor vehicle emissions), there is no basis for this Court to require the EPA to take any action with respect to other sources of air pollution.  It is inappropriate for any court to interfere with the EPA's rulemaking process at this juncture.  Only after the EPA issues a final determination on these issues will further judicial review be appropriate.[3]

---

[3]   In any event, as the EPA points out, any future claim against the EPA challenging the EPA's failure to adopt national standards for greenhouse gas emissions must be brought in the District Court for the District of Columbia. (*See* Memorandum in Support of EPA's Motion to Dismiss, at 7 (*citing* 42 U.S.C. § 7607(b).)

Furthermore, even if this Court were to somehow require the EPA to make an endangerment finding for all greenhouse gas emissions, that would not mean that the EPA will necessarily establish air quality standards for greenhouse gas emissions that will impact the construction of the SFERP. Those matters would have to be taken up by the EPA in a separate proceeding. See *Natural Resources Defense Council v. Train*, 545 F.2d 320, 328 (2d Cir. 1976) (EPA has mandatory duty to list a substance as an air pollutant *once* it makes an endangerment finding). Further, as the Supreme Court noted, the "EPA no doubt has significant latitude as to the manner, timing, content, and coordination of its regulations with . . . other agencies." *Massachusetts*, 127 S. Ct. at 1462. This Court simply cannot take any action to prohibit the City from constructing the SFERP based on the possibility that at some unknown time in the future the EPA could make an endangerment finding for greenhouse gas emission from motor vehicles and/or from all sources and that the EPA could then regulate greenhouse gas emissions in a manner that could effect the SFERP. See *Plan For Arcadia, Inc. v. Anita Associates*, 501 F.2d 390, 392 (9th Cir. 1974) (court cannot order the EPA to promulgate "any particular regulation or set of regulations"). For these reasons, this Court should dismiss plaintiffs' first, second and third claims for relief for lack of subject matter jurisdiction.

### 2. Plaintiffs' procedural due process claim is not ripe for review

The Fourteenth Amendment to the United States Constitution protects individuals against the deprivation of liberty or property by the government without due process of law. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). A procedural due process claim under 42 U.S.C. § 1983 must allege three things: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Id.* The SFPUC's approval of the SFERP did not mean that the project would go forward. It still needs the approval of the City's Board of Supervisors. Until then, plaintiffs' procedural due process claim is not ripe for review.

### 3. Plaintiffs have not alleged a sufficient property interest

Plaintiffs allege that the value of their property will be diminished if the City is allowed to construct the SFERP. (Amended Complaint at ¶ 124.) In so doing, they rely on the following vague allegations of certain "property" interests: (i) plaintiff A. Philip Randolph Institute ("APRI") represents certain unnamed "constituents" who purportedly live nearby the proposed site of the

SFERP; (ii) certain unnamed "workers" who are purportedly "members" of APRI will "work across the street" from the proposed site; (iii) plaintiff Lynne Brown is a resident of Bayview Hunters Point; and (iv) plaintiff Regina Hollins is a resident of the Potrero neighborhood of San Francisco where the SFERP will be located. (Amended Complaint at ¶¶ 37, 39-40.)

Plaintiffs have failed to allege that any one of them *owns* any property in the vicinity of the SFERP. As a result, plaintiffs do not have standing to assert a procedural due process claim based on allegations that certain government action will diminish the value of their properties. See *Taliferro v. Darby Township Zoning Board*, 458 F.3d 181, 190 (3d Cir. 2006) (only present property owners could sufficiently allege a "constitutionally cognizable injury" as required to establish standing).

Nor can these plaintiffs assert an injury on behalf of third parties. To establish such third party standing, plaintiffs must show that: (i) they have suffered an "injury in fact" giving them a "sufficiently concrete interest" in the dispute; (ii) they have a "close relation" to the third parties; and (iii) there exists "some hindrance" to the third parties' ability to "protect" their own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991) (internal quotation marks omitted). Plaintiffs' efforts in this regard fail because they have not shown that they suffered an injury in fact, nor could they show that persons owning property near the SFERP could not seek to protect their interests. For these reasons, this Court should dismiss plaintiffs' third claim for relief for lack of subject matter jurisdiction.

**B.    The Court Should Dismiss Plaintiffs' Federal Claims Against the City for Failure To State a Claim**

**1.    Plaintiffs cannot obtain injunctive relief against the City under 28 U.S.C. § 1361 or the Administrative Procedure Act**

Plaintiffs' first claim for relief is pleaded under 28 U.S.C. § 1361 and their second claim for relief is pleaded under the Administrative Procedure Act ("APA"). Neither of these provisions can be used to obtain relief against the City.

Section 1361 grants the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. This section only establishes federal court jurisdiction to issue such relief against the United States. It does not somehow grant federal courts power to issue writs directed toward state officials. See *Clark v. Washington*, 366 F.2d 678, 681 (9th

1    Cir. 1966) ("federal courts are without power to issue writs of mandamus to direct state courts or their

2    judicial officers in the performance of their duties, including disbarment proceedings").

3         In any event, a writ would not be an appropriate means to enjoin the City from constructing

4    the SFERP based on the allegations in the Amended Complaint. Mandamus is an "extraordinary"

5    remedy and "is appropriate only when the plaintiff's claim is clear and certain and the duty of the

6    officer is *ministerial and so plainly prescribed as to be free from doubt*." *Jarrett v. Resor*, 426 F.2d

7    213, 216 (9th Cir. 1970) (emphasis added). Here, there are no allegations that the City somehow has

8    a mandatory duty to halt its plans to construct the SFERP while the EPA: (i) considers whether to

9    make an endangerment finding with respect to greenhouse gas emissions for both mobile and

10   stationary sources; and (ii) determines whether and how to regulate greenhouse gas emissions from

11   both mobile and stationary sources. The City had a mandatory duty to comply with existing laws

12   when siting the SFERP, and there is no claim here that the City has not done so.

13        Plaintiffs' claim against the City under the APA fails for similar reasons. Plaintiffs allege that

14   they are seeking to compel "agency action unlawfully withheld as well as unreasonably delayed."

15   (Amended Complaint at ¶ 102, *citing* 5 U.S.C. § 706(1).) The APA, however, defines "agency" as

16   "each authority of the Government of the United States." 5 U.S.C. § 701(b)(1). "The APA does not

17   grant federal courts jurisdiction to review actions of state or municipal agencies." *Hunter v.*

18   *Underwood*, 362 F.3d 468, 477 (8th Cir. 2004).

19        For these reasons, this Court should dismiss plaintiffs' first and second claims for relief

20   against the City for failure to state a claim.

21              **2.    Plaintiff cannot obtain injunctive relief against the city based on the EPA's**
                       **purported failure to "comply" with *Massachusetts***
22

23        In the first and second claims for relief, plaintiffs refer to the City as "indispensable" party.

24   (Amended Complaint at ¶¶ 99, 107.) They assert, therefore, that these claims are a basis for this

25   Court to enjoin the City from constructing the SFERP "until such time as the EPA defendants have

26   complied with the Supreme Court's demand." (Amended Complaint at p. 24, ¶ 4.)

27        The rules concerning indispensable parties, however, are used to determine whether a

28   complaint should be dismissed because a necessary party cannot be joined. Fed. R. Civ. P. 19(b).

1    The City can be and has been joined. Rule 19(b) cannot be used offensively as a legal ground for

2    obtaining injunctive relief against the purportedly indispensable party. See *E.E.O.C. v Peabody*

3    *Western Co.*, 400 F.3d 774, 783-84 (9th Cir. 2005) (emphasis added) (an indispensable party is one

4    "against which relief has *not formally been sought*, but is so situated that the effectiveness of the

5    relief for the present parties will be impaired if not joined"); *Beverly Hills Federal Savings and Loan*

6    *Association v. Webb*, 406 F.2d 1275, 1279 (9th Cir. 1969) (joinder is permissible "even though no

7    present party asserts a grievance against such person").

8        In neither the first or second claims for relief have plaintiffs alleged any legal basis for

9    injunctive relief against the City based on the EPA's failure to regulate greenhouse gas emissions as

10   purportedly required by the Supreme Court. For this reason, once the Court dismisses the first and

11   second claims as to the EPA, this Court should also dismiss those claims against the City. [4]

12                    **3.    Plaintiffs have failed to properly plead a procedural due process claim**

13       In their fourth claim for relief, plaintiffs seem to claim that the City made a decision to

14   approve the SFERP based on either misinformation or lack of information. The SFPUC and the

15   Board of Supervisors held numerous public meetings on the SFERP. During those meetings, the City

16   gave plaintiffs the opportunity to be heard. This satisfies the requirements of the due process clause.

17   See *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993) ("Our precedents

18   establish the general rule that individuals must receive notice and an opportunity to be heard before

19   the Government deprives them of property.")

20       **C.    The Court Should Decline Supplemental Jurisdiction**

21       Plaintiffs' third and fifth claims for relief are based on California law. This Court has

22   supplemental jurisdiction over plaintiffs' state law claims only to the extent they "are so related to

23   claims in the action within such original jurisdiction that they form part of the same case or

24   _____

25       [4]   The City acknowledges that it could be joined as a party to the plaintiffs' claims against the
     EPA to the extent that the City's joinder is necessary for plaintiffs to obtain "complete relief."

26   *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1345 (9th Cir. 1995) (internal quotation marks
     omitted). If this Court grants the EPA's motion to dismiss these claims, however, the City's presence

27   would not be necessary because this Court would have determined that the plaintiffs are not entitled
     to any relief against the only party that could be found to have violated these federal statutes.

28

1    controversy." 28 U.S.C. § 1367(a).  The parties have moved to dismiss all of plaintiffs' federal

2    claims for lack of subject matter jurisdiction.  If this Court grants those motions, the Court must

3    dismiss plaintiffs' supplemental claims under § 1367(a).  *Herman Family Revocable Trust v. Teddy*

4    *Bear*, 254 F.3d 802, 805 (9th Cir. 2001).

5            Even if any of plaintiffs' claims survive the jurisdictional challenges, federal law grants the

6    court discretion to refuse to exercise jurisdiction for a number of reasons, including that: (i) "the

7    claim raises a novel or complex issue of state law" and (ii) "the district court has dismissed all claims

8    over which it has original jurisdiction."  *Id.*  28 U.S.C. § 1367(c)(1), (3).  A court's decision to

9    exercise that discretion should be "informed by whether remanding the pendent state claims comports

10   with the underlying objective of most sensibly accommodating the values of economy, convenience,

11   fairness, and comity."  *Executive Software North America, Inc. v. United States District Court*, 24

12   F.3d 1545, 1557 (9th Cir. 1994) (internal quotation marks and alterations omitted).

13           If this Court grants the parties' motions to dismiss plaintiffs' federal claims for failure to state

14   a claim, this Court should decline to exercise its discretionary supplemental jurisdiction over

15   plaintiffs' state law claims under § 1367(c)(3).  *Herman Family Revocable Trust*, 254 F.3d  at 806.

16   Judicial economy is best served by relegating those claims to state court where they belong.  In

17   addition, as discussed below, even if any of plaintiffs' federal claim were to survive the parties'

18   motions to dismiss, this Court should decline supplemental jurisdiction over plaintiffs' state law

19   claims under § 1367(c)(1) because they concern novel and complex issues.

20       **D.    The Court Should Dismiss Plaintiffs' Nuisance Claim Against the City on**
              **Justiciability and Ripeness Grounds**

21           In their third claim for relief, plaintiffs allege that greenhouse gas emissions from the SFERP

22   pose a threat to plaintiffs' health, and the health of the general public, and therefore would be a public

23   nuisance.  Two courts have considered similar claims and dismissed them as non-justiciable.  See

24   *People of State of California* v. *General Motors Corp.*, 2007 WL 2726871 (N.D. Cal., Sept. 17,

25   2007); *Connecticut v. American Electric Power Co.*, 406 F. Supp 2d 265 (S.D.N.Y. 2005).

26           In *General Motors*, plaintiff sought damages against various automakers for "creating, and

27   contributing to, an alleged public nuisance – global warming."  2007 WL 2726781, at *1.  In

28

1    dismissing plaintiff's federal common law nuisance claim, the court held that the "threshold issue"

2    was whether the "complaint raises nonjusticiable political questions that are beyond the limits of this

3    Court's jurisdiction." *Id.* at *5. In finding that it did, the court held that the "authority and standards

4    for carbon dioxide emissions lie with the political branches of government, and not with the courts."

5    *Id.* at *10. The court held that *Massachusetts* lent support to that determination because the Supreme

6    Court held that the federal government and EPA had the authority to regulate greenhouse gas

7    emissions from new motor vehicles. *Id.* at *11-12.

8            In *Connecticut*, plaintiffs filed federal common law public nuisance claims against certain

9    large electric utilities in an effort to abate their contributions to global warming. *Connecticut*, 406 F.

10   Supp. 2d at 268. The court noted that a case is only justiciable if "'the duty asserted can be judicially

11   identified and its breach judicially determined, and [if] protection for the right asserted can be

12   judicially molded.'" *Id.* at 271 (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)). The court held

13   that air pollution cases are particularly difficult for courts because they require "strik[ing] a 'balance

14   between interests seeking strict schemes to reduce air pollution rapidly to eliminate its social costs

15   and interests advancing an economic concern that strict schemes will retard industrial development

16   with attendant social costs.'" 406 F. Supp. 2d at 272 (alteration omitted) (quoting *Chevron U.S.A.,*

17   *Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 847 (1984)). The court therefore

18   rejected plaintiffs' arguments that their claim was a "simple nuisance claim" and found instead that

19   the claim was non-justiciable. 406 F. Supp. 2d at 272-74. This Court should follow the reasoning of

20   those decisions and dismiss plaintiffs' nuisance claim on justiciability grounds.

21           Plaintiffs' third claim for relief also fails because it is not ripe for review. Plaintiffs have

22   improperly asked this Court to enjoin the City from constructing the SFERP until the EPA

23   promulgates new rules that would apply to stationary sources. (Amended Complaint at p. 25, ¶ 6.)

24   Furthermore, the City's Board of Supervisors has yet to approve the SFERP. As stated above, given

25   these facts this claim is not ripe for review. (*See* pp. 8-9, *infra*.)

26

27

28

E.    **This Court Should Dismiss Plaintiffs' State Law Claims Against the City for Failure to State a Claim**

1.    **Plaintiffs have failed to state a claim for a public nuisance**

In their third claim for relief, plaintiffs allege that they will be "specially injured" if the City is allowed to construct the SFERP because ground level greenhouse gases "such as ozone" cause respiratory problems to those "directly exposed to the degree that APRI's constituent members will be exposed." (Amended Complaint at ¶¶ 113-14.)

A nuisance under California law can be "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." Cal. Civil Code § 3479. A *public* nuisance under California law is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons." Cal. Civ. Code § 3480. Under California law, a "private person may maintain an action for a public nuisance, if it is *specifically injurious to himself*, but not otherwise." Cal. Civ. Code § 3493 (emphasis added); see *Brown v. Petrolane, Inc.*, 102 Cal. App. 3d 720, 725-26 (1980) (statute is based on common law rule that a public nuisance is dependent "upon an interference with the rights of the community at large"). Furthermore, not every nuisance is actionable under California law. "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Cal. Civ. Code § 3482.

The burden of establishing a public nuisance is considerable. To be enjoinable as a public nuisance the claimed "interference must be both substantial and unreasonable." *People ex rel. Gallo v. Acuna*, 14 Cal. 4th 1090, 1105 (1997). A public nuisance is substantial if it causes "significant harm." *Id.* (internal quotation marks omitted). It is unreasonable if its "social utility" is outweighed by the "gravity of the harm it inflicts." *Id.* A court must look at both of these requirements for a public nuisance claim objectively. A court cannot find a claimed interference to be significant if "normal persons in that locality would not be substantially annoyed or disturbed by the situation." *Id.* (internal quotation marks omitted). A court cannot find a claimed interference to be unreasonable unless "reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable." *Id.* (internal quotation marks omitted).

Here, plaintiffs' allegations that potential ground level ozone emissions from the SFERP are a public nuisance are specious. Both BAAQMD and the CEC examined whether the SFERP would be consistent with local ozone standards. In issuing the FDOC, BAAQMD noted that the "plant will not contribute significantly to ozone." (RJN Exhibit C at p. 15.) In issuing the AFC, the CEC found that while the SFERP could "contribute to the existing violations of the ozone standards . . . the required mitigation (in the form of emission reduction credits) will mitigate the project's impact to a level that is less than significant." (RJN Exhibit B at p. 111, § 7.) As a result, plaintiffs cannot show that a reasonable person would consider any potential interference with plaintiffs' health or property from potential ozone emissions from the SFERP to be both substantial and unreasonable. Moreover, that the BAAQMD and CEC permits authorized the City to construct the SFERP bars plaintiffs from seeking relief against the City for a public nuisance. See *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 888 (9th Cir. 2001) (no claim for nuisance against government defendants when claimed pollution was allowed by state permit). For these reasons, this Court should dismiss plaintiffs' third claim for relief for failure to state a claim.

## 2. Plaintiffs have failed to state a claim for a writ of mandamus

In their fifth claim for relief, plaintiffs seek a writ of mandamus against the City due to the City's alleged failure to apply the City's "precautionary principle" to the SFERP. (Amended Complaint at ¶¶ 138-42.)

The "precautionary principle" is a policy established by the Board of Supervisors that "requires" City agencies to conduct a "thorough exploration and a careful analysis of a wide range of alternatives" and to select "the alternative that presents the least potential threat to human health and the City's natural systems." (S.F. Environment Code § 101) (RJN Exhibit L).) The evidence before this Court shows that the City fully complied with the precautionary principle by considering alternatives to the SFERP. For example, the CEC found that "the evidence of record . . . establishes that no feasible alternatives to the project, as described during these proceedings, exist which would reduce or eliminate any significant environmental impacts of the mitigated project." (CEC Order (RJN Exhibit B at p. 2).) Furthermore, the Board of Supervisors held a hearing for this purpose

1    alone. (*See* RJN Exhibit K.) For this reason alone, this Court should dismiss plaintiffs' fifth claim

2    for relief.

3    Nonetheless, plaintiffs' allegations that the City failed to comply with the precautionary

4    principle do not state a claim. In establishing the precautionary principle, the Board of Supervisors

5    was careful to ensure that a claimed lack of compliance with this policy would not be cognizable in

6    court. "This ordinance does not impose specific duties upon any City employee or official to take

7    specific actions." (S.F. Environment Code § 104) (RJN Exhibit I).) More specifically, the Board of

8    Supervisors included language to ensure that the precautionary principle would not be a legal basis

9    for seeking a writ. " [N]or may this ordinance provide any basis for any other judicial relief including,

10    but not limited to a writ of mandamus or an injunction." (*Id.*)

11    It is clear under California law, therefore, that plaintiffs cannot obtain a writ of mandamus

12    against the City based on the precautionary principle. There are two requirements for issuance of a

13    writ of mandamus under California law: "(1) the respondent has a clear, present, and usually

14    ministerial duty to act, and (2) the petitioner has a clear, present, and beneficial right to performance

15    of that duty." *State Board of Education v. Honig*, 13 Cal. App. 4th 720, 741 (1993); see Cal. Code of

16    Civ. P. § 1085(a). A "ministerial duty" is one generally imposed upon a person in public office who

17    is "obligated to perform in a prescribed manner required by law when a given state of facts exists."

18    *Alliance for a Better Downtown Millbrae v. Wade*, 108 Cal. App. 4th 123, 129 (2003). The writ "will

19    not issue to compel action unless it is shown the duty to do the thing asked for is plain and unmixed

20    with discretionary power or the exercise of judgment." *Unnamed Physician v. Board of Trustees of*

21    *Saint Agnes*, 93 Cal. App. 4th 607, 618 (2001). "Where a statute leaves room for discretion, a

22    challenger must show the official acted arbitrarily, beyond the bounds of reason or in derogation of

23    the applicable legal standards." *Excelsior College v. California Board of Registered Nursing*, 136

24    Cal. App. 4th 1218, 1239 (2006).

25    Plaintiffs have failed to properly allege any right to mandamus relief because the language of

26    the precautionary principle leaves no room for doubt that whether to apply the principle to the SFERP

27    was discretionary. For this reason, plaintiffs' allegations that they have a "clear, present, and

28

1    beneficial right" to the City's application of the precautionary principle to the SFERP, even if true, do

2    not state a claim upon which relief can be granted against the City.

3    **V.    CONCLUSION**

4        Based on the foregoing, this Court should dismiss plaintiffs' complaint in its entirety, along

5    with granting the City such other, further and different relief as this Court deems just and proper.

6    Dated:  March 3, 2008                                   DENNIS J. HERRERA
                                                             City Attorney
7                                                            OWEN J. CLEMENTS
                                                             Chief of Special Litigation
8                                                            THERESA L. MUELLER
                                                             Chief Energy and Telecommunications Deputy
9                                                            WILLIAM K. SANDERS
                                                             Deputy City Attorney
10

11                                                           By:_____/s/_____
12                                                                 WILLIAM K. SANDERS
                                                                   Deputy City Attorney
13
                                                             Attorneys for Defendant
14                                                           CITY AND COUNTY OF SAN FRANCISCO

15

16

17

18

19

20

21

22

23

24

25

26

27

28