BRIAN C. BUNGER, ESQ. (SB#142001)
District Counsel
ALEXANDER G. CROCKETT, ESQ. (SB#193910)
Assistant Counsel
BAY AREA AIR QUALITY MANAGEMENT DISTRICT
939 Ellis Street
San Francisco, CA  94109
Telephone: (415) 749-4920
Facsimile:  (415) 749-5103
Email: acrockett@baaqmd.gov

Counsel for DEFENDANT
THE BAY AREA AIR QUALITY MANAGEMENT DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | CASE NO. C-07-4936 CRB<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE FIRST AMENDED COMPLAINT AS AGAINST DEFENDANT BAY AREA AIR QUALITY MANAGEMENT DISTRICT,** and in addition, or in the alternative, **TO DISMISS FIRST AMENDED COMPLAINT AS AGAINST DEFENDANT BAY AREA AIR QUALITY MANAGEMENT DISTRICT; and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   April 11, 2008<br>Time:   10:00 a.m.<br>Place:  Courtroom 8, 19th Floor<br>Judge:  Hon. Charles R. Breyer |

DEFENDANT Bay Area Air Quality Management District hereby submits this NOTICE OF

MOTION and MOTION TO STRIKE THE FIRST AMENDED COMPLAINT AS AGAINST

DEFENDANT BAY AREA AIR QUALITY MANAGEMENT DISTRICT, and in addition, or in the

alternative, TO DISMISS THE FIRST AMENDED COMPLAINT AS AGAINST DEFENDANT BAY

AREA AIR QUALITY MANAGEMENT DISTRICT; and MEMORANDUM OF POINTS AND

AUTHORITIES IN SUPPORT THEREOF.

*///*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................ v

NOTICE OF MOTION......................................................................................................... 1

RELIEF SOUGHT............................................................................................................... 1

STATEMENT OF ISSUES ................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.      FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

II.     LEGAL STANDARDS FOR STRIKING AND DISMISSING COMPLAINTS ........................ 7

        A.      Legal Standard For Motion To Strike Under Rule 12(f) .................................... 7

        B.      Legal Standard For Motion To Dismiss Under Rule 12(b)(6)............................ 7

III.    THE COURT SHOULD STRIKE THE FIRST AMENDED COMPLAINT AS
        AGAINST THE AIR DISTRICT BECAUSE IT PRESENTS NO COHERENT LEGAL
        ARGUMENT TO SUPPORT INJUNCTIVE RELIEF ................................................... 8

        A.      There Is No Coherent Legal Argument To Support Injunctive Relief Against The
                Air District Based Merely On Purported "Indispensable Party" Status ............................ 9

        B.      There Is No Coherent Legal Argument For Injunctive Relief Against The Air
                District On Any Of The Legal Theories Asserted In The First Three Claims For
                Relief ............................................................................................................. 10

                1.      There Is No Coherent Legal Argument For Mandamus Relief Against A
                        State Agency That Is Admittedly Proceeding In Compliance With Law ............ 10

                2.      There Is No Coherent Legal Argument That The APA Can Support
                        Injunctive Relief Against A State Agency That Is Admittedly Proceeding
                        In Compliance With Law ................................................................................ 11

                3.      There Is No Coherent Legal Argument Under California Nuisance Law
                        For An Injunction Against Issuance Of A Permit That Would Be In Full
                        Compliance With All Legal Requirements............................................................ 12

        C.      Plaintiffs Have No Reasonable Claim For Irreparable Harm From A Potential
                Failure To Enforce New Regulations That May Be Adopted In The Future.................. 13

        D.      Striking The Air District From The First Amended Complaint Would Eliminate
                Spurious Issues, Streamline The Action, and Conserve Judicial Resources .................. 14

IV.     THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT AS
        AGAINST THE AIR DISTRICT FOR FAILURE TO STATE A CLAIM UPON WHICH
        RELIEF CAN BE GRANTED ............................................................................... 15

V.      CONCLUSION.................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Federal Cases**

*American Express Co. v. United States*, 4 Ct. Cust. 146 (Ct. Cust. App. 1913)....................................8

*Atraqchi v. Williams*, 220 F.R.D. 1 (D.D.C. 2004)...........................................................14

*Balistreri v. Pacific Police Dep't*, 901 F.2d 696 (9th Cir. 1990).....................................7, 15

*Bamberger v. Schoolfield*, 160 U.S. 149, 16 S. Ct. 225 (1895) ...........................................8

*Boston v. United States Dept. of Interior*, 424 F. Supp. 259 (E.D. Mo. 1976)...........................10

*EEOC v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005),
        *cert. denied*, 546 U.S. 1150 (2006)..........................................................10

*Fantasy Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*
        510 U.S. 517, 114 S. Ct. 1023 (1994)..................................................2, 7, 14

*Gros Ventre Tribe v. United States*, 469 F.3d 801 (9th Cir. 2006),
        *cert. denied*, 128 S. Ct. 176 (2007) .......................................................11

*Hunter v. Underwood*, 362 F.3d 468 (8th Cir. 2004) ...................................................11

*In re Wal-Mart Stores, Inc. Wage & Hour Litigation*,
        505 F. Supp. 2d 609 (N.D. Cal. 2007) ...................................................14, 15

*In re Wolenski*, 324 F.2d 309 (3d Cir. 1963) ........................................................10

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......................................................7

*Lowry v. Barnhart*, 329 F.3d 1019 (9th Cir. 2003)...................................................11

*Massachusetts v. EPA*, __ U.S. __, 127 S. Ct. 1438 (2007) ..........................................5, 9

*Moore v. City of Costa Mesa*, 886 F.2d 260 (9th Cir. 1989) .........................................15

*Ness Investment Corp. v. United States Dep't of Agriculture*,
        512 F.2d 706 (9th Cir. 1975) ...............................................................11

*Northern Cheyenne Tribe v. Norton*, 503 F.3d 836 (9th Cir. 2007) ...................................13

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000)...............................................7

*Papasan v. Allain*, 478 U.S. 265, 106 S. Ct. 2932 (1986) ............................................7

*Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 29 S. Ct. 67 (1908).................................8

*Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.* 259 F. Supp. 2d 992 (N.D. Cal. 2003) .....................14

*Robinson v. Illinois*, 752 F. Supp. 248 (N.D. Ill. 1990)............................................10

*Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983) ..................................7

*Smith v. Grimm*, 534 F.2d 1346 (9th Cir. 1976) .....................................................11

ii

*Smith v. Sprague*, 143 F.2d 647 (8th Cir. 1944) ................................................................ 8

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987)............................................... 7

*Wilkerson v. Butler*, 229 F.R.D. 166 (E.D. Cal. 2005) ..................................................... 14

*Wynn v. NBC*, 234 F. Supp. 2d. 1067 (C.D. Cal. 2002)..................................................... 15

*Zepeda v. United States Immigration and Naturalization Serv.*, 753 F.2d 719 (9th Cir. 1983) .......... 13

**Federal Statutes**

28 U.S.C. § 1361 ................................................................................................................ 10

5 U.S.C. § 701(b)(1) ......................................................................................................... 11

5 U.S.C. § 706 ................................................................................................................... 11

**Federal Court Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................... 7

Fed. R. Civ. P. 12(f) .......................................................................................................... 7

Fed. R. Civ. P. 19(b) ......................................................................................................... 9

**California Cases**

*Harding v. State of California*, 159 Cal. App. 3d 359 (Cal. Ct. App. 1984) ...................... 13

*Jones v. Union Pacific R.R. Co.*, 79 Cal. App.4th 1053 (Cal. Ct. App. 2000) ................... 13

*Pekarek v. City of San Diego*, 30 Cal. App. 4th 909 (Cal. Ct. App. 1994)........................ 12

*Varjabedian v. City of Madera*, 20 Cal.3d 285 (1977) ................................................... 12

**California Statutes**

Cal. Civ. Code § 3482........................................................................................................ 12

Cal. Health & Safety Code § 42300.................................................................................. 12

Cal. Health & Safety Code §§ 40200-40276 .................................................................... 10

Cal. Health & Safety Code §§ 42402-42402.3 .................................................................. 4

Cal. Pub. Res. Code § 25500 ............................................................................................. 2

Cal. Pub. Res. Code § 25531 ............................................................................................. 3

Cal. Pub. Res. Code § 25531(a) ........................................................................................ 2

Cal. Pub. Res. Code § 25531(c)..................................................................................... 2, 6

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Air **District Regulations**</u>

Air District Regulation 2-3-201 ........................................................................................................... 3

Air District Regulation 2-3-405 ........................................................................................................... 4

Air District Regulation 2-6-214 ........................................................................................................... 5

iv

## **SUMMARY OF ARGUMENT**

Plaintiffs have conceded that they have "no remedy under the Clean Air Act" to challenge the San Francisco Electric Reliability Project ("SFERP" or "Project") on the basis of greenhouse gas emissions. Plaintiffs' Opposition to EPA's Motion to Dismiss, at p. 1 ll. 9-10. Yet Plaintiffs nevertheless ask this Court to enjoin the Air District from issuing an "Authority to Construct" permit for the Project based solely on the Project's greenhouse gas emissions. They have already challenged the Project on every other argument available to them, including on other air quality-related issues, and have been rejected at every turn. Now, at the 11th hour in the permitting process, they seek an injunction against issuance of the final, ministerial approval needed for the project—the Authority to Construct— even though they concede that issuance would not violate any law, regulation or other legal requirement. *See* First Amend. Compl., ¶ 72. Their request is based solely on the emission of greenhouse gases, a matter over which they concede the law affords them no remedy.

Plaintiffs' theory underlying this remarkable request is that Environmental Protection Agency ("EPA") will have to respond to the Petition For Rulemaking seeking regulations on greenhouse gases that was the subject of the Supreme Court's recent decision in *Massachusetts v. EPA*, __ U.S. __, 127 S. Ct. 1438 (2007); that when EPA responds to the Petition for Rulemaking, it will likely adopt new regulations that will apply to sources of greenhouse gas emissions; and that such future regulations may apply to the SFERP and require some limitation on greenhouse gas emissions beyond what the applicable regulations require now. But there can be no reasonable legal argument that this Court should issue an injunction now to enforce some hypothetical future legal standard. Courts enforce the laws as they exist on the books today, not as a plaintiff envisions they may look in the future. And there is nothing in the Clean Air Act, or in the Supreme Court's reasoning in *Massachusetts v. EPA*, that could even arguably bar issuance of a permit for a facility while EPA is considering whether to adopt new regulations that may apply to the facility in the future, as is the case here.

The Court should therefore strike Plaintiffs' attempt to include the Air District as a defendant in this lawsuit pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Plaintiffs' purported claims against the Air District are immaterial and impertinent to any viable legal claims that this lawsuit may present, as there can be no "coherent legal argument" for relief against the Air District where it has not

violated any provision of law.  *See Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517, 114 S. Ct. 1023 (1994).  The theories on which Plaintiffs seek to proceed are patently lacking in coherent legal argument, as explained in detail herein, because:

- Conceding that the Air District is not violating any legal requirement, Plaintiffs seek injunctive relief on the grounds that the Air District is an "indispensable party" to their claims against the other defendants.  But there is no way that mere status as a necessary or indispensable party by itself (to the extent that the Air District even is such a party here) can create a cause of action, without some other basis in law.

- Plaintiffs seek mandamus relief against the Air District under 28 U.S.C. Section 1361.  But that statute on its face applies only to federal agencies, not to a regional agency such as the Air District; and it can apply only where there has been some violation of an applicable legal duty by the agency, which Plaintiffs concede is not the case with the Air District here.

- Plaintiffs also seek injunctive relief under the Administrative Procedure Act, 5 U.S.C. Section 706.  But that statute also applies on its face only to federal agencies, and only where there has been some violation of an applicable legal requirement.

- Plaintiffs also seek injunctive relief under California public nuisance law.  But Section 3482 of the California Civil Code makes it clear that where a public agency is authorized to issue permits for an activity, and there is no claim that the agency is doing so in an improper manner, the issuance of a permit cannot constitute a public nuisance.  And in any event, enjoining the Air District from even issuing the permit would be overbroad, as any public nuisance from operation of the facility can be fully addressed with an injunction narrowly tailored to the City and County of San Francisco, the owner and operator of the project.

- Finally, Plaintiffs claim that an injunction against the Air District is required to prevent irreparable harm from Plaintiffs being denied their rights to the protections they will be entitled to under the new regulations they contend are forthcoming in the wake of *Massachusetts v. EPA*.  But Plaintiffs have not made any showing that the Air District or the EPA will fail to implement and enforce those regulations—and afford Plaintiffs the protection they will be entitled to—as soon as those regulations take effect.

These points are just the beginning of a long list of defects in Plaintiffs' claims against the Air District, both procedurally and on the merits, that the Air District is prepared to litigate in full if the First Amended Complaint is allowed to go forward against it. The Air District respectfully requests, however, that the Court strike the claims against it to alleviate the burden of having to do so, which would further Rule 12(f)'s purposes of streamlining the ultimate resolution of this action and limiting the expenditure of time and resources involved. *See Fantasy, Inc.*, 984 F.2d at 1527-28

Striking such claims is especially appropriate where they are founded simply on Plaintiffs' views of a preferred public policy and not on any legal principle. This is clearly the case here, as the genesis of the lawsuit is Plaintiffs' contention that San Francisco "needs to replace its 2004 San Francisco Action Plan [which calls for building the Project] with a 2008 San Francisco Action Plan that incorporates the wide-spread understanding that cities should not be building fossil fuel-burning power plants in 2008 . . . ." First Amend. Compl., ¶ 51; *see generally id.*, ¶¶ 48-59. The Air District takes no position on what is the best way for San Francisco to meet its power needs, which is a matter best left to the City's elected government. But whatever the best policy may be, the Air District strongly contends that for its part, it has complied with all applicable laws and regulations in evaluating the Project, and that it should not be enjoined from performing its statutorily mandated permitting functions based simply on Plaintiffs' policy views. *See In re Wal-Mart Stores, Inc. Wage & Hour Litigation*, 505 F. Supp. 2d 609, 621 (N.D. Cal. 2007) (striking claim that Court should award punitive damages on policy grounds where such damages are not provided for by law, as the Court must follow the law and is "not free to substitute its judgment as to the better policy").

The Air District therefore respectfully requests that the First Amended Complaint be stricken as to it under Rule 12(f) in order to relieve the agency of the burden of having to respond fully to Plaintiffs' spurious claims against it. At the very least, the Air District respectfully requests that the First Amended Complaint be dismissed as to it under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on April 11, 2008, at 10:00 a.m., or as soon thereafter as the

4 matter may be heard, in Courtroom 8 of the above-captioned court, located at 450 Golden Gate Avenue,

5 San Francisco, California, 94102, on the 19th floor, Defendant the Bay Area Air Quality Management

6 District ("Air District") shall and hereby does move the Court for an Order striking the First Amended

7 Complaint as against the Air District pursuant to Rule 12(f) of the Federal Rules of Civil Procedure

8 because including the Air District as a defendant is redundant, immaterial, and impertinent; and in

9 addition (or in the alternative) for an Order dismissing the Complaint as to the Air District pursuant to

10 Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can

11 be granted.  This motion shall be and is based on this notice, the following memorandum of points and

12 authorities, the accompanying Request To Take Judicial Notice, the arguments of counsel at the hearing,

13 and any other material properly before the Court.

14

**RELIEF SOUGHT**

15

By this Motion, the Air District seeks an Order striking the First Amended Complaint as to the

16 Air District pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and in particular by striking

17 all references to the Air District in the First Amended Complaint (including without limitation

18 Paragraphs 3 and 6 of its Prayer For Relief) and dismissing the Air District as a defendant.  In addition,

19 or in the alternative, the Air District seeks an Order dismissing the First Amended Complaint as to the

20 Air District pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and dismissing the Air

21 District as a defendant in this action.

22

**STATEMENT OF ISSUES**

23

1.    Is inclusion of the Air District as a defendant in the First Amended Complaint immaterial

24 and impertinent so as to justify striking the Air District from the First Amended Complaint pursuant to

25 Rule 12(f) of the Federal Rules of Civil Procedure?

26

2.    Does the First Amended Complaint state a claim against the Air District upon which

27 injunctive relief can be granted sufficient to survive a Motion to Dismiss pursuant to Rule 12(b)(6) of

28 the Federal Rules of Civil Procedure?

1

## ARGUMENT

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit concerns the San Francisco Electric Reliability project ("SFERP" or "Project"), a 146 megawatt ("MW") natural-gas fired power plant that the City and County of San Francisco ("City") has proposed to build to help meet its needs for electric power. *See* First Amend. Compl., ¶¶ 2, 48-50. The Project has undergone a thorough and comprehensive licensing process under the auspices of the California Energy Commission, which is the exclusive permitting authority under California law for new thermal power plants over 50 MW pursuant to California's Warren-Alquist State Energy Resources Conservation and Development Act ("Warren-Alquist Act"), California Public Resources Code sections 25000 *et seq.* The Warren-Alquist act provides that the CEC's licensing authority supersedes all other local and state permitting authority, and that the CEC's license:

> shall be in lieu of any permit, certificate, or similar document required by any state, local or regional agency, or federal agency to the extent permitted by federal law . . . and shall supersede any applicable statute, ordinance, or regulation of any state, local or regional agency, or federal agency to the extent permitted by federal law.

Cal. Pub. Res. Code § 25500. The Warren-Alquist Act further provides that the CEC's license can be reviewed only in the California Supreme Court, *see* Cal. Pub. Res. Code § 25531(a), and that no other California court has jurisdiction "to hear or determine any case or controversy concerning any matter which was, or could have been, determined in a proceeding before the commission, or to stop or delay the construction or operation of any thermal powerplant . . . ," *see id.* § 25531(c). The CEC approved a certificate to construct and operate the Project under the Warren-Alquist Act on October 3, 2006. *See* Air District Request For Judicial Notice ("RJN"), Exh. 4, at pp. 1-4.[1]

The Air District was an active participant in the CEC's licensing process with respect to air

---

[1] The Air District submits the accompanying Request for Judicial Notice to provide the Court with some background documents that place Plaintiffs' claims here in context and to help the Court understand the complex, overlapping regulatory schemes involved. Strictly speaking, however, the District's motion does not rely on these judicially noticeable matters, and the Court has grounds to strike and/or dismiss the First Amended Complaint on its face, as argued herein. But to the extent the Court finds it necessary to rely on them, it is proper to consider judicially noticeable materials, in addition to the complaint itself, when deciding a motion to strike or motion to dismiss. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517, 114 S. Ct. 1023 (1994);

2

quality issues, as provided for in the regulatory scheme set forth in CEC and Air District regulations.[2]
The Air District prepared a "Determination of Compliance" for the CEC pursuant to Air District
Regulation 2-3-201, which assessed the air quality impacts of the Project. *See* First Amend. Compl.,
¶ 72; Final Determination of Compliance, RJN Exh. 1, Attachment (beginning at p. 12 of Exh. 1[3]). The
Determination of Compliance found that the Project as proposed would comply with all applicable Air
District regulations and other requirements concerning air quality, and proposed conditions relating to
air quality for consideration by the CEC to ensure that compliance is achieved. *See id*. Plaintiffs
Californians For Renewable Energy ("CARE") and Lynne Brown (in his capacity as CARE's Vice
President) appealed the Determination of Compliance to the Air District's Hearing Board. *See* RJN
Exh. 1. The Hearing Board denied the appeal on April 20, 2006. *See* RJN Exh. 3.

CEC staff then used the Air District's Determination of Compliance as a basis for its review of
air quality issues. The Energy Commission approved the project on October 3, 2006, and in doing so
included a number of conditions in its certification relating to air quality, based on the proposed
conditions in the Air District's Determination of Compliance. *See* RJN Exh. 4, pp. 112-136. Plaintiffs
CARE and Lynne Brown then appealed the Energy Commission's approval to the California Supreme
Court, which has original jurisdiction over such matters under the Warren Alquist Act (*see* Cal. Pub.
Res. Code § 25531). *See* RJN Exh. 5. They named the Air District as a Respondent in their Petition, but
as they have done in this case, they did not allege that the Air District had violated any statute or
regulation nor explain how the Air District could properly be a party in an appeal of the Energy
Commission's licensing decision. They apparently named the Air District as a Respondent because
"CARE believes that the AIR [sic] District's permitting staff is involved in a conspiracy with the power
plant Applicant CCSF, and the CEC, to deprive CARE and its members of their civil and constitutional

---

[2] The Air District permitting regulations most relevant to this case are Regulations 2-1 (General Permit
Requirements), 2-2 (New Source Review), 2-3 (Power Plants), and 2-6 (Major Facility Review). Copies
of these regulations are included as RJN Exhs. 7-10, and are also available on the Air District's website
at http://www.baaqmd.gov/dst/regulations/index.htm. The CEC's regulations governing power plant
applications for certification are set forth in 20 Cal. Code Regs. Sections 1741-1770. Of particular
relevance is Section 1744.5, which governs the Commission's use of the Air District's Determination of
Compliance document in its environmental review.

[3] The District made some minor, non-substantive changes in a revised Final Determination of
Compliance, dated January 19, 2006. *See* RJN, Exh. 2.

1    rights to a fair hearing on this matter . . . ." *Id.* at p. 22, ¶ 46.  The California Supreme Court summarily

2    denied review in a one-sentence order.  *See* RJN Exh. 6.

3              The final step in the regulatory process that still needs to take place is for the Air District to

4    incorporate the air quality conditions of certification into an Air District "Authority to Construct"

5    permit.  *See* Air District Regulation 2-3-405.  This final step is necessary because the Air District

6    plays the lead role in enforcing the air quality conditions for CEC-licensed power plants in the Bay

7    Area, but the Air District's power to enforce permit conditions under the California Health & Safety

8    code extends only to Air District or state air board permits, not to conditions in CEC licenses.  *See*

9    Cal. Health & Safety Code §§ 42402-42402.3.  By including the air quality conditions in an Air

10   District-issued permit, the Air District can enforce them in the California courts.  This final step of

11   incorporating the conditions into an Authority To Construct is a limited, ministerial action consisting

12   simply of making a final check to ensure that all applicable air quality conditions were correctly

13   included in the CEC's certification.  The Air District has no discretion at this stage to revisit the

14   conditions of certification under either the Warren-Alquist Act or Air District regulations, which

15   require that if "the Certificate contains all applicable conditions . . . the [Air District] *shall* grant an

16   authority to construct."  *See* Air District Regulation 2-3-405 (emphasis added).  It is at this stage in

17   the process that Plaintiffs come to this Court with their lawsuit.

18             Plaintiffs do not allege that the Air District or the CEC erred in following this permitting

19   process for the San Francisco Electric Reliability Project or in establishing the conditions under

20   which the Project will be permitted, or that the Project will violate any regulation or other legal

21   requirement.  Nor can they legitimately claim to do so, as they have already exhausted all avenues for

22   appealing the Air District's Determination of Compliance and the CEC's certification for the project

23   and have been rejected at every turn.  Similarly, Plaintiffs do not allege that the Air District will

24   violate any provision of law if takes the final, ministerial step of incorporating the Project's permit

25   conditions into an Air District-issued Authority to Construct.  Indeed, Plaintiffs concede that the Air

26   District is legally authorized to do so, explaining in Paragraph 72 of the First Amended Complaint

27   that "[h]aving issued Final Determination of Compliance in regard to the SFERP plant on

28   approximately February 25, 2006, BAAQMD is able to issue 'Authority to Construct' the SFERP

4

plant under BAAQMD Regulation 2, Rule 3, Section 301."

Rather, Plaintiffs ask this Court to enjoin the Air District from issuing the Authority To Construct on the grounds that EPA may adopt regulations regarding greenhouse gases in response to the Supreme Court's decision in *Massachusetts v. EPA*, __ U.S. __, 127 S. Ct. 1438 (2007), which requires EPA to consider a Petition for Rulemaking made by the plaintiffs in that case.  *See* 127 S. Ct. at 1449, 1462-63.  Plaintiffs contend that EPA may well adopt greenhouse gas regulations in response to the Petition, and that such regulations may apply to greenhouse gas emissions from power plants such as the SFERP.  Specifically, Plaintiffs claim that EPA may adopt regulations making facilities such as the SFERP subject to "Prevention of Significant Deterioration" ("PSD") permitting requirements.[4]  *See* First Amend. Compl., ¶ 70.  Notably, Plaintiffs concede that the SFERP does not require a PSD permit under the applicable PSD regulations as they exist today.  *See* First Amend. Compl., ¶ 21 ("The BAAQMD has not required CCSF to apply for a PSD permit . . . because CCSF's SFERP plant does not emit more than 100 tons per year of an air pollutant regulated today.").  Plaintiffs' argument is based solely on hypothetical regulations that EPA may adopt in the future that Plaintiffs believe may establish PSD permit requirements for power plants that emit more than 100 tons per year of greenhouse gases.

The District submits that there are a number of reasons why the claims against them—Plaintiffs' first three Claims For Relief—are defective.  <u>*First*</u>, Plaintiffs face serious Article III standing problems in that they have not alleged that they would suffer a particularized injury from an admittedly global problem that generally affects all members of the public in the same manner.  Indeed, they explicitly claim to be suing on behalf of "the general public."  First Amend. Compl., Caption.  In this respect this lawsuit is very different from the *Massachusetts* case, where the Commonwealth of Massachusetts

---

[4] Plaintiffs also assert that EPA may adopt new regulations that will require the SFERP to obtain a Major Facility Review Permit under District Regulation 2, Rule 6.  *See* First Amend. Compl. ¶ 70.  But the SFERP is already required to obtain a Major Facility Review Permit based on existing regulations, and that requirement has been incorporated into the facility's Conditions of Certification.  *See* Determination of Compliance Condition No. 39, RJN Exh. 1, Attachment, p. 28; CEC Condition of Certification No. AQ 39; RJN Exh. 4, p. 135.  Unlike the District's Authority To Construct, the Major Facility Review Permit is not a pre-construction permit and is not required before the City can begin building the facility.  The Major Facility Review Permit is an <u>operating</u> permit and must be obtained before commencing operation, but not before beginning construction.  *See* Air District Reg. 2-6-214.

alleged a particularized injury to coastal territory that it owns, which could be impacted by rising sea levels. *See* 127 S. Ct. at 1456.[5] *Second*, any challenges to issuance of the Authority to Construct are not yet ripe because the District has not yet taken any action to do so, and Plaintiffs have also not exhausted any administrative remedies that may be available once the District does act. *Third*, the Authority to Construct is legally a separate approval from a PSD permit, so even if a PSD permit was required for the Project the Authority to Construct could still be issued now without violating any PSD requirement. *Fourth*, the Clean Air Act's citizen suit mechanism provides the vehicle for challenging any alleged violations of Clean Air Act requirements, which precludes any mandamus or APA claims, as EPA argues in its Motion to Dismiss. And *Fifth*, Plaintiffs' state-law nuisance claim (to the extent supplemental jurisdiction is even appropriate for it) is barred by the preclusive effect of Plaintiffs' challenge to the CEC's license pursuant to Section 25531(c) of the Warren-Alquist Act, Cal. Pub. Res. Code § 25531(c), which revokes any right under California law to litigate issues that could have been raised before the CEC—such as Plaintiffs claim here that operation of the facility would cause a public nuisance—except on direct review of the CEC's license in the California Supreme Court.

All of these defenses involve complex questions of fact and law involving the multiple overlapping regulatory regimes that govern power plants in California, and would require extensive briefing and analysis to adjudicate. The Air District is prepared to litigate these and other potential defenses as necessary, through a motion for judgment on the pleadings, a motion for summary judgment, or at trial, as appropriate to the degree of factual dispute involved in each one. But the Air District respectfully submits that doing so would be a significant waste of the Court's and the Parties' time and resources, as the First Amended Complaint fails on its face to articulate any regulatory requirement whatsoever that the Air District has violated or may violate. As Plaintiffs' claims are completely devoid of any colorable legal basis on which to issue an injunction against the Air District, the Air District

---

[5] *Massachusetts v. EPA* also involved 6% of worldwide carbon dioxide emissions, the amount that comes from the U.S. transportation sector for which plaintiffs were seeking regulations. *See* 127 S. Ct. at 1457-58. Here, Plaintiffs have not alleged any particular level of greenhouse gas emissions from the SFERP. Thus, even if global warming in general could give rise to a particularized injury to Plaintiffs, they have not shown that *this Project* is a source of any concrete, non-speculative injury sufficient to confer Article III standing. And even if the SFERP's emissions were extensive enough to do so, it is speculative that EPA will adopt regulations requiring the emissions to be reduced.

seeks to have them stricken in order to streamline the action and to alleviate the burden of having to respond and present its defenses.

## II.    LEGAL STANDARDS FOR STRIKING AND DISMISSING COMPLAINTS

### A.    Legal Standard For Motion To Strike Under Rule 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he Court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Claims are immaterial and impertinent within the meaning of Rule 12(f) where there is no "coherent legal argument" to support the requested relief. *Fantasy Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517, 114 S. Ct. 1023 (1994). Where a "coherent legal argument" for relief is lacking, the Court may strike the claims under Rule 12(f) "to avoid the expenditure of time and money that must arise from litigating spurious issues" and to "streamlin[e] the ultimate resolution of the action" by eliminating legally baseless claims that would be "burdensome . . . to answer." *Id.* at 1527-28 (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). Thus, where a plaintiff asserts a claim for relief, but provides no coherent legal theory upon which relief can be granted, the Court may strike the claim to relieve the defendant from having to respond to it. *Id.*; *see also Nurse v. United States*, 226 F.3d 996, 1004-05 (9th Cir. 2000) (striking claims for punitive damages and attorney's fees under the FTCA where they lacked any legal basis).

### B.    Legal Standard For Motion To Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) provides that the Court may dismiss a complaint to the extent that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court may dismiss claims that are not supported by a cognizable legal theory, or if they fail to allege sufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiffs are entitled to all reasonable factual inferences from the Complaint's allegations drawn in their favor, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987), but mere conclusions couched as factual allegations are not sufficient to state a cause of action, *Papasan v. Allain*, 478 U.S. 265, 268, 106 S. Ct. 2932 (1986). If it appears that Plaintiffs will not be able to cure the defects by amendment, the Court should dismiss without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

7

III.    **THE COURT SHOULD STRIKE THE FIRST AMENDED COMPLAINT AS AGAINST THE AIR DISTRICT BECAUSE IT PRESENTS NO COHERENT LEGAL ARGUMENT TO SUPPORT INJUNCTIVE RELIEF**

The Court should strike the First Amended Complaint as against the Air District because Plaintiffs have no coherent legal argument for injunctive relief against the Air District, and so including the Air District as a defendant is "immaterial" and "impertinent" to any viable claims that Plaintiffs may have in this lawsuit. Plaintiffs have no coherent legal argument for an injunction because they do not contend that the Air District has violated or may violate any current, existing legal requirement with respect to the SFERP. Plaintiffs have tried those arguments already in their attempts to challenge the Project and have failed. Instead, Plaintiffs have come to this Court seeking an injunction on the theory that there may be new legal requirements that may be enacted in the future that may apply to the Project, and that the Air District's actions now may be inconsistent with those future requirements. This theory is absurd on its face. It is a fundamental principle of our system of jurisprudence that a person must comply with the laws on the books currently, not with laws that do not exist yet. "The courts must recognize and enforce the laws as they exist." *Bamberger v. Schoolfield*, 160 U.S. 149, 162, 16 S. Ct. 225, 228 (1895) (allowing an insolvent debtor to grant preferences among its creditors because it was not prohibited by law) (citation omitted). "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S. Ct. 67, 69 (1908). "We must enforce the law as we find it." *American Express Co. v. United States*, 4 Ct. Cust. 146, 175 (Ct. Cust. App. 1913). "Even a court of equity may not create rights having no existence at law and then take jurisdiction to pass upon and enforce them because the law affords no remedy." *Smith v. Sprague*, 143 F.2d 647, 650 (8th Cir. 1944). There is simply no reasonable argument that this Court can enjoin action that is admittedly compliant with all applicable legal standards as they exist today, but might hypothetically be deficient when compared to some new standard that may be adopted at some time in the future.

Expressed more narrowly, Plaintiffs' theory is that the Clean Air Act prohibits a permitting agency from issuing a permit for emissions of a particular air pollutant while EPA is considering whether to adopt new regulations with respect to that air pollutant. But nothing in the Clean Air Act

8

could even arguably be read to require such an outcome, and Plaintiffs have not even tried to craft some basis in that statute.  Instead, Plaintiffs cite only the *Massachusetts* case, which addresses the Federal EPA's duties in responding to rulemaking petitions on greenhouse gases.  *See Massachusetts v. EPA*, __ U.S. __, 127 S. Ct. 1438 (2007).  But that case does not even apply to state permitting agencies, and even for the Federal EPA, it says nothing about current projects having to comply now with future regulations that have not yet been enacted.  Nowhere does it state, nor can it even arguably be read to imply, that permits for sources of greenhouse gas emissions must be held in abeyance until EPA decides whether and how to regulate such emissions.  There is simply no coherent argument that the Air District cannot legally issue a permit now because of the potential for new regulations that may be adopted in the wake of the *Massachusetts* decision.[6]

With these general principles in mind, the Air District below addresses the specific legal grounds on which Plaintiffs seek injunctive relief against the Air District.  In each case, Plaintiffs have no coherent legal argument whatsoever to support issuing an injunction against the Air District.

### A.   There Is No Coherent Legal Argument To Support Injunctive Relief Against The Air District Based Merely On Purported "Indispensable Party" Status

First of all, as noted above, Plaintiffs recognize that issuance of the Authority To Construct would not violate any law or regulation, and accordingly they do not claim that the Air District itself has violated or will violate any applicable legal requirement.  *See* First Amend. Compl. ¶¶ 90-119.  Instead, in each of the first three Claims For Relief, they merely allege that the Air District "is an indispensable party" to their claims for injunctive relief against the other defendants.  *See id.*, ¶¶ 98, 106, 117.[7]  The Air District disagrees that it is a necessary or indispensable party to any of Plaintiffs' claims against

---

[6] The Air District strongly agrees with the Supreme Court that global climate change is a real and pressing problem and that greenhouse gases should be regulated, and the Air District is already taking steps to be in the forefront of such regulation.  The Air District also intends to apply and enforce all regulations that are adopted on all affected facilities, including power plants.  There are no specific regulations on the books at present, however, and the Air District therefore strongly opposes Plaintiffs' claims that it has violated or may violate the law in this regard.

[7] It is not clear why Plaintiffs allege that the Air District is an "indispensable party".  Under the Federal Code of Civil Procedure, an "indispensable party" is a necessary party who cannot be joined and therefore requires that an action be dismissed.  *See* Fed. R. Civ. P. 19(b).  It may be that Plaintiffs meant to allege that the Air District is a "necessary party", but that would not change the analysis.

1   anyone.  But even if the Air District's participation were somehow necessary for adjudication of

2   Plaintiffs' claims, the mere fact of being a necessary party cannot give rise to a cause of action against

3   the Air District absent some allegation that the Air District has violated some law or regulation.  *See*

4   *EEOC v. Peabody Western Coal Co.*, 400 F.3d. 774, 781-83 (9th Cir. 2005), *cert. denied*, 546 U.S. 1150

5   (2006) (joinder of Indian tribe as a defendant would not create a cause of action against tribe in violation

6   of Title VII of the Civil Rights Act, which specifically exempts tribes).  A request for an injunction

7   based solely on purported "indispensable party" status is not coherent legal argument.

8         **B.     There Is No Coherent Legal Argument For Injunctive Relief Against The Air**
              **District On Any Of The Legal Theories Asserted In The First Three Claims For**
9             **Relief**

10        Furthermore, even if Plaintiffs' first three Claims For Relief are read to be asserted against the

11  Air District directly, as opposed to including the Air District simply as an "indispensable party",

12  Plaintiffs would still lack any coherent argument for injunctive relief against the Air District.

13        **1.     There Is No Coherent Legal Argument For Mandamus Relief Against A**
              **State Agency That Is Admittedly Proceeding In Compliance With Law**
14

15        Plaintiffs' first claim arises under 28 U.S.C. Section 1361, which provides for mandamus relief

16  "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to

17  the plaintiff."  There are at least two patent flaws in this claim.  First, the statute on its face authorizes

18  relief only against an agency of the United States, and not against state agencies such as the Air

19  District.[8]  *See, e.g.*, *In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963) (where "petitioner [w]as requesting

20  the district court to issue a writ of mandamus compelling action by a state official, it is clear that the

21  district court had no jurisdiction to grant such relief"); *Robinson v. Illinois*, 752 F. Supp. 248, 248-49

22  (N.D. Ill. 1990) ("Federal courts have no general power to compel action by state officers . . . .  Thus no

23  arguable legal basis exists for [Plaintiff]'s mandamus request."); *Boston v. United States Dept. of*

24  *Interior*, 424 F. Supp. 259, 265 (E.D. Mo. 1976) ("Obviously, this statute would not confer jurisdiction

25  _____

26  [8] The District is actually a regional body whose Board of Directors is made up of elected officials from
    around the San Francisco Bay Area region, but it is a state agency in the sense that it is created under
    and governed by state law, and is not an agency of the United States.  *See* Cal. Health & Safety Code
27  §§ 40200-40276; *accord* First Amend. Compl., ¶ 46.  Moreover, the Authority to Construct is a state-
    law permit issued by the Air District pursuant to California Health & Safety Code sections 42300-42316
28  and Air District regulations 2-1, 2-2, and 2-3.

over the state defendants.").

Second, even if Section 1361 could somehow authorize mandamus relief in federal District Court against a state agency, it would still provide no grounds for enjoining the issuance of the Authority To Construct because Plaintiffs have not alleged that issuance would violate the Clean Air Act or any other law or regulation that could create a duty owed to them, as outlined above.  Mandamus relief is inapplicable where there is no specific statutory requirement or other legal duty that has been violated. *See Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003) ("If a plaintiff has no legal entitlement to the relief sought . . . the writ will not lie."); *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir. 1976) ("A complaint that fails to allege a duty owed . . . to the plaintiff or a violation . . . of any such duty is plainly insufficient to bestow mandamus jurisdiction.").  There is simply no coherent legal argument that this Court should issue mandamus relief against a state agency that Plaintiffs concede is not in violation of any applicable legal requirement.

### 2.    There Is No Coherent Legal Argument That The APA Can Support Injunctive Relief Against A State Agency That Is Admittedly Proceeding In Compliance With Law

Plaintiffs second claim is for judicial review of agency action under Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  This claim is patently deficient for the same reasons as the mandamus claim.  The APA is clear on its face that it does not apply to state agencies. *See* 5 U.S.C. § 701(b)(1) (APA applicable to "authorit[ies] of the Government of the United States"); *Hunter v. Underwood*, 362 F.3d 468, 477 (8th Cir. 2004) ("The APA does not grant federal courts jurisdiction to review actions of state or municipal agencies.").  And relief under the APA requires that there be some violation of an applicable statute or regulation or other legal requirement. *See, e.g.*, *Gros Ventre Tribe v. United States*, 469 F.3d 801, 803, 814 (9th Cir. 2006), *cert. denied*, 128 S. Ct. 176 (2007) (in absence of claim that some specific statutory requirement has been violated, "courts do not have the authority to 'enter general orders compelling compliance with broad statutory mandates' " under APA § 706) (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66, 124 S. Ct. 2373 (2004); *Ness Investment Corp. v. United States Dep't of Agriculture*, 512 F.2d 706, 717 (9th Cir. 1975) (complaint dismissed where "the allegations in the complaint that the [defendant government agency] acted in a manner contrary to law are empty words.").

**3.    There Is No Coherent Legal Argument Under California Nuisance Law For An Injunction Against Issuance Of A Permit That Would Be In Full Compliance With All Legal Requirements**

Plaintiffs' third claim against the Air District is that simply issuing an Authority to Construct for the Project will constitute a public nuisance under California law.  But California nuisance law is clear that where an agency is authorized to issue a permit for an activity, and proceeds in full compliance with all applicable regulatory requirements for doing so as the District is here, the mere *issuance of the permit*—as opposed to the actual operation of the facility by the City—cannot by definition be a nuisance.  California law expressly provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance."  Cal. Civ. Code § 3482.  And here, the Air District is expressly authorized under the California Health & Safety Code to issue permits for sources of air pollution.  *See* Cal. Health & Safety Code § 42300 ("Permit System Authorized"); *see generally id.*, Division 26, Part 4, Chapter 4, Article 1 (§§ 42300-42316), ("Permits").  Where the California courts have addressed claims that a public agency has created a public nuisance simply by permitting an activity that it was statutorily authorized to permit, they have dismissed them summarily because under Civil Code section 3482, the action of permitting the activity cannot be deemed a public nuisance.  *See Pekarek v. City of San Diego*, 30 Cal. App. 4th 909, 917-18 (Cal. Ct. App. 1994) (dismissing nuisance claim against City for permitting a vendor to sell ice cream on City's streets because "[the City's] permission cannot give rise to a nuisance" under Civil Code Section 3482).  By the same token, the Air District's issuing permission for the facility to emit air pollution in accordance with all applicable legal requirements cannot, by definition, constitute a public nuisance because the Air District is expressly authorized by the California Health & Safety Code to do so.[9]

---

[9] California courts have recognized two exceptions to the application of Section 3482, but neither applies where issuance of the permit would be in full compliance with all applicable regulations, as Plaintiffs concede it would here.  The first exception holds that an ancillary side-effect of the activity that is expressly authorized by statute can constitute a nuisance, if it is not part of the express statutory authorization.  For example, where a City is statutorily authorized to construct a sewage treatment plant, but the applicable statute says nothing about authorizing any particular level of odors, a foul smell from the plant can create a nuisance.  *See Varjabedian v. City of Madera*, 20 Cal.3d 285, 292 (1977).  But here, the Air District action complained of—the issuance of a permit to emit air pollution—is exactly the action that is expressly authorized by the Health & Safety Code and cannot be a nuisance.  The second exception holds that Section 3482 does not does not excuse a public agency where its action is authorized by statute but it takes the action improperly or otherwise in violation of its authority.  As the

12

1    Furthermore, even if *operation of the facility* could somehow be found to violate California

2    public nuisance law, Plaintiffs can have no coherent legal argument for an injunction against the Air

3    District prohibiting it from issuing a permit for it.  If the Court were to find that operation of the facility

4    would create a nuisance, an injunction against the City prohibiting it from doing so would suffice to

5    prevent the alleged harm that Plaintiffs complain of.  Broadening such an injunction to also prohibit the

6    Air District from issuing the Authority to Construct would violate "the traditional rule that injunctive

7    relief should be narrowly tailored to remedy the specific harms shown by plaintiffs, rather than to enjoin

8    all possible breaches of law."  *Zepeda v. United States Immigration and Naturalization Serv.*, 753 F.2d

9    719, 728 n.1 (9th Cir. 1983) (citations and internal quotation marks omitted).  There can be no coherent

10    legal argument for tossing out this "traditional rule" to issue an injunction more broad than necessary.

11    **C.    Plaintiffs Have No Reasonable Claim For Irreparable Harm From A Potential
     Failure To Enforce New Regulations That May Be Adopted In the Future**

12

13    Finally, it is hornbook law that a plaintiff must show that it will be irreparably harmed by a

14    defendant's actions in order to obtain injunctive relief.  *See, e.g.*, *Northern Cheyenne Tribe v. Norton*,

15    503 F.3d 836, 843 (9th Cir. 2007).  Plaintiffs' claim of irreparable harm here is simply the bald,

16    conclusory assertion that "[i]f the BAAQMD issues Authority to Construct prior to the EPA's ruling and

17    promulgation of new EPA and BAAQMD rules and regulations, plaintiffs *will forever be denied the*

18    *benefit* [of the new regulations] designed to protect citizens and the environment from global warming

19    . . . ."  First Amend. Compl., ¶ 23 (emphasis added); *see also id.* ¶¶ ¶ 98, 106 (issuance of the Authority

20    to Construct "will deny plaintiffs' [sic] their only remedy for preventing the harm herein alleged.").  But

21    Plaintiffs provide no reason to believe that the Air District cannot or will not enforce and apply any new

22

23    California courts have explained, "[e]ven though acts authorized by statute cannot give rise to nuisance

24    liability, 'the *manner* in which those acts are performed may constitute a nuisance.' "  *Jones v. Union
     Pacific R.R. Co.*, 79 Cal. App. 4th 1053, 1067 (Cal. Ct. App. 2000) (quoting *Friends of H Street v. City*

25    *of Sacramento*, 20 Cal. App. 4th 152, 160 (Cal. Ct. App. 1993)) (emphasis in original).  But here,
     Plaintiffs make no claim that the Air District has erred or will err in any way in issuing a permit for the

26    Project, as Plaintiffs concede that issuance will be in accordance with all applicable laws and regulations
     currently on the books.  Where an agency is not acting in an improper manner, its statutorily-authorized

27    actions cannot constitute a nuisance under California law.  *See, e.g.*, *Harding v. State of California*, 159
     Cal. App. 3d 359, 363 (Cal. Ct. App. 1984); *Orpheum Building Co. v. San Francisco Bay Area Rapid*

28    *Transit Dist.*, 80 Cal. App. 3d 863, 876 (Cal. Ct. App. 1978).

13

regulations to the Project once they are issued, to the extent that they impose any new requirements on the Project. The Air District is the primary enforcement agency in the San Francisco Bay Area with respect to air pollution and, together with EPA as a backstop federal enforcement agency, is fully capable of enforcing any new regulations that are adopted. *See* First Amend. Compl., ¶¶ 42, 46 (recognizing these agencies' enforcement authority). Plaintiffs have provided no coherent argument that they may be harmed by being denied the benefit of the new regulations they envision in the wake of *Massachusetts v. EPA*. Without such a showing, their claims for injunctive relief against the Air District are patently without merit.

### D. Striking The Air District From The First Amended Complaint Would Eliminate Spurious Issues, Streamline The Action, and Conserve Judicial Resources

In such a situation, where there is no coherent argument to support a claim for relief, the Court should strike it as immaterial and impertinent under Rule 12(f). *Fantasy Inc.*, 984 F.2d at 1527-28. Striking the First Amended Complaint as against the Air District will avoid the expenditure of time and money involved in litigating Plaintiffs' spurious claims against the agency, and will serve to streamline the ultimate resolution of the action by eliminating a defendant that does not properly belong in it, which are the purposes underlying Rule 12(f). *See id.*

There are ample precedents in which this Court and others have struck complaints, or portions of complaints, in situations like this where they seek relief without any legal basis.[10] *In re Wal-Mart Stores* is especially instructive. There, plaintiffs sought punitive damages against their employer for violations of the California Labor Code, even though it is settled law that the Labor Code does not provide for such damages. Plaintiffs sought punitive damages anyway, despite the existing state of the law, based on an

---

[10] *See, e.g.*, *In re Wal-Mart Stores, Inc. Wage & Hour Litigation*, 505 F. Supp. 2d 609, 621 (N.D. Cal. 2007) (court enforces existing law and not some preferred policy); *Wilkerson v. Butler*, 229 F.R.D. 166, 170-72 (E.D. Cal. 2005) ("A pleading may not simply allege a wrong has been committed and demand relief. . . . A motion to strike is appropriate to address requested relief . . . which is not recoverable as a matter of law."); *Atraqchi v. Williams*, 220 F.R.D. 1, 3 (D.D.C. 2004) (striking civil rights complaint where "police officers' qualified immunity . . . so obviously applies (if a 14th Amendment violation has even been properly alleged) as to require no further briefing or discussion."); *Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992, 1001-1003 (N.D. Cal. 2003) (striking antitrust claims where "no general principle of antitrust law forbids" defendants' practices, and where plaintiffs "do not . . . point to a single case in which a court has recognized" a tenable cause of action based on defendants' practices).

1   assertion that their "statutory remedies may be inadequate."  This Court struck that portion of the

2   complaint, recognizing that once the law is established, it is the Court's duty to enforce that law, and it is

3   "not free to substitute its judgment as to the better policy."  505 F. Supp. 2d. at 621 (quoting *Wynn v.*

4   *NBC*, 234 F. Supp. 2d. 1067, 1112 (C.D. Cal. 2002) (additional citation omitted)).  The Court should

5   similarly decline Plaintiffs' request here to depart from the existing regulatory requirements that have

6   been established for power plants such as the SFERP in favor of Plaintiffs' views as to the better policy

7   for meeting San Francisco's needs for electric power.

8   **IV.    THE COURT SHOULD DISMISS THE FIRST AMENDED COMPLAINT AS AGAINST
         THE AIR DISTRICT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF**

9   **CAN BE GRANTED**

10          In addition to ordering the First Amended Complaint stricken as to the Air District (or to the

11  extent that the Court declines to strike it as against the Air District), the Court should order the First

12  Amended Complaint dismissed as against the Air District pursuant to Rule 12(b)(6) for failure to state a

13  claim.  For the same reasons as outlined above with respect to the Air District's motion to strike, none of

14  the three Claims For Relief has any merit against the Air District.  Plaintiffs' claims that the Court

15  should enjoin the Air District from issuing an Authority to Construct for the Project are not supported by

16  any cognizable legal theory, even with all reasonable factual inferences drawn in Plaintiffs' favor, and

17  so they should be dismissed.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990);

18  *Moore v. City of Costa Mesa*, 886 F.2d 260, 264 (9th Cir. 1989).

19  **V.    CONCLUSION**

20          For all of the foregoing reasons, the Air District respectfully requests that this Court strike the

21  First Amended Complaint as to the Air District, and in addition, or in the alternative, dismiss the First

22  Amended Complaint as to the Air District.

23

24  Dated: March 3, 2008                          Respectfully submitted,

25                                                BRIAN C. BUNGER, ESQ.
                                                  DISTRICT COUNSEL
26                                                BAY AREA AIR QUALITY MANAGEMENT DISTRICT

27                                                By: _____/s/_____
                                                      Alexander G. Crockett, Esq.
28                                                    Assistant Counsel