SUPREME COURT COPY

# S149527 IN THE SUPREME COURT OF THE
## STATE OF CALIFORNIA

| | |
|---|---|
| CAlifornians for Renewable Energy (CARE), a California non-profit public benefit corporation, and ROBERT SARVEY, <br><br> Petitioners, <br><br> v. <br><br> CALIFORNIA ENERGY COMMISSION, BAY AREA AIR QUALITY MANAGEMENT DISTRICT, SAN FRANCISCO BAY REGIONAL WATER QUALITY CONTROL BOARD, and DOES I through X, inclusive, <br><br> Respondents, and <br><br> The City and County of San Francisco, <br><br> and DOES XI through C, inclusive, <br><br> Real Parties In Interest. | No. <br><br> California Energy Commission Docket No. 04-AFC-1 <br><br><br><br><br> SUPREME COURT <br> F I L E D <br><br> JAN 18 2007 <br><br> Frederick K. Ohlrich Clerk <br> ――――――――――― <br> DEPUTY |

---

### VERIFIED PETITION FOR WRIT OF MANDATE ON
### REVIEW OF DECISION OF THE
### CALIFORNIA ENERGY COMMISSION AND
### SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

MARTIN HOMEC (CSB #085798)
LAW OFFICES OF MARTIN HOMEC
P. O. Box 4471
Davis, CA 95617
(530) 867-1850

Attorney for Petitioners CARE and Robert Sarvey

## WORD COUNT CERTIFICATION

The attached document entitled:

### VERIFIED PETITION FOR WRIT OF MANDATE ON REVIEW OF DECISION OF THE CALIFORNIA ENERGY COMMISSION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

contains 13,957 words according to the "word count" function of the word processor

named Microsoft Office Word 2003.

I declare under penalty of perjury that the above statement is true to the best of my

knowledge.

*Martin Homec*

MARTIN HOMEC (CSB #085798)                    DATE: January 11, 2007
LAW OFFICES OF MARTIN HOMEC
P. O. Box 4471
Davis, CA  95617
(530) 867-1850

Attorney for Petitioners CARE and Robert Sarvey

IN THE SUPREME COURT OF THE
STATE OF CALIFORNIA

| | |
|---|---|
| CAlifornians for Renewable Energy (CARE), a California non-profit public benefit corporation, and ROBERT SARVEY, ) ) ) ) | No. |
| | California Energy Commission Docket No. 04-AFC-1 |
| Petitioners, ) ) ) | |
| v. ) ) | |
| CALIFORNIA ENERGY COMMISSION, ) BAY AREA AIR QUALITY ) MANAGEMENT DISTRICT, SAN ) FRANCISCO BAY REGIONAL WATER ) QUALITY CONTROL BOARD, ) and DOES I through X, inclusive, ) ) | |
| Respondents, and ) ) | |
| The City and County of San Francisco, ) ) | |
| and DOES XI through C, inclusive, ) ) | |
| Real Parties In Interest. ) ) | |

**VERIFIED PETITION FOR WRIT OF MANDATE ON
REVIEW OF DECISION OF THE
CALIFORNIA ENERGY COMMISSION AND
SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

MARTIN HOMEC (CSB #085798)
LAW OFFICES OF MARTIN HOMEC
P. O. Box 4471
Davis, CA 95617
(530) 867-1850

Attorney for Petitioners CARE and Robert Sarvey

## TABLE OF CONTENTS

By this Verified Petition for Writ of Mandate petitioners/plaintiffs allege as follows:....... 7
PRELIMINARY STATEMENT ................................................................................. 7
PARTIES ................................................................................................................. 9
JURISDICTION AND VENUE................................................................................ 12
STANDING ............................................................................................................ 13
EXHAUSTION OF ADMINISTRATIVE REMEDIES............................................ 13
RELIEF REQUESTED ........................................................................................... 13
   A.    Alternative and Peremptory Writs of Mandamus ...................................... 14
   Code Civ. Proc., §§1085, 1087................................................................................ 14
   B.    Temporary and Permanent Injunctive Relief ............................................ 15
   Code Civ. Proc., §§526, 527; Civ. Code, §3422 ....................................................... 15
   Attorneys' Fees and Costs ....................................................................................... 17
   Code Civ. Proc., §§1021.5, 1032; Gov. Code, §800 ................................................ 17
Factual Background ............................................................................................... 17
   A REPRESENTATIVE OF A DEFUNCT STATE AGENCY............................... 18
   CEC REFUSED TO ACCEPT RELEVANT TESTIMONY ................................. 20
   BAY AREA AIR QUALITY MANAGEMENT DISTRICT (BAAQMD or AIR
   DISTRICT)............................................................................................................ 22
   NO FAIR HEARING PROVIDED BY PERMITTING AGENCIES.................... 28
STATE AGENCY PERSONNEL MET IN VIOLATION OF BAGLEY-KEENE
OPEN MEETING ACT........................................................................................... 29
COMMON CHARGING ALLEGATIONS (ALLEGED AGAINST ALL
RESPONDENTS, DEFENDANTS, AND REAL PARTIES IN INTEREST)........... 35
   FIRST CAUSE OF ACTION................................................................................ 36
   (Failure to Provide Fair Hearing in Violation of the............................................. 36
   Procedural Due Process Protections of the Code of Civil Procedure and the
   California and United States Constitutions) ........................................................... 36
   SECOND CAUSE OF ACTION........................................................................... 37
   (Violation of the Warren-Alquist Act) ................................................................... 37
   THIRD CAUSE OF ACTION .............................................................................. 38
   (Violation of the California Environmental Quality Act) ........................................ 38
   FOURTH CAUSE OF ACTION .......................................................................... 39
   (Violation of the Supremacy Clause of................................................................. 39
   Article VI of the United States Constitution) ......................................................... 39
   FIFTH CAUSE OF ACTION ............................................................................... 41
   (Entitlement to Attorneys' Fees under Code of Civil Procedure............................. 41
   Section 1021.5 and Government Code Section 800) ............................................... 41
PRAYER FOR RELIEF .......................................................................................... 42
SUPPORTING MEMORANDUM OF ................................................................... 45
POINTS AND AUTHORITIES................................................................................ 45
   I.   INTRODUCTION ........................................................................................ 45
   II.   THE SUPREME COURT HAS JURISDICTION TO REVIEW THE
   CEC'S DECISION APPROVING THE PROJECT .............................................. 45
   III.   THE COMMISSION VIOLATED ITS OWN LAWS AND ...................... 46

IMPLEMENTING REGULATIONS ........................................................................ 46

IV.    THE CEC MUST ASSURE COMPLIANCE WITH LORS ...................... 47

V.     THE COMMISSION VIOLATED CEQA ................................................ 49

VI.    THE COMMISSION VIOLATED PETITIONER'S DUE PROCESS
RIGHTS............................................................................................................. 52

VII.    CONCLUSION ............................................................................................ 53

## TABLE OF AUTHORITIES

### Cases

*American Motors Sales Corp. v. New Motor Vehicle Board* (1977) 69 Cal.App.3d 983, 991 ....................................................................................................................... 50

*Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 657 ................. 50

*Bozung v. LAFCO* (1975) 13 Cal.3d at 283-284................................................... 30

*Californians for Native Steelhead Salmon v. Department of Forestry* (1990) 221 Cal.App.3d 1419, 1422 ........................................................................................ 49

*Environmental Protection Information Center v. Johnson* (1985) 170 Cal.App.3d 604, 624-625, 631 ............................................................................................................ 48

*Friends of the Old Trees v. Department of Forestry and Fire Protection* (1997) 52 Cal.App.4th 1383, 1393-94.................................................................................. 48

*Gibson v. Berryhill* (1973) 411 U.S. 564 .............................................................. 50

*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 616........................................ 44

Kings County Farm Bureau v. City of Hanford (1990) 221 Cal.App.3d 692, 716.......... 30

*Laurel Heights Improvement Association v. Regents of the University of California* (1988) 47 Cal.3c 376, 392....................................................................................... 49

Market Street Railroad Company v. Railroad Commission (1944) 24 Cal.2d 378, 398 .. 44

Matter of *Southern California Edison Company, vs. State Energy Resources Conservation and Development Commission, Case No.: 05CS00860* ..................... 25

*Mennig v. City Council* (1978) 86 Cal.App.3d 341, 350 ..................................... 50

*Mountain Lion Coalition v. California Fish and Game Commission* (1989) 214 Cal.App.3d 1043, 1047.......................................................................................... 48

Orinda Assn. v. Board of Supervisors (1986) 182 Cal.App.3d 1145, 1171, 1172 ........... 30

*San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus* (1994) 27 Cal.App.4th 713, 741-742....................................................................................... 16

*Schoen v. Department of Forestry and Fire Protection* (1997) 58 Cal.App.4th 556, 567, 572 ............................................................................................................................ 48

*Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 549 ....................................... 50

*Selinger v. City Council* (1989) 216 Cal.App.3d 259, 274................................... 44

*Sierra Club v. State Board of Forestry* (1994) 7 Cal.4th 1215, 1236-37 ........... 48

*Southern California Edison Co. v. Railroad Commission of California* (1936) 6 Cal.2d 737 .............................................................................................................................. 44

Sundstrom v. County of Mendocino (1988) 202 Cal.App.3d 296, 309.................. 30

*Sutter Sensible Planning, Inc. v. Board of Supervisors* (1981) 122 Cal.App.3d 813, 820 .... 49

### Statutes

14 Cal. Code Regs. § 15378(a))............................................................................... 32

40 Code of Federal Regulations section 51.166 .................................................... 41

40 Code of Federal Regulations section 52.220(c) (63) ....................................... 40

California Public Resources Code section 25000 *et seq.*...................................... 12

California Public Resources Code section 25531 .................................................... 8

**Civ. Code, §3422**................................................................................................... 16

**Civil Procedure**..................................................................................................... 42

Civil Rights Act Sec. 2000d .................................................................................... 41

**Code Civ. Proc., §§1085, 1087**............................................................................ 15

Code Civ. Proc., §§526, 527............................................................................ 16
Code of Civil Procedure ("CCP") sections 1085 and 1094.5 ........................... 8
Code of Civil Procedure section 1032............................................................. 19
Code of Civil Procedure section 1060............................................................. 16
Code of Civil Procedure sections 526, 527, 923, 1060, 1085, 1087 and 1094.5............. 14
Government Code Section 65040.12(c)........................................................... 41
**Government Code Section 800**........................................................................ 42
Health and Safety Code §39002 .................................................................... 41
Health and Safety Code §39003 .................................................................... 41
Health and Safety Code §39500 .................................................................... 41
Health and Safety Code section 39037 .......................................................... 41
Pub. Res. Code § 21065................................................................................. 32
Public Resources Code ................................................................................. 38
Public Resources Code section 21000 *et seq* ................................................. 9
Public Resources Code section 21080.5 ........................................................ 39
Public Resources Code section 25525 ........................................................... 12
Public Resources Code section 25531 ........................................................... 15
Public Resources Code section 25901 ........................................................... 15
Public Resources Code section 25903, ......................................................... 15
Public Utilities Code section 454.5(g)........................................................... 27
title VI of the Civil Rights Act of 1964, Section 65040 .................................. 15

## Other Authorities
CEQA Guidelines section 15252...................................................................... 54
San Francisco Board of Supervisors adopted Ordinance No. 124-01................ 34

## Constitutional Provisions
article I, section 7 of the California Constitution............................................. 9
California Constitution article VI, section 10.................................................. 15
Fourteenth Amendment of the United States Constitution................................ 9
the Supremacy Clause of Article VI of the United States Constitution............. 9

*

By this Verified Petition for Writ of Mandate petitioners/plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1.      Petitioners/plaintiffs CAlifornians for Renewable Energy (CARE), a California non-profit public benefit corporation, and ROBERT SARVEY ("petitioners") petition this Court for a writ of mandate pursuant to California Public Resources Code section 25531 and Code of Civil Procedure ("CCP") sections 1085 and 1094.5 setting aside the Adoption Order, Findings and Order dated December 13, 20061, ("Decision") approving the Application for Certification ("AFC") for San Francisco Electric Reliability Project (SFERP) issued by respondent/defendant CALIFORNIA ENERGY COMMISSION ("the CEC" or "the Commission").

2.      The Decision allows the siting of the SFERP within the City and County of San Francisco (CCSF) despite flaws in the CEC hearing process including accepting misrepresentations during hearings in 2006 made by a state agency, the California Consumer Power and Conservation Financing Authority, which was removed from the California state budget in 2004. The presiding CEC commissioners had to have known that the former chief counsel of a defunct state agency could not represent the CCSF in the proceeding and yet it was allowed.

3.      Petitioners however were not allowed to present relevant evidence that had been presented in a prior adjudicatory proceeding with the petitioners and the CCSF as parties

---

[1]  The plaintiffs' Petitions for Reconsideration of Final Commission Decision were addressed and denied during the December 13, 2006; CEC business meeting at which time the CEC reaffirmed its decision for the SFERP in Docket No. 04-AFC-1.

and with the same goal of ensuring the reliability of electric utility service in San Francisco. The CEC commissioners presiding over the hearings denied petitioners motion to call the witness from the prior proceeding to testify and to be subject to cross examination by the CCSF and the petitioners. Petitioners therefore were denied due process and equal protection of the laws as guaranteed by the constitutions of California and the United States.

4.    The Commission also failed to consider public comments critical of its environmental review and to consider alternatives adequately in violation of the California Environmental Quality Act; Public Resources Code section 21000 *et seq.* ("CEQA"). By purporting to approve the SFERP without affording petitioner and the public a fair hearing, without adequate environmental review, and despite the Project's numerous conflicts with local laws, the Commission has posed a direct threat to the health, safety and environmental quality of petitioner and the public.

5.    Petitioners bring this action to protect the citizens of the CCSF, nearby residential neighborhoods from harmful air emissions, noise, traffic, toxic spills, hazardous waste, fire danger and visual annoyance.

6.    Petitioners bring this action on their behalf, and on behalf of the public, to compel the CEC to comply with the procedural due process protections of sections 1085 and 1094.5 of the Code of Civil Procedure, article I, section 7 of the California Constitution, the Fourteenth Amendment of the United States Constitution, the Supremacy Clause of Article VI of the United States Constitution, the California Environmental Quality Act, Public Resources Code section 21100 et seq., and the Warren-Alquist Act, Public Resources Code section 25000 et seq., in order to assure that (1) this Project's adverse impacts are fully disclosed, evaluated and, where feasible,

mitigated, (2) the need (or lack thereof) for this Project is fairly presented and assessed, (3) reasonable alternatives to this Project are given full and fair consideration, and (4) petitioner and the public are afforded their constitutionally-protected right to a fair hearing untainted by prejudice, bias and the exclusion of evidence refuting the claimed lack of serious environmental harm from this Project.

7.      Petitioner respectfully requests that this Court issue alternative and peremptory writs of mandate commanding the CEC to rescind and vacate all of its approvals for the SFERP, including its decisions to (1) approve the Application for Certification of the Project, (2) violate local laws, ordinances, regulations and standards, (3) adopt conditions of Certification, Compliance Verifications and associated procedures regarding operation of the SFERP, and (4) issue all other approvals to authorize and to implement the SFERP.

8.      Petitioners also request this Court's mandamus, declaratory and injunctive relief to declare unlawful and prevent grading, construction and other development activities implementing the foregoing approvals for the SFERP unless and until the CEC complies with the procedural due process protections of the Code of Civil Procedure and the California and United States Constitution, the Supremacy Clause of Article VI of the United States Constitution, and the other laws whose violation is alleged herein.

## PARTIES

9.      Petitioner/plaintiff Robert Sarvey has a vital interest in protecting the health safety and environmental quality of his son who lives in San Francisco from the SFERP's air emissions, noise, traffic, toxic spills, hazardous waste, and fire danger. Petitioner/plaintiff Robert Sarvey also participated as a formal Intervener before the California Energy Commission under Docket No. 04-AFC-1, the San Francisco Energy Reliability Project, and Application for Certification.

10.    CARE is a non-profit public benefit corporation organized and operating under
the laws of California for the primary purpose of educating the public about, and
encouraging public agencies to consider, alternative forms of renewable energy as a
means of avoiding dependence on declining fossil fuel supplies, and the harmful air
emissions caused by their use. Petitioner/plaintiff CARE also participated as a formal
Intervener before the California Energy Commission under Docket No. 04-AFC-1.

11.    The CEC Decision is harmful to petitioners, the public in general, and those
minority low income residents residing within breathing distance of the project area in
particular. Therefore, petitioners are beneficially interested in securing this Court's
review of the Decision, and in ultimately securing a writ mandating that the Decision be
set aside to preserve the constitutional rights of the minorities who throughout the record
of this proceeding are referred to by the applicant and the commission as the low income
community of color that is disproportionately impacted by the production of electrical
power plants and other polluting sources in the community.

12.    Petitioner/plaintiff CARE is a California non-profit public benefit corporation
with members who are residents and citizens of the CCSF. Mr. Lynn Brown, the vice
president of CARE, resides with his family within one mile of the site of the SFERP.
The Brown family lives, and their children attend school, in the CCSF near the proposed
site of the SFERP. Due to wind currents in the area, the air pollution from the proposed
power plant will blow directly toward the Brown family home. The SFERP threatens to
place potentially overwhelming demands on the CCSF's resources exhausting local
services needed for petitioner Brown's residence. In addition, should the County increase
sales taxes to support additional services to the SFERP, Mr. Brown will be economically
impacted. Mr. Sarvey's son, a resident of San Francisco, will be impacted by the

projects harmful air emissions and the build up of additional toxic sources near the
project including but not limited to the unhealthy concrete crushing activities, a sewage
treatment plant, the former Hunters Point naval shipyard which is contaminated with
radioactive waste and other toxins, transit related toxic sources sponsored by the
applicant as outlined in the Southern Waterfront EIR, and the widespread existence of
naturally occurring asbestos due to existing serpentine soil and rock formations in the
area being disturbed by construction activities. This continues a massive build up of toxic
sources in an area that already has a well documented history of environmental
degradation imposed upon this low income community of color.

13.     Respondent/defendant California Energy Commission ("the CEC" or "the
Commission") is an agency of the State of California established in accordance with the
Warren-Alquist State Energy Resources Conservation and Development Act, California
Public Resources Code section 25000 *et seq.* ("the Warren-Alquist Act"). The Warren-
Alquist Act empowers the CEC to regulate the siting of energy and water projects. On
October 3, 2006, the CEC purported to approve the application of the real party in interest
the CCSF.

14.     The CEC has authority under Public Resources Code section 25525 to certify
applications for energy facilities that do not conform with applicable state, local or
regional standards, ordinances, or laws where the Commission "determines that such
facility is required for public convenience and necessity and that there are not more
prudent and feasible means of achieving such public convenience and necessity." The
CEC made no such determination. Ratlfer, the CEC in its Decision purported to find that
the project "will be designed, sited, and operated in conformity with applicable local,
regional, state, and federal laws, ordinances, regulations, and standards," despite its

acknowledged violation of local laws.

15.    The CEC violated petitioner's right to a fair hearing by (1) refusing to consider contrary evidence, (2) ignoring local, state and federal laws establishing procedural and substantive standards for approving the SFERP, which standards the CEC violated to petitioner's prejudice, and (3) exhibiting bias against petitioner.

16.    Petitioner is informed and believes, and thereon alleges that two responsible agencies, (1) the Bay Area Air Quality Management District (BAAQMD), and (2) the San Francisco Bay Regional Water Quality Control Board (SFBRWQCB) [the Districts] violated petitioner's right to a fair hearing by (1) refusing to consider contrary evidence, (2) ignoring local, state and federal laws establishing procedural and substantive standards for approving the SFERP, which standards the BAAQMD and SFBRWQCB violated to petitioner's prejudice, and (3) exhibiting bias against petitioner.

17.    Petitioner is informed and believes, and thereon alleges that real party in interest the CCSF, as the proposed owner and intended operator of the SFERP, is beneficially interested in the CEC's Decision challenged herein.

Petitioner is unaware of the true names and capacities of real parties in interest DOES XI through C, and therefore sues such real parties in interest by fictitious names. Petitioner is informed and believes, and based on such information and belief alleges, that the fictitiously named real parties in interest are directly and materially interested in or affected by the approvals challenged in this Petition and Complaint.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction of the matters alleged herein pursuant to Public Resources Code sections 25531 or 25901 and Code of Civil Procedure sections 526, 527, 923, 1060, 1085, 1087 and 1094.5.

VERIFIED PETITION FOR WRIT OF MANDATE ON REVIEW
OF DECISION OF THE CALIFORNIA ENERGY COMMISSION                    12

## STANDING

19.    Petitioner has standing to assert the claims raised in this Petition and Complaint. As alleged above, petitioner is beneficially interested in this matter.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.    Petitioner has performed any and all conditions precedent to the filing of this Petition and Complaint, and has participated in all phases of the administrative and environmental review process, and thus has fully exhausted administrative remedies.

21.    Respondents have taken final agency action with respect to the approvals challenged herein. Respondents have a mandatory duty to comply with local, state, and federal law, including, but not limited to, the procedural due process provisions of the Code of Civil Procedure and the California and United States Constitutions, the Supremacy Clause of the United States Constitution, CEQA, and the Warren-Alquist Act, title VI of the Civil Rights Act of 1964, Section 65040.12 (c) of the California Government Code, and the "equal protection" mandates of the Federal and State Constitutions prior to undertaking the discretionary approvals at issue in this lawsuit. Petitioner possesses no clear remedy to challenge the approvals at issue in this action on procedural due process, federal preemption, Warren-Alquist, CEQA and other statutory and constitutional grounds other than by means of this lawsuit.

## RELIEF REQUESTED

22.    Petitioner seeks an alternative writ of mandamus, a peremptory writ of mandamus, declaratory relief, temporary and permanent injunctive relief, costs, and attorneys' fees.

A.    **Alternative and Peremptory Writs of Mandamus**
      **Code Civ. Proc., §§1085, 1087**

23.    Petitioner seeks alternative and peremptory writs of mandate pursuant to Public

Resources Code section 25531(a), which provides that "[t]he decisions of the [California

Energy] commission on any application for certification of a site and related facility are

subject to judicial review by the Supreme Court of California," Public Resources Code

section 25903, which provides for superior court review of CEC energy siting decisions if

any provision of section 25531, subdivision (a), is held invalid, Public Resources Code

section 25901, which provides that "any aggrieved person may file with the superior

court a petition for writ of mandate for review" of CEC decisions not subject to review

under section 25531, California Constitution article VI, section 10, which invests the

superior courts of this state with "original jurisdiction in all causes except those given by

statute to other trial courts," Code of Civil Procedure section 1085, which provides that a

writ of mandate "may be issued by any court... to any inferior tribunal, corporation,

board, or person, to compel the performance of an act which the law specially enjoins, as

a duty resulting from an office, trust, or station," Code of Civil Procedure section 1087,

which provides that "[t]he writ may be either alternative or peremptory," and Code of

Civil Procedure section 1094.5, which provides that a writ of mandate may be "issued for

the purpose of inquiring into the validity of any final administrative order made as a

result of a proceeding in which by law a hearing is required to be given, evidence is

required to be taken, and discretion in the determination of facts is vested in the inferior

tribunal, ... board, or officer."

24.    Petitioner seeks alternative and peremptory writs of mandate on the grounds that,

by approving the Project without first properly complying with the procedural due

process protections of the Code of Civil Procedure and the California and United States

Constitutions, the substantive and procedural requirements of the Warren-Alquist Act,

and the environmental protections of CEQA, the CEC failed to "regularly pursue its

authority" within the meaning of Public Resources Code section 25531(b) and

prejudicially abused its discretion within the meaning of Code of Civil Procedure sections

1085 and 1094.5.

### B.    Temporary and Permanent Injunctive Relief
### Code Civ. Proc., §§526, 527; Civ. Code, §3422

25.    Petitioner requests declaratory relief pursuant to Code of Civil Procedure section

1060, which provides, in pertinent part, that:

> Any person ... who desires a declaration of his or her rights or duties with
> respect to another, or in respect to, in, over or upon property ... may, in cases
> of actual controversy relating to the legal rights and duties of the respective
> parties, bring an original action ... in the Superior Court ... for a declaration of
> his or her rights and duties in the premises.... He or she may ask for a
> declaration of rights or duties, either alone or with other relief; and the court
> may make a binding declaration of these rights or duties, whether or not
> further relief is or could be claimed at the time. The Declaration may be
> either affirmative or negative in form and effect, and the declaration shall
> have      the      force      of      a      final      judgment.      [2]

26.    Petitioner requests injunctive relief pursuant to Code of Civil Procedure section

526, which provides, in pertinent part, that:

> "(a)    An injunction may be granted in the following cases:
>
> (1)    When it appears by the complaint that the plaintiff is entitled to the
> relief demanded, and the relief, or any part thereof, consists in
> restraining the commission or continuance of the act complained of,
> either for a limited period or perpetually.
>
> (2)    When it appears by the complaint or affidavits that the commission or
> continuance of some act during the litigation would produce waste, or
> great or irreparable injury, to a party to the action.
>
> (3)    When it appears, during the litigation, that a party to the action is
> doing, or threatens, or is about to do, or is procuring or suffering to be
> done, some act in violation of the rights of another party to the action
> respecting the subject of the action, and tending to render the

---

[2] Code of Civ. Proc. § 1060.

judgment ineffectual.

(4)    When pecuniary compensation would not afford adequate relief.

(5)    Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

(6)    Where the restraint is necessary to prevent a multiplicity of judicial proceedings."

Code Civ. Proc. §526, subd. (a).

27.    Petitioner also requests temporary injunctive relief pursuant to Code of Civil Procedure section 527, which provides that the Court may issue a temporary restraining order or a preliminary injunction if the plaintiff (or petitioner) meets specified criteria satisfied here, and Code of Civil Procedure section 923, which empowers reviewing courts "to make any order appropriate to preserve the status quo, the effectiveness of the judgment subsequently to be entered, or otherwise in aid of its jurisdiction."

28.    Finally, petitioner requests permanent injunctive relief pursuant to Civil Code section 3422, which provides that the Court may issue a permanent injunction if the plaintiff meets specified criteria. *See also San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus* (1994) 27 Cal.App.4th 713, 741-742 (court issues injunction prohibiting respondent county and applicant from altering project site pending full compliance with applicable law).

29.    The CEC's actions will result in irreparable harm to petitioner and the public at large in that the Project as approved will cause significant environmental impacts that will not be mitigated to less than significant levels. Such impacts include, but are not limited to, excessive noise, visual pollution, traffic, fire danger, toxic spills, hazardous waste, nitrogen deposition to sensitive habitat and contamination of air with pollutants harmful to human health and safety.

30.    Petitioner has no plain, speedy, or adequate remedy in the ordinary course of law. No money damages or other legal remedy could adequately compensate petitioner for the harms described in the preceding paragraphs.

### Attorneys' Fees and Costs
### Code Civ. Proc., §§1021.5, 1032; Gov. Code, §800

31.    This litigation involves the enforcement of an important right affecting the public interest. Accordingly, if petitioner is successful in prosecuting this action, petitioner will confer a substantial benefit on the citizens of the affected area and region, and therefore will be entitled to an award of reasonable attorneys' fees pursuant to section 1021.5 of the Code of Civil Procedure.

32.    Petitioner also brings this action pursuant to Government Code section 800, which awards petitioners up to $7,500.00 in attorneys' fees in actions to overturn agency decisions, such as those at issue herein that are arbitrary and capricious.

33.    Additionally, petitioner requests reimbursement for costs pursuant to Code of Civil Procedure section 1032, subdivision (b), which provides that "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."

### Factual Background

34.    This proceeding concerns a proposal by real parties in interest CCSF (CCSF)  to develop a 145-megawatt, natural gas-fired, simple cycle power plant on a to a 4-acre site owned by CCSF that lies approximately south of 25th Street and approximately 700 feet east of Illinois Street adjacent to the  Bayview Hunters Point neighborhood, a low income community of color  that has suffered disproportionately from the practice of locating almost all toxic emitting facilities in San Francisco  in or adjacent to their community.

The site is centered in the middle of a variety of new development which includes several new concrete crushing facilities, two asphalt batch plants, a fly ash storage facility, the Illinois Street Bridge, and several other projects covered in single document the Southern Waterfront SEIR. Because of its poor location, massive scale, largely unmitigated air quality, hazardous materials storage and transportation impacts, the Project would violate a host of general plan and zoning ordinance requirements adopted by the City and County or San Francisco to prevent the continuing degradation of the quality of life to the low income residents of color in the Bayview Hunters Point community to regulate land use, air pollution, traffic, hazardous waste, fire danger, more specifically below.

35.    The Decision minimizes and completes a piecemeal analysis of the impacts attributable to SFERP. The Decision provides evidence of the CEC's, and the Districts' intent to discriminate against Petitioner CARE's low-income minority members and to further retaliate against them for bringing a June 21, 2003, United States Department of Energy Office of Civil Rights and Diversity 3(US DOE OCRD) title VI Complaint (File No: 03-003-HQ) against the California Independent System Operator (CAISO), Applicant, and the California Energy Commission (CEC) over the Commission, CAISO's, and Applicant's proposed siting of the SFERP in the immediate vicinity of the disparately impacted low income community of color, Bay View Hunters Point in San Francisco.

## A REPRESENTATIVE OF A DEFUNCT STATE AGENCY

36.    The CEC violated petitioners' rights of due process and equal protection under the laws of California and the United States federal government. The CCSF filing wrongly included the name and address of a person, Mr. Varanini, representing the support of a

California state agency that is no longer funded by the State budget. The CEC Commissioners James Boyd and John Geesman knew that the California Consumer Power and Conservation Financing Authority was no longer operating and had not existed for over two years and yet, in 2006, accepted evidence and endorsements from the agency.

37.    The CCSF pleadings in this CEC proceeding include a representative of a California state agency that ceased to operate4 in 2004, the California Consumer Power and Conservation Financing Authority (known as the California Power Authority). The representative, Mr. Varanini, added his endorsement of the project as a representative of California Power Authority even though that agency was removed from the California budget in 2004 and never was funded again. The CCSF also included Mr. Varanini as a representative of a California state agency in its supports its position in this FERC proceeding, Docket No. EL06-89, because there is no such agency.

38.    In the FERC proceeding, "The Motion to Intervene and Protest of the City and County of San Francisco"5 was signed by:

---

3 See http://humancapital.doe.gov/pol/hcmp/pdf/EDstatusreport.pdf

4 See http://www.capowerauthority.ca.gov/News/UpcomingBoardMeetings.htm

5 See http://elibrary.ferc.gov/idmws/nvcommon/NVViewer.asp?Doc=11110706:0

Emilio E. Varanini III
California Power Authority Special
    Counsel
717 K Street, Suite 217
Sacramento CA 95814
(916) 448.2525
drp.gene@sbcglobal.net ............................ on August

14, 2006, well over two years after the California Power Authority ceased to exist.

39.    During the August 2, 2006, hearing before the CEC in CEC Docket No. 04-AFC-

01. The transcript reports the following exchange:

> "18 ACTING CHAIRPERSON GEESMAN: Thank you.
> 19 Does the applicant wish to make a comment?
> 20 MR. VARANINI: Thank you, Mr. Chairman.
> 21 I'm Gene Varanini; I'm with the DRP program; we're
> 22 counsel to the City and County of San Francisco.
> 23 And I'm representing them here today.
> 24 We agree wholeheartedly with the
> 25 Committee's decision. We filed numerous moving
> 1 papers that lay out our perspective on this
> 2 matter. And we support the staff's analysis, as
> 3 well." [8-2-06 RT at pages 30 and 31]

### CEC REFUSED TO ACCEPT RELEVANT TESTIMONY

40.    Second, the CEC refused6 to allow relevant testimony from a California

Public Utilities Commission (CPUC) proceeding (Application "A."02-09-043) to be

entered into evidence.

41.    CARE participated before the CPUC in support of the approval of the

---

6 http://www.energy.ca.gov/sitingcases/sanfrancisco/documents/2006-07-05_RULING_RE_CARE.PDF

Jefferson-Martin Transmission 230 kV Transmission Project in return for Pacific Gas and Electric Company's (PG&E's) agreement to shut down their Bay View Hunters Point power plant in a low-income people of color neighborhood. The transcript from the hearing said that they didn't need the proposed power plant (SFERP) to shut down Hunters Point or Potrero power plants and, in fact that there was enough transmission capacity once the Jefferson-Martin and other transmission projects where completed without existing in City generation.

42.    CARE supported this because after the power plant is shut down there will not be any air pollution emitted from it. The CCSF was a Party in that proceeding, A. 02-09-043, and now claims they supported the SFERP during the CPUC proceeding. Yet, while present, represented, and participating in the adjudicatory hearings in which the PG&E witness stated that the power plant was not needed they did not object or cross examine the witness. This is a strong indication that the CCSF did not want to admit that they planned to build a new power plant at the same site after PG&E took its power plant off-line. The CCSF did not communicate this to the residents of the poor, people of color neighborhood.

43.    Now, the CEC, the California Power Authority (even though it doesn't exist) and the CCSF claim that there is no value to this evidence. This evidence was presented in an adjudicatory hearing before an administrative law judge and conducted by the CPUC.

44.    Petitioners filed this petition because there is no harm caused to the parties to accept the evidence other than to deprive people who are poor and black and living close enough to the proposed project to breathe its emissions of due process and equal

protection of the laws of the State of California and the United States of America.

45.      CARE asked the Commission to reverse the July 6, 2006, ruling denying

CARE's introduction of the transcript of PG&E's Mr. Yeung into the record as evidence

in this case. This evidence is material to CARE's case. It is a denial of due process and

the equal protection of law to allow Applicant to present its case and deny CARE to make

a presentation. CARE represents the residents who will have to live next to the proposed

power plant while the CEC staff and the representatives of the CCSF do not.

## BAY AREA AIR QUALITY MANAGEMENT DISTRICT (BAAQMD or AIR DISTRICT)

46.      CARE believes that the AIR District's permitting staff is involved in a conspiracy

with the power plant Applicant CCSF, and the CEC, to deprive CARE and its members

of their civil and constitutional rights to a fair hearing on this matter before the

BAAQMD Hearing Board, as is demonstrated by the following actions they have taken in

response to our appeals. On March 16, 2006, CARE amended its title VI civil rights

complaint (File No: 03-003-HQ) and another title VI civil rights complaint it had filed

with US EPA (File No: 2R-00-R9) to include retaliation against BAAQMD for racial and

economic discrimination, based on the actions they have taken in response to CARE's

appeal (DOCKET NO. 3511) with the Bay Area Air Quality Management District

Hearing Board regarding their improper issuance of the Final Determination of

Compliance [FDOC] for the CCSF San Francisco Electrical Reliability Project, FDOC

Application 12344.

47.      On January 11, 2006[7], CARE filed an appeal with the Bay Area Air Quality

---

[7] A hard copy was received by US Mail by the Hearing Board on January 13, 2006.

Management District Hearing Board regarding the previously issued Final Determination of Compliance (FDOC), issued by the Air District on October 22, 2005. The basis for the appeal was procedural--that the Air District had neglected to consider and respond to CARE's comments on the Air District's Preliminary Determination of Compliance (PDOC). The Air District's rules require consideration of all public comments prior to issuing the FDOC. The remedy CARE seeks in bringing this Appeal "is a re-issuance of the PDOC and an appropriate public comment period where the district actually carries out its statutory duty to analyze and respond to all issues raised by the public."

48.    In response to this lawfully filed appeal with the Bay Area Air Quality Management District Hearing Board, we allege the following retaliatory actions have been taken by the BAAQMD, CEC, and CCSF. On January 23, 2006, the District's permitting staff notified CARE that it would reissue the FDOC and allow for a public comment period on such.

49.    On January 30, 2006, CEC Intervenor CARE filed a document which included a "Request for Clarification on Staff's Proposal that the date for publication of the CEC FSA [Final Staff Assessment] be tentatively scheduled for February 15, 2006. In a subsequent January 29, 2006, filing with the CEC, CARE included a request that the Commission's staff not release its Final Staff Assessment (FSA) until the Air District's Hearing Board had heard CARE's Appeal. CARE's filing states that "Since the BAAQMD has approved the continuance of the Hearing on the Appeal of CCSF, San Francisco Electrical Reliability Project FDOC Application 12344 until March 23rd, 2006, for the commission's staff to issue the FSA on February 15, 2006, prior to the March 23rd, 2006, hearing before the BAAQMD Hearing Board, besides being premature, this action may prejudice our rights to a fair hearing before the BAAQMD, giving CARE

good cause to name the CEC in any subsequent judicial review of the Hearing Board's subsequent action on CARE's Appeal of FDOC Application 12344."

50.     On February 16, 2006, the CEC staff filed its "Response of Energy Commission Staff Regarding Request from CAlifornians for Renewable Energy to Delay Proceeding Pending Re-Release of Air District Final Determination Of Compliance [FDOC]" in which CEC staff stated "[f]irst, contrary to CARE's assertions, Section 1744.5, subdivision (b) does not require the Air District to issue the FDOC prior to issuance of the Final Staff Assessment. Moreover, the Air District re-issued the FDOC with no substantive changes (after considering CARE's comments) on January 25, 2006, four days prior to CARE's filing with this agency. The Air District has thus addressed the procedural issue raised by CARE, making its issue moot. Accordingly, there is no reason to suspend this proceeding even if CARE pursues its moot procedural point in the Air District's forum."

51.     On February 22, 2006 CARE received an e-mail from District's Permitting staff informing CARE that CARE had no procedural right to comment on the re-issuance of the FDOC.

52.     On February 21, 2006, the CEC staff issued their Final Staff Assessment[8].

53.     On February 23, 2006, the CEC siting committee filed its "Response Regarding Request from CAlifornians for Renewable Energy to Delay Proceeding Pending Re-Release of Air District Final Determination of Compliance [FDOC]" wherein the CEC siting committee found, "CARE has already received Staff's response. We have reviewed CARE's request in light of Staff's response and find no reason to interfere with, or delay, publication of the FSA." On February 23, 2006, the CEC siting committee

---

[8] See http://www.energy.ca.gov/2005publications/CEC-700-2005-021/CEC-700-2005-021-FSA.PDF

issued its Notice of Prehearing Conference wherein "the Committee will assess the
parties' readiness for evidentiary hearings, identify areas of agreement or dispute, and
discuss the remaining schedule and procedures necessary to conclude the certification
process. (Cal. Code of Regs., tit. 20, §1718.5.)"

54.     This violates CARE's procedural due process rights as a Party in the CEC's siting
case as our Prehearing Conference Statement[9] is due six days prior to our hearing before
the BAAQMD Hearing Board. "To facilitate the process, each party shall serve and file a
Prehearing Conference Statement. The statements shall be received by the other parties
and the Commission's Docket Unit, 1516 9th Street, MS 4, Sacramento, California
95814-5512, no later than 3:00 p.m. on March 17, 2006." [February 23, 2006, Notice of
Prehearing Conference at page 2.]

55.     On March 9, 2006, the CCSF Office of City Attorney Dennis J. Herrera,
emailed CARE a motion to dismiss CARE's appeal with the BAAQMD Hearing Board as
"moot" claiming the CEC has jurisdiction over CARE's procedural due process rights before
the BAAQMD.

> CCSF (City or CCSF) respectfully files this motion to dismiss for lack of
> jurisdiction. The appeal filed by Californians for Renewable Energy (CARE)
> is moot since the Bay Area Air Quality Management District (BAAQMD or
> District) has issued a revised Final Determination of Compliance (FDOC) in
> this matter upon review of CARE's comments. In addition, CARE's appeal is
> not yet ripe since there is no final agency action in this matter. Prior to
> issuance of an Authority to Construct, CARE will have ample opportunity to
> raise the concerns it has expressed in its appeal before the California Energy
> Commission in upcoming testimony and evidentiary hearings.[March 9th
> Motion to Dismiss at page 1.]

CCSF is well aware of the fact that there is no public comment on the issuance of an
Authority to Construct permit by the BAAQMD precluding the remedy CARE seeks in
bringing this BAAQMD Hearing Board appeal "a re-issuance of the PDOC and an

---

[9] See http://www.energy.ca.gov/sitingcases/sanfrancisco/notices/2006-04-
03_PREHE_CONF.PDF

appropriate public comment period where the district actually carries out its statutory duty to analyze and respond to all issues raised by the public".

56.     On March 15, 2006 BAAQMD's Assistant Counsel, Alexander G. Crockett, echoed,

CCSF's motion to dismiss CARE's appeal with the BAAQMD Hearing Board as "moot"

based on the false assumption that CARE's procedural due process rights before the

BAAQMD are under the jurisdiction of the CEC, an independent agency from the

BAAQMD.

> [T]he Appeal must be dismissed because the forum for raising these issues is
> at the California Energy Commission ("CEC"), not the Air District. The CEC
> has jurisdiction over these issues pursuant to the Warren-Alquist Act (Public
> Resources Code §§ 25000 et seq.), [March 15th letter at page 1]

The CEC is an agency independent from the BAAQMD as was recently found in the

February 14, 2006, Superior Court of California County of Sacramento Ruling on Submitted

Matter of *Southern California Edison Company, vs. State Energy Resources Conservation

and Development Commission, Case No.: 05CS00860* regarding the independence of the

CEC's and the California Public Utilities Commission's [CPUC's] regulatory authority:

> "The court finds that Public Utilities Code section 454.5(g) does not apply to
> Respondent Commission. Respondent is not acting as an agent of the CPUC.
> They are separate agencies with separate responsibilities. The fact that they
> have agreed to cooperate in some respects does not make one the agent of the
> other when it is fulfilling its own duties."

If this is the case as the CEC has now claimed in California Superior Court, why then would

the District's staff, CCSF's staff, and the CEC take the foregoing actions foreclosing

CARE's right to a fair hearing before the Hearing Board other than to discriminate on the

basis of race and income? Respectfully, CARE's so-called procedural point, is not moot, as

CARE's remedy "is a re-issuance of the PDOC" not the re-issuance of the FDOC.

57.     Also, on March 15, 2006, BAAQMD's Assistant Counsel, Alexander G. Crockett,

served CARE a notice that the "Air Pollution Control Officer of the Bay Area Air Quality

Management District ("APCO") opposes the application for intervention filed on March

3, 2006, by Mr. Robert Sarvey, who is an independent Party in the CEC's AFC

proceeding for the SFERP, and is an independent Party in the District's review of FDOC

Application 12344 who filed his own individual comments on the PDOC.

> The Air Pollution Control Officer of the Bay Area Air Quality Management
> District ("APCO") opposes the application for intervention filed on March 3,
> 2006, by Mr. Robert Sarvey. The application should be denied pursuant to
> Hearing Board Rule 3.6 because the proposed Intervenor's interests are fully
> represented by the Appellant organization, which is already a participant in
> this proceeding. Adding the proposed Intervenor to the proceeding will not
> provide the Board with any additional information or insight that could aid in
> the determination of the issues that have been raised, and would simply serve
> to delay the prompt disposition of the Appeal.
>
> The interests that the proposed Intervenor has claimed in connection with the
> application are identical those being pursued by the Appellant. The APCO is
> informed and believes that the proposed Intervenor is a member of the
> Appellant organization, Californians For Renewable Energy, Inc. ("CARE"),
> as he has identified himself as the Treasurer of the organization in complaints
> about how the District has handled other power plant permits, and also in
> proceedings before the California Energy Commission ("CEC") regarding
> power plant issues in Southeast San Francisco. Moreover, the issues he has
> raised in connection with this project, both in his comments and in the
> documents that he has filed in this proceeding, are identical to the issues
> raised by Appellant. The proposed Intervenor simply wants to be an
> additional voice echoing the same arguments asserted by Appellant.
> [Opposition to Application for Intervention at pages 1 to 2].

Since Mr. Sarvey's comments where in fact timely responded to by the District, unlike

CARE's comments which the District neglected to consider and respond to, this is clearly an

attempt by the District to violate Mr. Sarvey's procedural due process rights as well as a act

of intimidation and harassment of Mr. Sarvey who has a constitutional right to free

association with any organization of his own choosing. The fact that CARE is claiming

financial hardship and seeking a waiver of the appeal filing fee based on such, and Mr.

Sarvey on the other hand has been required to and the District has accepted payment of an

Intervention filing fee from Mr. Sarvey, the District is trying to have it both ways, denying

Mr. Sarvey Intervention as a member of CARE, while requiring him to pay the fees required

by an independent Party in intervention in CARE's appeal before the BAAQMD Hearing

Board. This is clearly evidence of the District's retaliation against CARE and its members

for exercising our rights as an organization or individual member to due process under the

law.

## NO FAIR HEARING PROVIDED BY PERMITTING AGENCIES

58.     CARE alleges the District's permitting staff is involved in a conspiracy with the

power plant Applicant CCSF, and the CEC, to deprive CARE and its members of their

civil and constitutional rights to a fair hearing on this matter before the BAAQMD

Hearing Board, as is demonstrated by the foregoing actions taken in response to our

appeal. CARE alleges such actions by the District's staff, CCSF's staff, and the CEC is

evidence of retaliation against CARE for bringing a Civil Rights complaint against the

District which is currently pending before the US EPA OCR brought by CARE in April

2000, for the same reason they are acting in concert with CCSF over their Bay View

Hunters Point San Francisco power plant project, they are intent on discriminating against

the low income community of color of Pittsburg California, and the low-income children

of color of the Pittsburg School District in particular, as they are in the low income

community of color of Bay View Hunters Point San Francisco, in order to site gas fired

combustion turbines in these disparately impacted communities in violation of Title VI of

the Civil Rights Act.

59.     Further more such actions by the District's staff make the District Party to

CARE's June 21, 2003, civil rights complaint against the CCSF and the CEC which was

filed with the US Department of Energy (US DOE) Office of Civil Rights, and US

Department of Justice (US DOJ). CARE has already notified the District, the CEC,

CCSF, and the Hearing Board that such discriminatory acts make these actions subject to

an amendment of this complaint to include the District, to which the US EPA Office of

Civil Rights now has a reviewing authority.

## STATE AGENCY PERSONNEL MET IN VIOLATION OF BAGLEY-KEENE OPEN MEETING ACT

60.     Petitioners allege that CEC and the San Francisco Bay Regional Water Quality

Control Board (SFBRWQCB) did not afford Interveners and the public the appropriate

level of public participation that must be afforded to the public and interveners to

preserve their statutory, civil, and constitutional rights, by allowing the Applicant, the

Commission Staff, and the Staff of the SFBRWQCB to conduct meetings in secret and

carry out the public's business without any opportunity for public participation.

61.     The Decision at pages 236 *et seq.* illustrates this where it attempts to justify

allowing the Applicant to defer its Proposed Remedial actions to clean up the

contamination on the site until after the CEC permit is issued for the project. The

Decision represents the reason for Mr. Hill's participation during the evidentiary hearing

[at footnote 44] as "to corroborate the Staff's and Applicant's proposed mitigation

approach."

62.     Petitioners were misled by the hearing officer to think it was in response to

CARE's request for the attendance of SFBRWQCB Staff, Nancy Katyl. By deferring the

SFBRWQCB Site Cleanup Plan until after the permit is issued for the project by the CEC

the Decision fails to provide Interveners and the public an opportunity to meaningful and

informed participation in the project's mitigation for contamination present on the site.

63.     The Decision states in footnote 44 on page 236, that a Memorandum of

Understanding (MOU) was signed by the CEC staff and the staff of the SFBRWQCB to

provide for oversight of required hazardous waste cleanup operations. This MOU was

signed without notifying the public or the interveners and CARE filed a complaint to the

CEC. The complaint was denied as explained in the Decision footnote 44. CARE does

not concede that the MOU was exempt from the requirements of the Bagley-Keene Open

Meeting Act, contending instead that this provides evidence of the conspiracy by the

CEC in concert with the SFBRWQCB to violate the Open Meeting Act, CEQA, Title VI

of the Civil Rights Act of 1964, Section 65040.12 (c) of the California Government

Code" as well as the "equal protection" mandates of the Federal and State Constitutions.

> During the evidentiary hearings, intervenors asked which entity has the
> ultimate authority in reviewing Applicant's proposal. In fact, the
> Conditions of Certification give each agency a meaningful and appropriate
> role. In the case of the Energy Commission, the CPM must approve the
> documents as meeting the Conditions of Certification. However, the
> Conditions of Certification give an enforcement role to both the Regional
> Board and the CEC. The joint enforcement is further memorialized and
> enforced by the formal MOU entered by the staffs of the two agencies on
> June 5, 2006. [10]

> At a May 31, 2006 evidentiary hearing Stephen Hill, head of the Toxics
> Cleanup Division for the Regional Board staff, testified that the health
> protective standards proposed by the Commission staff to address CEQA
> mitigation are appropriate, and that the Regional Board has agreed to

---

[10] Memorandum of Understanding (MOU) Between the California Energy
Commission staff and Staff of the San Francisco Bay Regional Water Quality Control
Board, dated June 5, 2006, docketed June 8, 2006. The MOU is part of the administrative
record in this case and supplements testimony in evidence. (5/31/06 RT 11-12, 19.)
CARE contends that the MOU between Staff and the Regional Board staff which covers
site remediation measures, violates the Open Meetings Act. (CARE Brief, pp. 19-23.)
However, agreements between agency staffs (as opposed to decision-making boards and
commissions) are not subject to the Open Meetings Act, and the legal authority cited by
CARE is not on point. It deals with closed sessions of a City Council, which is a
deliberative decision-making body. In a letter dated June 22, 2006, the Executive Officer
of the Regional Board staff also rejected CARE's Open Meetings Act argument.

> implement them through the conditions of the Regional Board's SCP[11]. (See 5/31/06 RT 13.) The proposed performance standards for the project's CEQA mitigation are similar to the kinds of conditions used by the Regional Board, which also typically employs performance standards. (Id.) Mr. Hill also stated that the MOU between the Regional Board staff and Commission Staff would provide for the Commission to have an advisory role when the Regional Board prescribes any future site remediation requirements.[12] (5/31/06 RT 19-20.) In this consultative role the Commission staff will be able to assure the implementation of measures that will meet the performance standards that protect public health and worker safety. (Ibid.) [PMPD at page 236]

65. It is improper for the Applicant to defer its Proposed Remedial actions to clean up the site until after the permit is issued for the project by the CEC. To do so violates CCSF's own ordinances, and the California Environmental Quality Act (CEQA) which requires all feasible mitigation be adopted or that the project be denied for inducing significant unmitigated adverse impacts on the environment.

66. CEQA is primarily a public disclosure statutory scheme allowing the affected community to be informed and members of the public to voice their opinion, and to have input, about projects that may affect their environment. CEQA requires a review of the environmental impacts of overall activities ("the whole of an action" – 14 Cal. Code Regs. § 15378(a)) defined as "projects." (Pub. Res. Code § 21065.) This strong, broad right of public participation under CEQA has a political component (i.e., CEQA allows the compilation of a record concerning the approval of development projects that can be used by the public to vote environmentally insensitive decision makers out of office come election day), the violation or deprivation of which has constitutional ramifications on an

---

[11] Mr. Hill appeared at the May 31 evidentiary hearing, at the Committee's request, to corroborate the Staff's and Applicant's proposed mitigation approach and to answer Committee questions. (5/31/06 RT 5-24.)

[12] The staff-to-staff MOU, signed by the staff directors of both agencies, was

affected community as well as the public at large.

67.    Additionally, in deferring the mitigation plan until after the project is approved the CEC as the lead agency under CEQA is "piecemealing" the overall activity. CEQA strongly forbids this kind of "chopping up [of] a proposed project into bite-size pieces which, individually considered, might be found to have no significance on the environment." (Kings County Farm Bureau v. City of Hanford (1990) 221 Cal.App.3d 692, 716, citing Orinda Assn. v. Board of Supervisors (1986) 182 Cal.App.3d 1145, 1171, 1172; see also Bozung v. LAFCO (1975) 13 Cal.3d at 283-284; Sundstrom v. County of Mendocino (1988) 202 Cal.App.3d 296, 309.)

68.    Therefore the proposed project, and all associated activities constituting the "whole of an action" being carried out by the public agencies involved capable of having an adverse environmental impact (14 Cal. Code Regs. § 15378(a); see also Pub. Res. Code § 21065), and therefore the proposed SFERP and the proposed remedial actions for the cleanup of contamination on the site considered together must be subjected to environmental review pursuant to CEQA to ensure that all the entire project's adverse, potentially significant impacts on the Bayview Hunters Point community, as well as the entire region in which the project is located, are fully and fairly investigated, identified, analyzed, evaluated and, perhaps most importantly of all, mitigated – while also ensuring that project alternatives capable of avoiding or reducing the impacts are considered and, if feasible, adopted.

69.    For example the Decision at page 227explains that petitioners argued that the approach agreed upon by Applicant and Staff violates CCSF's ordinances and CEQA.

---

docketed on June 6, 2006, and placed on the Commission's SFERP website.

(CARE Opening Brief at page 24.) CARE urges that '...deferring mitigation until after the project is approved...' denies public input to the decision-making process and amounts to a 'piecemeal' analysis prohibited by CEQA (Id. at 25)." The PMPD failed to provide adequate citation of evidence that "piecemeal" analysis and deferred public participation in the SFBRWQCB approved Human Health Risk Assessment (HRA), Screening Level Ecological Risk Assessment (ERA), Site Cleanup Plan (SCP), Risk Management Plan (RMP), and Site Management Plan (SMP) for the containment or removal of contamination on the project site, by the CEC, is necessary to carry out its duties, under CEQA, Title VI of the Civil Rights Act of 1964, Section 65040.12 (c) of the California Government Code" as well as the "equal protection" mandates of the Federal and State Constitutions.

**CEC'S SFERP Decision does not comply with the LORS established by the Board of Supervisors to protect the minority population from additional energy production facilities**

70.   The CCSF has established conditions precedent to the siting of any more electrical generation in southeast San Francisco. Ordinance 124-01 provides policy guidance about the City's objectives for the development of generation in Southeast San Francisco. In May 2001, the San Francisco Board of Supervisors adopted Ordinance No. 124-01 establishing City policy for the development of electrical generating units at the Potrero Power Plant in Southeast San Francisco.

71.   In that ordinance, the Board of Supervisors found that:

(A) The Energy Resources Conservation and Development Commission (California Energy Commission [CEC]) has recognized Southeast San Francisco as a minority community entitled to environmental justice.

(B) All of the major electrical generating units in San Francisco are located in Southeast San Francisco, which includes the Bayview, Hunters Point, Potrero Hill, and the Dogpatch neighborhoods.

(C) Southeast San Francisco has a disproportionate number of industrial and polluting facilities.

(D) Southeast San Francisco has an extraordinarily high rate of childhood asthma and other serious respiratory diseases.

(E) Fossil fuel generation is associated with pollutants that damage public health.

(F) Oil-fueled generation, such as that produced by the Potrero Power Plant Units 4, 5, and 6 known as "Peakers," is potentially more harmful than natural gas-fueled generation.

(G) Alternative fuel sources are more protective of the environment and human health than fossil fuel generation.

72.    The CEC did not comply with Ordinance 124-01 which sets forth a series of requirements for any new fossil-fueled power generation in Southeast San Francisco. The requirements are designed to minimize adverse impacts from additional power plant development in the region. The requirements stress (1) reduction of potential and actual emissions of criteria, toxic and hazardous air pollutants; (2) limiting or eliminating the operation of the peaking units at the Potrero Power Plant; (3) cleanup and eventual shut down of Potrero Power Plant Unit 3; and (4) mitigation of the adverse social, economic, cultural, environmental, and public health impacts from the new generation on the impacted communities in Southeast San Francisco.

73.    The decision fails to accomplish all the goals stated in Ordinance 124-01. The decision allows the use of Emission Reduction Credits created in 1985 years before the

adverse environmental conditions that prompted the passage of Ordinance 124-01 in the community were recognized.  the decision does not  mitigate the recognized negative air quality impacts of PM 2.5 that were deemed by all parties to the proceeding  as and adverse impact under CEQA. The decision does not limit or shut down the Potrero Peaking units or the Potrero 3 unit. The decision does not mitigate the adverse social, economic, cultural, environmental, and public health impacts from the new generation on the impacted communities in Southeast San Francisco. Furthermore, the additional air pollution from the plant in addition to the numerous industrial projects being sited by the applicant will create severe adverse environmental impacts within the adjacent residential low income minority neighborhoods. Instead of eliminating air quality impacts in residential neighborhoods in southeast San Francisco, the SFERP adds an additional pollution source in violation of Ordinance 124-01.

### COMMON CHARGING ALLEGATIONS (ALLEGED AGAINST ALL RESPONDENTS, DEFENDANTS, AND REAL PARTIES IN INTEREST)

74.    The paragraphs set forth above are re-alleged and incorporated herein by reference.

75.    Petitioner has no plain, speedy and adequate remedy in the ordinary course of law in that, unless this Court issues its writ of mandate or injunctive relief vacating the CEC's approval of the Decision and all approvals implementing the Decision, said Decision and approvals challenged herein would violate applicable statutory, constitutional and common law. No monetary damages or other legal remedy could adequately compensate petitioner for the harm to his due process rights, essential environmental reviews, orderly land planning processes, and environmental quality, including petitioners' comfortable enjoyment of their lives and property, threatened by the CEC's approvals.

76.    Petitioners have exhausted all available administrative remedies by presenting oral and written objections to the CEC demonstrating that the SFERP would violate applicable constitutional, statutory and common laws, and harm petitioner and the public, in the respects alleged hereinabove. The CEC has ignored or dismissed petitioners' objections such that petitioner has no remaining certain remedy for the CEC's unlawful conduct except this Court's review.

77.    An actual controversy exists between petitioners and the other parties. Petitioners contends that the CEC has acted in violation of constitutional, statutory and common laws as alleged herein above, and must therefore vacate and set aside its approval of the Decision and its implementation. Petitioner is informed and believes, and thereon alleges, that the other parties dispute these contentions. A judicial resolution of this controversy is therefore necessary and appropriate.

78.    The CEC and the CCSF are threatening to proceed with implementation of the SFERP by constructing it without first complying with the foregoing statutory and common laws. The threatened construction of the SFERP would irreparably harm petitioner and the public in the respects alleged above. Accordingly, a temporary restraining order and preliminary and permanent injunctions should issue restraining the CEC and the CCSF from proceeding with their plans to approve and implement the Decision without compliance with applicable law.

**FIRST CAUSE OF ACTION**
**(Failure to Provide Fair Hearing in Violation of the**
**Procedural Due Process Protections of the Code of Civil Procedure and the**
**California and United States Constitutions)**

(Alleged against all Respondents, Defendants, and Real Parties In Interest)

79.     The paragraphs set forth above are re-alleged and incorporated herein by reference.

80.     Under Public Resources Code section 25531(b), Code of Civil Procedure sections 1085 and 1094.5, article I, section 7 of the California Constitution and the Fourteenth Amendment to the United States Constitution, the CEC had a duty to provide petitioner a fair hearing with respect to his concerns regarding and objections to the SFERP. Petitioner was entitled to: (1) a hearing process free of prejudice and bias by Commission members and their staff, (2) objective review and analysis of the SFERP by the Commission's staff, and (3) the Commission's consideration of highly relevant evidence.

81.     Contrary to the Commission's duty to afford petitioner due process in the Commission's review, deliberations and decisions respecting the SFERP, the Commission proceeded in excess of its jurisdiction, abused its discretion, and denied petitioner due process in the respects alleged above.

## SECOND CAUSE OF ACTION
### (Violation of the Warren-Alquist Act)

(Alleged against all Respondents, Defendants, and Real Parties In Interest)

82.     The paragraphs set forth above are re-alleged and incorporated herein by reference.

83.     The Warren-Alquist Act provides, in Public Resources Code section 25525, that "[t]he Commission shall not certify any facility... when it finds... that the facility does not conform with any applicable state, local, or regional standards, ordinances, or laws, unless the Commission determines that such facility is required for public convenience and necessity and that there are not more prudent and feasible means of achieving such public convenience and necessity." Contrary to this statutory direction, the CEC purported to certify the SFERP notwithstanding its violation of numerous local laws, standards and ordinances, as alleged herein.

84.    For the foregoing reasons, the CEC's Decision approving the Project violates the
Warren-Alquist Act, and must be set aside.

### THIRD CAUSE OF ACTION
### (Violation of the California Environmental Quality Act)

(Alleged against all Respondents, Defendants, and Real Parties in Interest)

85.    The paragraphs set forth above are re-alleged and incorporated herein by reference.

86.    The CEC's power-plant site certification program under the
Warren-Alquist Act has been approved by the Secretary of the California Resources Agency
under Public Resources Code section 21080.5 and CEQA Guidelines section 15251(k) as a
certified regulatory program exempt from CEQA's requirement for preparation of
environmental impact reports ("EIRs"). The CEC nonetheless has a duty under CEQA to
prepare an environmental document for the Project that must include (1) a description of the
Project, (2) alternatives to the Project, and (3) mitigation measures to minimize any
significant adverse environmental impact. CEQA also requires the CEC to meaningfully
assess the Project's cumulative environmental impacts and respond in writing to all
significant environmental points raised by the public during the administrative evaluation
process. The CEC failed to address or mitigate the projects admitted adverse impact under
CEQA from nitrogen deposition from ammonia emission and $NO_x$ emissions to sensitive
species habitat. The CEC failed to mitigate the air quality impacts from particulate matter of
two and a half microns diameter or less (PM 2.5) from the project. The CEC failed to
provide an adequate analysis of the additional projects sponsored by the applicant that
surround the SFERP.       The CEC must also solicit meaningful public input on its
environmental document.

87. Contrary to CEQA, in reviewing and purporting to approve the Project, the CEC failed to (1) acknowledge the Project's potential significant adverse environmental impacts to minority residents and sensitive habitat on San Bruno Mountain, (2) address a reasonable range of alternatives to, and mitigation measures for, the Project to minimize its potentially significant adverse impacts, (3) meaningfully assess the Project's cumulative environmental impacts, (4) solicit meaningful public input on its environmental document, and (5) respond in writing to all significant environmental points raised by the public during the administrative evaluation process, as alleged hereinabove.

88. For the foregoing reasons, the CEC's Decision approving the Project violates CEQA, and must be set aside.

## FOURTH CAUSE OF ACTION
### (Violation of the Supremacy Clause of Article VI of the United States Constitution)

(Alleged against all Respondents, Defendants, and Real Parties in Interest)

89. The paragraphs set forth above are re-alleged and incorporated herein by this reference.

90. The Supremacy Clause of Article VI of the United States Constitution, together with Public Resources Code section 25525, forbids the Commission from purporting to certify the siting of any energy facility in conflict with applicable federal laws or regulations. Contrary to this prohibition, the Decision purports to certify the Project despite its lack of compliance with the federal Clean Air Act and regulations promulgated there under, including but not limited to the California State Implementation Plan, codified at 40 Code of Federal Regulations section 52.220(c) (63), and the federal PSD regulations codified at 40 Code of Federal Regulations section 51.166. Consequently, the Decision offends the Supremacy Clause of Article VI of the United States Constitution, and accordingly must be set aside.

91.    The Civil Rights Act Sec. 2000d, Prohibition against exclusion from participation in,

denial of benefits of, and discrimination under federally assisted programs on ground of race,

color, or national origin

> No person in the United States shall, on the ground of race, color, or national
> origin, be excluded from participation in, be denied the benefits of, or be
> subjected to discrimination under any program or activity receiving Federal
> financial assistance (Pub. L. 88-352, title VI, Sec. 601, July 2, 1964, 78 Stat.
> 252),

92.    Environmental Justice is defined in Government Code Section 65040.12(c) as: "…the

fair treatment of people of all races, cultures, and incomes with respect to the development,

adoption, implementation, and enforcement of environmental laws, regulations, and

policies."

93.    The CEC, BAAQMD, and the SFBRWQCB, as the agency responsible for

"coordinating efforts to attain and maintain ambient air quality standards,"[13] "coordinat[ing],

encourag[ing], and review[ing] the efforts of all levels of government as they affect air

quality,"[14] and "undertak[ing] control activities in any area wherein it determines that the

local or regional authority has failed to meet the responsibilities given to it by this division or

by any other provision of law,"[15] has the authority and the responsibility to ensure that the

Districts[16] also comply with the EJ requirements imposed by state and federal law. This may

be done formally or informally, by binding regulations, directory guidance, or informal

---

[13] Health and Safety Code §39003

[14] Health and Safety Code §39500

[15] Health and Safety Code §39002, emphasis added. (See also, Health and Safety
Code sections 41500 – 41505)

[16] We note that Health and Safety Code section 39037 defines "local or regional
authority" as "the governing board of any city, county, or district." However, it is beyond
the scope of this memo to opine on the extent to which the ARB could direct city and
county land use authorities to address EJ cumulative impact issues in carrying out the air
quality aspects of their facility siting decision-making and the best means to use in doing

cooperation and discussion.

94.     While CEQA is not the only means available to ensure that EJ becomes a reality, it is one option that is currently up and running; that public agencies and the private sector to whom they issue permits have substantial experience with; that has spawned considerable regulatory guidance and decisional precedent; that can be readily adapted to the task at hand without creating another layer of bureaucratic report-making; that has been endorsed by the Legislature and the federal government; that meshes well both procedurally and substantively with the regulatory law implemented by the CEC, BAAQMD, and the SFBRWQCB and the Districts; and that can be supplemented with additional EJ compliance tools as necessary or desirable.

## FIFTH CAUSE OF ACTION
### (Entitlement to Attorneys' Fees under Code of Civil Procedure Section 1021.5 and Government Code Section 800)

(Alleged against all Respondents, Defendants, and Real Parties In Interest)

95.     The paragraphs set forth above are re-alleged and incorporated herein by this reference.

96.     Petitioner is entitled to recover reasonable attorneys' fees under each of his causes of action herein pursuant to Code of Civil Procedure section 1021.5 and Government Code section 800, in that the CEC's approvals herein challenged are arbitrary and capricious, and the successful disposition of this Verified Petition for Writ of Mandate will result in the enforcement of an important right affecting the public interest, a significant benefit will be conferred upon the general public and a large class of persons arising from enforcement of state laws and regulations protecting the quantity and quality of the State's waters and

so.

associated public trust resources, and the necessity and financial burden of private enforcement are such as to make the award appropriate.

### PRAYER FOR RELIEF

WHEREFORE, petitioner prays for relief as follows:

1. On the First Cause of Action, petitioner seeks this Court's alternative and peremptory writs of mandate, declaratory judgment, and preliminary and permanent injunctions setting aside and enjoining the CEC's approvals purporting to adopt and implement the Decision on the grounds that such approvals violate the procedural due process protections of the Code of Civil Procedure and the California and United States Constitutions;

2. On the Second Cause of Action, petitioner seeks this Court's alternative and peremptory writs of mandate, declaratory judgment, and preliminary and permanent injunctions setting aside and restraining the CEC's approvals purporting to adopt and implement the Decision on the grounds that such approvals violate the Warren-Alquist Act;

3. On the Third Cause of Action, petitioner seeks this Court's alternative and peremptory writs of mandate, declaratory judgment, and preliminary and permanent injunctions setting aside and restraining the CEC's approvals purporting to adopt and implement the Decision on the grounds that such approvals violate the California Environmental Quality Act;

4. On the Fourth Cause of Action, petitioner seeks this Court's alternative and peremptory writs of mandate, declaratory judgment, and preliminary and permanent injunctions setting aside and restraining the CEC's approvals purporting to adopt and implement the Decision on the grounds that such approvals violate Public Resources

Code section 25525 and the Supremacy Clause of Article VI of the United States Constitution;

    5.    On the Fifth Cause of Action, petitioner seeks his reasonable attorneys' fees;

    6.    For costs of suit herein; and

    7.    For such other and further relief as the Court deems just and proper.

January 1, 2007

Respectfully submitted,

_Martin Homec_

MARTIN    HOMEC    Attorney    for
Petitioners/Plaintiffs    CARE    and    Robert
Sarvey

## VERIFICATION

I am the attorney for petitioners/plaintiffs CARE and ROBERT SARVEY in this action. I am informed and believe, and on that basis allege, that the matters therein are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of January, 2007.

MARTIN HOMEC

<center>SUPPORTING MEMORANDUM OF
POINTS AND AUTHORITIES</center>

## I.    INTRODUCTION

1.    This Court's review of the CEC's Decision extends to the question whether the Commission "regularly pursued its authority, including a determination of whether the ... decision under review violates any right of the petitioner under the United States Constitution or the California Constitution." Public Resources Code § 25531(b). The CEC failed to "regularly pursue its authority" in that it (1) failed to comply with its own enabling Act and implementing regulations; (2) failed to comply with local laws, ordinances, regulations and standards; (3) failed to comply with CEQA's requirements for adequate environmental review including acknowledgment of this Project's potentially significant adverse impacts, consideration of alternatives and mitigation measures to avoid or reduce those impacts, and the solicitation of and adequate response to, public comments on the Project; and (4) denied petitioner the due process to which he is entitled under the United States Constitution and the California Constitution. Each of these points is elucidated more fully below.

## II.    THE SUPREME COURT HAS JURISDICTION TO REVIEW THE CEC'S DECISION APPROVING THE PROJECT

2.    After May 22, 2001, when chapter 12 of the Statutes of 2001, 1st Ex. Sess., section 8, became effective, Public Resources Code section 25531(a) was amended to read "[t]he decisions of the commission on any application for certification of a site and related facility are subject to judicial review by the Supreme Court of California." Id.

3.    Public Resources Code section 25901 directs that "any aggrieved person may file with the Superior Court a petition for writ of mandate for review" of certain decisions of the CEC, "except as provided in Section 25531," the provision governing energy siting

decisions. Public Resources Code sections 25901 and 25531 appear to conflict with article VI, section 10 of the California Constitution, which invests the superior courts of this state with "original jurisdiction in all causes except those given by statute to other trial courts."

4.      Public Resources Code section 25531(b) also provides that this Court may not review the "ultimate facts and the findings and conclusions of the commission" except as provided in the Warren-Alquist Act itself. However, under the Separation of Powers Doctrine, this Court's factual review of constitutional challenges to the CEC's decisions may not be foreclosed by mere statutory direction. *Ohio Valley, supra; Southern California Edison Co. v. Railroad Commission of California* (1936) 6 Cal.2d 737, 747; *Market Street Railroad Company v. Railroad Commission* (1944) 24 Cal.2d 378, 398; *Horn v. County of Ventura* (1979) 24 Cal.3d 605, 616; *Selinger v. City Council* (1989) 216 Cal.App.3d 259, 274.

5.      Thus, to the extent petitioner raises factual issues in conflict with the Commission's findings and conclusions, or alleges that the Commission's manner of conducting its proceeding deprived petitioner of his federal constitutional rights, the Legislature's attempted restriction of the reviewing court's scope of review must fall where necessary to vindicate petitioner's constitutionally-protected rights. This point is particularly pertinent in the case at bar, because petitioner alleges that the Commission's findings were the product of a biased hearing process that violated petitioner's due process rights.

## III.    THE COMMISSION VIOLATED ITS OWN LAWS AND IMPLEMENTING REGULATIONS

6.      An egregious violation of due process and equal protection under the laws of California and the United States federal government that has occurred during the CEC siting process. The CCSF filing wrongly included the name and address of a person, Mr. Varanini, stating support of a California state agency that is no longer funded by the State

budget. The CEC Commissioners James Boyd and John Geesman knew that the California Consumer Power and Conservation Financing Authority was no longer operating and had not existed for over two years and yet, in 2006, accepted evidence and endorsements from a Eugene Emilio Varanini, a former representative of that agency.

7.    The CCSF pleadings in this CEC proceeding include a representative of a California state agency that ceased to operate17 in 2004, the California Consumer Power and Conservation Financing Authority (known as the California Power Authority). The representative, Mr. Varanini, added his endorsement of the project as a representative of California Power Authority even though that agency was removed from the California budget in 2004 and never was funded again. The CCSF also included Mr. Varanini as a representative of a California state agency in its supports its position in this FERC proceeding, Docket No. EL06-89, because there is no such agency.

8.    The CEC failed to meaningfully analyze, and issue adequate findings supporting, SFERP's compliance with local ordinances, regulations and standards ("LORS"), in direct violation of the Warren-Alquist Act and the CEC's own implementing regulations. The CEC's SFERP Decision reflects a breach of the CEC's statutory duty to comply with local land use decisions and policies except in extraordinary circumstances buttressed by detailed findings not made here.

## IV.    THE CEC MUST ASSURE COMPLIANCE WITH LORS

9.    The CEC, as established by the Warren-Alquist Act and within constitutional limitations, has exclusive state regulatory authority over certain power plant siting decisions. This broad authority entails correlative obligations to ensure the CEC's compatibility with

---

17 See http://www.capowerauthority.ca.gov/News/UpcomingBoardMeetings.htm

the overarching state and local governmental structure and regulatory regime. Among these

obligations, the CEC must assure that the power plant conforms to "public safety standards

and the applicable air and water quality standards, and with other relevant local, regional,

state, and federal standards, ordinances, or laws ["LORS"]." Pub. Resources Code §§

25523(d) (1) and 25525. The Act directs further that:

> If the commission finds that there is noncompliance with any state, local, or
> regional ordinance or regulation in the [power plant siting] application, it
> shall consult and meet with the state, local, or regional governmental agency
> concerned to attempt to correct or eliminate the noncompliance. If the
> noncompliance cannot be corrected or eliminated, the commission shall
> inform the state, local or regional governmental agency if it makes the
> ["override"] findings required by [Public Resources Code] Section 25525.

10.    Pub. Resources Code § 25523(d) (1). The CEC's duty to assure LORS compliance

provides local agencies reassurance that their actions, including long term planning, will not

be abruptly derailed by a CEC siting decision, consistent with the Legislature's intent:

> The Legislature further finds and declares that in planning for future electrical
>
> generating and related transmission facilities state, regional, and *local plans*
>
> *for land use, urban expansion, transportation systems, environmental*
>
> *protection, and economic development should be considered.*

Pub. Resources Code § 25003.

11.    If compliance with LORS is not achievable, the CEC may not approve the facility

unless it issues an "override" statement confirming that the plant is necessary to satisfy

"public convenience and necessity":

> The commission shall not certify any facility contained in the application
> when it finds . . . that the facility does not conform with any applicable state,
> local, or regional standards, ordinances, or laws, unless the commission
> determines that such facility is required for public convenience and necessity
> and that there are not more prudent and feasible means of achieving such
> public convenience and necessity.

Pub. Resources Code § 25525.

12.    Contrary to this statutory direction, and subverting the CEC's obligation to local

agencies and communities, the CEC's siting of the SFERP violates local planning LORS.

First, the CEC failed to analyze the SFERP's compliance with all relevant LORS as required

by the Warren-Alquist Act. The CEC's approval Decision, indeed, lacks any significant

LORS analysis, and is virtually devoid of meaningful discussion of relevant LORS as

required by Public Resources Code 25525. Second, despite the facility's noncompliance

with LORS, the CEC did not issue the "override statement" required by section 25525.

13.    The CEC's failure to address LORS compliance issues is fatal to its decision.

According to an Attorney General Opinion, issued shortly after the Warren Alquist Act

became effective, the CEC's duty to determine LORS compliance is fundamental and

pivotal:

> In fact, *local ordinances, laws, and standards are to be given such weight as*
> *to prevent or substantially influence the construction of a proposed facility*
> *not in compliance therewith* if there exists a more prudent and feasible means
> of achieving the public convenience and necessity than constructing the
> facility as proposed or on the site proposed.

58 Ops.Cal.Atty.Gen. 729, 745-746.

14.    The CEC's duty to comply with LORS reflects a careful legislative balance. The

Legislature empowered the CEC with broad responsibilities and authority. In exchange, the

Legislature required compliance with LORS (except in special circumstances) so as to

preserve the coherency of local planning and land use oversight. The CEC has failed to

apply LORS to the SFERP and thereby violated the Warren-Alquist Act, as the following

discussion demonstrates.

## V.    THE COMMISSION VIOLATED CEQA

17.    Although the CEC's power-plant site certification program under the Warren-

Alquist Act has been approved by the Resources Secretary under Public Resources Code

section 21080.5 and CEQA Guidelines section 15251(k) as a certified regulatory program
exempt from CEQA's requirement for preparation of EIRs, the CEC nonetheless had
substantial responsibilities under CEQA in this case. It had a duty to assure that the
environmental document it prepared for the Project included a description of the Project,
alternatives to the Project, and mitigation measures to minimize the Project's potentially
significant adverse environmental impacts. Public Resources Code section 21080.5(d)
(3) (i); *Schoen v. Department of Forestry and Fire Protection* (1997) 58 Cal.App.4th 556,
567, 572; CEQA Guidelines section 15252.

18.    The CEC also had a duty to meaningfully assess the Project's cumulative
environmental impacts, and provide the public with an opportunity to review the CEC's
cumulative impacts analysis. *Environmental Protection Information Center v. Johnson*
(1985) 170 Cal.App.3d 604, 624-625, 631; *Friends of the Old Trees v. Department of
Forestry and Fire Protection* (1997) 52 Cal.App.4th 1383, 1393-94; *Schoen, supra,* 58
Cal.App.4th at 566-577. And, the CEC had a duty to assure that its environmental
document supported its conclusions with "references to specific scientific and empirical
evidence." *Mountain Lion Coalition v. California Fish and Game Commission* (1989)
214 Cal.App.3d 1043, 1047.

19.    Furthermore, the CEC had a duty to solicit meaningful public input on its
environmental document, and to respond in writing to all significant environmental points
raised by the public during the administrative evaluation process. Public Resources Code
section 21080.5(d)(2)(iv); *Gallegos v. California State Board of Forestry* (1978) 76
Cal.App.3d 945, 952-955; *Mountain Lidn Foundation v. Fish and Game Commission*
(1997) 16 Cal.4th 105, 133; *Mountain Lion Coalition, supra,* 214 Cal.App.3d at 1052.

20.    Finally, the CEC had a duty to adhere to the basic policies and substantive

obligations established by CEQA. *Sierra Club v. State Board of Forestry* (1994) 7
Cal.4th 1215, 1236-37; *Californians for Native Steelhead Salmon v. Department of
Forestry* (1990) 221 Cal.App.3d 1419, 1422.

21.    The CEC failed to discharge its duties under CEQA. It ignored or understated the
LORS with which the SFERP conflicted, thereby shielding this Project's adverse effects
from public disclosure. It ignored alternative sites, even in the face of local land use
plans directing that industrial uses such as the SFERP be located elsewhere or provide for
the shutdown of existing power generating facilities.

22.    Most importantly of all, the CEC's suppression of good faith, critical analysis of
the Project's environmental impacts, refusal to acknowledge the Project's obvious
conflict with relevant ordinances established to protect the admitted low income minority
communities established to protect these underprivileged citizens from the additional
sting of electrical generation in their communities and  refusal to recognize the Project's
clear potential for significantly impacting the environment, refusal to consider
petitioner's expert evidence that the Projects ammonia emissions clearly impacted
habitat for endangered species and, and manifest bias against petitioner and other public
representatives during the public hearings offends CEQA's paramount objective of
ensuring "the integrity of the process of decision by precluding stubborn problems or
serious criticism from being swept under the rug." *Sutter Sensible Planning, Inc. v.
Board of Supervisors* (1981) 122 Cal.App.3d 813, 820; *Laurel Heights Improvement
Association v. Regents of the University of California* (1988) 47 Cal.3c 376, 392 (CEQA
should be "scrupulously followed," so that "the public will know the basis on which its
responsible officials either approve or reject environmentally significantly action," and
will be able to "respond accordingly to action with which it disagrees ... The EIR process

protects not only the environment but also informed self-government.")

23.    For the foregoing reasons, the CEC's purported approval of the Project violated CEQA.

## VI.    THE COMMISSION VIOLATED PETITIONER'S DUE PROCESS RIGHTS

24.    The Fourteenth Amendment to the federal Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law." *Id.* The California Constitution, article I, section 7, likewise provides that "[a] person may not be deprived of life, liberty, or property without due process of law. *Id.* These due process guarantees apply to agency adjudicatory proceedings involving land uses that may affect the property rights of aggrieved citizens. *Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 549; *Horn v. County of Ventura, supra*, 24 Cal.3d at 612.

25.    In the adjudicatory context, the right to a fair hearing is a cornerstone of due process. *Gibson v. Berryhill* (1973) 411 U.S. 564, 578; *Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 657. California courts have found due process violations when the circumstances indicated a probability of agency unfairness. *Applebaum v. Board of Directors, supra*; *Mennig v. City Council* (1978) 86 Cal.App.3d 341, 350; *American Motors Sales Corp. v. New Motor Vehicle Board* (1977) 69 Cal.App.3d 983, 991.

26.    In *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1172-73, for example, the court found that petitioners had not been afforded a fair hearing because one council member who voted against petitioners' permit application had a conflict of interest on the project. So too in the case at bar, the Commission was manifestly biased against petitioner to the point where he was prevented from presenting his own expert's

testimony, and the Commission ignored the written reports of petitioner's expert documenting the Project's adverse impact on endangered species. Under the foregoing authorities, it is plain that petitioner was deprived of his due process rights to a fair hearing.

## VII.    CONCLUSION

27.    Petitioner has demonstrated through his Verified Petition and supporting documentation that the CEC's approval of the Project violates petitioner's due process rights, CEQA's requirements, the Warren-Alquist Act, the CEC's own regulations, and local laws, ordinances, regulations and standards. Accordingly, this Court should issue its writ of mandate vacating the CEC's Decision approving the Project, and remand this matter to the Commission for further proceedings consistent with these laws.

Dated:                          Respectfully submitted,

January 11, 2007

Martin Homec

MARTIN HOMEC Attorney for Petitioners/Plaintiffs
CARE and Robert Sarvey

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | TELEPHONE NO. | FOR COURT USE ONLY |
|---|---|---|
| LAW OFFICES OF MARTIN HOMEC<br>POST OFFICE BOX 4471<br>DAVIS         CA 95617 | 530.867-1850 | |
| | Ref. No. or File No. | |

Insert name of court and name of judicial district and branch court, if any:
CALIFORNIA SUPREME COURT

SHORT TITLE OF CASE:
CALIFORNIANS vs CALIFORNIA

| | DATE | TIME | DEPT/DIV | CASE NUMBER |
|---|---|---|---|---|
| 071730 | | | | 04-AFC-1 |

## PROOF OF SERVICE

1.  AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION, AND I SERVED COPIES OF THE:

    VERIFIED PETITION FOR WRIT OF MANDATE

2.  a.  PARTY SERVED: **SAN FRANCISCO BAY REGIONAL WATER QUALITY CONTROL BOARD**

    b.  PERSON SERVED: **TOMASA DUENAS**

        RELATIONSHIP: **AUTHORIZED AGENT**

    c.  ADDRESS: 1515 CLAY STREET
                 SUITE 1400
                 OAKLAND          CA 94612

3.  I SERVED THE PARTY NAMED IN ITEM 2

    BY PERSONALLY DELIVERING THE COPIES ON **01/11/07** AT **01:55 PM**

4.  PERSON SERVING: THEODORE R. MUSGRAVE          FEE FOR SERVICE:$     137.25



P.O. Box 4910 (94596-0910)
2158 North Main Street, Suite E
Walnut Creek, CA 94596-3708

Tel. (925) 945-1922 • Fax (925) 945-1771

Registered California process server ☐
(1) ☑ Employee     ☐ Independent contractor
(2) Registration No.
(3) County:
(4) Expiration Date:

☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  JAN 1 1 2007          ► 
                                                              SIGNATURE



  
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address) | TELEPHONE NO. |
|---|---|
| LAW OFFICES OF MARTIN HOMEC<br>POST OFFICE BOX 4471<br>DAVIS          CA 95617 | 530.867-1850 |
| | Ref. No. or File No. |

Insert name of court and name of Judicial district and branch court, if any:
CALIFORNIA SUPREME COURT

| SHORT TITLE OF CASE |  |  |  |  |
|---|---|---|---|---|
| CALIFORNIANS vs CALIFORNIA |  |  |  |  |
| DATE 071732 | TIME: | DEPT./DIV. | CASE NUMBER 04-AFC-1 | |

## PROOF OF SERVICE

1.  AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION. AND I SERVED COPIES OF THE:

    VERIFIED PETITION FOR WRIT OF MANDATE

2.  a.  PARTY SERVED: CALIFORNIA ENERGY COMMISSION

    b.  PERSON SERVED: Kerry Willis

        RELATIONSHIP: Senior Staff Counsel

    c.  ADDRESS: 1516 NINTH STREET
                  SACRAMENTO      CA 95825

3.  I SERVED THE PARTY NAMED IN ITEM 2

    BY PERSONALLY DELIVERING THE COPIES ON 1|11|07 AT 3:50pm

4.  PERSON SERVING: Tanya Thomas    FEE FOR SERVICE:$          .00



P.O. Box 4910 (94596-0910)
1158 North Main Street, Suite E
Walnut Creek, CA 94596-5708

Tel. (925) 945-1922 • Fax (925) 945-1771

Registered California process server ☐
(1) ☐ Employee    ☒ independent contractor
(2) Registration No.
(3) County:
(4) Expiration Date:

☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Date:    JAN 1 1 2007    ▶_____
                                          SIGNATURE

♻ Printed on Recycled Paper