# REGULATION 2
# PERMITS
# RULE 1
# GENERAL REQUIREMENTS

## INDEX

**2-1-100     GENERAL**

2-1-101     Description
2-1-102     Applicable Requirements
2-1-103     Exemption, Source not Subject to any District Rule
2-1-104     Deleted October 7, 1998
2-1-105     Exemption, Registered Statewide Portable Equipment
2-1-106     Limited Exemption, Accelerated Permitting Program
2-1-109     Deleted June 7, 1995
2-1-110     Deleted June 7, 1995
2-1-111     Deleted June 7, 1995
2-1-112     Deleted June 7, 1995
2-1-113     Exemption, Sources and Operations
2-1-114     Exemption, Combustion Equipment
2-1-115     Exemption, Particulate Sources at Quarries, Mineral Processing and Biomass Facilities
2-1-116     Exemption, Furnaces, Ovens and Kilns
2-1-117     Exemption, Food and Agricultural Equipment
2-1-118     Exemption, Surface Preparation and Cleaning Equipment
2-1-119     Exemption, Surface Coating and Printing Equipment
2-1-120     Exemption, Dry Cleaning Equipment
2-1-121     Exemption, Material Working and Handling Equipment
2-1-122     Exemption, Casting and Molding Equipment
2-1-123     Exemption, Liquid Storage and Loading Equipment
2-1-124     Exemption, Semiconductor Manufacturing
2-1-125     Exemption, Printed Circuit Board Manufacturing Equipment
2-1-126     Exemption, Testing Equipment
2-1-127     Exemption, Chemical Processing Equipment
2-1-128     Exemption, Miscellaneous Equipment
2-1-129     Major Facility Review

**2-1-200     DEFINITIONS**

2-1-201     Emission Reduction Credits
2-1-202     Complete Application
2-1-203     Fugitive Emissions
2-1-204     Major Facility
2-1-205     National Ambient Air Quality Standards (NAAQS)
2-1-206     Organic Compound
2-1-207     Organic Compound, Non-Precursor (NPOC)
2-1-208     Organic Compound, Precursor
2-1-209     Reasonably Available Control Technology (RACT)
2-1-210     Start-Up Period
2-1-211     CEQA
2-1-212     EIR
2-1-213     Facility
2-1-214     Federally Enforceable
2-1-215     Hazardous Air Pollutant (HAP)
2-1-216     Major Facility Review (MFR)

2-1-217    Potential to Emit
2-1-218    Regulated Air Pollutant
2-1-219    Synthetic Minor Operating Facility
2-1-220    Portable Equipment
2-1-221    Source
2-1-222    Toxic Air Contaminant (TAC)
2-1-223    Year
2-1-224    Responsible Laboratory Management Practices
2-1-225    Health Risk Screening Analysis (HRSA)
2-1-226    Statewide Portable Equipment Registration Program
2-1-227    Substantial Use
2-1-228    Particulate Matter
2-1-229    $PM_{10}$
2-1-230    Functionally Equivalent
2-1-231    Semiconductor Fabrication Area
2-1-232    New Source
2-1-233    Alter
2-1-234    Modified Source
2-1-235    Shutdown
2-1-236    Closure
2-1-237    BACT/TBACT Workbook
2-1-238    Clean Air Act
2-1-239    Agricultural Source

**2-1-300    STANDARDS**

2-1-301    Authority to Construct
2-1-302    Permit to Operate
2-1-303    Fees
2-1-304    Denial, Failure to Meet Emission Limitations
2-1-305    Conformance with Authority to Construct
2-1-306    Mandated Reductions Not Applicable
2-1-307    Failure to Meet Permit Conditions
2-1-308    Fugitive Emissions
2-1-309    Canceled Application
2-1-310    Applicability of CEQA
2-1-311    Ministerial Projects
2-1-312    Other Categories of Exempt Projects
2-1-313    Projects Not Exempt From CEQA Review
2-1-314    Case-by-Case CEQA Determinations
2-1-315    Denial, Failure to Mitigate Significant Adverse Environmental Impacts
2-1-316    New or Modified Sources of Toxic Air Contaminants or Hazardous Air Pollutants
2-1-317    Public Nuisance Sources
2-1-318    Hazardous Substances
2-1-319    Source Expressly Subject to Permitting Requirements

**2-1-400    ADMINISTRATIVE REQUIREMENTS**

2-1-401    Persons Affected
2-1-402    Applications
2-1-403    Permit Conditions
2-1-404    Changes in Throughput and Hours of Operation
2-1-405    Posting of Permit to Operate
2-1-406    Transfer
2-1-407    Authority to Construct Expiration
2-1-408    Action on Applications
2-1-409    Regulations in Force Govern
2-1-410    Appeal
2-1-411    Permit to Operate, Final Action

2-1-412    Public Notice, Schools
2-1-413    Portable Equipment Operated Within the District
2-1-414    Loss of Exemption, Public Nuisance
2-1-415    Source Pre-Certification Procedure
2-1-416    Temporary Amnesty for Unpermitted Sources
2-1-420    Suspension
2-1-421    Appeal from Suspension
2-1-422    Revocation
2-1-423    Hearings
2-1-424    Loss of Exemption
2-1-425    Sources of Toxic Air Contaminants
2-1-426    CEQA-Related Information Requirements
2-1-427    Procedure for Ministerial Evaluations
2-1-428    Criteria for Approval of Ministerial Permit Applications
2-1-429    Federal Emissions Statement
2-1-430    Maintenance of the Permit Handbook and BACT/TBACT Workbook
2-1-431    Date of Completion
2-1-432    Determination of Complete Application

**2-1-500     MONITORING AND RECORDS**

2-1-501    Monitors
2-1-502    Burden of Proof

**2-1-600     MANUAL OF PROCEDURES**

2-1-601    Engineering Permitting Procedures
2-1-602    CEQA Guidelines

# REGULATION 2
# PERMITS
## RULE 1
## GENERAL REQUIREMENTS

(Adopted January 1, 1980)

**2-1-100    GENERAL**

**2-1-101    Description:** The purpose of Regulation 2 is to provide an orderly procedure for the review of new sources of air pollution, and of the modification and operation of existing sources, and of associated air pollution control devices, through the issuance of authorities to construct and permits to operate. The applicability of Regulation 2, Rule 1 is illustrated by Figure 2-1-101, Permit/Exemption Flow Chart. An applicant may choose to obtain a permit to operate for a source that is exempt from permit requirements. In that case, the affected source is deemed to be subject to the requirements of Section 2-1-302 until such time as an application for return to exempt status is approved.

*(Amended 7/17/91; 6/7/95; 5/17/00; 12/21/04)*

**2-1-102    Applicable Requirements:** The requirements of this Rule shall apply to Rules 2, 3, and 6 of this Regulation, unless superseded by specific requirements in Rules 2, 3, and 6.

*(Amended November 3, 1993)*

**2-1-103    Exemption, Source not Subject to any District Rule:** Any source that is not already exempt from the requirements of Section 2-1-301 and 302 as set forth in Sections 2-1-105 to 2-1-128, is exempt from Section 2-1-301 and 302 if the source meets all of the following criteria:

103.1    The source is not in a source category subject to any of the provisions of Regulation 6[(1)], Regulation 8[(2)] excluding Rules 1 through 4, Regulations 9 through 12; and

103.2    The source is not subject to any of the provisions of Sections 2-1-316 through 319; and

103.3    Actual emissions of precursor organic compounds (POC), non-precursor organic compounds (NPOC), nitrogen oxides (NOx), sulfur dioxide ($SO_2$), $PM_{10}$ and carbon monoxide (CO) from the source are each less than 10 pounds per highest day. A source also satisfies this criterion if actual emissions of each pollutant are greater than 10 lb/highest day, but total emissions are less than 150 pounds per year, per pollutant.
Note 1: Typically, any source may be subject to Regulation 6, Particulate Matter and Visible Emissions. For the purposes of this section, Regulation 6 applicability shall be limited to the following types of sources that emit $PM_{10}$: combustion source; material handling/processing; sand, gravel or rock processing; cement, concrete and asphaltic concrete production; tub grinder; or similar $PM_{10}$-emitting source, as deemed by the APCO.
Note 2: If an exemption in a Regulation 8 Rule indicates that the source is subject to Regulation 8, Rules 1 through 4, then the source must comply with all applicable provisions of Regulation 8, Rules 1 through 4, to qualify for this exemption.

103.4    The source is not an ozone generator (a piece of equipment designed to generate ozone) emitting 1 lb/day or more of ozone.

*(Adopted 6/7/95; Amended 5/17/00; 12/21/04)*

**2-1-104    Deleted October 7, 1998**

**2-1-105    Exemption, Registered Statewide Portable Equipment:** The following portable equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the equipment complies with all applicable requirements of the Statewide Portable Equipment Registration Program (California Code of Regulations Title 13, Division 3, Chapter 3, Article 5).

105.1    Confined abrasive blasting

105.2    Portland concrete batch plants

105.3   Spark ignition or diesel fired internal combustion engines used in conjunction with the following types of operations:
3.1    Well drilling service or workover rigs;
3.2    Power generation, excluding cogeneration;
3.3    Pumps;
3.4    Compressors;
3.5    Pile drivers;
3.6    Welding;
3.7    Cranes; and
3.8    Wood chippers
105.4   Sand and Gravel screening, rock crushing, pavement crushing and recycling operations;
105.5   Unconfined abrasive blasting.

*(Adopted 6/7/95; Amended 10/7/98; 5/17/00)*

**2-1-106    Limited Exemption, Accelerated Permitting Program:** Unless subject to any of the provisions of Sections 2-1-316 through 319, any new or modified source is exempt from the Authority to Construct requirements of Section 2-1-301, provided that the owner or operator submits a complete application under the Accelerated Permitting Program. A complete permit application under this program consists of: a completed permit application form and source data form(s); payment of applicable fees (the minimum permit fee required to install and operate each source); and certification that the source meets all of the criteria set forth in Sections 2-1-106.1 through 106.3. Such a source is still subject to the Permit to Operate requirements of Section 2-1-302, but will be evaluated under the Accelerated Permitting Program, as described in Section 2-1-302.2.

106.1   Uncontrolled emissions of POC, NPOC, NOx, SO2, $PM_{10}$, and CO are each less than 10 pounds per highest day; or the source is pre-certified per Section 2-1-415; and
106.2   Emissions of toxic compounds do not exceed the trigger levels identified in Table 2-5-1 of Regulation 2, Rule 5; and
106.3   The source is not subject to the public notice requirements of Section 2-1-412.

In addition to the above, the replacement of any abatement device is exempt from the Authority to Construct requirements of Section 2-1-301 and will be evaluated under the Accelerated Permitting Program in Section 2-1-302.2, provided that the owner or operator certifies for all pollutants that the abatement device is as efficient as, or more efficient than, the abatement device being replaced. In addition to the above, any alteration of a source is exempt from the Authority to Construct requirements of Section 2-1-301 and will be evaluated under the Accelerated Permitting Program in Section 2-1-302.2, provided that the owner or operator certifies for all pollutants that the alteration does not result in an increase in emissions.

*(Adopted 6/7/95; Amended 10/7/98; 5/17/00; 6/15/05)*

**2-1-109    Deleted June 7, 1995**
**2-1-110    Deleted June 7, 1995**
**2-1-111    Deleted June 7, 1995**
**2-1-112    Deleted June 7, 1995**
**2-1-113    Exemption, Sources and Operations:**

113.1   The following sources and operations are exempt from the requirements of Sections 2-1-301 and 302, in accordance with the California Health and Safety Code:
1.1    Single and multiple family dwellings used solely for residential purposes.
1.2    Agricultural sources with actual emissions of each regulated air pollutant, excluding fugitive dust, less than 50 tons per year, except for large confined animal facilities subject to Regulation 2, Rule 10.
1.3    Any vehicle. Equipment temporarily or permanently attached to a vehicle is not considered to be a part of that vehicle unless the combination is a vehicle as defined in the Vehicle Code. Specialty

vehicles may include temporarily or permanently attached equipment including, but are not limited to, the following: oil well production service unit; special construction equipment; and special mobile equipment.

1.4 Tank vehicles with vapor recovery systems subject to state certification, in accordance with the Health and Safety Code.

113.2 The following sources and operations are exempt from the requirements of Sections 2-1-301 and 302:

2.1 Road construction, widening and rerouting.

2.2 Restaurants, cafeterias and other retail establishments for the purpose of preparing food for human consumption.

2.3 Structural changes which do not change the quality, nature or quantity of air contaminant emissions.

2.4 Any abatement device which is used solely to abate equipment that does not require an Authority to Construct or Permit to Operate.

2.5 Architectural and industrial maintenance coating operations that are exclusively subject to Regulation 8, Rules 3 or 48, because coatings are applied to stationary structures, their appurtenances, to mobile homes, to pavements, or to curbs. This does not apply to coatings applied by the manufacturer prior to installation, nor to the coating of components removed from such structures and equipment.

2.6 Portable abatement equipment exclusively used to comply with the tank degassing control requirements of Regulation 8, Rule 5 and/or Regulation 8, Rule 40.

2.7 Equipment that transports, holds or stores California Public Utilities Commission regulated natural gas, excluding drivers.

2.8 Deleted May 17, 2000

2.9 Deleted May 17, 2000

2.10 Deleted May 17, 2000

2.11 Teaching laboratories used exclusively for classroom experimentation and/or demonstration.

2.12 Laboratories located in a building where the total laboratory floor space within the building is less than 25,000 square feet, or the total number of fume hoods within the building is less than 50, provided that Responsible Laboratory Management Practices, as defined in Section 2-1-224, are used. Buildings connected by passageways and/or corridors shall be considered as separate buildings, provided that structural integrity could be maintained in the absence of the passageways and/or corridors and the buildings have their own separate and independently operating HVAC and fire suppression systems. For the purposes of this subsection, teaching laboratories that are exempt per Section 2-1-113.2.11 are not included in the floor space or fume hood totals. In addition, laboratory units for which the owner or operator of the source can demonstrate that toxic air contaminant emissions would not occur, except under accidental or upset conditions, are not included in the floor space or fume hood totals.

2.13 Maintenance operations on natural gas pipelines and associated equipment, provided that emissions from such operations consist solely of residual natural gas that is vented after the equipment is isolated or shut down.

2.14 Space heating units that are not subject to Regulation 9, Rule 7, where emissions result solely from the combustion of natural gas or liquefied petroleum gas (e.g. propane, butane, isobutane, propylene, butylenes, and their mixtures) of less than 20 million BTU per hour heat input. Incinerators operated in conjunction with such sources are not exempt.

2.15 Asbestos and asbestos containing material renovation or removal conducted in compliance with Regulation 11, Rule 2 and Regulation 3.

2.16  Closed landfills that have less than 1,000,000 tons of decomposable solid waste in place and that do not have an operating landfill gas collection system.

2.17  Closed landfills that have not accepted waste for at least 30 years and that never had a landfill gas collection system.

2.18  Construction of a building or structure that is not itself a source requiring a permit.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00; 11/15/00; 5/2/01; 7/19/06)*

**2-1-114    Exemption, Combustion Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, only if the source does not emit pollutants other than combustion products, and those combustion products are not caused by the combustion of a pollutant generated from another source, and the source does not require permitting pursuant to Section 2-1-319.

114.1  Boilers, Heaters, Steam Generators, Duct Burners, and Similar Combustion Equipment:

1.1  Any of the above equipment with less than 1 million BTU per hour rated heat input.

1.2  Any of the above equipment with less than 10 million BTU per hour rated heat input if fired exclusively with natural gas (including compressed natural gas), liquefied petroleum gas (e.g. propane, butane, isobutane, propylene, butylenes, and their mixtures), or any combination thereof.

114.2  Internal Combustion Engines and Gas Turbines:

2.1  Internal combustion (IC) engines and gas turbines with a maximum output rating less than or equal to 50 hp.

2.2  Internal combustion (IC) engines and gas turbines used solely for instructional purposes at research, teaching, or educational facilities.

2.3  Portable internal combustion engines which are at a location for less than 72 consecutive hours.

2.4  Any engine mounted on, within, or incorporated into any vehicle, train, ship, boat, or barge used to provide propulsion for the vehicle, train, ship, boat, or barge. Facilities which include cargo loading or unloading from cargo carriers other than motor vehicles shall include the cargo carriers as part of the source which receives or loads the cargo.

2.5  Any engine mounted on, within, or incorporated into any vehicle, train, ship, boat, or barge used to provide propulsion for the vehicle, train, ship, boat, or barge and which is also used to supply mechanical or electrical power to ancillary equipment (e.g., crane, drill, winch, etc.) which is affixed to or is a part of the vehicle, train, ship, boat, or barge. Facilities which include cargo loading or unloading from cargo carriers other than motor vehicles shall include the cargo carriers as part of the source which receives or loads the cargo.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00; 8/1/01)*

**2-1-115    Exemption, Particulate Sources at Quarries, Mineral Processing and Biomass Facilities:** The following potential $PM_{10}$ sources are exempt from the requirements of sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

115.1  Sources located at quarrying; mineral or ore handling or processing; concrete production; asphaltic concrete production; marine bulk transfer stations; concrete or asphaltic concrete recycling; vehicle shredding; glass manufacturing; handling or processing of cement, coke, lime, flyash, fertilizer, or catalyst; or other similar facility which meets one of the following:

1.1  Mixer and other ancillary sources at concrete or aggregate product production facilities with a maximum rated production capacity less than 15 cubic yards ($yd^3$) per hour;

1.2  Other source at a facility with a maximum throughput less than 5000 tons per year;

1.3    Operating, loading and unloading a crusher or grinder which processes exclusively material with a moisture content greater than or equal to 20 percent by weight;

1.4    Operating, loading and unloading the following sources which process exclusively material with a moisture content greater than or equal to 5 percent by weight:

    1.4.1  Screen or other size classification;

    1.4.2  Conveyor, screw, auger, stacker or bucket elevator;

    1.4.3  Grizzly, or other material loading or unloading;

    1.4.4  Storage silos;

    1.4.5  Storage or weigh hopper/bin system.

1.5    Haul or access roads;

1.6    Drilling or blasting.

115.2    Sources located at biomass recycling, composting, landfill, POTW, or related facilities specializing in the operation of, but not limited to, the following:

2.1    Tub grinder powered by a motor with a maximum output rating less than 10 horsepower;

2.2    Hogger, shredder or similar source powered by a motor with a maximum output rating less than 25 horsepower;

2.3    Other biomass processing/handling sources at a facilities with a total throughput less than 500 tons per year.

*(Amended 6/7/95; 5/17/00)*

**2-1-116**    **Exemption, Furnaces, Ovens and Kilns:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

116.1    Porcelain enameling furnaces, porcelain enameling drying ovens, vitreous enameling furnaces or vitreous enameling drying ovens.

116.2    Crucible furnaces, pot furnaces, induction furnaces, cupolas, electric arc furnaces, reverbatories, or blast furnaces with a capacity of 1000 lbs or less each.

116.3    Crucible furnaces, pot furnaces, or induction furnaces for sweating or distilling that process 100 tons per year of all metals or less.

116.4    Drying or heat-treating ovens with less than 10 million BTU per hour capacity provided that a) the oven does not emit pollutants other than combustion products and b) the oven is fired exclusively with natural gas (including compressed natural gas), liquefied petroleum gas (e.g. propane, butane, isobutane, propylene, butylenes, and their mixtures), or any combination thereof.

116.5    Ovens used exclusively for the curing of plastics which are concurrently being vacuum held to a mold, or for the softening and annealing of plastics.

116.6    Ovens used exclusively for the curing of vinyl plastisols by the closed mold curing process.

116.7    Ovens used exclusively for curing potting materials or castings made with epoxy resins.

116.8    Kilns used for firing ceramic ware, heated exclusively by natural gas, liquefied petroleum gas, electricity or any combination thereof.

116.9    Parts cleaning, bake-off, and similar ovens that meet both of the following:

9.1    Oven is equipped with a secondary combustion chamber or abated by a fume incinerator; and

9.2    Internal oven volume is 1 cubic yard or less.

116.10    Electric ovens used exclusively for curing or heat-treating where no significant off-gassing or evaporation of any air contaminants occurs.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00)*

**2-1-117**    **Exemption, Food and Agricultural Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

117.1    Smokehouses or barbecue units in which the maximum horizontal inside cross sectional area does not exceed 20 square feet.

117.2    Equipment at facilities other than restaurants, cafeterias or other retail operations, which is used to dry, cook, fry, bake, or grill less than 1000 tons per year of food products.

117.3    Any oven with a total production of yeast leavened bakery products of less than 10,000 pounds per operating day, averaged over any period of seven consecutive days, and which is heated either electrically or exclusively by natural gas firing with a maximum capacity of less than 10 million BTU per hour.

117.4    Equipment used exclusively to grind, blend, package, or store tea, cocoa, spices, or coffee.

117.5    Equipment used to dry, mill, grind, blend, or package less than 1000 tons per year of dry food products such as seeds, grains, corn, meal, flour, sugar, and starch.

117.6    Equipment used to convey, transfer, clean, or separate less than 1000 tons per year of dry food products or waste from food production operations.

117.7    Storage equipment or facilities containing dry food products; which are not vented to the outside atmosphere, or which handle less than 1000 tons per year.

117. 8   Coffee, cocoa and nut roasters with a roasting capacity of less than 15 pounds of beans or nuts per hour; and any stoners or coolers operated in conjunction with these roasters.

117.9    Containers, reservoirs, tanks, or loading equipment used exclusively for the storage or loading of beer, wine or other alcoholic beverages.

117.10  Fermentation tanks for beer or wine. Fermentation tanks used for the commercial production of yeast for sale are not exempt.

117.11  Brewing operations at facilities producing less than 3 million gallons per year of beer.

117.12  Fruit sulfuring operations at facilities producing less than 10 tons per year of sulfured fruits and vegetables.

*(Adopted 10/19/83; Amended 4/16/86; 7/1791; 6/7/95; 5/17/00)*

**2-1-118   Exemption, Surface Preparation and Cleaning Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

118.1    Permanent abrasive blasting source, as defined by Regulation 12, Rule 4, that has a confined volume less than 100 cubic feet ($ft^3$) and is abated by a particulate filter.

118.2    Blast cleaning equipment using a suspension of abrasive in water.

118.3    Portable abrasive blasting equipment used on a temporary basis within the District.

118.4    Equipment, including solvent cold cleaners using an unheated solvent mixture for surface preparation, cleaning, wipe cleaning, fluxing or stripping by use of solutions with a VOC content less than or equal to 50 grams per liter (0.42 lb/gal).

118.5    Equipment using a heated solvent mixture for steam cleaning, surface preparation, fluxing, stripping, wipe cleaning, washing or drying products, provided that a) only solutions containing less than 2.5 percent VOC (wt) are used; and b) any combustion sources used in the process are exempt under Section 2-1-114.

118.6    Equipment or operations which use unheated solvent and which contain less than 1 gallon of solvent or have a liquid surface area of less than 1 $ft^2$. This exemption does not apply to solvent stations at semiconductor manufacturing operation fabrication areas or aerospace stripping operations.

118.7    Deleted December 21, 2004

118.8    Batch solvent recycling equipment where all of the following apply:

8.1    Recovered solvent is used primarily on site (more than 50% by volume); and

8.2    Maximum heat input (HHV) is less than 1 million BTU per hour; and

8.3    Batch capacity is less than 150 gallons.

118.9 Wipe cleaning at a facility with a net solvent usage less than 20 gallons per year, or which emits to the atmosphere less than 150 lb/year of VOC from all wipe cleaning operations. At a facility with total wipe cleaning emissions greater than 150 lb/yr, wipe cleaning operations may be grouped per Section 2-1-401.4.

118.10 Any solvent cleaning or surface preparation source which employs only non-refillable hand held aerosol cans.

118.11 Spray gun cleaning performed in compliance with Regulation 8, provided the cleaning is associated with a source, such as a spray booth, subject to the requirements of Section 2-1-301 and 302.

*(Adopted 10/19/83; Amended 4/16/86; 8/2/89; 7/17/91; 6/7/95; 5/17/00; 12/21/04)*

**2-1-119** **Exemption, Surface Coating and Printing Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

119.1 Any powder coating operation, or radiation cured coating operation where ultraviolet or electron beam energy is used to initiate a reaction to form a polymer network.

119.2 Any coating, adhesive, dipping,. laminating, printing, screening, masking, electrodeposition, resist application, or similar source or operation at any facility which:

2.1 Consumes a total of less than 30 gallons of coating and ink per year on a facility wide basis, or emits less than 150 pounds per year of uncontrolled VOC on a facility wide basis, resulting from the application of coatings and ink; or

2.2 Uses exclusively materials that contain less than one percent VOC (wt).

At a facility with coating emissions greater than 150 lb/yr, coating operations may be grouped per Section 2-1-401.3.

119.3 Any coating source which employs only non-refillable hand held aerosol cans.

119.4 An oven associated with an exempt coating source, provided that the oven is electrically heated, or the oven is fired exclusively with natural gas, liquefied petroleum gas (e.g. propane, butane, isobutane, propylene, butylenes, and their mixtures) and the maximum firing rate is less than 10 million BTU per hour.

*(Adopted 10/19/83; Amended 4/16/86; 7/17/91; 6/7/95; 5/17/00; 12/21/04)*

**2-1-120** **Exemption, Dry Cleaning Equipment:** Any dry cleaning facility which uses less than 700 gallons of petroleum solvents or any other non-halogenated solvent in any single year is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319. Equipment which uses perchloroethylene or any other halogenated solvent is not exempt.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00)*

**2-1-121** **Exemption, Material Working and Handling Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

121.1 Equipment used for buffing, carving, cutting, drilling, grinding, machining, planing, routing, sanding, sawing, shredding, stamping or turning of wood, ceramic artwork, ceramic precision parts, leather, metals, plastics, rubber, fiberboard, masonry, glass, silicon, semiconductor wafers, carbon or graphite, provided that organic emissions from the use of coolant, lubricant, or cutting oil are 5 ton/yr or less.

121.2 Equipment used for pressing or storing sawdust, wood chips or wood shavings.

121.3 Equipment used exclusively to mill or grind coatings and molding compounds in a paste form provided the solution contains less than one percent VOC (wt).

121.4 Tumblers used for the cleaning or deburring of metal products without abrasive blasting.

121.5 Batch mixers with a rated working capacity of 55 gallons or less.

121.6   Mixing equipment provided no material in powder form is added and mixture contains less than one percent VOC (wt).

121.7   Equipment used exclusively for the mixing and blending of materials at ambient temperature to make water based adhesives.

121.8   Equipment used exclusively for the mixing and packaging of lubricants or greases.

121.9   Presses used exclusively for extruding metals, minerals, plastics or wood.

121.10  Presses used for the curing of rubber products and plastic products. The use of mold release products or lubricants is not exempt unless the VOC content of these materials is less than or equal to 1 percent, by weight, or unless the total facility-wide uncontrolled VOC emissions from the use of these materials are less than 150 lb/yr.

121.11  Platen presses used for laminating.

121.12  Roll mills or calendars for rubber or plastics.

121.13  Equipment used exclusively for forging, pressing, rolling, stamping or drawing metals or for heating metals immediately prior to forging, pressing, rolling, stamping or drawing, provided that: (1) maximum fuel use rate is less than 10 million BTU/hr; (2) no lubricant with an initial boiling point less than 400$^o$F is used; and (3) organic emissions are 5 ton/yr or less.

121.14  Atmosphere generators used in connection with metal heat treating processes.

121.15  Equipment used exclusively for the sintering of glass or metals.

121.16  Equipment used exclusively for the melting or applying of wax containing less than one percent VOC (wt).

121.17  Equipment used exclusively for conveying and storing plastic pellets.

121.18  Solid waste transfer stations that receive or load out a total of all material less than 50 tons/day.

121.19  Inactive solid waste disposal sites which do not have an operating landfill gas collection system.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00)*

**2-1-122    Exemption, Casting and Molding Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

122.1   Molds used for the casting of metals.

122.2   Foundry sand mold forming equipment to which no heat is applied, except processes utilizing organic binders yielding in excess of 0.25% free phenol by weight of sand.

122.3   Shell core and shell-mold manufacturing machines.

122.4   Equipment used for extrusion, compression molding and injection molding of plastics. The use of mold release products or lubricants is not exempt unless the VOC content of these materials is less than or equal to 1 percent, by weight, or unless the total facility-wide uncontrolled VOC emissions from the use of these materials are less than 150 lb/yr.

122.5   Die casting machines.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00)*

**2-1-123    Exemption, Liquid Storage and Loading Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

123.1   Storage tanks and storage vessels having a capacity of less than 260 gallons.

123.2   Tanks, vessels and pumping equipment used exclusively for the storage or dispensing of any aqueous solution which contains less than 1 percent (wt) organic compounds. Tanks and vessels storing the following materials are not exempt.

   2.1   Sulfuric acid with an acid strength of more than 99.0% by weight.

   2.2   Phosphoric acid with an acid strength of more than 99.0% by weight.

   2.3   Nitric acid with an acid strength of more than 70.0% by weight.

   2.4   Hydrochloric acid with an acid strength of more than 30.0% by weight.

   2.5   Hydrofluoric acid with an acid strength of more than 30.0% by weight.

    2.6    More than one liquid phase, where the top phase contains more than one percent VOC (wt).

123.3    Containers, reservoirs, tanks or loading equipment used exclusively for:

    3.1    Storage or loading of liquefied gases.

    3.2    Storage or loading of organic liquids or mixtures containing organic liquids; where the initial boiling point of the organics is greater than 302$^{o}$F and exceeds the actual storage temperature by at least 180$^{o}$F. This exemption does not apply to the storage or loading of asphalt or asphalt emulsion with a sulfur content equal to or greater than 0.5 wt%.

    3.3    The storage or loading of petroleum oils with an ASTM D-93 (PMCC) flash point of 130$^{o}$F or higher, when stored or loaded at a temperature at least 36$^{o}$F below the flash point.

    3.4    The storage or loading of lubricating oils.

    3.5    The storage of fuel oils with a gravity of 40 API or lower and having a capacity of 10,000 gallons or less.

    3.6    The storage or loading of liquid soaps, liquid detergents, tallow, or vegetable oils, waxes or wax emulsions.

    3.7    The storage of asphalt or asphalt emulsion with a sulfur content of less than 0.5 wt%. This does not include the storage of asphalt cutback with hydrocarbons having an initial boiling point of less than 302$^{o}$F.

    3.8    The storage of wine, beer or other alcoholic beverages.

    3.9    The storage of organic salts or solids in an aqueous solution or suspension, provided that no liquid hydrocarbon layer forms on top of the aqueous phase.

    3.10    The storage or loading of fuel oils with a gravity of 25 API or lower.

    3.11    The storage and/or transfer of an asphalt-water emulsion heated to 150$^{o}$F or less.

123.4    Tank seal replacement. For any tank subject to Regulation 8, Rule 5, any new seal must comply with the applicable provisions of Regulation 8, Rule 5, and the District must receive written notification of the tank source number and seal type at least three days prior to the installation.

*(Adopted 10/19/83; Amended 7/11/84; 7/17/91; 6/7/95; 5/17/00)*

**2-1-124**    **Exemption, Semiconductor Manufacturing**: Semiconductor fabrication area(s) at a facility which complies with all of the following are exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

    124.1    Net solvent usage is less than 20 gallons of VOC per year on a facility wide basis; or uncontrolled VOC emissions to the atmosphere resulting from the usage of solvent are less than 150 pounds per year of VOC on a facility wide basis, and

    124.2    Maskant and/or coating usage is less than 30 gallons per year, on a facility wide basis; or uncontrolled VOC emissions from the application of maskant and coatings are less than 150 pounds per year on a facility wide basis.

*(Adopted 10/19/83; Amended 1/9/85; 4/16/86; 7/17/91; 6/7/95; 10/20/99; 5/17/00)*

**2-1-125**    **Exemption, Printed Circuit Board Manufacturing Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

    125.1    Equipment used exclusively for:

        1.1    Plating of printed circuit boards.

        1.2    Buffing, polishing, carving, cutting, drilling, machining, routing, sanding, sawing, surface grinding or turning of printed circuit boards.

        1.3    Soldering. This section does not exempt fluxing and finger cleaning (see Section 2-1-118.4).

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00)*

**2-1-126**    **Exemption, Testing Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

    126.1    Equipment used for hydraulic or hydrostatic testing.

126.2 Bench scale laboratory equipment or processes used exclusively for chemical or physical analyses or experimentation, quality assurance and quality control testing, research and development, or similar bench scale equipment, excluding pilot plants.

126.3 Equipment used for inspection of metal products.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00)*

**2-1-127 Exemption, Chemical Processing Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

127.1 Equipment used exclusively for the dyeing or stripping (bleaching) of textiles provided that only solutions containing less than one percent VOC (wt) are used.

127.2 Photographic process equipment by which an image is reproduced upon material sensitized to radiant energy.

127.3 Containers, reservoirs, or tanks used exclusively for electrolytic plating with, or electrolytic polishing of, or electrolytic stripping of the following metals: aluminum, brass, bronze, cadmium, copper, iron, nickel, tin, zinc and precious metals.

127.4 Containers, reservoirs, or tanks used exclusively for etching (not chemical milling), except where ammonia or ammonium-based etchants are used.

*(Adopted 10/19/83; Amended 7/17/91; 6/7/95; 5/17/00)*

**2-1-128 Exemption, Miscellaneous Equipment:** The following equipment is exempt from the requirements of Sections 2-1-301 and 302, provided that the source does not require permitting pursuant to Section 2-1-319.

128.1 Comfort air conditioning or comfort ventilating systems which are not designed to remove air contaminants generated by or released from specific units of equipment.

128.2 Refrigeration units except those used as, or in conjunction with, air pollution control equipment.

128.3 Vacuum producing devices in laboratory operations which are used exclusively in connection with other equipment which is exempted by this Rule, and vacuum producing devices which do not remove or convey air contaminants from another source.

128.4 Water cooling towers and water cooling ponds not used for evaporative cooling of process water, or not used for evaporative cooling of water from barometric jets or from barometric condensers.

128.5 Natural draft hoods, natural draft stacks or natural draft ventilators.

128.6 Vacuum cleaning system used exclusively for industrial commercial or residential housekeeping purposes.

128.7 Equipment used to liquefy or separate oxygen, nitrogen or the rare gases from the air.

128.8 Equipment used exclusively to compress or hold dry natural gas, excluding drivers.

128.9 Equipment used exclusively for bonding lining to brake shoes.

128.10 Equipment used exclusively for the manufacture of water emulsions of waxes, greases or oils.

128.11 Brazing, soldering or welding equipment.

128.12 Pharmaceutical manufacturing equipment with annual VOC emissions less than 150 pounds per source. Material working and handling equipment such as mills, grinders, blenders, granulators, tablet presses, capsule fillers, packagers, and conveyors are only exempt if the source also processes less than 100 tons per year of pharmaceutical products.

128.13 Equipment used exclusively to blend or package cosmetics.

128.14 Any wastewater (oil-water) separator, as defined in Regulation 8, Rule 8, which processes less than 200 gallons per day of waste water containing organic liquids.

128.15 Exploratory drilling activities for methane recovery at waste disposal sites, for natural gas or for oil. Production wells for the above operations are not exempt.

128.16 Passive aeration of soil, only if:
    16.1 The duration of the passive aeration operation will not exceed three months, and
    16.2 The soil is not being used as a cover material at a landfill.

128.17 Ozone generators which produce less than 1 pound per day of ozone.

128.18 Any source or operation which exclusively uses consumer products regulated by the California Air Resources Board (California Code of Regulations Title 17, Article 2, Sections 94507-94517).

128.19 Any source or operation deemed by the APCO to be equivalent to a source or operation which is expressly exempted by Sections 2-1-113 through 128.

128.20 Wastewater pumping stations where no treatment is performed, excluding any drivers.

128.21 Modification, replacement, or addition of fugitive components (e.g. valves, flanges, pumps, compressors, relief valves, process drains) at existing permitted process units at petroleum refineries, chemical plants, bulk terminals or bulk plants, provided that the cumulative emissions from all additional components installed at a given process unit during any consecutive twelve month period do not exceed 10 lb/day, and that the components meet applicable requirements of Regulation 8 rules.

128.22 Fuel cells that use phosphoric acid, molten carbonate, proton exchange membrane, solid oxide or equivalent technologies.

128.23 Structure demolition that does not involve asbestos or asbestos containing materials.

*(Adopted 10/19/83; Amended 7/16/86; 7/17/91; 6/7/95; 5/17/00; 11/15/00; 12/21/04)*

**2-1-129**    **Major Facility Review:** Notwithstanding the exemptions listed in this section, every source exempted by this Rule shall be included in any application for a synthetic minor or major facility review permit required by Regulation 2, Rule 6.

*(Adopted 12/3/93; Amended 2/1/95; 5/17/00)*

## 2-1-200    DEFINITIONS

**2-1-201**    **Emission Reduction Credits:** An emission reduction, calculated in accordance with Regulation 2-2-605, which exceeds the emission reductions required by measures in the Air Quality Management Plan or the Clean Air Plan approved by the BAAQMD or required by federal, state, or District laws, rules, and regulations. To qualify as an emission reduction credit the emission reduction must be in excess of the reductions achieved by the source using Reasonably Available Control Technology (RACT), and must also be real, permanent, quantifiable, and enforceable.

201.1 Unless calculated in accordance with the procedures of Regulation 2-2-605, that portion of an NSR emission cap, which was part of an APCO approved alternative baseline, shall not qualify as an emission reduction credit.

201.2 All emission reduction credits shall be enforceable by permit conditions in the authority to construct and permit to operate, except that in the case of source closures where no permit is required for the source being shut down, the emission reduction credit shall be enforceable through appropriate contractual provisions in a legally binding and irrevocable written agreement which provisions will be made expressly for the benefit of the District. The permanence of a closure shall be identified in a letter from the source and/or in a Banking Certificate.

*(Amended 7/17/91; 6/15/94)*

**2-1-202**    **Complete Application:** An application that contains the following:

202.1 Sufficient information for the APCO to determine the emissions from such new or modified source and to quantify emissions from the proposed source(s) of offsets or credits.

202.2 Any information requested by the APCO in order to determine the air quality impact of the application.

202.3 All applicable fees, as described in Regulation 3.

202.4    The information required by Regulation 2-2-414 and 417 provided the application is subject to the PSD requirements of Regulations 2-2-304, 305, 306, or 308.

202.5    CEQA-related information that satisfies the requirements of Section 2-1-426.

202.6    A certification, stating whether the source triggers the requirements of Section 2-1-412.

202.7    A specific designation of any information contained in the application which is asserted to be a trade secret pursuant to Section 6254.7 of the Government Code and not a public record. The applicant shall submit two copies of each page containing trade secret information. One copy shall be clearly labeled "Trade Secret," and each trade secret item shall be clearly marked. The second copy shall be clearly labeled "Public Copy," and each trade secret item shall be redacted. The applicant shall include, for each item which is asserted to be a trade secret, a statement signed by a responsible representative of the applicant identifying that portion of Government Code Section 6254.7 (d) upon which the assertion is based and a brief statement setting forth the basis for this assertion.

*(Amended 7/17/91; 11/20/97; 5/17/00; 12/21/04)*

**2-1-203**    **Fugitive Emissions:** Fugitive emissions are all emissions from unintended openings in process equipment, emissions occurring from miscellaneous activities relating to the operation of a facility, and those emissions which could not reasonably pass through a stack, chimney, vent or other functionally equivalent opening.

*(Adopted October 19, 1983)*

**2-1-204**    **Major Facility:** A major facility is any of the following:

204.1    Major Facility, MFR (Regulated Air Pollutants): A facility that has the potential to emit 100 tons per year or more of any regulated air pollutant except total suspended particulate. For fugitive emissions of regulated air pollutants, only the fugitive emissions from facility categories listed in 40 CFR 70.2 "Definitions - *Major source* (2)" shall be included in determining whether the facility is a major facility. Once any facility is determined to be a major facility, all fugitive emissions from the facility shall be included in calculating the facility's emissions.

204.2    Major Facility, MFR (Hazardous Air Pollutants): A facility that has the potential to emit 10 tons per year or more of a single hazardous air pollutant, 25 tons per year or more of a combination of hazardous air pollutants, or such lesser quantity as the EPA Administrator may establish by rule. All fugitive emissions of hazardous air pollutants are included in determining a facility's potential to emit. For radionuclides, the definition of a major facility shall be specified by the EPA Administrator by rule.

204.3    A facility with permit conditions that limit emissions to a level that is greater than the above thresholds is defined as a major facility.

*(Amended 7/17/91; 11/3/93; 5/17/00)*

**2-1-205**    **National Ambient Air Quality Standards (NAAQS):** Levels of air pollution that have been established by the Environmental Protection Agency. All references to NAAQS shall be interpreted to include state ambient air quality standards.

*(Amended 10/7/81; 4/6/88)*

**2-1-206**    **Organic Compound:** Any compound of carbon, excluding carbon monoxide, carbon dioxide, carbonic acid, metallic carbides or carbonates, ammonium carbonate and methane.

**2-1-207**    **Organic Compound, Non-Precursor (NPOC):** The following are considered non-precursor organic compounds:

methylene chloride; chloropentafluoroethane (CFC-115); 1,1,1-trichloroethane; 1,1,1-trifluoro 2,2-dichloroethane (HFC-123); 2-chloro-1,1,1,2-tetrafluoroethane (HCFC-124); trichlorofluoromethane(CFC-11); 1,1,2-trichloro 1,2,2-trifluoroethane (CFC-113); pentafluoroethane (HFC-125); 1,1,2,2-tetrafluororoethane (HFC-134); 1,1,1,2-tetrafluorethane (HFC-134a); dichlorodifluoromethane (CFC-12); 1,1-dichloro 1-fluoroethane (HFC-141b); 1-chloro 1,1-difluoroethane (HCFC-142b); 1,1,1-trifluoroethane (HFC-143a); 1,2-dichloro 1,1,2,2-tetrafluorethane (CFC-114); 1,1-difluoroethane

(CFC-152a); chlorodifluoromethane (HCFC-22); trifluoromethane (HFC-23), and perfluorocarbons which fall into these classes:

(1)  Cyclic, branched, or linear, completely fluorinated alkanes,

(2)  Cyclic, branched, or linear, completely fluorinated ethers with no unsaturations,

(3)  Cyclic, branched, or linear, completely fluorinated tertiary amines with no unsaturations, and

(4)  Sulfur containing perfluorocarbons with no unsaturations and with sulfur bonds only to carbon and fluorine.

In addition, any compound designated as having a negligible contribution to photochemical reactivity by the U.S. Environmental Protection Agency as published in the Federal Register shall be considered a Non-Precursor Organic Compound.

*(Amended 7/17/91; 6/15/94)*

**2-1-208  Organic Compound, Precursor:** Any organic compound as defined in Regulation 1-233 excepting the non-precursor organic compounds, defined in Section 2-1-207.

*(Adopted 3/17/82; Amended 7/17/91)*

**2-1-209  Reasonably Available Control Technology (RACT):** For sources that are to continue operating, RACT is the lowest emission limit that can be achieved by the specific source by the application of control technology taking into account technological feasibility and cost-effectiveness, and the specific design features or extent of necessary modifications to the source. For sources which are or will be shut-down, RACT is the lowest emission limit that can be achieved by the application of control technology to similar, but not necessarily identical categories of sources, taking into account technological feasibility and cost-effectiveness of the application of the control technology to the category of sources only and not to the shut-down source.

*(Adopted 3/17/82, Amended 10/19/83; 12/21/04)*

**2-1-210  Start-Up Period:** The period of time between initial operation and the issuance or denial of a permit to operate of a source or facility.

*(Adopted October 19, 1983)*

**2-1-211  CEQA:** The California Environmental Quality Act, Public Resources Code, Section 21000, et seq.

*(Adopted July 17, 1991)*

**2-1-212  EIR:** Environmental Impact Report, as defined in Public Resources Code Section 21000 *et seq.*

*(Adopted 7/17/91; Amended 5/17/00)*

**2-1-213  Facility:** Any property, building, structure or installation (or any aggregation of facilities) located on one or more contiguous or adjacent properties and under common ownership or control of the same person that emits or may emit any air pollutant and is considered a single major industrial grouping (identified by the first two-digits of the applicable code in *The Standard Industrial Classification Manual*). In addition, facilities that include cargo loading or unloading from cargo carriers other than motor vehicles shall include the cargo carriers as part of the source which receives or loads the cargo. Accordingly, all emissions from such carriers while operating in the District, or within California Coastal Waters adjacent to the District, shall be included as part of the source emissions.

*(Adopted 11/3/93; Amended 12/21/04)*

**2-1-214  Federally Enforceable:** All limitations and conditions which are enforceable by the Administrator of the U. S. EPA, including requirements developed pursuant to 40 CFR Parts 60 (NSPS), 61 (NESHAPS), 63 (HAP), 70 (State Operating Permit Programs) and 72 (Permits Regulation, Acid Rain), requirements contained in the State Implementation Plan (SIP) that are applicable to the District, any District permit requirements established pursuant to 40 CFR 52.21 (PSD) or District regulations approved pursuant to 40 CFR Part 51, Subpart I (NSR), and any operating permits issued under an EPA-approved program that is a part of the SIP and expressly requires adherence to any permit issued under such program.

*(Adopted November 3, 1993)*

**2-1-215  Hazardous Air Pollutant (HAP):** Any pollutant that is listed pursuant to Section 112(b) of the federal Clean Air Act.

*(Adopted 11/3/93; Amended 5/17/00)*

**2-1-216** **Major Facility Review (MFR):** Plantwide review of sources, emissions and regulatory requirements at facilities including, but not limited to, major facilities, phase II acid rain facilities, subject solid waste incinerator facilities, and designated facilities, which are potentially subject to the permitting requirements of Regulation 2, Rule 6, and Title V of the federal Clean Air Act.

*(Adopted November 3, 1993)*

**2-1-217** **Potential to Emit:** The maximum capacity of a source or facility to emit a pollutant based on its physical and operational design. Any physical or operational limitation on the capacity of the source or facility to emit a pollutant, including air pollution control equipment and restrictions on hours of operation or on the type or amount of material combusted, stored, or processed, shall be treated as a part of its design only if the limitation, or the effect it would have on emissions, is enforceable by the District or EPA. A source or facility that exceeds an enforceable limitation is considered to have a potential to emit that is unconstrained by any such exceeded limit.

*(Adopted 11/3/93; Amended 5/17/00)*

**2-1-218** **Regulated Air Pollutant:** The following air pollutants (as defined in Regulation 1) are regulated:

218.1    Nitrogen oxides and volatile organic compounds;

218.2    Any pollutant for which a national ambient air quality standard has been promulgated;

218.3    Any Class I or Class II ozone depleting substance subject to a standard promulgated under Title VI of the federal Clean Air Act;

218.4    Any pollutant that is subject to any standard promulgated under Section 111 of the federal Clean Air Act; and

218.5    Any pollutant that is subject to any standard promulgated under Section 112 of the federal Clean Air Act, except that a pollutant that is subject solely to Section 112(r) is not a regulated air pollutant.

*(Adopted 11/3/93; Amended 5/17/00)*

**2-1-219** **Synthetic Minor Operating Facility:** A facility which by imposition of facilitywide federally enforceable permit conditions has its potential to emit limited to below the threshold levels for a major facility as defined by Sections 204.1 and 204.2 of this rule and in Section 212 of Regulation 2, Rule 6, and is not otherwise required to apply for a major facility review permit under Regulation 2, Rule 6.

*(Adopted November 3, 1993)*

**2-1-220** **Portable Equipment:** This definition is provided exclusively for determining applicability of Section 2-1-413: Portable Equipment Operated Within the District. "Portable equipment" means any emission unit that, by itself or, in or on a piece of equipment, is portable, meaning designed to be and capable of being carried or moved from one location to another. Indications of portability include, but are not limited to, wheels, skids, carrying handles, dolly trailer, platform or mounting. A piece of equipment is portable, for purposes of obtaining a portable permit under Section 2-1-413, if all of the following are met:

220.1    The equipment will not remain at any single location for a period in excess of twelve consecutive months, following the date of initial operation. Any emission unit, such as back up or standby unit, which replaces an emission unit at that location and is intended to perform the same function as the unit being replaced, will be counted toward the time limitation.

220.2    The source (emission unit) remains or will remain at a location for no more than twelve months, following the date of initial operation, where such a period does not represent the full length of normal annual source operations, such as operations which are seasonal.

220.3    The equipment is not removed from, or stored at, one location for a period and then returned to the same location in an attempt to circumvent the portable equipment residence time requirement.

220.4    The equipment is not operated within 1000 feet of the outer boundary of any K-12 school site, unless the applicable notice requirements of Health and Safety Code Section 42301.6 have been met.

220.5    The operation complies with Regulation 2, Rule 5.

220.6    No air contaminant is released into the atmosphere in sufficient quantities as to cause a public nuisance per Regulation 1-301.

220.7    The operation of the portable equipment in the Air District shall emit no more than 10 tons per year of each pollutant, including POC, CO, NOx, PM$_{10}$, NPOC or SO$_2$. For PM$_{10}$, fugitive particulate emissions from haul road traffic shall not be counted toward the annual limit.

220.8    The operation must be exempt from CEQA, or must be covered by a chapter in the District's Permit Handbook.

220.9    The equipment will not cause a Synthetic Minor Facility to exceed a federally enforceable emission limit.

220.10   If this equipment remains at any fixed location for more than twelve months, the portable permit will automatically revert to a conventional permanent location permit and will lose its portability. To obtain another portable permit for the equipment, the owner must re-permit the equipment for the next location of intended operations. Upon written request, the APCO may exclude reasonable storage periods before the date of initial operation and/or following the date of final operation from the twelve-month time limitation.

*(Adopted 6/7/95; Amended 10/7/98; 6/15/05)*

**2-1-221    Source:** Any article, machine, equipment, operation, contrivance or related groupings of such which may produce and/or emit air pollutants.

*(Adopted June 7, 1995)*

**2-1-222    Toxic Air Contaminant (TAC):** An air pollutant that may cause or contribute to an increase in mortality or in serious illness or that may pose a present or potential hazard to human health.   For the purposes of this rule, TACs consist of the substances listed in Table 2-5-1 of Regulation 2, Rule 5.

*(Adopted 6/7/95; Amended 5/17/00; 6/15/05)*

**2-1-223    Year:** Unless otherwise specified by an operating rule of the District or by a permit condition, a year shall be defined by an applicant or permit holder as one of the following:

223.1    Any consecutive 12 month period;
223.2    Any consecutive 4 quarter period, where a quarter is 3 consecutive months;
223.3    Any consecutive 52 week period;
223.4    Any consecutive 365 day period;
223.5    Any company fiscal year, provided the fiscal year is 12 consecutive months;
223.6    Calendar year;
223.7    Any other mutually acceptable period.

In the absence of a rule requirement, permit condition or other information to determine which yearly period applies, the District shall use Section 2-1-223.1.

*(Adopted June 7, 1995)*

**2-1-224    Responsible Laboratory Management Practices:** For the purposes of meeting the laboratory exemption of Section 2-1-113.2.12, Responsible Laboratory Management Practices include all of the following measures for minimizing the emissions of toxic air contaminants:

224.1    Open container procedures involving materials that contain volatile toxic air contaminants (TACs) shall be avoided where feasible.

224.2    Open container storage of volatile hazardous chemical wastes shall be avoided.

224.3    Training for laboratory employees handling hazardous materials shall include information about minimizing the emissions of volatile TACs. These employees shall be directed to avoid open container procedures involving volatile TACs where feasible, and to avoid open container storage of hazardous chemical waste.

224.4    Fume hoods shall be posted with notices reminding employees to avoid open container procedures using volatile TACs where feasible. Laboratories shall be inspected periodically, but not less than annually, to confirm that these notices are present.

224.5    Laboratory fume hoods shall be monitored periodically to assure proper face velocity.

224.6    Evaporation of any hazardous chemical waste containing TACs as a means of disposal shall be expressly forbidden.

*(Adopted June 7, 1995)*

**2-1-225** **Health Risk Screening Analysis (HSRA):** An analysis that estimates the increased likelihood of health risk for individuals in the affected population that may be exposed to emissions of one or more toxic air contaminants, determined in accordance with Regulation 2-5-603.

*(Adopted 6/7/95; Amended 6/15/05)*

**2-1-226** **Statewide Portable Equipment Registration Program**: A uniform system for statewide registration and regulation of portable internal combustion and associated equipment, implemented by the Air Resources Board pursuant to Section 41750 et seq. of the Health and Safety Code.

*(Adopted October 7, 1998)*

**2-1-227** **Substantial Use**: Substantial use of an Authority to Construct consists of one or more of the following: purchase or acquisition of the equipment that constitutes the source; ongoing construction activities other than grading or installation of utilities or foundations; a contract or commitment to complete construction of the source within two years.

*(Adopted October 7, 1998)*

**2-1-228** **Particulate Matter (PM):** Any airborne finely divided solid or liquid material with an aerodynamic diameter smaller than 100 microns.

*(Adopted October 7, 1998)*

**2-1-229** **$PM_{10}$:** Particulate matter with aerodynamic diameter smaller than or equal to a nominal 10 microns.

*(Adopted October 7, 1998)*

**2-1-230** **Functionally Equivalent:** Performing the same, or equivalent, function as the object of comparison. A functionally equivalent replacement source performs the same function for the process as the source being replaced, although emissions and other characteristics may differ. A replacement that performs additional functions is not considered to be functionally equivalent.

*(Adopted October 7, 1998)*

**2-1-231** **Semiconductor Fabrication Area:** A physically identifiable area in a semiconductor manufacturing facility where one or more specific operations in the fabrication of semiconductors or related solid state devices occurs and the equipment used to perform those operations. The semiconductor fabrication area shall not include crystal growth, circuit separation, or encapsulation. All semiconductor fabrication equipment may be grouped into a single fabrication area, or multiple fabrication areas may be established to correspond to product lines or clean room environments.

*(Adopted October 20, 1999)*

**2-1-232** **New Source:** Any source that meets at least one of the following criteria, except sources which lose a permit exemption or exclusion in accordance with Regulation 2-1-424, shall be considered a new source:

232.1    Any source constructed or proposed to be constructed after March 7, 1979 but which never had a valid District authority to construct or permit to operate.

232.2    Any source which was not in operation for a period of one year or more and did not hold a valid District permit to operate during this period of non-operation, occurring after March 7, 1979.

232.3    Any relocation of an existing source to a non-contiguous property, except for a portable source.

232.4    Any replacement of a source, including an identical replacement of a source, occurring after March 7, 1979, regardless of when the original source was constructed.

232.5    Any replacement of an identifiable source within a group of sources permitted together under a single source number for the purpose of District permitting convenience.

232.6    "Rebricking" of a glass furnace where changes to the furnace design result in a change in heat generation or absorption.

*(Adopted May 17, 2000)*

**2-1-233** **Alter:** To make any physical change to, or change in the method of operation of, a source which may affect emissions. Such changes require a permit to operate, and may require permit conditions, whether or not the alteration results in an emission

increase. A change in process stream composition is not an alteration if the source's description in the permit and permit conditions allow for the change in process stream composition, and the change does not increase emissions beyond permitted levels. The following activities are specifically identified as "alterations."

233.1    Replacement of burners with non-identical burners.

233.2    Maintenance of glass furnaces involving component replacement, unless all replacements are with identical components.

233.3    Expansion of the physical boundaries of a semiconductor fabrication area.

*(Adopted 5/17/00; Amended 11/15/00)*

**2-1-234    Modified Source:** Any existing source that undergoes a physical change, change in method of operation, increase in throughput or production, or addition and that results or may result in any of the following:

234.1    An increase in either the daily or annual emission level of any regulated air pollutant, or an increase in the production rate or capacity that is used to estimate the emission level, that exceeds emission or production levels approved by the District in any authority to construct.

234.2    An increase in either the daily or annual emission level of any regulated air pollutant, or the production rate or capacity that is used to estimate the emission level, above levels contained in a permit condition in any current permit to operate or major facility review permit.

234.3    For sources that have never been issued a District authority to construct and that do not have conditions limiting daily or annual emissions, an increase in either daily or annual emission level of any regulated air pollutant, or the production rate or capacity that is used to estimate the emission level, above the lower of the following:

3.1    The highest of the following:

3.1.1    The highest attainable design capacity, as shown in pre-construction design drawings, including process design drawings and vendor specifications.

3.1.2    The capacity listed in the District permit to operate.

3.1.3    The highest documented actual levels attained by the source prior to March 1, 2000.

3.2    The capacity of the source, as limited by the capacity of any upstream or downstream process that acts as a bottleneck (a grandfathered source with an emission increase due to debottlenecking is considered to be modified).

For the purposes of applying Section 234.3, only increases in annual emission levels shall be considered for storage vessels.

234.4    The emission of any regulated air pollutant or toxic air contaminant not previously emitted in a quantity that would result in a cancer risk (as defined in Regulation 2-5-206) greater than 1.0 in a million ($10^{-6}$) or a chronic hazard index (as defined in Regulation 2-5-208) greater than 0.20.

For the purposes of applying this definition, an hourly limit or capacity may be converted to a daily limit or capacity by multiplication by 24 hours/day; a daily capacity may be converted to an annual capacity or limit by multiplication by 365 days/year.

*(Adopted 5/17/00; Amended 11/15/00; 6/15/05)*

**2-1-235    Shutdown:** An action that either:

235.1    Causes an emission source to be removed from service temporarily; or

235.2    Results in a transfer of an emission source's emitting activity to another source within the control of the same operator.

*(Adopted May 17, 2000)*

**2-1-236    Closure:** Permanent removal of a source from service.

*(Adopted May 17, 2000)*

**2-1-237    BACT/TBACT Workbook:** The District guidelines, which set forth emission limitations and/or control technologies constituting BACT and TBACT for a number of source types or categories.

*(Adopted June 15, 2005)*

**2-1-238    Clean Air Act:** The federal Clean Air Act, as amended in 1990, including the implementing regulations.

*(Adopted June 15, 2005)*

**2-1-239**    **Agricultural Source:**  A source of air pollution, or group of sources, used in the production of crops, or the raising of fowl or animals located on contiguous property under common ownership or control that meets the following criteria:

239.1    Is a confined animal facility as defined under Regulation 2, Rule 10;

239.2    Is an internal combustion engine used in the production of crops or the raising of fowl or animals, including, but not limited to, an engine subject to Article 1.5 (commencing with Section 41750) of Chapter 3 of Part 4 of Division 26 of the California Health and Safety Code, except an engine that is used to propel implements of husbandry as that term is defined in Section 36000 of the Vehicle Code, as that section existed on January 1, 2003;

239.3    Is a Major Facility, as that term is defined in Regulation 2, Rule 6, or that is a source that is otherwise subject to regulation by the District pursuant to Division 26 of the California Health and Safety Code or the federal Clean Air Act (42 U.S.C. Sec. 7401 eq.).

*(Adopted July 19, 2006)*

**2-1-300**    **STANDARDS**

**2-1-301**    **Authority to Construct:** Any person who, after July, 1972, puts in place, builds, erects, installs, modifies, modernizes, alters or replaces any article, machine, equipment or other contrivance, the use of which may cause, reduce or control the emission of air contaminants, shall first secure written authorization from the APCO in the form of an authority to construct. Routine repairs, maintenance, or cyclic maintenance that includes replacement of components with identical components is not considered to be an alteration, modification or replacement for the purpose of this Section unless the APCO determines the changes to be non-routine. The use or operation of the source shall initiate the start-up period in accordance with Section 2-1-411.

*(Amended 3/17/82; 10/19/83; 7/17/91; 5/17/00)*

**2-1-302**    **Permit to Operate:** Before any person, as described in Section 2-1-401, uses or operates any article, machine, equipment or other contrivance, the use of which may cause, reduce or control the emission of air contaminants, such person shall first secure written authorization from the APCO in the form of a permit to operate.

302.1    Permit to Operate, MFR: Any facility subject to the requirements of Regulation 2-6, Major Facility Review, shall comply with the permitting requirements included herein in addition to securing a permit to operate under this rule.

302.2    Permit to Operate, Accelerated Permitting Program: Installation and operation of a new or modified source or abatement device which qualifies for the Accelerated Permitting Program under Section 2-1-106 may commence immediately following the submittal of a complete permit application. A temporary Permit to Operate will be issued as soon as the APCO determines that the application is complete. Action shall be taken on the application within 35 working days of receipt of a complete application, in accordance with Section 2-1-408, provided that the applicable offset provisions of Regulation 2, Rule 2, Sections 302 and 303 are satisfied. During periods that the source is operating without a Permit to Operate, the operator shall keep records sufficient to demonstrate that emissions do not exceed qualifying levels for the Accelerated Permitting Program.

302.3    Permit to Operate, Temporary Operation: A temporary permit may be obtained to allow an operator to test equipment, processes, or new formulations. A temporary permit may also be obtained for a temporary source which replaces critical equipment during scheduled maintenance. The APCO may issue a non-renewable temporary Permit to Operate a temporary operation at any source, subject to the following:

3.1    The proposed operation will comply with all requirements of Regulation 1 and Regulations 5 through 12.

3.2    The permit shall expire 3 months after issuance.

3.3    The operator shall provide offsets, at a ratio of 1.15 to 1, for all increased emissions of $NO_x$, POC, and $PM_{10}$ resulting from the use of the temporary permit.

3.4    The operator shall certify that the temporary operation is for one of the following purposes:

      4.1   Equipment testing

      4.2   Process testing, including new formulations

      4.3   Temporary replacement of an existing permitted source with an identical or functionally equivalent source

*(Amended 11/3/93; 6/7/95; 10/7/98; 11/15/00)*

**2-1-303**    **Fees:** Persons subject to this Regulation shall pay the fees required, as set forth in Regulation 3.

**2-1-304**    **Denial, Failure to Meet Emission Limitations:** The APCO shall deny an authority to construct or a permit to operate if the APCO finds that the subject of the application would not or does not comply with the emission limitations of the District, or with applicable permit conditions, federal or California laws or regulations. Such denial shall not be based solely on type of construction or design of equipment.

*(Amended March 17, 1982)*

**2-1-305**    **Conformance with Authority to Construct:** A person shall not put in place, build, erect, install, modify, modernize, alter or replace any article, machine, equipment, or other contrivance for which an authority to construct has been issued except in a manner substantially in conformance with the authority to construct. If the APCO finds, prior to the issuance of a permit to operate, that the subject of the application was not built substantially in conformance with the authority to construct, the APCO shall deny the permit to operate.

*(Amended December 21, 2004)*

**2-1-306**    **Mandated Reductions Not Applicable:** Emission reductions resulting from requirements of federal, state or District laws, rules or regulations shall not be banked or allowed as emission offsets or emission reduction credits unless a complete application for such banking or emission reduction credits was filed with the District at least 90 days prior to the adoption date of such laws, rules or regulations. Only emission reduction credits exceeding the emission reductions required by measures described in the Air Quality Management Plan or required by permits or orders; and reductions achieved by measures not specified in the Air Quality Management Plan shall be banked or allowed as emission offsets or emission reduction credits.

*(Amended 10/7/81; 7/17/91; 6/15/94)*

**2-1-307**    **Failure to Meet Permit Conditions:** A person shall not operate any article, machine, equipment or other contrivance, for which an authority to construct or permit to operate has been issued, in violation of any permit condition imposed pursuant to Section 2-1-403.

*(Adopted 3/17/82; Amended 7/17/91)*

**2-1-308**    **Fugitive Emissions:** Fugitive emissions shall be included as emissions from a facility. Fugitive emissions shall be subject to all requirements of District Rules and Regulations, including BACT, RACT, offsets, PSD requirements, and Class I Air Quality Related Values and increment protection, to the same extent as emissions that are not fugitive in nature.

*(Adopted 10/19/83; Amended 7/17/91)*

**2-1-309**    **Canceled Application:** The APCO may cancel an application for an authority to construct and a permit to operate if, within 90 days after the application was deemed incomplete, the applicant fails to furnish the requested information or pay all appropriate fees. The 90 day period may be extended for an additional 90 days upon receipt of a written request from the applicant and written approval thereof by the APCO. The APCO shall notify the applicant in writing of a cancellation, and the reasons therefore. A cancellation shall become effective 10 days after the applicant has been notified. The cancellation shall be without prejudice to any future applications.

*(Adopted April 6, 1988)*

**2-1-310**    **Applicability of CEQA:** Except for permit applications which will be reviewed as ministerial projects under Section 2-1-311 or which are exempt from CEQA pursuant

to Section 2-1-312, all proposed new and modified sources for which an authority to construct must be obtained from the District shall be reviewed in accordance with the requirements of CEQA.

310.1   For those District permit applications which must be reviewed in accordance with the requirements of CEQA, the District will not normally be a Lead Agency under CEQA. Rather, pursuant to CEQA, the Lead Agency will normally be an agency with general governmental powers, such as a city or county, rather than a special purpose agency such as the District.

310.2   The issuance of an authority to construct and of a permit to operate for the same new or modified source or stationary source are considered to be parts of the same project for the purposes of CEQA.

310.3   The APCO shall not authorize, on an interim basis or otherwise, the installation or operation of any proposed new or modified source, the permitting of which is subject to the requirements of CEQA, until all of the requirements of CEQA have been satisfied.

*(Adopted 7/17/91; Amended 10/21/92)*

**2-1-311    Ministerial Projects:** An application for a proposed new or modified source or stationary source will be classified as ministerial and will accordingly be exempt from the CEQA requirement of Section 2-1-310 if the District's engineering evaluation and basis for approval or denial of the permit application for the project is limited to the criteria set forth in Section 2-1-428 of this rule and to the specific procedures, fixed standards and objective measurements set forth in the District's Permit Handbook and BACT/TBACT Workbook. The method for determining whether a given permit application will be classified as ministerial is set forth in Section 2-1-427.

*(Adopted 7/17/91; Amended 10/7/98)*

**2-1-312    Other Categories of Exempt Projects:** In addition to ministerial projects, the following categories of projects subject to permit review by the District will be exempt from the CEQA review, either because the category is exempted by the express terms of CEQA (subsections 2-1-312.1 through 312.9) or because the project has no potential for causing a significant adverse environmental impact (subsections 2-1-312.10 and 312.11). Any permit applicant wishing to qualify under any of the specific exemptions set forth in this Section 2-1-312 must include in its permit application CEQA-related information in accordance with subsection 2-1-426.1. In addition, the CEQA-related information submitted by any permit applicant wishing to qualify under subsection 2-1-312.11 must demonstrate to the satisfaction of the APCO that the proposed project has no potential for resulting in a significant environmental effect in connection with any of the environmental media or resources listed in Section II of Appendix I of the State CEQA Guidelines.

312.1   Applications to modify permit conditions for existing or permitted sources or facilities that do not involve any increases in emissions or physical modifications.

312.2   Permit applications to install air pollution control or abatement equipment.

312.3   Permit applications for projects undertaken for the sole purpose of bringing an existing facility into compliance with newly adopted regulatory requirements of the District or of any other local, state or federal agency.

312.4   Permit applications submitted by existing sources or facilities pursuant to a loss of a previously valid exemption from the District's permitting requirements.

312.5   Permit applications submitted pursuant to the requirements of an order for abatement issued by the District's Hearing Board or of a judicial enforcement order.

312.6   Permit applications relating exclusively to the repair, maintenance or minor alteration of existing facilities, equipment or sources involving negligible or no expansion of use beyond that previously existing.

312.7   Permit applications for the replacement or reconstruction of existing sources or facilities where the new source or facility will be located on the same site as the source or facility replaced and will have substantially the same purpose and capacity as the source or facility replaced.

312.8    Permit applications for cogeneration facilities which meet the criteria of Section 15329 of the State CEQA Guidelines.

312.9    Any other project which is exempt from CEQA review pursuant to the State CEQA Guidelines.

312.10   Applications to deposit emission reductions in the emissions bank pursuant to Regulation 2, Rule 4 or Regulation 2, Rule 9.

312.11   Permit applications for a proposed new or modified source or sources or for process changes which will satisfy the "No Net Emission Increase" provisions of District Regulation 2, Rule 2, and for which there is no possibility that the project may have any significant environmental effect in connection with any environmental media or resources other than air quality. Examples of such projects include, but are not necessarily limited to, the following:

   11.1   Projects at an existing stationary source for which there will be no net increase in the emissions of air contaminants from the stationary source and for which there will be no other significant environmental effect;

   11.2   A proposed new source or stationary source for which full offsets are provided in accordance with Regulation 2, Rule 2, and for which there will be no other significant environmental effect;

   11.3   A proposed new source or stationary source at a small facility for which full offsets are provided from a small facility bank established by the APCO pursuant to Regulation 2-4-414, and for which there will be no other significant environmental effect;

   11.4   Projects satisfying the "no net emission increase" provisions of District Regulation 2, Rule 2 for which there will be some increase in the emissions of any toxic air contaminant, but for which the District staff's health risk screening analysis shows that the project will not result in a cancer risk (as defined in Regulation 2-5-206) greater than 1.0 in a million ($10^{-6}$) and will not result in a chronic hazard index (as defined in Regulation 2-5-208) greater than 0.20, and for which there will be no other significant environmental effect.

*(Adopted 7/17/91; Amended 5/17/00; 12/21/04; 6/15/05)*

**2-1-313    Projects Not Exempt From CEQA Review:** Notwithstanding the exemptions from CEQA review set forth in Section 2-1-312, such exemptions shall not apply to any project covered by the categories set forth in subsections 2-1-312.1 through 312.9 where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances, or due to cumulative impacts of successive projects of the same type in the same place over time. Such projects shall be reviewed in accordance with the requirements of CEQA.

*(Adopted 7/17/91; Amended 6/15/05)*

**2-1-314    Case-by-Case CEQA Determinations:** Notwithstanding the requirement of Section 2-1-311, the District shall, for any permit applications which were deemed complete by the District on or before July 17, 1991, review said permit applications on a case-by-case basis in order to determine whether the District's evaluation of the permit application will involve any element of discretion. If as a result of this case-by-case-review, the District determines that the evaluation of the permit application will not involve any element of discretion on its part, then the application may be treated as a ministerial project so long as all of the following conditions are met:

314.1    The District makes a specific written finding to this effect as part of its determination that the permit application is complete;

314.2    The District will merely apply the law to the facts as presented in the permit application; and

314.3    The District's evaluation of the permit application and its decision regarding whether to issue the permit will be limited to the criteria set forth in Section 2-1-428.

*(Adopted July 17, 1991)*

**2-1-315    Denial, Failure to Mitigate Significant Adverse Environmental Impacts:** For any application for which the District is a Lead Agency under CEQA, where significant

adverse environmental impacts have been identified in the District's review of, or in the course of the public comment period on, said application, the APCO shall deny an authority to construct to such new or modified stationary source, as proposed, unless:

315.1   The applicant agrees to implement or carry out such available alternatives or mitigation measures which would, to the extent feasible, avoid or substantially lessen any such significant adverse environmental impacts as a condition for issuance of an authority to construct; or

315.2   The APCO finds that any such available, feasible alternatives or mitigation measures are within the responsibility and jurisdiction of another public agency, and such measures have been adopted by such other agency, or can and should be adopted by such other agency; or

315.3   The APCO finds that there are no feasible alternatives or measures to substantially mitigate the unavoidable adverse environmental effects associated with the project, but that the benefits of the project outweigh such unavoidable adverse environmental effects, and the APCO states in writing the reasons and overriding considerations to support the issuance of the authority to construct based on the Final EIR and other information in the record notwithstanding the unavoidable adverse environmental effects associated with the project.

*(Adopted November 20, 1991)*

**2-1-316    New or Modified Sources of Toxic Air Contaminants or Hazardous Air Pollutants:** Notwithstanding any exemption contained in Section 2-1-103 or Section 114 through 128, any new or modified source meeting any of the following criteria shall be subject to the requirements of Regulation 2, Rule 1, Section 301 and/or 302.

316.1   If a new or modified source emits one or more toxic air contaminants in quantities that exceed the trigger levels listed in Table 2-5-1 of Regulation 2-5 and the source did not have a valid exemption from Regulation 2-1-302 when the source was constructed or modified, then the source shall be subject to the requirements of Sections 2-1-301 and 302, unless the owner or operator of the source can demonstrate to the satisfaction of the APCO that the source:

1.1   Will comply with the TBACT requirement of Regulation 2-5-301 (if applicable); and

1.2   Will comply with the project risk limits of Regulation 2-5-302 (if applicable).

316.2   If a new or modified source, or group of related sources in a proposed construction or modification will emit 2.5 or more tons per year of any single hazardous air pollutant or 6.25 or more tons per year of any combination of hazardous air pollutants, then the source or group of sources shall be subject to the requirements of Sections 2-1-301 and 302.

*(Adopted 4/16/86; Amended 7/17/91;Renumbered and Amended 6/7/95; Amended 5/17/00; 6/15/05)*

**2-1-317    Public Nuisance Sources:** Notwithstanding any exemption contained in Section 2-1-103 or Section 114 through 128, any new or modified source meeting any of the following criteria shall be subject to the requirements of Regulation 2, Rule 1, Section 301 and/or 302. If any exempt source receives two or more public nuisance violations, under Regulation 1, Section 301 or Section 41700 of the California Health & Safety Code, within any consecutive 180-day period, then the source shall be subject to the requirements of Section 2-1-301 and 302. Such a source will be treated as loss of exemption source under Section 2-1-414, and will be subject to the annual permit to operate fee specified in Regulation 3. This section does not apply to a source that is exempt per section 2-1-113.

*(Adopted 6/7/95; Amended 5/17/00)*

**2-1-318    Hazardous Substances:** Notwithstanding any exemption contained in Section 2-1-103 or Section 114 through 128, any new or modified source meeting any of the following criteria shall be subject to the requirements of Regulation 2, Rule 1, Section 301 and/or 302. If a new or modified source at a PSD Major Facility, as defined in Regulation 2, Rule 2, Section 220.3, emits the following air contaminants in excess of

the quantities listed below, then it is subject to the requirements of Sections 2-1-301 and 302.

318.1    0.6 ton per year of lead,

318.2    0.007 ton per year of asbestos (excepting demolition, renovation, and waste disposal),

318.3    0.0004 ton per year of beryllium,

318.4    0.1 ton per year of mercury,

318.5    1 ton per year of vinyl chloride,

318.6    3 tons per year of fluorides,

318.7    7 tons per year of sulfuric acid mist, and

318.8    10 tons per year of reduced sulfur compounds (including hydrogen sulfide).

*(Adopted 10/19/83; Renumbered and Amended 6/7/95; Amended 5/17/00)*

**2-1-319    Source Expressly Subject to Permitting Requirements:** Notwithstanding any exemption contained in Section 2-1-103 or Section 114 through 128, any source meeting any of the following criteria shall be subject to the requirements of Section 2-1-302:

319.1    The emission rate of any regulated air pollutant from the source is greater than 5 tons per year, after abatement.

319.2    The source is subject to the requirements of Section 2-1-316, 317, or 318.

*(Adopted May 17, 2000)*

**2-1-400    ADMINISTRATIVE REQUIREMENTS**

**2-1-401    Persons Affected:** Any person who has been granted or requires an authority to construct shall secure a permit to operate. Any person who is not required to obtain an authority to construct and who is required to obtain a permit to operate shall secure a permit to operate. In addition, the following shall apply for a permit to operate for any source which is not subject to an exemption per Sections 2-1-103, 105, or 113 through 2-1-129:

401.1    On or before July 1, 1980, persons who operate a facility causing emissions of 2.5 tons per year or more of a regulated air pollutant.

401.2    On or before July 1, 1980, persons who operate gasoline terminals, bulk plants and facilities that dispense gasoline for sale or dispense more than 60,000 gallons of gasoline per year.

401.3    Persons who operate coating, adhesive, dipping, laminating, printing, screening, masking, electrodeposition, resist application, or similar source or equipment at any facility whose coating, adhesive, dipping, laminating, printing, screening, masking, electrodeposition, resist application, or similar source or equipment consume greater than 30 gallons of coating and emit 150 pounds of VOC per year or more on a facility wide basis, resulting from the applications of coatings. Upon request of the applicant, the APCO may group coating operations which individually emit less than 150 lb/yr into a single facility-wide source, or other convenient grouping.

401.4    Persons who operate surface preparation and cleaning equipment or operations which use unheated solvent solutions containing more than 10 percent VOC and which contain more than 1 gallon of solvent or have a liquid surface area of more than 1 ft.$^2$, including wipe cleaning operations with a net solvent usage greater than 20 gallons per year, and that emit 150 pounds of VOC per year or more, on a facility-wide basis. Upon request of the applicant, the APCO may group wipe cleaning operations into a single facility-wide source, or other convenient groupings.

401.5    Persons who plan to modify an existing source or install a new source which qualifies for the Accelerated Permitting Program in Section 2-1-106 shall first submit a complete permit application, in accordance with Section 2-1-302.2.

401.6    Persons who operate a source that is subject to either loss of exemption or exclusion per section 2-1-414 or 2-1-424.

401.7    Persons who operate a source constructed after July 1, 1972.

401.8    On or before July 1, 2005, any person who operates a crematorium for the cremation of human remains.

*(Amended 4/16/86; 1/7/87; 7/17/91; 6/7/95; 10/7/98; 5/17/00; 12/21/04)*

**2-1-402**  **Applications:** Every application for an authority to construct or a permit to operate shall be submitted to the APCO on the forms specified, and shall contain all of the information required. Sufficient information must be received to enable the APCO to make a decision or a preliminary decision on the application and/or on any exemptions authorized by this Regulation. The APCO may consult with appropriate local and regional agencies to determine whether the application conforms with adopted plans and with local permit requirements.

**2-1-403**  **Permit Conditions:** Except as to permit applications reviewed in accordance with Section 2-1-311, the APCO may impose any permit condition that he deems reasonably necessary to insure compliance with federal or California law or District regulations. For any permit application which was reviewed as a ministerial project in accordance with Section 2-1-311, the APCO shall only impose permit conditions as set forth in the District's Permit Handbook for the type of source being permitted. The APCO may require the installation of devices for measurement or analysis of source emissions or ground-level concentrations of air contaminants.

*(Amended 7/17/91; 10/7/98)*

**2-1-404**  **Changes in Throughput and Hours of Operation:** After a permit to operate has been issued, in accordance with subsections 2-1-401.1 through 401.4, changes in hours of operation, fuels, process materials or throughput are allowed only if emissions resulting from such changes are not of such quantity as would cause denial of an authority to construct after an air quality permit analysis made pursuant to the provisions of Rule 2 of this Regulation. "Change" is the use of a process or fuel not used in the prior 12 months, or a throughput level higher than the highest level in the prior 12 months or total monthly operating hours higher than any month in the prior 12 months.

404.1  The holder of a permit to operate shall advise the APCO not more than 30 days after any changes in hours of operation, fuels, process materials or throughput which might increase emissions.

404.2  The APCO shall act to revoke the permit to operate of any person who fails to comply with the requirements of this Section.

*(Amended July 17, 1991)*

**2-1-405**  **Posting of Permit to Operate:** A copy of the permit to operate, including all relevant permit conditions, shall be accessible to personnel who operate the equipment for which the permit has been issued. These documents shall be included on site in the operator's manual, or shall be accessible to the operators electronically.

*(Amended 5/17/00; 11/15/00)*

**2-1-406**  **Transfer:** An authority to construct or a permit to operate shall not be transferable from one facility to another. An authority to construct or a permit to operate shall not be transferable from one person to another without obtaining written permission of the APCO.

**2-1-407**  **Authority to Construct Expiration:** An authority to construct shall expire two years after the date of issuance, unless the authority to construct has been renewed.  Upon receipt of a written request and any required fees prior to the expiration of the authority to construct, the APCO shall renew the authority to construct in writing if the APCO determines that the renewal complies with this section and that the holder of the authority to construct is not violating any provision or condition of the authority.  If the APCO does not act on such a request prior to expiration of the authority to construct, the authority shall remain in effect until the APCO has acted to approve or deny the renewal request.

407.1  The following requirements shall apply to renewals:

1.1  Except as provided in Sections 2-1-407.2 and 407.3, an authority to construct may be renewed one time for an additional two years;

1.2  Except for renewals pursuant to Section 2-1-407.3, renewal is contingent upon meeting the current BACT and offset requirements of Regulation 2-2-301, 302 and 303; and

1.3  Except as provided in Sections 2-1-407.2 and 407.3, an authority to construct that has been renewed shall expire four years after the date of original issuance.

407.2 If the authority to construct was issued pursuant to an environmental impact report (EIR) that explicitly covered a construction period longer than four years, the authority to construct shall, upon request by the applicant, be renewed for additional two-year terms throughout the construction period covered by the EIR.

407.3 If substantial use of the authority to construct has begun, either during the initial term or during a renewal term, the authority to construct shall, upon request by the applicant, be renewed for additional two-year terms until the permit to operate is issued, or, if a term of less than two years is requested, for such term as is requested.

*(Amended 7/17/91; Amended 10/7/98; 6/1/05)*

**2-1-408    Action on Applications:** Except for applications subject to Section 2-1-412, the publication and public notice requirements of Section 2-2-405 or Section 2-10-402, or to the provisions of Rule 6 of this Regulation, the APCO shall notify the applicant in writing of approval, approval with conditions, or denial of the application within 35 working days of receipt of a completed application, unless the time is extended with the written consent of the applicant.

408.1 Notwithstanding this 35-working-day limit, the APCO shall not take final action for any project for which an Environmental Impact Report or a Negative Declaration has been prepared until a Final EIR for that project has been certified or a Negative Declaration for that project has been approved, and the APCO has considered the information in that Final EIR or Negative Declaration. For cases in which the 35 working-day time period has elapsed, the APCO shall take final action on the application within 30 days after the certification of the Final EIR or approval of the Negative Declaration. This subsection shall not apply to any project that is exempt from the District's CEQA requirements pursuant to Section 2-1-311 or 2-1-312. Any substantive change to an application which occurs after the evaluation period has commenced shall allow the APCO to start a new completeness review period, and to reset the 35 working-day limit after the application has been deemed complete.

*(Amended 11/1/89; 7/17/91; 11/20/91; 11/3/93; 6/7/95; 10/7/98; 12/21/04; 7/19/06)*

**2-1-409    Regulations in Force Govern:** The decision as to whether an authority to construct shall be granted or denied shall be based on federal, state and District BACT, offset, TBACT, and project risk regulations or standards in force on the date the application is declared by the APCO to be complete.

*(Amended June 15, 2005)*

**2-1-410    Appeal:** The following actions of the APCO may be appealed:

410.1 In accordance with Section 42302 of the Health and Safety Code an applicant for an authority to construct which has been denied may request, within 30 days after receipt of the written notice to deny, the Hearing Board of the District to hold a hearing on whether or not the authority to construct was properly denied.

410.2 In accordance with Section 42302.1 of the Health and Safety Code, within 30 days of any decision of the APCO, pertaining to the issuance of an authority to construct, any aggrieved person who, in person or through a representative, appeared, submitted written testimony, or otherwise participated in the action before the District may request the Hearing Board of the District to hold a public hearing to determine whether the authority to construct was properly issued or for an order modifying or reversing that decision. Such appeals shall be filed in writing and contain a summary of the issues to be raised. The Hearing Board shall consider the appeal at a public hearing within 30 days of the filing of the appeal. The Hearing Board may reverse or modify the decision of the APCO if it determines that the decision was erroneous.

410.3 In accordance with Section 40724.6(g) of the Health and Safety Code, a permitholder of a large confined animal facility may appeal any District determination or decision made under Regulation 2, Rule 10, in accordance with Section 2-1-410.2.

*(Amended 7/17/91; 11/20/91; 5/17/00; 7/19/06)*

**2-1-411**  **Permit to Operate, Final Action:** The APCO shall take final action to approve, approve with conditions, or disapprove a permit to operate a facility subject to this rule within 90 days after the initial date of the start-up period of the new or modified source. This time period may be extended upon the written request of the applicant stating the reasons why further start-up time is needed. In no case shall the APCO allow the start-up period to be greater than 180 days. All conditions, specific or implied, of the authority to construct are in effect during the entire start-up period.

    411.1  Notwithstanding the above, final action taken on permits issued pursuant to Rule 6 of this Regulation shall be in accordance with the provisions of Section 2-6-410.

    411.2  A permit approved under this section must be signed by the permit holder or by a person authorized to sign on behalf of the permit holder.

        *(Adopted 10/19/83; Amended 7/17/91; 11/3/93; 10/7/98; 12/21/04)*

**2-1-412**  **Public Notice, Schools:** Prior to approving an application for an authority to construct or permit to operate for a new or modified source located within 1000 feet of the outer boundary of a K-12 schoolsite and which results in the increase in emissions of any substance into the ambient air which has been identified by the California Air Resources Board or the APCO as a toxic air contaminant or a hazardous air contaminant or which is on the list required to be prepared pursuant to subdivision (a) of Section 25532 or Section 44321 subsections (a) to (f) inclusive of the Health and Safety Code, the APCO shall:

    412.1  Prepare a public notice in which the proposed new or modified source, and the proposed emissions, are fully described.

    412.2  Distribute the notice, prepared in accordance with subsection 2-1-412.1 at the expense of the applicant, to the parents or guardians of children enrolled in any school within one-quarter mile of the source and to each address within a radius of 1000 feet of the source. This notice shall be distributed at least 30 days prior to the date final action on the application is to be taken by the APCO. The APCO shall review and consider all comments received during the 30 days after the notice is distributed, and shall include written responses to the comments in the permit application file prior to taking final action on the application.

    412.3  Failure of any person to receive the notice shall not affect the validity of the authority to construct or permit to operate issued by the APCO, if the APCO or applicant responsible for giving the notice has made a good faith effort to follow the procedures for giving the notice prescribed by law.

        *(Adopted 11/1/89; Amended 10/7/98; 5/17/00)*

**2-1-413**  **Portable Equipment Operated Within the District:** Any person required to obtain an authority to construct and permit to operate under Sections 2-1-301 and 302 for a portable source can elect to receive a single portable permit which will allow the source to operate anywhere in the District, provided the APCO approves the permit, and the source meets the definition of portable equipment set forth in Section 2-1-220. Such a source is subject to the standard filing, initial and permit to operate fees in Regulation 3.

        *(Adopted June 7, 1995)*

**2-1-414**  **Loss of Exemption, Public Nuisance:** Any source subject to Section 2-1-317 shall be subject to permit conditions deemed necessary by the District to minimize the potential for future violations. If the owner/operator can demonstrate that the source has neither received a public nuisance violation nor received a confirmed complaint for a two year period after the permit was issued, then the owner/operator may submit a written petition to the APCO to remove the permit requirement. Such a petition is subject to APCO approval.

        *(Adopted June 7, 1995)*

**2-1-415**  **Source Pre-Certification Procedure:** Any person may submit a written request to pre-certify a source, for the purposes of qualifying the source for the Accelerated Permitting Program. Such a request will be evaluated within 60 days of receipt of the information listed below. The APCO may also independently pre-certify a source. The APCO shall maintain a list of pre-certified equipment, and shall make this list available to industry through the Public Information & Education Division. A pre-certification request shall include all of the following:

415.1 A complete description of the source, including make, model number, rated capacity and emission calculations at maximum operating rate;

415.2 Applicable BACT requirements;

415.3 Proposed permit conditions governing operation of the source; and

415.4 Applicable fees, as described in Regulation 3, Section 323.

*(Adopted June 7, 1995)*

**2-1-416 Temporary Amnesty for Unpermitted Sources:** The APCO has the authority to declare an amnesty period, during which the District may waive all or part of the penalty fees, including late fees and retroactive permit fees, for sources that are currently operating without valid Permits to Operate.

*(Adopted 6/7/95; 12/21/04)*

**2-1-420 Suspension:** The APCO may suspend a permit if, within a reasonable time, the holder of the permit willfully fails or refuses to furnish requested information, analyses, plans or specifications relating to emissions from the source for which the permit was issued. The APCO shall serve notice in writing of a suspension, and the reasons therefor, on the holder of the permit. A suspension shall become effective 5 days after notice has been served.

**2-1-421 Appeal from Suspension:** Within 10 days after the receipt of the notice of suspension, the permit holder may request the Hearing Board to hold a hearing to determine whether or not the permit was properly suspended.

**2-1-422 Revocation:** The APCO may request the Hearing Board to hold a hearing to determine whether an authority to construct and/or permit to operate should be revoked if it is found that the holder of an authority to construct or permit to operate is violating any applicable order, rule or regulation of the District, or is violating any provision or condition of the authority to construct or permit to operate.

*(Amended May 17, 2000)*

**2-1-423 Hearings:** Within 30 days after receipt of requests submitted pursuant to Sections 2-1-421 and 422, the Hearing Board shall hold a hearing as provided by Section 42308 of the California Health and Safety Code and may take action as authorized by Section 42309 of the California Health and Safety Code.

*(Amended July 17, 1991)*

**2-1-424 Loss of Exemption or Exclusion:** Within 90 days of written notification by the APCO of the need for a permit any person who operates a source which does not require a District permit or, for a large confined animal facility subject to Regulation 2, Rule 10 in existence on July 17, 2006, within 180 days of that date, who loses an exemption or exclusion because of changes in federal, California or District laws or regulations shall submit a complete permit application for the subject source, as defined Section 2-1-202. A person who holds a valid permit to operate for the subject source need not reapply.

*(Adopted 4/16/86; Amended 6/7/95; 10/7/98; 7/19/06)*

**2-1-425 Sources of Toxic Air Contaminants:** Any person who does not hold a valid permit to operate in accordance with Section 2-1-401 and emits, in quantities determined to be appropriate by the APCO, any toxic air contaminant, shall within 90 days of written notice by the APCO of the need for a permit to operate, complete a permit application for the subject source, in accordance with the applicable requirements of Section 2-1-202 or Section 2-1-302.2.

*(Amended June 7, 1995)*

**2-1-426 CEQA-Related Information Requirements:** Unless a project for which an authority to construct is sought is exempt from the District's CEQA requirements pursuant to Section 2-1-311 or 2-1-312 of this Rule, applicants for authorities to construct shall provide, as part of a complete application, the following CEQA-related information:

426.1 A preliminary environmental study which shall describe the proposed project and discuss any potential significant adverse environmental impacts, alternatives to the project, and any necessary mitigation measures to minimize adverse impacts. The preliminary environmental study shall include all activities involved in the project and shall not be limited to those activities affecting air quality. In preparing the preliminary environmental study, the applicant may utilize the Environmental Information Form in Appendix H of the State CEQA Guidelines or an equivalent format specified by the APCO. (see also Appendix G, Significant Effects.) The preliminary environmental

study shall list all other local, state and federal governmental agencies that require permits for the project and indicate any environmental documentation required by such agencies; or

426.2   When an agency other than the District is to be the Lead Agency under CEQA, either:

2.1   A Draft or Final Environmental Impact Report prepared by or under the supervision of the Lead Agency; or

2.2   A contract for the preparation of a Draft Environmental Impact Report executed by the Lead Agency together with the Initial Study prepared by the Lead Agency; or

2.3   A Negative Declaration prepared by the Lead Agency; or

2.4   A Notice of Preparation of a Draft EIR prepared by the Lead Agency;

2.5   A copy of the Initial Study prepared by the Lead Agency, or

2.6   A commitment in writing from another agency indicating that it has assumed the role of Lead Agency for the project in question.

*(Adopted 11/20/91; Amended 10/7/98)*

**2-1-427   Procedure for Ministerial Evaluations:** The District shall review each permit application prior to finding that it is complete in order to determine whether its evaluation of the permit application is covered by the specific procedures, fixed standards and objective measurements set forth in the District's Permit Handbook and BACT/TBACT Workbook. If the District determines that its evaluation of the permit application is covered by specific procedures, fixed standards and objective measurements set forth in the District's Permit Handbook and BACT/TBACT Workbook, the District's evaluation of that permit application will be classified as ministerial and the engineering evaluation of the permit application by the District will be limited to the use of said specific procedures, fixed standards and objective measurements. For such projects, the District will merely apply the law to the facts as presented in the permit application, and the District's decision regarding whether to issue the permit will be based only on the criteria set forth in Section 2-1-428 and in the District's Permit Handbook and BACT/TBACT Workbook.

*(Adopted 11/20/91; Amended 10/7/98)*

**2-1-428   Criteria for Approval of Ministerial Permit Applications:** If the District classifies a permit application as ministerial pursuant to Section 2-1-427, and as a result of its evaluation of that permit application, the District determines that all of the following criteria are met, the issuance by the District of an Authority to Construct for the proposed new or modified source will be a mandatory ministerial duty.

428.1   The proposed new or modified source will comply with all applicable provisions of the District's Rules and Regulations and with all applicable provisions of state and federal law and regulations which the District has the duty to enforce;

428.2   The emissions from the proposed project can be calculated using standardized emission factors from published governmental sources, District source test results, established formulas from published engineering and scientific handbooks, material safety data sheets or other similar published literature, manufacturer's warranties or other fixed standards as set forth in the District's Permit Handbook and BACT/TBACT Workbook;

428.3   Where Best Available Control Technology is required, BACT for the proposed new or modified source can be determined based on the latest edition of the ARB's BACT/LAER Clearinghouse, on the District's own compilations of BACT levels for specific types of sources as set forth in the District's Permit Handbook and BACT/TBACT Workbook or on a more stringent BACT level proposed by the project proponent; and

428.4   If the proposed new or modified source involves the shutdown of an existing source, the Reasonably Available Control Technology applicable to the source to be shut down can be determined from existing provisions of the District's Rules and Regulations or from the District's own compilations of BACT levels for specific types of sources as set forth in District's Permit Handbook and BACT/TBACT Workbook.

428.5    For proposed new and modified sources that are subject to Regulation 2, Rule 5, the project meets the project risk requirement of Regulation 2-5-302.

428-6    Where Best Available Control Technology for Toxics (TBACT) is required pursuant to Regulation 2-5-301, TBACT for the proposed new or modified source can be determined based on TBACT determinations in the District's BACT/TBACT Workbook, an EPA MACT standard, a CARB ATCM, or a more stringent TBACT level proposed by the applicant that is applicable to the specific source type or source category being evaluated.

In addition, when the District has issued an authority to construct for a proposed new or modified source as a ministerial project, the issuance of the permit to operate for that source will also be a mandatory ministerial duty if the source will meet all the conditions imposed in connection with the issuance of the authority to construct and all applicable laws, rules and regulations enforced by the District.

*(Adopted 11/20/91; Amended 10/7/98; 6/15/05)*

**2-1-429    Federal Emissions Statement:** The owner or operator of any source that emits or may emit oxides of nitrogen or volatile organic compounds shall provide the APCO with a written statement, in such form as the APCO prescribes, showing actual emissions of oxides of nitrogen and volatile organic compounds from that source. At a minimum the emission statement shall contain all of the information contained in the Air Resources Board's Emission Inventory Turn Around Document as described in Instructions for the Emission Data System Review and Update Report. The statement shall also contain a certification by a responsible official of the company or facility that the information contained in the statement is accurate to the best knowledge of the individual certifying the statement. Effective November 1, 1994, the statement shall be submitted to the District each year with the annual permit renewal. The APCO may waive this requirement for any class or category of sources that emit less that 25 tons per year of oxides of nitrogen and volatile organic compounds, each taken separately, if the District provides the Air Resources Board with emission inventories of sources emitting greater than 10 tons per year of either oxides of nitrogen or volatile organic compounds based on the use of emission factors acceptable to the Air Resources Board and the U.S. Environmental Protection Agency (EPA). A current list of classes and categories of stationary sources for which this requirement has been waived by the APCO will be kept by the District and made available upon request. Also, for purposes of reporting emission data to the Air Resources Board and to the EPA, the District will provide calendar year and peak ambient ozone season data determined through weighted averaging of current and prior year (if available) company/facility reported certified information. This Section is required by the provisions of Section 182(a)(3)(B) of the Clean Air Act.

*(Adopted 11/4/92; Amended 6/15/94; 6/7/95; 12/21/04)*

**2-1-430    Maintenance of the Permit Handbook and BACT/TBACT Workbook:** The APCO shall publish and maintain the Permit Handbook and BACT/TBACT Workbook as needed to reflect the current procedure for review and issuance of permits, and the most recent determination of BACT/TBACT for a given source category.

*(Adopted October 7, 1998)*

**2-1-431    Date of Completion:** The APCO shall deem an application to be complete on the date that the information and fees required to complete the application were received by the District.

*(Adopted May 17, 2000)*

**2-1-432    Determination of Complete Application:** Except for an application which is subject to the publication and public comment requirements of Section 2-2-405, the APCO shall determine whether an application for an authority to construct is complete not later than 15 working days following receipt of the application, or after a longer time period agreed upon by both the applicant and the APCO.  If the APCO determines that the application is not complete, the applicant shall be notified in writing of the decision, specifying the information that is required.  Upon receipt of any resubmittal of the application a new 15 working day period to determine completeness shall begin.  For an application which is subject to the publication and public comment requirements of Section 2-2-405 or Section 2-10-402, the completeness review period(s) shall be 30 days.  The application shall be deemed complete on the date of receipt of all information required for completeness.  Upon determination that the

application is complete, the APCO shall notify the applicant in writing.  If applicable, such written notification shall include the District's determination that its evaluation of the application will be covered by the specific procedures, fixed standards and objective measurements set forth in the District's Permit Handbook and that the District's evaluation of that permit application will be classified as ministerial and will accordingly be exempt from CEQA review.  Thereafter only information regarding offsets, or information to clarify, correct or otherwise supplement the information submitted in the application may be requested.

*(Adopted 12/ 21/04; Amended 6/19/06)*

**2-1-500    MONITORING AND RECORDS**

**2-1-501    Monitors:** Continuous emission monitors required pursuant to Section 2-1-403 shall comply with the provisions of Volume V of the Manual of Procedures.

*(Adopted March 17, 1982)*

**2-1-502    Burden of Proof:** Any person asserting that a source is exempt from the requirements of Regulation 2, Rule 1, Section 301 and/or 302, shall, upon the request of the APCO, provide substantial credible evidence proving to the APCO that the source meets all requirements necessary to qualify for the exemption.

*(Adopted May 17, 2000)*

**2-1-600    MANUAL OF PROCEDURES**

**2-1-601    Engineering Permitting Procedures:** The specific procedures for the engineering evaluation of particular types of sources as well as specific fixed standards and objective measurements upon which the District will rely in its evaluation of ministerial permit applications are set forth in the District's Permit Handbook and BACT/TBACT Workbook.

*(Adopted 7/17/91; Amended 10/7/98)*

**2-1-602    CEQA Guidelines:** The District's Guidelines for Environmental Processes under CEQA for those cases in which the District assumes the role of Lead Agency are set forth in Volume VII to the District's Manual of Procedures and in the Permit Handbook.

*(Adopted 11/20/91; Amended 6/7/95)*



Figure 2-1-101

Table 2-1-316
Toxic Air Contaminant Trigger Levels

This table has been superceded by Table 2-5-1 in Regulation 2, Rule 5.

*(Amended 5/17/00; 11/15/00; 6/15/05)*