BRIAN C. BUNGER, ESQ. (SB#142001)
District Counsel
ALEXANDER G. CROCKETT, ESQ. (SB#193910)
Assistant Counsel
BAY AREA AIR QUALITY MANAGEMENT DISTRICT
939 Ellis Street
San Francisco, CA  94109
Telephone: (415) 749-4920
Facsimile:  (415) 749-5103
Email: acrockett@baaqmd.gov

Counsel for DEFENDANT
THE BAY AREA AIR QUALITY MANAGEMENT DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>　　　　　Defendants. | CASE NO. C-07-4936 CRB<br><br>**[ERRATA CORRECTED]**<br><br>**NOTICE OF MOTION AND MOTION FOR SANCTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　April 11, 2008<br>Time:　10:00 a.m.<br>Place:　Courtroom 8, 19th Floor<br>Judge:　Hon. Charles R. Breyer |

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, DEFENDANT the BAY AREA

AIR QUALITY MANAGEMENT DISTRICT ("Air District") hereby submits this NOTICE OF

MOTION AND MOTION FOR SANCTIONS and MEMORANDUM OF POINTS AND

AUTHORITIES IN SUPPORT THEREOF.

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................................................... v

NOTICE OF MOTION ............................................................................................... 1

RELIEF SOUGHT ...................................................................................................... 1

STATEMENT OF THE ISSUE .................................................................................. 1

ARGUMENT .............................................................................................................. 2

I.      FACTUAL AND PROCEDURAL BACKGROUND .................................... 2

II.     LEGAL STANDARD FOR AWARDING RULE 11 SANCTIONS .............. 5

III.    THE FIRST AMENDED COMPLAINT IS FRIVOLOUS AS TO THE AIR DISTRICT BECAUSE IT PROVIDES NO REASONABLE BASIS FOR GRANTING INJUNCTIVE RELIEF AGAINST THE AIR DISTRICT ......................... 6

        A.    There Is No Reasonable Basis For Claiming Injunctive Relief Against The Air District Based Merely On Purported "Indispensable Party" Status .................................. 8

        B.    There Is No Reasonable Basis For Injunctive Relief Against The Air District On Any Of The Legal Theories Asserted In The First Three Claims For Relief .................... 9

              1.    There Is No Reasonable Basis To Claim Mandamus Relief Against A State Agency That Is Admittedly Proceeding In Compliance With Law .............. 9

              2.    There Is No Reasonable Basis To Claim Relief Under The APA Against A State Agency That Is Admittedly Proceeding In Compliance With Law ........... 10

              3.    There Is No Reasonable Argument That A District Court Can Enjoin A Permitting Agency From Issuing A Permit For A Facility As Authorized By Law Based On A Claim That Operation Of The Facility May Cause A Public Nuisance ...................... 10

        C.    Plaintiffs Have No Reasonable Claim For Irreparable Harm From A Potential Failure To Enforce New Regulations That May Be Adopted In the Future .................... 12

IV.     THE COURT SHOULD AWARD THE AIR DISTRICT ITS REASONABLE COSTS AND ATTORNEYS FEES ........................................................ 13

V.      CONCLUSION ........................................................................................... 15

ii

<u>**TABLE OF AUTHORITIES**</u>

**<u>Federal Cases</u>**

*American Express Co. v. United States*, 4 Ct. Cust. 146 (Ct. Cust. App. 1913) ................................. 7

*Bamberger v. Schoolfield*, 160 U.S. 149, 16 S. Ct. 225, (1895) ........................................... 7

*Boston v. United States Dept. of Interior*, 424 F. Supp. 259 (E.D. Mo. 1976) .................................... 9

*EEOC v. Peabody Western Coal Co.*, 400 F.3d 774 (9th Cir. 2005),
    *cert. denied*, 546 U.S. 1150 (2006) ............................................ 8

*Gros Ventre Tribe v. United States*, 469 F.3d 801 (9th Cir. 2006),
    *cert. denied*, 128 S. Ct. 176 (2007) .......................................... 10

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933 (1983) ................................. 14

*Hunter v. Underwood*, 362 F.3d 468 (8th Cir. 2004) ..................................... 10

*In re Wolenski*, 324 F.2d 309 (3d Cir. 1963) ....................................... 9

*Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir. 1987) ............................ 14

*Lowry v. Barnhart*, 329 F.3d 1019 (9th Cir. 2003) ..................................... 9

*Massachusetts v. EPA*, __ U.S. __, 127 S. Ct. 1438 (2007) .............................. 4, 7

*Ness Investment Corp. v. United States Dep't of Agriculture*,
    512 F.2d 706 (9th Cir. 1975) ................................................ 10

*Northern Cheyenne Tribe v. Norton*, 503 F.3d 836 (9th Cir. 2007) ....................... 12

*Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 29 S. Ct. 67 (1908) .................... 7

*Robinson v. Illinois*, 752 F. Supp. 248 (N.D. Ill. 1990) ................................ 9

*Sierra Club v. United States Environmental Protection Agency*, No. C 06-5288-MHP,
    U.S. Dist. LEXIS 77856 (N.D. Cal. Oct. 19, 2007) .................................. 14

*Smith v. Grimm*, 534 F.2d 1346 (9th Cir. 1976) ....................................... 9

*Smith v. Sprague*, 143 F.2d 647 (8th Cir. 1944) ...................................... 7

*Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196 (9th Cir. 1988) .................... 6

*Truesdell v. Southern Cal. Permanente Med. Group*,
    293 F.3d 1146 (9th Cir. 2002) ................................................ 6

*Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986) ......................... 5, 6

*Zepeda v. United States Immigration and Naturalization Serv.*,
    753 F.2d 719 (9th Cir. 1983) ................................................ 12

**Federal Statutes**

28 U.S.C. § 1361 ................................................................................................................... 9

5 U.S.C. § 701(b)(1) .......................................................................................................... 10

5 U.S.C. § 706 .................................................................................................................... 10

**Federal Court Rules**

Fed. R. Civ. P. 11(b)(2) ....................................................................................................... 5

Fed. R. Civ. P. 11(c)(1) ........................................................................................................ 5

Fed. R. Civ. P. 11(c)(2) ........................................................................................................ 6

Fed. R. Civ. P. 19(b) ............................................................................................................ 8

**California Cases**

*Harding v. State of California*, 159 Cal. App. 3d 359 (Cal. Ct. App. 1984) ..................................... 12

*Jones v. Union Pacific R.R. Co.*, 79 Cal. App.4th 1053 (Cal. Ct. App. 2000) ................................. 11

*Orpheum Building Co. v. San Francisco Bay Area Rapid Transit Dist.*,
    80 Cal. App. 3d 863 (Cal. Ct. App. 1978) ................................................................. 12

*Pekarek v. City of San Diego*, 30 Cal. App. 4th 909 (Cal. Ct. App. 1994) ...................................... 11

*Varjabedian v. City of Madera*, 20 Cal.3d 285 (1977) ................................................................ 11

**California Statutes**

Cal. Civ. Code § 3482 ....................................................................................................... 11

Cal. Health & Safety Code § 42300 .................................................................................. 11

Cal. Health & Safety Code §§ 40200-40276 ...................................................................... 9

Cal. Health & Safety Code §§ 42402-42402.3 ................................................................... 3

Cal. Pub. Res. Code § 25500 ......................................................................................... 2, 4

Cal. Pub. Res. Code § 25531 ............................................................................................. 3

**Air District Regulations**

Air District Regulation 2-3-405 ...................................................................................... 3, 4

Air District Regulation 2-6-214 ......................................................................................... 5

## SUMMARY OF ARGUMENT

The Air District seeks Rule 11 sanctions against Plaintiffs' attorney for signing and filing a frivolous complaint against it. The First Amended Complaint is frivolous with respect to the Air District because it provides no reasonable legal basis for injunctive relief against the Air District. The Air District respectfully requests that the Court grant it its reasonable attorneys fees incurred in responding to the First Amended Complaint to help make up for the expenditure of public resources necessitated in responding to Plaintiffs' frivolous claims.

Plaintiffs seek an injunction against the Air District prohibiting it from issuing an "Authority to Construct" permit for the San Francisco Electric Reliability Project, a power plant proposed by the City of San Francisco. But Plaintiffs do not contend that there would be anything illegal about issuing an Authority to Construct permit for the project. To the contrary, Plaintiffs concede that issuance would be in compliance with all applicable laws and regulations. Plaintiffs nevertheless ask the Court to enjoin issuance on a theory that the Environmental Protection Agency may in future issue new regulations that may apply to the Project, and that the Air District's issuance now may be deficient when compared to this hypothetical future standard. This theory is absurd. Courts apply and enforce the laws as they exist on the books, not as a plaintiff hopes or expects they may become in the future. Expressed more narrowly, Plaintiffs' theory is patently without merit because there is nothing in the Clean Air Act or any other law or regulation that prohibits the Air District from issuing a permit for emission of a particular air pollutant while EPA is considering whether to adopt new regulations regarding that pollutant. Plaintiffs can cite no such prohibition in the Clean Air Act, and there is nothing in the Supreme Court's recent decision in *Massachusetts v. EPA*, __ U.S. __, 127 S. Ct. 1438 (April 2, 2007), which Plaintiffs cite heavily in the First Amended Complaint, that could arguably be read to create such a prohibition.

The First Amended Complaint is frivolous in seeking an injunction against the Air District based on this theory, as there is no reasonable legal basis for injunctive relief where there is no violation of law. Specifically, as explained in detail herein, Plaintiffs have no reasonable legal basis for relief on any of the three Claims for Relief asserted against the Air District because:

- Plaintiffs assert liability based only on the Air District's purported status as an "indispensable party", but there can be no reasonable argument that such status by itself creates liability;

- Plaintiffs have no reasonable legal basis for mandamus relief under 28 U.S.C. section 1361, because that provision on its face applies only to federal agencies and only where there has been some violation of law;

- Plaintiffs have no reasonable legal basis for injunctive relief under the Administrative Procedures Act because that statute also on its face applies only to federal agencies and only where there has been some violation of law;

- Plaintiffs have no have no reasonable basis for an injunction against issuance of a permit for the facility, as the Air District is expressly authorized under California law to issue such permits and so issuance cannot by definition be a nuisance under the clear terms of California Civil Code Section 3482; and even without Section 3482 an injunction going beyond operation of the facility and prohibiting mere issuance of a permit would be impermissibly overbroad; and

- Plaintiffs have no reasonable argument that they will be irreparably harmed if the Air District acts before new regulations are issued, because they have no reasonable claim that the Air District will not fully impose and enforce any new regulations once they are issued.

For all of these reasons, the First Amended Complaint is patently without merit as to the Air District, and Plaintiffs' attorney should be sanctioned under Rule 11 and ordered to pay the Air District its reasonable attorneys fees for responding to it.

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 11, 2008, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, on the 19th floor, Defendant the Bay Area Air Quality Management District ("Air District") shall and hereby does move the Court for an order sanctioning Plaintiffs' attorney Joshua Arce, Esq., for signing and filing a frivolous complaint pursuant to Rule 11 of the Federal Rules of Civil Procedure; and specifically awarding the Air District its reasonable attorneys fees incurred in responding to Plaintiffs' First Amended Compliant in this action.  The motion shall be and is based on this Notice; the accompanying Memorandum of Points & Authorities; the Declaration of Alexander G. Crockett, Esq., and Request for Judicial Notice being filed concurrently herewith; other declarations and supporting material that may be prepared and filed subsequent to the execution of this document; and the arguments of counsel at the hearing.

## RELIEF SOUGHT

By this Motion, the Air District seeks an order sanctioning Plaintiffs' attorney Joshua Arce, Esq., for filing a frivolous First Amended Complaint that is not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, in violation of Rule 11(b) of the Federal Rules of Civil Procedure.  The Air District seeks an order sanctioning Plaintiffs' attorney by awarding the Air District its reasonable costs and attorneys fees for defending against the frivolous complaint.  The reasonable attorneys fees the Air District seeks include $36,000 for attorney time spent on this matter as of the date of execution of this document as set forth herein, plus any additional amounts for further time and resources the Air District may reasonably incur as a result of the frivolous First Amended Complaint according to further documentation that may be submitted to the Court.

## STATEMENT OF THE ISSUE

Are the three Claims for Relief asserted against the Air District in the First Amended Complaint unwarranted by existing law, or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, so as to warrant the issuance of Rule 11 sanctions?

1

## ARGUMENT

2

## I.    FACTUAL AND PROCEDURAL BACKGROUND

3    This lawsuit concerns the San Francisco Electric Reliability project ("SFERP" or "Project"), a

4    146 megawatt ("MW") natural-gas fired power plant that the City and County of San Francisco ("City")

5    has proposed to build to help meet its needs for electric power.  *See* First Amended Complaint, ¶¶ 2, 48-

6    50.  The Project has undergone a thorough and comprehensive licensing process under the auspices of

7    the California Energy Commission, which is the exclusive permitting authority for new thermal power

8    plants over 50 MW in California pursuant to California's Warren-Alquist State Energy Resources

9    Conservation and Development Act ("Warren-Alquist Act"), California Public Resources Code sections

10    25000 *et seq.*  The Warren-Alquist act provides that the CEC's licensing authority supersedes all other

11    local and state permitting authority, and that the CEC's license

12
> shall be in lieu of any permit, certificate, or similar document required by any state, local
> or regional agency, or federal agency to the extent permitted by federal law . . . and shall
13    supersede any applicable statute, ordinance, or regulation of any state, local or regional
> agency, or federal agency to the extent permitted by federal law.
14

15    Cal. Pub. Res. Code § 25500.  The CEC approved a certificate to construct and operate the project on

16    October 3, 2006.  *See* Air District Request For Judicial Notice ("RJN"), Exh. 3, at pp. 1-4.

17    The Air District was an active participant in the CEC's licensing process with respect to air

18    quality issues, as provided for in the regulatory scheme set forth in CEC and Air District regulations.[1]

19    The Air District prepared a "Determination of Compliance" for the CEC pursuant to Air District

20    Regulation 2-3-201, which assessed the air quality impacts of the Project.  *See* First Amended

21    Complaint, ¶ 72; RJN Exh. 1, Attachment (beginning at p. 12 of Exh. 1).  The Determination of

22    Compliance found that the Project as proposed would comply with all applicable Air District regulations

23    and other requirements concerning air quality, and proposed conditions relating to air quality for

24    consideration by the CEC to ensure that compliance is achieved.  *See* Final Determination of

25
26
27
28

---

[1] The Air District permitting regulations most relevant to this case are Regulations 2-1 (General Permit Requirements), 2-2 (New Source Review), 2-3 (Power Plants), and 2-6 (Major Facility Review).  Copies of these regulations are included as RJN Exhs. 7-10, and are also available on the Air District's website at http://www.baaqmd.gov/dst/regulations/index.htm.  The CEC's regulations governing power plant applications for certification are set forth in 20 Cal. Code Regs. Sections 1741-1770.  Of particular relevance is Section 1744.5, which governs the Commission's use of the Air District's Determination of Compliance document in its environmental review.

2

Compliance, RJN Exh. 1, Attachment (beginning at p. 12 of Exh. 1).  Plaintiffs CARE and Lynne

Brown[2] appealed the Determination of Compliance to the Air District's Hearing Board.  *See* RJN Exh.

1.  The Hearing Board denied the appeal on April 20, 2006.  *See* RJN Exh. 2.

CEC staff then used the Air District's Determination of Compliance as a basis for its review of

air quality issues.  The Energy Commission approved the project on October 3, 2006, and in doing so

included a number of conditions in its certification relating to air quality, based on the proposed

conditions in the Air District's Determination of Compliance.  *See* RJN Exh. 3, pp. 112-136.  Plaintiffs

CARE and Lynne Brown then appealed the Energy Commission's approval to the California Supreme

Court, which has original jurisdiction over such matters under the Warren Alquist Act (*see* Cal. Pub.

Res. Code § 25531).[3]  *See* RJN Exh. 4.  They named the Air District as a Respondent in their Petition,

but as they have done in this case, they did not allege that the Air District had violated any statute or

regulation nor explain how the Air District could properly be a party in an appeal of the Energy

Commission's licensing decision.  They apparently named the Air District as a Respondent because

"CARE believes that the AIR [sic] District's permitting staff is involved in a conspiracy with the power

plant Applicant CCSF, and the CEC, to deprive CARE and its members of their civil and constitutional

rights to a fair hearing on this matter . . . ."  *Id.* at p. 22, ¶ 46.  The California Supreme Court summarily

denied review in a one-sentence order.  *See* RJN Exh. 5.

The final step in the regulatory process that still needs to take place is for the Air District to

incorporate the air quality conditions of certification into an Air District "Authority to Construct"

permit.  *See* Air District Regulation 2-3-405.  This final step is necessary because the Air District

plays the lead role in enforcing the air quality conditions for CEC-licensed power plants in the Bay

Area, but the Air District's power to enforce permit conditions under the California Health & Safety

code extends only to Air District or state air board permits, not to conditions in CEC licenses.  *See* Cal.

Health & Safety Code §§ 42402-42402.3. By including the air quality conditions in an Air District-

---

[2] Mr. Brown was not a named party to the appeal, but he participated in his capacity as Vice President of CARE.  First Amended Complaint, ¶ 39, ll. 15-16; RJN Exh. 2, p. 1 ll. 22-23.

[3] CARE named the District as a respondent in its Petition to the California Supreme Court challenging the CEC's certification decision, even though the District was not a party to the CEC's action and had no control over or involvement in the decision and no power to reverse or alter the decision if the Supreme Court had found the decision deficient in some way.

issued permit, the Air District can enforce them in the California courts.  This final step of incorporating the conditions into an Authority To Construct is a limited, ministerial action consisting simply of making a final check to ensure that all applicable air quality conditions were correctly incorporated into the CEC certification.  If so, the Air District issues the Authority to Construct.  *See* Air District Regulation 2-3-405.  The Air District has no discretion at this point to revisit the substance of the conditions: if the conditions were duly incorporated, the Air District must issue the permit.  *See id.* ("[If] the Certificate contains all applicable conditions . . . the APCO *shall* grant an authority to construct." (emphasis added)).  Indeed, the Air District would be prohibited under the Warren-Alquist Act from revisiting the substance of the conditions established by the CEC, as the Act establishes the CEC as the sole licensing authority whose jurisdiction supersedes all other permitting authorities under state law.  *See* Cal. Pub. Res. Code § 25500.

Plaintiffs do not allege that the Air District or the CEC erred in following this permitting process for the San Francisco Electric Reliability Project or in establishing the conditions under which the Project will be permitted, or that the Project will violate any Air District regulation or other air quality requirement.  Nor can they legitimately claim to do so, as they have already exhausted all avenues for appealing the Air District's Determination of Compliance and the CEC's certification for the project and have been rejected at every turn.  Similarly, Plaintiffs do not allege that the Air District will violate any provision of law if takes the final, ministerial step of incorporating the Project's permit conditions into an Air District-issued Authority to Construct.  Indeed, Plaintiffs concede that the Air District is legally authorized to do so, explaining in Paragraph 72 of the First Amended Complaint that "[h]aving issued Final Determination of Compliance in regard to the SFERP plant on approximately February 25, 2006, BAAQMD is able to issue 'Authority to Construct' the SFERP plant under BAAQMD Regulation 2, Rule 3, Section 301."

Rather, Plaintiffs ask this Court to enjoin the Air District from issuing the Authority To Construct on the grounds that EPA may adopt regulations regarding greenhouse gases in response to the Supreme Court's decision in *Massachusetts v. EPA*, __ U.S. __, 127 S. Ct. 1438 (April 2, 2007), and if adopted such regulations may apply to greenhouse gas emissions from power plants such as the

1  SFERP.[4]  Specifically, Plaintiffs claim that EPA may adopt regulations making facilities such as the

2  SFERP subject to "Prevention of Significant Deterioration" ("PSD") permitting requirements.[5]  *See*

3  First Amended Complaint at ¶ 70.  Notably, Plaintiffs concede that the SFERP does not require a

4  PSD permit under the applicable PSD regulations as they exist today.  The First Amended Complaint

5  is clear that "[t]he BAAQMD has not required CCSF to apply for a PSD permit . . . because CCSF's

6  SFERP plant does not emit more than 100 tons per year of an air pollutant regulated today."  First

7  Amended Complaint, ¶ 21.  Plaintiffs' argument is based solely on hypothetical regulations that EPA

8  may adopt in the future that Plaintiffs believe may set a PSD permit threshold for power plants

9  requiring facilities to obtain PSD permits if they emit more than 100 tons of greenhouse gases.

10 **II.    LEGAL STANDARD FOR AWARDING RULE 11 SANCTIONS**

11         Rule 11 of the Federal Rules of Civil Procedure establishes that by signing and filing a

12 document, such as the First Amended Complaint in this action, the attorney signing and filing it certifies

13 that the claims and legal contentions is contains are "warranted by existing law or by a nonfrivolous

14 argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ.

15 P. 11(b)(2).  The Rule provides that if the Court determines that the claims and legal contentions in the

16 document are not so warranted, the Court "may impose an appropriate sanction" upon the attorney who

17 signed and filed the document.  Fed. R. Civ. P. 11(c)(1).  In the seminal case of *Zaldivar v. City of Los*

18 *Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), the United States Court of Appeals for the Ninth Circuit

19 "affirm[ed] that Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an

20 attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation . . . ."

21

22 [4] Against the other defendants, Plaintiffs also seek declaratory relief in addition to an injunction.  But as against the Air District, they are seeking only injunctive relief.  *See* Plaintiffs' Prayer For Relief ¶¶ 3 &

23 6, First Amended Complaint pp. 24-25.

24 [5] Plaintiffs also assert that EPA may adopt new regulations that will require the SFERP to obtain a Major Facility Review Permit under District Regulation 2, Rule 6.  *See* First Amended Complaint ¶ 70.

25 But the SFERP is already required to obtain a Major Facility Review Permit based on existing regulations, and that requirement has been incorporated into the facility's Conditions of Certification.

26 *See* Determination of Compliance Condition No. 39, RJN Exh. 1, Attachment, p. 28; CEC Condition of Certification No. AQ 39; RJN Exh. 3, p. 135.  Unlike the District's Authority To Construct, the Major

27 Facility Review Permit is not a pre-construction permit and is not required before the City can begin building the facility.  The Major Facility Review Permit is an operating permit and must be obtained

28 before the City commences operation, but not before construction commences.  *See* Air District Regulation 2-6-214.

5

The Ninth Circuit has adopted the more simple shorthand term "frivolous" to refer to sanctionable filings under this standard.  *Id.* at 831 n.7; *see also*, *e.g.*, *Stewart v. American Int'l Oil & Gas Co.*, 845 F.2d 196, 201 (9th Cir. 1988).

Frivolousness for purposes of Rule 11 sanctions is judged by an objective standard.  *G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).  A complaint is frivolous where "[a]ny reasonable lawyer would have known, upon even the most casual investigation, that the law . . . would not support a claim." *Truesdell v. Southern Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002) (affirming the District Court's decision to impose sanctions for, *inter alia*, "making an unreasonable and specious argument based on an objectively unreasonable interpretation" of a collective bargaining agreement that was "patent[ly] meritless[]").  An attorney filing such a complaint crosses "the line between creative lawyering and abuse of the judicial process" and is subject to sanctions under Rule 11.  *Stewart*, 845 F.2d at 201.

Where an attorney violates Rule 11 by making a frivolous filing, appropriate sanctions may include an order directing payment "of part or all of the reasonable attorneys fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).  The attorneys fees and other expenses may include such fees and expenses incurred in making the Rule 11 motion for sanctions.  *Id.* § 11(c)(2).

## III.    THE FIRST AMENDED COMPLAINT IS FRIVOLOUS AS TO THE AIR DISTRICT BECAUSE IT PROVIDES NO REASONABLE BASIS FOR GRANTING INJUNCTIVE RELIEF AGAINST THE AIR DISTRICT

The Court should impose sanctions on Plaintiffs' attorney under Rule 11 because the First Amended Complaint he signed and filed is frivolous in that it provides no reasonable legal grounds whatsoever for injunctive relief against the Air District.

Plaintiffs' claims against the Air District are not based on any contention that the Air District has violated or may violate any current, existing legal requirement with respect to the SFERP.  Plaintiffs have tried those arguments already in their attempts to challenge the Project and have failed.  Instead, Plaintiffs have come to this Court seeking an injunction on the theory that there may be new legal requirements that may be enacted in the future that may apply to the Project, and that the Air District's actions now may be inconsistent with those future requirements.  This theory is absurd on its face.  It is a fundamental principle of our system of jurisprudence that a person must comply with the laws on the

1   books currently, not with laws that do not exist yet.  "The courts must recognize and enforce the laws as

2   they exist." *Bamberger v. Schoolfield*, 160 U.S. 149, 162, 16 S. Ct. 225, 228 (1895) (allowing an

3   insolvent debtor to grant preferences among its creditors because it was not prohibited by law).  "A

4   judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and

5   under laws supposed already to exist.  That is its purpose and end." *Prentis v. Atlantic Coast Line Co.*,

6   211 U.S. 210, 226, 29 S. Ct. 67, 69 (1908).  "We must enforce the law as we find it." *American Express*

7   *Co. v. United States*, 4 Ct. Cust. 146, 175 (Ct. Cust. App. 1913).  "Even a court of equity may not create

8   rights having no existence at law and then take jurisdiction to pass upon and enforce them because the

9   law affords no remedy." *Smith v. Sprague*, 143 F.2d 647, 650 (8th Cir. 1944).  Plaintiffs simply cannot

10  make any reasonable argument that this Court should enjoin action that is admittedly compliant with all

11  laws as they exist today, but might hypothetically be deficient when compared to some new standard

12  that may be adopted at some time in the future.

13        Expressed more narrowly, Plaintiffs' theory is that the Clean Air Act prohibits a permitting

14  agency from issuing a permit for emissions of a particular air pollutant while EPA is considering

15  whether to adopt new regulations with respect to that air pollutant.  But nothing in the Clean Air Act

16  could even arguably be read to require such an outcome, and Plaintiffs have not even tried to craft some

17  basis in that statute.  Instead, Plaintiffs cite only the *Massachusetts* case, which addresses the Federal

18  EPA's duties in responding to rulemaking petitions on greenhouse gases.  *See Massachusetts v. EPA*, __

19  U.S. __, 127 S. Ct. 1438 (April 2, 2007).  But that case does not even apply to state permitting agencies,

20  and even for the Federal EPA, it says nothing about current projects having to comply now with future

21  regulations that have not yet been enacted.  Nowhere does it state, nor can it even arguably be read to

22  imply, that permits for sources of greenhouse gas emissions must be held in abeyance until EPA decides

23  whether and how to regulate such emissions.  There is simply no reasonable legal grounds for Plaintiffs'

24  contention that the Air District cannot legally issue a permit now because of the potential for new

25  regulations that may be adopted in the wake of the *Massachusetts* decision.[6]

26

27  _____

28  [6] The Air District strongly agrees with the Supreme Court that global climate change is a real and
    pressing problem and that greenhouse gases should be regulated, and the Air District is already taking
    steps to be in the forefront of such regulation.  The Air District also intends to apply and enforce all
    regulations that are adopted on all affected facilities, including Power Plants.  There are no specific

1    With these general principles in mind, the Air District below addresses the specific legal grounds

2    on which Plaintiffs seek injunctive relief against the Air District. In each case, Plaintiffs' claims are

3    frivolous because there can be no reasonable argument that the legal grounds asserted provide any

4    authority whatsoever for issuing an injunction against the Air District.[7]

5    **A.     There Is No Reasonable Basis For Claiming Injunctive Relief Against The Air District Based Merely On Purported "Indispensable Party" Status**

6

7    First of all, as noted above, Plaintiffs recognize that issuance of the Authority To Construct

8    would not violate any law or regulation, and accordingly they do not claim that the Air District itself has

9    violated or will violate any applicable legal requirement. *See* First Amended Complaint ¶¶ 90-119.

10   Instead, in each of the first three Claims For Relief, they merely allege that the Air District "is an

11   indispensable party" in their claims for injunctive relief against the other defendants. *See id.*, ¶¶ 98, 106,

12   117.[8] The Air District disagrees that it is a necessary or indispensable party to any of Plaintiffs' claims

13   against anyone. But even if the Air District's participation were somehow necessary for adjudication of

14   Plaintiffs' claims, the mere fact of being a necessary party cannot give rise to a cause of action against

15   the Air District absent some allegation that the Air District has violated some law or regulation. *See*

16   *EEOC v. Peabody Western Coal Co.*, 400 F.3d. 774, 781-83 (9th Cir. 2005), *cert. denied*, 546 U.S. 1150

17   (2006) (joinder of Indian tribe as a defendant would not create a cause of action against tribe in violation

18   of Title VII of the Civil Rights Act, which specifically exempts tribes). There can be no reasonable

19   argument that Plaintiffs are entitled to injunctive relief against the Air District based on an allegation

20   that the Air District is "an indispensable party".

21

22

23   regulations on the books at present, however, and the Air District therefore strongly opposes Plaintiffs' claims that it has violated or may violate the law in this regard.

24   [7] There are a large number of reasons why Plaintiffs cannot prevail as against the Air District, which the

25   Air District is prepared to present to the Court in other contexts. This motion is limited to the reasons why Plaintiffs' claims are so patently lacking in any reasonable legal foundation as to rise to the level of

26   frivolousness under Rule 11.

27   [8] It is not clear what Plaintiffs mean by alleging that the Air District is an "indispensable party". Under the Federal Code of Civil Procedure, an "indispensable party" is a necessary party who cannot be joined

28   and therefore requires that an action must be dismissed. *See* Fed. R. Civ. P. 19(b). It may be that Plaintiffs meant to allege that the Air District is a "necessary party", but that would not change the analysis.

8

### B. There Is No Reasonable Basis For Injunctive Relief Against The Air District On Any Of The Legal Theories Asserted In The First Three Claims For Relief

Furthermore, even if Plaintiffs' first three Claims For Relief are read to be asserted against the Air District directly, as opposed to including the Air District simply as an "indispensable party", they would still provide no reasonable argument for injunctive relief against the Air District.

### 1. There Is No Reasonable Basis To Claim Mandamus Relief Against A State Agency That Is Admittedly Proceeding In Compliance With Law

Plaintiffs' first claim arises under 28 U.S.C. Section 1361, which provides for mandamus relief "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." This claim is frivolous for at least two reasons. First, the statute on its face authorizes relief only against an agency of the United States, and not against state agencies such as the Air District.[9] *See, e.g., In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963) (where "petitioner [w]as requesting the district court to issue a writ of mandamus compelling action by a state official, it is clear that the district court had no jurisdiction to grant such relief"); *Robinson v. Illinois*, 752 F. Supp. 248, 248-49 (N.D. Ill. 1990) ("Federal courts have no general power to compel action by state officers . . . . Thus no arguable legal basis exists for [Plaintiff]'s mandamus request."); *Boston v. United States Dept. of Interior*, 424 F. Supp. 259, 265 (E.D. Mo. 1976) ("Obviously, this statute would not confer jurisdiction over the state defendants.").

Second, even if Section 1361 could somehow authorize mandamus relief in federal District Court against a state agency, it would still provide no colorable grounds for enjoining the issuance of the Authority To Construct because Plaintiffs have not alleged that issuance would violate the Clean Air Act or any other law or regulation that could create a duty owed to them, as outlined above. Mandamus relief is inapplicable where there is no specific statutory requirement or other legal duty that has been violated. *See Lowry v. Barnhart*, 329 F.3d 1019, 1021 (9th Cir. 2003) ("If a plaintiff has no legal entitlement to the relief sought . . . the writ will not lie."); *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir. 1976) ("A complaint that fails to allege a duty owed . . . to the plaintiff or a violation . . . of any such

---

[9] The District is actually a regional body whose Board of Directors is made up of elected officials from around the San Francisco Bay Area region, but it is a state agency in the sense that it is created under and governed by state law, and is not an agency of the United States. *See* Cal. Health & Safety Code §§ 40200-40276; *accord* First Amended Complaint, ¶ 46.

1 duty is plainly in sufficient to bestow mandamus jurisdiction."). There can be no reasonable argument

2 that a colorable mandamus claim can be maintained against a state agency that is concededly in

3 compliance with all applicable legal requirements currently on the books.

### 2. There Is No Reasonable Basis To Claim Relief Under The APA Against A State Agency That Is Admittedly Proceeding In Compliance With Law

6 Plaintiffs second claim is for judicial review of agency action under Section 706 of the

7 Administrative Procedure Act, 5 U.S.C. § 706. This claim is frivolous for the same reasons as the

8 mandamus claim. There can be no reasonable argument that the APA can support a claim against a state

9 agency. *See* 5 U.S.C. § 701(b)(1) (APA applicable to "authorit[ies] of the Government of the United

10 States"); *Hunter v. Underwood*, 362 F.3d 468, 477 (8th Cir. 2004) ("The APA does not grant federal

11 courts jurisdiction to review actions of state or municipal agencies."). And relief under the APA

12 requires that there be some violation of an applicable statute or regulation or other legal requirement.

13 *See, e.g.*, *Gros Ventre Tribe v. United States*, 469 F.3d 801, 803, 814 (9th Cir. 2006), *cert. denied*, 128

14 S. Ct. 176 (2007) (in absence of claim that some specific statutory requirement has been violated,

15 "courts do not have the authority 'to enter general orders compelling compliance with broad statutory

16 mandates' " under APA § 706) (quoting *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66

17 (2004); *Ness Investment Corp. v. United States Dep't of Agriculture*, 512 F.2d 706, 717 (9th Cir. 1975)

18 (complaint dismissed where "the allegations in the complaint that the [defendant government agency]

19 acted in a manner contrary to law are empty words."). No reasonable attorney could conclude that a

20 colorable claim can be maintained under the APA against a state agency that is concededly in

21 compliance with all applicable legal requirements currently on the books.

### 3. There Is No Reasonable Argument That A District Court Can Enjoin A Permitting Agency From Issuing A Permit For A Facility As Authorized By Law Based On A Claim That Operation Of The Facility May Cause A Public Nuisance

25 Plaintiffs' third claim against the Air District is for a public nuisance under California law, which

26 they claim will arise from issuing the Authority to Construct permit before EPA has a chance to consider

27 greenhouse gas regulations in the wake of the *Massachusetts* case. But it is clear under California public

28 nuisance law that the mere *issuance of the permit* – as opposed to operation of the facility itself by the

project applicant – cannot by definition be a nuisance, as the Air District is expressly authorized under the Health & Safety Code to issue permits for sources of air pollution.  *See* Cal. Health & Safety Code § 42300 ("Permit System Authorized"); *see generally id.*, Division 26, Part 4, Chapter 4, Article 1 (§§ 42300-42316), ("Permits").  California law is clear that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance."  Cal. Civ. Code § 3482.  Where the California courts have addressed claims that a public agency has created a public nuisance simply by permitting an activity that it was statutorily authorized to permit, they have held that the claim must be dismissed as a matter of law because under Civil Code section 3482, the permitting action cannot be deemed a public nuisance.  *See Pekarek v. City of San Diego*, 30 Cal. App. 4th 909, 917-18 (Cal. Ct. App. 1994) (dismissing nuisance claim against City for permitting a vendor to sell ice cream on City's streets because "[the City's] permission cannot give rise to a nuisance" under Civil Code Section 3482).  By the same token, the Air District's issuing permission for the facility to emit air pollution cannot, by definition, constitute a public nuisance because the Air District is expressly authorized by the California Health & Safety Code to do so.

California courts have recognized an exception to the application of Section 3482 for actions that are authorized by statute but which are taken improperly or otherwise in violation of the statutory authority.  As the California Court of Appeal explained in *Jones v. Union Pacific R.R. Co.*, "[e]ven though acts authorized by statute cannot give rise to nuisance liability, 'the *manner* in which those acts are performed may constitute a nuisance.' "  79 Cal. App.4th 1053, 1067 (Cal. Ct. App. 2000) (quoting *Friends of H Street v. City of Sacramento*, 20 Cal. App. 4th 152, 160 (Cal. Ct. App. 1993)) (emphasis in original).[10]  But any claim for such an exception would bring the inquiry back to where it started – has the Air District erred in any way (or will it err in any way) in the manner in which it issues the Authority to Construct?  Plaintiffs concede that issuance will be in accordance with all applicable laws and regulations currently on the books.  They can therefore have no reasonable argument that under

---

[10] The other exception to the application of Section 3482 concerns activities that are expressly authorized by statute, but where the activity that is expressly authorized has ancillary side-effects that are not an element of the statutory authorization and those side-effects give rise to a nuisance.  *See, e.g.*, *Varjabedian v. City of Madera*, 20 Cal.3d 285, 292 (1977) (City expressly authorized to construct sewage treatment plant, but not expressly authorized to emit noxious odors from it).  But this exception is inapplicable here, as the specific Air District action complained of – the issuance of a permit to emit air pollution – is the very activity that is expressly authorized by the Health & Safety Code.

California law, duly issuing a permit fully in accordance with express authorization by statute can constitute a public nuisance. *See, e.g.*, *Harding v. State of California*, 159 Cal. App. 3d 359, 363 (Cal. Ct. App. 1984); *Orpheum Building Co. v. San Francisco Bay Area Rapid Transit Dist.*, 80 Cal. App. 3d 863, 876 (Cal. Ct. App. 1978).

Furthermore, even if Plaintiffs could somehow proceed against the Air District under California public nuisance law, there would be no reasonable grounds for issuing an injunction against *the issuance of the Authority to Construct* based on a finding that the City's operation of the facility would constitute a public nuisance. If the Court were to make such a finding, an injunction against the City prohibiting it from doing so would suffice to prevent the alleged harm that Plaintiffs complain of. Broadening such an injunction also to prohibit the Air District from issuing the Authority to Construct would violate "the traditional rule that injunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs, rather than to enjoin all possible breaches of law." *Zepeda v. United States Immigration and Naturalization Serv.*, 753 F.2d 719, 728 n.1 (9th Cir. 1983) (citations and internal quotation marks omitted). No reasonable attorney could argue that this Court should throw out this "traditional rule" by issuing an injunction more broad than necessary.

### C.    Plaintiffs Have No Reasonable Claim For Irreparable Harm From A Potential Failure To Enforce New Regulations That May Be Adopted In the Future

Finally, it is hornbook law that a plaintiff must show that it will be irreparably harmed by a defendant's actions in order to obtain injunctive relief. *See, e.g.*, *Northern Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007). Plaintiffs' claims of irreparable harm here are simply bald, conclusory assertions that if the Air District issues the Authority to Construct permit without waiting for EPA to decide how best to regulate greenhouse gas emissions, doing so will "deny plaintiffs' [sic] their only remedy for preventing the harm herein alleged," which is alleged injury that Plaintiffs claim will arise from the emissions of greenhouse gases from the Project in violation of new regulations that may be adopted in the future. First Amended Complaint ¶ 98; *see also id.* ¶¶ 106, 117. Plaintiffs claim that "[i]f the BAAQMD issues Authority to Construct prior to the EPA's ruling and promulgation of new EPA and BAAQMD rules and regulations, plaintiffs *will forever be denied the benefit* [of the new regulations] designed to protect citizens and the environment from global warming . . . ." *Id.* ¶ 23

12

(emphasis added).  But Plaintiffs provide no reason to believe that the Air District cannot or will not enforce and apply any new regulations to the Project once they are issued, to the extent that they impose any new requirements on the Project.  The Air District is the primary enforcement agency in the San Francisco Bay Area with respect to air pollution and, together with EPA as a backstop federal enforcement agency, is fully capable of enforcing any new regulations that are adopted.  *See* First Amended Complaint, ¶¶ 42, 46 (recognizing these agencies' enforcement authority).  Plaintiffs have provided no reasonable argument that they may suffer any harm from a failure to do so if the Air District issues the Authority to Construct now.  Without such a showing they can have no reasonable basis for claiming injunctive relief with respect to the Air District.

## IV.    THE COURT SHOULD AWARD THE AIR DISTRICT ITS REASONABLE COSTS AND ATTORNEYS FEES

As explained in the foregoing analysis, the First Amended Complaint is frivolous as to the Air District in that it presents no legally reasonable grounds for injunctive relief against the Air District. The Air District has complied with all procedural requirements of Rule 11,[11] and is therefore entitled to its reasonable attorneys fees and costs incurred in responding to the First Amended Complaint, including the costs of making this motion.  Moreover, allowing the Air District to recover some of the resources it has been forced to expend in responding to Plaintiffs' frivolous claims would serve the public interest in that the Air District is a public agency and the resources it has expended could have been put to far better use in serving the public than in responding to these patently meritless accusations.  These resources represent not only the actual salary and overhead costs for the staff time involved, but also the opportunity cost in having staff unavailable to pursue other important Air District matters, such as pursuing civil penalties for violations of District Regulations, an important Air District enforcement function.  *See* Declaration of Alexander G. Crockett, Esq., ("Crockett Decl."), ¶ 8.

---

[11] Rule 11(c)(2) requires that a motion for sanctions must be made separately from any other motion, and must be served at least 21 days in advance of filing so that the offending party can have a chance to correct the violation by withdrawing the offending document.  The instant motion satisfies these requirements in that it is a separate motion that describes the specific conduct that has violated Rule 11, and the Air District intends to wait 21 days after service before filing to allow Plaintiffs' attorney a chance to withdraw the First Amended Complaint.  In addition, the Air District has also previously given Plaintiffs' attorney informal notice of its intent to file for Rule 11 sanctions, and Plaintiffs' attorney has had ample opportunity to do so even before the Air District began working on this motion. *See* Crockett Decl., ¶ 11.

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reasonable attorneys fees are calculated by determining the number of hours reasonably expended on a matter multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). Here, counsel for the Air District has reasonably spent 72 hours (to date) on the matter. The Air District's 72 hours are documented in the Declaration of Alexander G. Crockett, Esq., being submitted concurrently herewith. As explained in that Declaration, the Air District's claimed 72 hours represent a conservative estimate of the actual amount of time Air District counsel spent in this matter.

The prevailing rate in the San Francisco Bay Area for legal work involving environmental matters as they involve power plants is $500. This is the rate recently claimed by Plaintiffs' attorney Martin Homec, Esq., when working for Plaintiff CARE in proceedings before the Public Utilities Commission involving a permit for a transmission line ancillary to a proposed power plant. *See* RJN Exh. 6 at 6-7. As the rate claimed by Plaintiffs' own attorney for this type of work, it is presumptively reasonable. Moreover, $500 is very close to the rate that this Court recently held was reasonable as the market rate in San Francisco in an environmental case involving an environmental group's claim that EPA had violated a statutory duty to promulgate air pollution regulations. *See Sierra Club v. United States Environmental Protection Agency*, No. C 06-5288-MHP, 2007 U.S. Dist. LEXIS 77856 *6-*9 (N.D. Cal. Oct. 19, 2007) (Patel, J.); *citing League for Coastal Prot. v. Kempthorne*, No. C 05-0991-CW, 2006 U.S. Dist. LEXIS 94530, 2006 WL 3797911 *7 (N.D. Cal. Dec. 22, 2006) (Wilken, J.). In that case, in which EPA was represented by the same Justice Department attorney that is counsel of record in this case, the Court awarded attorneys fees at a rate of $450 an hour as the prevailing market rate for such work in San Francisco. *Id.* The $500 claimed by Plaintiffs' attorney Mr. Homec and by the Air District here is well in keeping with this precedent.

72 hours at $500 per hour comes to $36,000 in reasonable attorneys fees that the Air District has incurred to date. The Air District expects to incur further fees and costs in connection with this matter between the date of execution of this document and the hearing. The Air District will submit further documentation of such fees and costs and will seek to recover them in sanctions as well.

**V.    CONCLUSION**

For all of the foregoing reasons, the Air District respectfully request that this Court order Plaintiffs' attorney Joshua Arce, Esq., to pay to the Air District reasonable attorney's fees and costs based on the amount of time and resources the Air District spent in responding to the First Amended Complaint and in preparing this Motion.


Dated: March 17, 2008                    Respectfully submitted,

                                         BRIAN C. BUNGER, ESQ.
                                         DISTRICT COUNSEL
                                         BAY AREA AIR QUALITY MANAGEMENT DISTRICT


                                         By:_____/s/_____
                                              Alexander G. Crockett, Esq.
                                              Assistant Counsel

                                         COUNSEL FOR DEFENDANT
                                         THE BAY AREA AIR QUALITY MANAGEMENT
                                         DISTRICT