Joshua Arce, Esq. (State Bar No. 218563)
josh@brightlinedefense.org
BRIGHTLINE DEFENSE PROJECT
240 Golden Gate Avenue, Ste. 102
San Francisco, CA  94102
415-837-0600
Fax 415-837-0660

Martin Homec (State Bar No. 085798)
martinhomec@gmail.com
P. O. Box 4471
Davis, CA 95617
530-867-1850

Attorneys for Plaintiffs
SAN FRANCISCO CHAPTER OF THE
A. PHILIP RANDOLPH INSTITUTE,
CALIFORNIANS FOR RENEWABLE ENERGY,
LYNNE BROWN, REGINA HOLLINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, CALIFORNIANS FOR RENEWABLE ENERGY, LYNNE BROWN, REGINA HOLLINS, <br><br> on behalf of themselves, all others similarly situated, and the general public, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN JOHNSON, BAY AREA AIR QUALITY MANAGEMENT DISTRICT, CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendants. | Case No.:        C-07-4936-CRB <br><br> MEMORANDUM IN OPPOSITION TO CCSF'S MOTION TO DISMISS <br><br><br> Date:   Friday, April 11, 2008 <br> Time:   10:00 a.m. <br> Place:  450 Golden Gate Avenue <br>         Courtroom 8, 19th Floor <br>         San Francisco, California |

**INTRODUCTION**

Defendant City and County of San Francisco ("CCSF") has moved this court for an order dismissing all five of plaintiffs' claims for relief against it. Plaintiff has stated claims against CCSF for federal mandamus, relief under the Administrative Procedure Act ("APA"), public nuisance, civil rights violations under 42 U.S.C. section 1983, and state mandamus.

CCSF is a necessary party with respect to plaintiffs' first two claims, for orders compelling the Environmental Protection Agency ("EPA") and its Administrator Stephen Johnson ("Johnson") to promulgate greenhouse gas regulations as dictated by the U.S. Supreme Court in Massachusetts v. EPA. Plaintiffs cannot be afforded complete relief if the court finds in their favor on their EPA claims in the absence of an injunction against CCSF's construction of new power plants in San Francisco, and CCSF stipulates to this fact in its motion.

With respect to the remaining three causes of action, however, CCSF is a direct defendant by virtue of its own actions and that of its energy policy decisionmaker, former San Francisco Public Utilities Commission ("SFPUC") General Manager Susan Leal ("Leal"), who filed a declaration in support of CCSF's intervention in this case on November 30, 2007.

That Leal was subsequently fired by CCSF and the Mayor of San Francisco on February 21, 2008 for her role in promoting the unnecessary power plants at the center of this controversy indicates that plaintiffs in their First Amended Complaint have highlighted wrongdoing by a CCSF policymaker that is significant enough to bind the city with municipal liability pursuant to well-established case law.

Each of plaintiffs' direct claims against CCSF for public nuisance, civil rights violations, and state mandamus are properly pleaded causes of action as discussed below, but to the extent that the court might require plaintiffs to further allege all information that has been obtained and surfaced since this case began, plaintiffs request leave to amend under FRCP 15(a).

**BACKGROUND**

This case comes at a unique time in the history of environmentalism and environmental justice. In April 2007, the United States Supreme issued its landmark ruling in Massachusetts v. EPA, 127 S. Ct. 1438, 1462 (2007) that "greenhouse gases fit well within the Clean Air Act's

- 1 -

1   capacious definition of 'air pollutant'" and ordered that the EPA must begin regulating

2   greenhouse gases for the first time in its history or else provide valid reasons for a continued

3   refusal to do so.

4          Yet nearly one year later and despite the urging of nineteen state attorneys general,

5   including California Attorney General Jerry Brown, on January 23, 2008 and pressure from

6   Senator Feinstein on March 4, 2008, EPA and Johnson have done nothing to comply with the

7   Supreme Court's order.  See Request for Judicial Notice in Opposition to CCSF Motion to

8   Strike, Exhibits A and B.

9          Meanwhile, projects from a previous generation of environmental law, such as CCSF's

10  2004 plan to build new power plants in low-income, mostly minority Southeast San Francisco,

11  continue to trudge forward until Clean Air Act greenhouse gas regulations come forth, affecting

12  local bodies such as defendant Bay Area Air Quality Management District ("BAAQMD").

13         Contrary to CCSF's assertion in its motion, there is very little support for CCSF's

14  proposed power plants.  The project in question is opposed by the Sierra Club, the San Francisco

15  Planning and Urban Research Association, Greenaction, and a growing number of legislators.

16  Even at hearings in which former SFPUC General Manager Leal and her staff committed the

17  misrepresentations and failures to disclose material facts regarding emissions, ownership, and

18  control aspects of the proposed power plants, only one or two speakers spoke in favor of the

19  power plants.

20         Plaintiffs' third through fifth claims speak directly to the issue of enforcing

21  environmental justice in the post Alexander v. Sandoval, 532 U.S. 275 (2001) legal landscape.

22  Nuisance is a highly proper tool, and section 1983 remains available when the actions of a

23  delegated policymaker such as Leal commits what under state common law amounts to fraud, in

24  order to advance a 2004 power plant proposal that by 2008 had become environmentally unjust.

25         Plaintiffs' final claim for state mandamus seeks to utilize CCSF's precautionary

26  principle, which requires the CCSF to avoid the creation of unnecessary public health hazards,

27  by compelling CCSF to adopt a 2008 Action Plan which will keep power plants out of San

28  Francisco.  Overwhelming evidence obtained from the SFPUC itself and state regulatory bodies

Mem. in Opposition to CCSF Mot. to Dismiss
C-07-4936-CRB

1   indicates that CCSF's energy goals can be met without these power plants, provided transparent,

2   open, and honest public proceedings are allowed to take place.

3                                                    **ARGUMENT**

4          Defendant's challenges are raised under Rule 12(b)(1) for lack of subject matter

5   jurisdiction and under Rule 12(b)(6) for failure to state a claim.

6   **1.      Plaintiffs' Standing Was Not Challenged By The EPA In Its Motion To Dismiss And**

7   **Plaintiffs' Claims Are Ripe.**

8          CCSF first makes a subject matter jurisdiction challenge under Rule 12(b)(1) leveled at

9   plaintiffs' standing and the ripeness of plaintiffs' claims.  See CCSF Motion to Dismiss, p. 7, ln.

10   5-13.  As CCSF has attacked the face of plaintiffs' pleading, the court should consider the

11   allegations of the First Amended Complaint as true for purposes of defendant's motion.  Gould

12   Electronics Inc. v. United States, 220 F3d 169, 176 (3rd Cir. 2000); Holt v. United States, 46 F3d

13   1000, 1002–1003 (10th Cir. 1995).

14          In addition to crediting plaintiff's well-pleaded factual allegations, some cases hold the

15   district court must "draw all reasonable inferences from them in (plaintiff's) favor" in ruling on a

16   jurisdictional challenge.  Valentin v. Hospital Bella Vista, 254 F3d 358, 361 (1st Cir. 2001).

17          The court should first note that while CCSF references a lack of standing at page 7, line 6

18   there is no actual argument to that effect.  Indeed, the EPA did not challenge plaintiffs' standing

19   as individuals and representative organizations to be injured by the effects of global warming.

20   See First Amended Complaint ("FAC"), ¶ 37-41, 74-89.  This is because the Massachusetts case

21   resolved standing to allege harm from global warming for future plaintiffs.

22          CCSF does challenge the ripeness of each claim, but all claims are ripe, accepting

23   plaintiff's allegations as true:  "CCSF has requested that the BAAQMD issue "Authority to

24   Construct" its proposed power plant" (FAC ¶ 17), "Plaintiffs' requested remedies are available

25   only before Authority to Construct CCSF's SFERP power plaint is issued and before

26   construction of the SFO CT is commenced" ( FAC ¶ 27), CCSF "needs no further regulatory

27   approval to commence construction of the SFO CT power plant and once it commences

28   construction of the plant it will deny plaintiffs their only remedy" (FAC ¶¶ 99, 107), and

                                                       - 3 -

1   "CCSF's determination to construct the SFERP power plant means that as soon as CCSF

2   receives Authority to Construct the plant from BAAQMD it will commence construction and

3   deny plaintiffs the relief requested" (FAC ¶¶ 117).

4          Defendant makes a passing reference to the need for "approval of the City's Board of

5   Supervisors" as impacting the ripeness of plaintiffs' claims.  CCSF Motion, p. 9, ln. 22-23.  This

6   speaking objection references no aspect of the complaint itself and even if CCSF's allegation is

7   correct, a Ninth Circuit case holds that if the challenged conduct is the fairness of hearing

8   procedures, it makes little sense to require "final action" since the harm is the failed procedure.

9   See Herrington v. County of Sonoma, 834 F2d 1488, 1495 (9th Cir. 1987) (court raised, but did

10  not decide, issue, finding equivalent of final decision reached).

11         Defendant's ripeness argument is also inefficient because if plaintiffs' alleged "unripe"

12  claims are dismissed until they fully ripen under FRCP 12(b)(1) the parties will be back in court

13  within a matter of weeks following dismissal, after the Board of Supervisors does vote.  See

14  Association of American Med. Colleges v. United States,  217 F3d 770, 784, fn. 9 (9th Cir.

15  2000).

16  **2.      Defendant's Brief Argument Against Plaintiffs' Fourth Claim For Civil Rights**

17  **Violations Means That At A Minimum This Claim Must Survive.**

18         Defendant follows its ripeness argument with a brief reference to the sufficiency of

19  plaintiffs' procedural due process claim.  See CCSF Motion, page 9, ln. 24-p. 10, ln. 4.

20  Defendant challenges plaintiffs' "property interest" description, ignoring plaintiffs' "liberty

21  interest" allegation and thus stipulating to the sufficiency of section 1983 claim:

22         "121.   The United States Constitution guarantees to plaintiffs the rights to
        liberty and property.
23
        122.    In addition, the California Constitution guarantees to plaintiff the
24  right to enjoy life, to possess and protect property, and to pursue and obtain
        safety.
25
        123.    The aforementioned guarantees are state and federal rights that
26  must not be denied without due process of law pursuant to the Fourteenth
        Amendment of the United States Constitution.
27
        124.    CCSF's proposed CT power plants are an infringement upon
28  plaintiffs' rights as asserted herein in that the plants will increase global warming,

- 4 -

discharge pollution into plaintiff's neighborhoods, diminish the value of plaintiffs' property, and decrease plaintiffs' quality of life. Therefore, these rights must not be deprived without due process of law." FAC, p. 21, ln. 5-15.

Plaintiffs' well-pleaded claim of a liberty interest, which incorporates the right to be free from the environmental and health impacts alleged in paragraphs 74-89, is sufficient to meet the required element of "a liberty or property interest protected by the Constitution." 42 U.S.C. § 1983(1) (emphasis added). Plaintiffs have also sufficiently pleaded their property interest in paragraph 124 and in paragraphs 37 through 40. To the extent the court requires further pleading of a property interest that is easily accomplished through an amended pleading. At a minimum, however, plaintiffs' are not required to plead both a property and liberty interest and the indisputable liberty interest alleged by plaintiffs means that a claim has been stated.

Defendant's argument also ignores several well-established principles of municipal liability under section 1983. In Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978) the Court held that cities were among the "persons" who could be sued under section 1983. Though not liable under the classic theory of respondeat superior, "municipal liability may be imposed for a single decision by municipal policymakers." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). The court in Pembaur held that policy can be made by individuals "whose edicts or acts may fairly be said to represent official policy." Id.

Plaintiffs point out that the strength of their link between the "fail[ure] to disclose to the public fundamental flaws in the city's CT power plant proposal and misrepresent[ation of] facts in an effort to prevent resistance to and rejection of the power plants" (FAC, ¶ 127) and other acts outlined in paragraphs 128-132 to the resulting harm alleged in paragraph 133 has not been challenged by defendant.

Indeed, CCSF delegation of policymaking authority to a single individual, former SFPUC General Manager Susan Leal, is alleged in paragraphs 125, 126, and tracks language from Leal's own declaration in this case. See Declaration of Susan Leal In

- 5 -

Mem. in Opposition to CCSF Mot. to Dismiss
C-07-4936-CRB

1   Support of Motion of the City and County of San Francisco to Intervene As a Defendant

2   in This Proceeding, ¶¶ 1-2.

3          Instead, CCSF issues only a single challenge to plaintiff's pleading of the

4   "property" element of a section 1983 claim, implicitly accepting the sufficiency of

5   plaintiffs pleading of a "liberty" interest, and thus the sufficiency of plaintiffs' fourth

6   claim for relief against CCSF.

7          CCSF does make a single-paragraph suggestion at page 12, lines 12-19 that public

8   meetings have been held on the SFERP and that CCSF "gave plaintiffs the opportunity to

9   be heard."  This allegation exists outside of the face of plaintiffs' complaint, and the

10  allegations that "the General Manager dispatched a member of her staff to take

11  [BAAQMD Engineer] Mr. Young's microphone from him" (FAC ¶ 129), that "the

12  SFPUC staff have for many years indicated to the public that the [CAISO] requires a

13  power plant in San Francisco" (FAC ¶ 130), "[p]laintiffs have been denied at least one

14  year of fully informed public participation regarding the CT power plants" (FAC ¶ 132),

15  and that these misrepresentations and failure to disclose facts' impact on "public and

16  legislative support for CCSF's CT power plants" (FAC ¶ 133) must be accepted as true

17  for purposes of CCSF's motion to demonstrate obstruction of due process.

18         At a minimum plaintiffs' fourth claim for relief must survive so that plaintiffs can

19  be permitted to examine to what extent these alleged wrongful acts led to Leal's

20  termination from her position on February 21, 2008,

21  **3.      Plaintiffs Have Stated Claims Against CCSF As A Necessary Party To Their**

22  **First Two Claims For Relief Against the EPA Defendants.**

23         Defendant's brief continues with its argument that plaintiffs have failed to state

24  claims as required by Rule 12(b)(6).

25         CCSF does acknowledge that it can be joined as a party to plaintiffs' two claims

26  against the EPA and Johnson for federal mandamus and APA relief.  CCSF Motion, p.

27  12, fn. 4 ("The City acknowledges that it could be joined as a party to the plaintiffs'

28

- 6 -

1   claims against the EPA to the extent that the City's joinder is necessary for plaintiffs to

2   obtain 'complete relief'").

3           Defendant correctly cites <u>National Wildlife Federation v. Espy</u>, 45 F.3d 1337,

4   1345 (9th Cir. 1995) as standing for the proposition that CCSF is a necessary party if its

5   joinder is required for plaintiffs to enjoy "complete relief."  The only confusion on this

6   issue has been plaintiffs' use of the phrase "indispensable" party rather than "necessary"

7   party in the complaint, as defendant BAAQMD has pointed out in its own motion to

8   dismiss.

9           Plaintiffs will concede that if their first and second claims for relief against EPA

10  and Johnson are dismissed their first and second claims against CCSF must be dismissed,

11  just as CCSF concedes that if EPA and Johnson's motion to dismiss is denied, CCSF's

12  motion to dismiss must also be denied.

13          Defendant argues at page 12, line 20 through page 13 line 19 that if plaintiffs' federal

14  claims are dismissed that the court should not exercise supplemental jurisdiction pursuant to 28

15  U.S.C. § 1367(a).  Plaintiffs point out that even if the first two claims for federal mandamus and

16  APA relief are dismissed as to the EPA defendants and CCSF, supplemental jurisdiction is

17  proper upon survival of plaintiffs' civil rights claim under section 1983.

18  **4.       Plaintiff Has Stated Valid Claims For Public Nuisance And State Mandamus**

19          The final points raised in CCSF's motion are that plaintiffs have failed to state a claim for

20  public nuisance (third claim for relief) and state mandamus (fifth claim for relief), and that the

21  claims must therefore be dismissed under Rule 12(b)(6).

22  a.  Plaintiffs' Claim For Public Nuisance Is Properly Alleged By Private Plaintiffs

23          Defendant correctly focuses on the requirement that for private persons to maintain an

24  action for public nuisance the nuisance must be "specifically injurious to himself, but no

25  otherwise."  California Civil Code § 3493, <u>Brown v. Petrolane, Inc.</u>, 102 Cal.App.3d 720, 725-6

26  (1980).

27          Plaintiffs therefore point the court toward their allegation that "[plaintiff] APRI will be

28  specially injured by the SFERP power plant because its constituent members will work literally

- 7 -

1  across the street from the SFERP, and thus be damaged by ground-level greenhouse gases that

2  will not affect other members of the community."  FAC ¶ 113.

3         In regard to defendant's next argument that the gravamen of the alleged nuisance does

4  not rise to level of "public nuisance" under People ex rel. Gallo v. Acuna  14 Cal.4th 1090, 1105

5  (1997) plaintiffs point out that the flaw in CCSF's argument is that it suggests its power plant's

6  ozone emissions are permitted under today's standards.  See CCSF Motion, p. 16, ln. 3, p. 16,

7  ln.13.

8         Plaintiffs allege that the rules that deem output of ground-level ozone, a greenhouse gas,

9  non-significant today are deemed significant upon plaintiffs being granted relief under its first

10  and second claims.  FAC ¶ 109 (incorporating ¶¶ 86-89), 117.  Defendant also points out that a

11  claimed interference cannot be unreasonable unless "reasonable persons generally, looking at the

12  whole situation impartially and objectively, would consider it unreasonable."  CCSF Motion, p.

13  15, ln. 25-28, quoting People ex rel. Gallo at 1105.

14         In response, plaintiffs contend that the allegation that the "manner in which CCSF seeks

15  to build and operate its power plants constitutes a nuisance, consisting of building the SFERP

16  across from a location where APRI's constituent members will work, placing a disproportionate

17  impact on low-income people of color represented by CARE"  (FAC ¶ 115) is "unreasonable" as

18  the phrase is used in People ex rel. Gallo.

19  b.  Plaintiffs' Fifth Claim For State Mandamus Is Valid

20         Plaintiffs' mandamus claim requires a showing that "(1) the respondent has a clear,

21  present, and usually ministerial duty to act, and (2) the petitioner has a clear, present, and

22  beneficial right to performance of that duty."  State Board of Education v. Honig, 13 Cal.App.4th

23  720, 741 (1993).

24         Defendant does not challenge plaintiffs' paragraph 142 allegation that plaintiffs have a

25  clear, present, and beneficial right to performance of a duty for the reasons laid out in the

26  complaint.  See CCSF Motion, p. 17, ln. 27-p. 18, ln. 2.  Instead defendant argues that the

27  precautionary principle is applied in a way that is "discretionary" and that action cannot be

28  compelled through mandamus.  Id., p. 17, ln. 25-27.

- 8 -

1    Plaintiffs first contest CCSF's classification of application of the precautionary principle

2 as "discretionary" and then point out that a case cited by CCSF would grant plaintiffs relief if

3 application is deemed discretionary.

4    First of all, application of the precautionary principle is not discretionary because the

5 principle itself states "all officers, boards, commissions, and department of the City and County

6 shall implement the Precautionary Principle in conducting the City and County's affairs."  FAC ¶

7 139, citing San Francisco Environment Code, Chapter 1, Section 101 (emphasis added).  The

8 code also reads, "the Precautionary Principle requires the selection of the alternative that presents

9 the lease potential threat to human health."  FAC ¶ 140.

10    There exists no support for defendant's blanket assertion that application of the

11 Precautionary Principle is discretionary.

12    Even if application were to be deemed to be discretionary a case cited by defendant

13 provides that plaintiffs have properly stated their mandamus claim:  "Where a statute leaves

14 room for discretion, a challenger must show the official acted arbitrarily, beyond the bounds of

15 reason or in derogation of the applicable legal standards," Excelsior College v. California Board

16 of Registered Nursing, 136 Cal.App.4th 1218, 1239 (2006).

17    Clearly, the allegations against former SFPUC General Manager Leal found throughout

18 the complaint and specifically in paragraphs 127-133 constitute acting "arbitrarily, beyond the

19 bounds of reason."  Indeed, it appears that Ms. Leal was fired in part due to wrongful acts of

20 which she is accused herein.  See Req. for Jud. Notice, Exhbit C.

21    That a power plant-free means of accomplishing the energy policy objectives cited by the

22 SFPUC as the purpose for its CT power plants since 2004 is now possible in 2008 means that a

23 2008 Action Plan is to be compelled through plaintiffs' prayer for mandamus relief.  See Request

24 for Jud. Notice, Exhibit D.

25 //

26 //

27 //

28 //

- 9 -

**CONCLUSION**

In regard to plaintiffs' first and second causes of action, defendant CCSF concedes that it is a necessary party in the event that the court denies defendant EPA's motion to dismiss.

CCSF, by ignoring plaintiffs' pleading of a liberty interest that has been deprived and focusing on plaintiffs' allegation of a deprived property interest, implicitly acknowledges that plaintiffs' fourth claim for relief under 42 U.S.C. section 1983 is properly stated.  The subsequent brief suggestion that plaintiffs have had the procedural opportunity to protect their interests falls to plaintiffs' allegations of conduct tantamount to fraud on the part of a CCSF policymaker and her staff.

Defendant's objections to plaintiffs' third claim for public nuisance admittedly warrant a considered analysis, but CCSF's objections to plaintiffs' fifth claim for relief under state mandamus quickly give way to the counter-argument advanced by plaintiffs in this opposition. The facts alleged in the complaint, events occurring since the complaint was filed, and the understanding that CCSF's power plants are unnecessary all favor a hearing of plaintiffs' claims on their merits.

Respectfully submitted,

Dated:  March 21, 2008

BRIGHTLINE DEFENSE PROJECT

_____

Joshua Arce, Esq.
Attorney for Plaintiffs
San Francisco Chapter of the A. Philip
Randolph Institute, Californians for
Renewable Energy, Lynne Brown, Regina
Hollins


CALIFORNIANS FOR RENEWABLE
ENERGY


_____

Martin Homec, Esq.
Attorney for Plaintiff
Californians for Renewable Energy

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    On March 21, 2008, a true and correct copy of the foregoing MEMORANDUM IN

3

OPPOSITION TO CCSF'S MOTION TO DISMISS was served electronically via the Court's e-

4

filing system to Counsel of Record.

5

BRIGHTLINE DEFENSE PROJECT

6

7

_____

8

Joshua Arce, Esq.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mem. in Opposition to CCSF Mot. to Dismiss
C-07-4936-CRB