Joshua Arce, Esq. (State Bar No. 218563)
josh@brightlinedefense.org
BRIGHTLINE DEFENSE PROJECT
240 Golden Gate Avenue, Ste. 102
San Francisco, CA 94102
415-837-0600
Fax 415-837-0660

Martin Homec (State Bar No. 085798)
martinhomec@gmail.com
P. O. Box 4471
Davis, CA 95617
530-867-1850

Attorneys for Plaintiffs
SAN FRANCISCO CHAPTER OF THE
A. PHILIP RANDOLPH INSTITUTE,
CALIFORNIANS FOR RENEWABLE ENERGY,
LYNNE BROWN, REGINA HOLLINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, CALIFORNIANS FOR RENEWABLE ENERGY, LYNNE BROWN, REGINA HOLLINS,<br><br>on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, STEPHEN JOHNSON, BAY AREA AIR QUALITY MANAGEMENT DISTRICT, CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants. | Case No.: C-07-4936-CRB<br><br>REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO CCSF'S MOTION TO DISMISS<br><br>Date: Friday, April 11, 2008<br>Time: 10:00 a.m.<br>Place: 450 Golden Gate Avenue<br>Courtroom 8, 19th Floor<br>San Francisco, California |

Pursuant to Rule 201 of the Federal Rules of Evidence, plaintiffs San Francisco Chapter of the A. Philip Randolph Institute, Californians for Renewable Energy, Lynne Brown, and Regina Hollins ("Plaintiffs") hereby submit this Request for Judicial Notice in Opposition to CCSF's Motion to Dismiss being filed concurrently herewith.

## BASIS FOR JUDICIAL NOTICE

Rule 201 of the Federal Rules of Evidence provides that a Court may take judicial notice of matters that are not subject to reasonable dispute because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is mandatory where a party requests it and provides the Court with information showing that the matters satisfy the requirements of Rule 201. Id. § 201(d).

The Court should take judicial notice of the documents attached hereto as Exhibits A because it is a publication of the California Attorney General's office. The Court should take judicial notice of the documents attached hereto as Exhibits B through C because they are online versions of newspaper articles published by the San Francisco Chronicle newspaper. The Court should take judicial notice of the document attached hereto as Exhibit D because it is an online version of a newspaper article published by the San Francisco Examiner newspaper. As such, these materials are capable of accurate and ready determination by looking them up in any of the places in which they have been published, including the internet, and may be judicially noticed.

Each document, and the specific reasons why it is judicially noticeable under Rule 201, is described in detail in the following paragraphs.

Exhibit A is a January 23, 2008 news release from California Attorney General Jerry Brown, accompanied by his letter to EPA Administrator Stephen Johnson. The news release and letter are available electronically at http://ag.ca.gov/newsalerts/release.php?id=1518.

Exhibit B is a March 5, 2008 article from the San Francisco Chronicle regarding U.S. Senator Dianne Feinstein's inquiries into the inaction of EPA Administrator Stephen Johnson. The article is available electronically at http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2008/03/05/MN4TVDH5G.DTL.

- 1 -

- 2 -

Exhibit C is a February 21, 2008 article from the San Francisco Chronicle regarding the firing of San Francisco Public Utilities Commission General Manager Susan Leal. The article is available electronically at http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2008/02/21/BAG4V5PNM.DTL.

Exhibit D is a January 28, 2008 opinion piece written by San Francisco Supervisor Michela Alioto-Pier and published by the San Francisco Examiner regarding the City and County of San Francisco's proposed new power plants. The article is available electronically at http://www.examiner.com/a-1183822~City_s_energy_needs_can_be_met_without_power_plants.html.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the Court should take judicial notice of the documents attaches as Exhibits A through D hereto, and of the matters set forth therein.

Respectfully submitted,

Dated: March 21, 2008

BRIGHTLINE DEFENSE PROJECT

_____
Joshua Arce, Esq.
Attorney for Plaintiffs
San Francisco Chapter of the A. Philip Randolph Institute, Californians for Renewable Energy, Lynne Brown, Regina Hollins

CALIFORNIANS FOR RENEWABLE ENERGY

_____
Martin Homec, Esq.
Attorney for Plaintiff
Californians for Renewable Energy

# EXHIBIT A

# News & Alerts

Contact Press Office
(916) 324-5500

## Brown To EPA: Obey Supreme Court Mandate

January 23, 2008

**View Attachments**

08-005
FOR IMMEDIATE RELEASE
(916) 324-5500

WASHINGTON DC—California Attorney General Edmund G. Brown Jr. today called upon the U. S. Environmental Protection Agency to "obey the Supreme Court's landmark decision," Massachusetts v. EPA, opening a new front in the legal battle for tailpipe greenhouse gas regulations.

"The Artic is melting faster than ever before, yet the EPA stubbornly refuses to do its job," Attorney General Brown said. "The EPA should obey the Supreme Court's landmark decision and issue regulations to curb greenhouse gas pollutants without further delay."

The landmark Supreme Court case, Massachusetts v. EPA, held that the EPA has authority under the Clean Air Act to regulate greenhouse gas emissions from motor vehicles. The EPA itself, in a notice last month in the Federal Register, described the Court's mandate:

"…the Supreme Court ruled that the EPA must determine, under Section 202 (a) of the Clean Air Act, whether greenhouse gas emissions from new motor vehicles cause or contribute to air pollution that endangers public health or welfare."

Greenhouse gas pollutants are pouring into the atmosphere, causing global temperatures to rise at an unprecedented rate. Eleven of the 12 warmest years since record keeping began, 150 years ago, have occurred in the past 12 years. In 2006, Arctic sea ice declined by the largest amount ever recorded, losing an area roughly the size of Texas and California combined.

Before the EPA can regulate greenhouse gas pollution, the agency must make a formal determination that such emissions threaten public health or welfare. After the Court's decision in April 2007, the EPA said it would propose regulations by the end of the year, but it has failed to do so. In a letter sent today by California and 17 other states and local governments, Brown asserted that "the EPA is unreasonably delaying" the procedural steps necessary for issuing regulations.

Brown called upon the EPA to immediately issue a formal conclusion that greenhouse gas emissions "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." Brown requested a response, with the agency's specific intentions, by February 27, 2008.

Today's letter serves as a notice that states are preparing to go back to court to get the EPA to comply with the Supreme Court's mandate.

Brown said that the EPA cannot use the Energy Independence and Security Act of 2007, which only improves fuel economy, as an excuse for ignoring its duty to regulate greenhouse gas emissions. The Supreme Court ruled that EPA's obligation to regulate such emissions is wholly independent from the mandate, under the Energy Policy and Conservation Act, to promote energy efficiency.

Under the Clean Air Act, California is also allowed to impose tailpipe greenhouse gas emissions regulations if the state obtains a waiver from the EPA. Brown sued the EPA on January 2, after the agency broke forty years of precedent by denying California's request, which would have allowed the state to cut tailpipe greenhouse gas emissions 30 percent by 2016. It was the first denial since the Clean Air Act was established in 1967.

In rejecting the state's request, the EPA stated that California failed to demonstrate "compelling and extraordinary conditions," as required by the Clean Air Act. This statement contradicted forty years of agency practice and ignored the dangerous consequences of global warming to the State of California.

Under the Bush administration, the EPA has also failed to set greenhouse gas emissions standards for ocean-going vessels and aircraft—both major worldwide contributors to global warming.

Global warming threatens California's coastline, levees, and Sierra mountain snow pack which provides one-third of the state's drinking water. California's unique topography and its high human and vehicular population have already caused higher ozone concentrations than other parts of the country. For more information on the impacts of global warming, visit: http://ag.ca.gov/globalwarming/impact.php

Seventeen other states and local governments are joining today's letter including: the Commonwealth of Massachusetts, Arizona, California, Connecticut, Delaware, Illinois, Iowa, Maine, Maryland, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, Washington, the City Solicitor for the City of Baltimore and the Corporation Counsel for the City of New York.

The states' letter to the EPA is attached.

**Attachments for this Release**

- Letter [PDF 58 kb / 5 pg]

top

**ATTORNEYS GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS,
THE STATES OF ARIZONA, CALIFORNIA, CONNECTICUT, DELAWARE, ILLINOIS, IOWA,
MAINE, MARYLAND, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON,
RHODE ISLAND, VERMONT, AND WASHINGTON,
THE CITY SOLICITOR FOR THE CITY OF BALTIMORE AND THE CORPORATION COUNSEL
FOR THE CITY OF NEW YORK**

January 23, 2008

Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
United States Environmental Protection Agency 1101A
U.S. EPA Headquarters
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

    Re:    *Massachusetts v. EPA* remand

Dear Administrator Johnson:

    We are writing today because of our concern about the progress of the administrative proceedings on remand from last year's U.S. Supreme Court ruling in *Massachusetts v. EPA*, 549 U.S. ___, 127 S.Ct. 1438 (2007).  For the reasons set forth below, we believe that EPA is unreasonably delaying action on the remand, and we request a response by February 27, 2008, regarding the agency's specific intentions for moving that remand forward.

    As you know, in *Massachusetts v. EPA,* we and other parties challenged EPA's refusal to regulate greenhouse gas emissions from motor vehicles pursuant to the federal Clean Air Act.  The Court ruled that EPA had authority to regulate greenhouse gases under the Clean Air Act.  127 S.Ct. at 1459-62.  The Court also ruled that EPA had relied on improper policy grounds in denying a rulemaking petition that had been filed under Section 202 of the Act, and it ordered the agency to revisit the rulemaking petition based on proper statutory factors.  *Id*. at 1462-63.  As EPA itself described the Court's mandate just last month:

> On April 2, 2007, the Supreme Court ruled that the EPA must determine, under Section 202(a) of the Clean Air Act, whether greenhouse gas emissions (GHG) from new motor vehicles cause or contribute to air pollution that endangers public health or welfare.

72 Fed. Reg. 69934 (December 10, 2007).

In response to the Court's ruling, you repeatedly indicated that the agency would be moving forward with regulation under Section 202 and other provisions of the Clean Air Act. *See e.g.,* Statement of Stephen L. Johnson, to House Select Committee on Energy Independence and Global Warming (June 8, 2007). In this manner, you acknowledged that the agency has concluded that the endangerment threshold has in fact been crossed. In order to keep the regulatory process on track, we urged you immediately to begin the formal process of making a determination of endangerment through publishing a formal notice to that effect. *See e.g.,* Testimony of Attorney General Martha Coakley to House Select Committee on Energy Independence and Global Warming (June 8, 2007). While you declined to take this step, you did on numerous occasions state that the agency would formally propose new regulations pursuant to the Clean Air Act, including under Section 202, by the end of 2007, with final regulations in place by the end of October 2008. Indeed, you reaffirmed that intent in a formal "regulatory plan" published on December 10, 2007. 72 Fed. Reg. 69934. Nevertheless, the end of 2007 has come and gone without any regulatory action by the agency and without any new commitment as to when the agency would act.

We are aware that Congress has enacted the Energy Independence and Security Act of 2007, which President Bush signed into law on December 19, 2007. That act tightened the fuel economy standards for motor vehicles under the Energy Policy and Conservation Act (EPCA). But such changes to EPCA do not affect EPA's authority or duties under Section 202 of the Clean Air Act or under the Supreme Court's remand. As the Supreme Court has emphasized, EPA's statutory obligation to protect public health and welfare is "wholly independent" from EPCA's "mandate to promote energy efficiency." 127 S.Ct. at 1462. Moreover, in enacting the new legislation, Congress could not have been clearer that it was not modifying EPA's existing obligations under other statutes. *See* P.L. 110-140, 2007 HR slip, § 3 ("Except to the extent expressly provided in this Act, or an amendment made by this Act, nothing in this Act or an amendment made by this Act supersedes, limits the authority provided or responsibility conferred by, or authorizes violation of any provision of law (including a regulation), including any energy or environmental law or regulation.").

The rulemaking petition at issue in *Massachusetts v. EPA* was filed in 1999, now almost a decade ago. EPA's failure to exercise its clear authority under the Clean Air Act and to act on the petition constitutes an abdication of its regulatory responsibility. We once again urge EPA immediately to begin the regulatory process by publishing formal notice of EPA's conclusion that greenhouse gas emissions from motor vehicles and other sources "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." *See* 42 U.S.C. 7521(a). There is no valid reason for EPA to continue to delay moving the regulatory process forward in this manner. We note, for example, that immediately beginning the formal process of making an endangerment determination will still allow the agency additional time to deliberate over regulatory design issues involved in actually setting the applicable emissions standards.

In sum, according to EPA's own schedule, it is past time for EPA to take action on the *Massachusetts v. EPA* remand, and we urge you to move forward at once. If EPA continues unreasonably to delay its actions on the remand, we intend to take action to enforce the D.C. Circuit's mandate. Please let us know in writing by February 27, 2008, specifically what EPA's plans are to comply with the mandate.

If you would like to discuss this further, feel free to contact us directly or to have your staff follow up with Massachusetts Assistant Attorney General James R. Milkey. His contact information is: James R. Milkey, Assistant Attorney General, Chief, Environmental Protection Division, Massachusetts Office of the Attorney General, One Ashburton Place, Boston, MA 02108;

Thank you very much.

Very truly yours,


Martha Coakley
Massachusetts Attorney General


Terry Goddard
Arizona Attorney General


Edmund G. Brown Jr.
California Attorney General


Richard Blumenthal
Connecticut Attorney General


Joseph R. Biden, III
Delaware Attorney General


Lisa Madigan
Illinois Attorney General



Tom Miller
Iowa Attorney General



G. Steven Rowe
Maine Attorney General



Douglas F. Gansler
Maryland Attorney General



Lori Swanson
Minnesota Attorney General



Anne Milgram
New Jersey Attorney General



Gary King
New Mexico Attorney General



Andrew M. Cuomo
New York Attorney General



Hardy Myers
Oregon Attorney General



Patrick C. Lynch
Rhode Island Attorney General



William H. Sorrell
Vermont Attorney General



Rob McKenna
Washington Attorney General

George A. Nilson
Baltimore City Solicitor



Michael A. Cardozo
New York City Corporation Counsel

cc.  Honorable Michael B. Mukasey
     Attorney General

# EXHIBIT B

EPA chief delays reply on emissions     http://www.sfgate.com/cgi-bin/article.cgi?file=/c/a/2008/03/05/MN4T...





# EPA chief delays reply on emissions

Erica Werner, Associated Press
Wednesday, March 5, 2008

**(03-05) 04:00 PDT Washington** - --

Nearly a year after being told to do so, the head of the Environmental Protection Agency said Tuesday he couldn't say when he would comply with a Supreme Court directive and determine whether greenhouse gas emissions from vehicles should be regulated.

In a tense exchange with a senator, EPA Administrator Stephen Johnson suggested that few if any people at the agency were directly working on the issue now. In April 2007, the high court had said the EPA was required to determine whether carbon dioxide and other heat-trapping greenhouse gases posed a danger to public health.

Johnson originally had promised a reply to the court's ruling by last fall.

Sen. Dianne Feinstein, D-Calif., pressed the EPA official at a hearing, repeatedly asking him how many EPA employees he had working on the greenhouse gas issue.

"Is anyone working on this at the present time, Mr. Johnson?" she asked. "How many members of your staff are currently working on this?"

"I don't know the answer to that," Johnson replied at a hearing of the Senate Appropriations environment subcommittee.

Feinstein accused Johnson of "stonewalling" and said she found it strange that the EPA chief "can't give me a number (of people engaged) on something that is a Supreme Court finding."

"Madam Chairman, I am not stonewalling," Johnson said.

He said a law that Congress passed in December requiring automakers to achieve a fleetwide average of 35 miles per gallon by 2020 has complicated the EPA's response on greenhouse gas regulation as required by the high court.

Johnson also used the new auto fuel economy requirements as a key reason that he decided to reject a request by California for permission from the EPA to pursue its own controls on greenhouse gas emissions - mainly carbon dioxide - from automobiles.

The Supreme Court ruling in April found that the EPA had authority under the Clean Air Act to regulate tailpipe emissions of greenhouse gases, so named because their accumulation in the atmosphere can help trap heat from the sun, causing potentially dangerous warming of Earth. The court directed the EPA to decide whether the emissions endanger the public's health or welfare. If so, the court said, the EPA must

regulate such emissions.

The Bush administration had long argued against regulating carbon dioxide, maintaining that it is not a pollutant under the Clean Air Act, and has opposed mandatory limits even in the wake of the Supreme Court ruling.

EPA scientists determined last year that greenhouse gas emissions are a threat to the public welfare, government officials familiar with the decision have told the Associated Press. But EPA officials said that once the new fuel-efficiency law was signed, the process was restarted.

Johnson emphasized Tuesday that the decision on greenhouse gas regulation has to be examined broadly.

"I know we have staff working on a myriad of issues," Johnson told Feinstein as the senator pressed him on to what extent the agency was viewing the court's edict as a top priority.

"We have a lot of activities, important activities that we're working on as well," he added.

http://sfgate.com/cgi-bin/article.cgi?f=/c/a/2008/03/05/MN4TVDH5G.DTL

This article appeared on page **A - 9** of the San Francisco Chronicle

| San Francisco Chronicle Sections | Go |

© 2008 Hearst Communications Inc. | Privacy Policy | Feedback | RSS Feeds | FAQ | Site Index | Contact

# EXHIBIT C

 



## Susan Leal voted out as S.F.'s PUC chief
Cecilia M. Vega, Chronicle Staff Writer
Thursday, February 21, 2008



**(02-20) 10:57 PST San Francisco** - -- The mayoral-appointed governing board that oversees the San Francisco Public Utilities Commission fired the agency's director Wednesday without giving a reason, but Mayor Gavin Newsom said the ouster occurred because General Manager Susan Leal could not work well with board members or his administration.

Leal will collect about $400,000 as part of a severance deal because her employment contract, which was set to expire next year, was terminated without cause. The money will be paid out of ratepayer fees, agency officials said.

The move came as no surprise in City Hall, where Leal's status has been the subject of speculation since December, when Newsom told her to step down as part of a staffing shakeup at the start of his second term.

Following a nine-minute closed door City Hall meeting Wednesday, the four-member PUC governing board that voted unanimously to officially end Leal's employment refused to provide a reason for firing her.

However, in an interview with The Chronicle, Newsom offered the first public explanation for Leal being forced out as the head of the agency that manages the city's Hetch Hetchy water and power system, and its sewer and water-treatment operations.

"This wasn't someone who can work collaboratively with the commission and we want someone who works with our entire administration," Newsom said. "That was a fundamental issue that was not being achieved."

He added: "At the end of the day, it's about the ability to work with others."

The mayor offered few specifics and called the PUC board's vote a "personnel matter." After the vote, Leal and even some of the mayor's allies in City Hall still questioned the reasons for her being fired, considering that Newsom appointed her to the post in 2004.

Leal unsuccessfully ran against Newsom in the 2003 mayor's race and had served as a member of the Board of Supervisors and city treasurer.

"I've gotten to the point where I could make myself crazy trying to figure out why," Leal said. "I just look at

the work I've done at the agency and know that we've done some remarkable things."

Leal's allies on the Board of Supervisors had rallied in support of her in recent weeks, lobbying the mayor to save her job and attempting to block Newsom's appointments to the PUC board.

Supervisor Bevan Dufty, a close friend of Leal's and a Newsom ally on the Board of Supervisors, said that if there were conflicts between Leal and members of the PUC board, the mayor should have been able to mediate them.

"This has put a lot of strain on relationships (in City Hall) because members of the Board of Supervisors just don't understand why Susan was being removed," Dufty said. "There's still never been a meaningful reason articulated to spend this money and risk drifting the PUC off course."

In addition to Leal's alleged clashes with PUC board members - which she disputes - sources close to the Newsom administration have said Leal was ousted because she was not a team player, especially when it came to Newsom's many environmental initiatives, like submerging turbines in the waters below the Golden Gate Bridge to generate power.

But administration insiders also say Leal was forced out because she and her staff bungled an attempt to cut a deal for a new power plant at Hunters Point. The PUC, mayor's office sources said, almost paid $58 million more than it should have on the deal.

Newsom said officials considered firing Leal for cause, which would have allowed the PUC to avoid paying her $400,000 severance package, but that in the end, they decided against it.

"It would have cost us more to litigate and get into the question of performance and details," Newsom said. "That was a choice we had to make."

Leal said Newsom, who has tapped City Controller Ed Harrington to take the post, told her that she was not being fired because of performance reasons. She said she will continue working for 30 days.

"That's what the ratepayers of this city want. They want someone to be accountable to them, to be responsible to them and to get the job done," Leal said. "And to me, that's what I'm about."

*E-mail Cecilia M. Vega at cvega@sfchronicle.com.*

http://sfgate.com/cgi-bin/article.cgi?f=/c/a/2008/02/21/BAG4V5PNM.DTL

This article appeared on page **B - 2** of the San Francisco Chronicle

San Francisco Chronicle Sections    Go

© 2008 Hearst Communications Inc. | Privacy Policy | Feedback | RSS Feeds | FAQ | Site Index | Contact

# EXHIBIT D

Send to Printer    << Back to Article



## Commentary
City's energy needs can be met without power plants
Michela Alioto-Pier
2008-01-28 11:00:00.0
Current rank: *Not ranked*

**SAN FRANCISCO** -
San Francisco is a first among American cities when it comes to environmental leadership.

Our Climate Action Plan seeks to reduce local greenhouse gas emissions by more than 2.5 million tons by 2012, exceeding even the Kyoto Protocol. Our new SFGreasecycle program, which turns used cooking oil into biodiesel fuel, has sparked inquiries from cities around the world. Our recycling rate is the highest in the United States. And our municipal fleet is among the cleanest.

I could go on at length about the many other green innovations San Francisco is making, but I believe the point is clear: As a city, we understand that if we don't act now to reverse global warming, the opportunity may be lost forever. This is exactly why we must look for alternatives to the San Francisco Public Utilities Commission plan to build three new fossil-fuel burning power plants right in the middle of The City.

The SFPUC plan would replace one polluting power plant with another. It would cost the ratepayers up to an estimated $250 million. And it would violate our city's commitment to protecting the environment.

Rather than moving forward with a plan to build expensive and polluting power plants, why don't we develop a plan to meet The City's power needs through clean and renewable energy?

Solar, wind and hydroelectric power are now more viable and plentiful than ever before. They offer a practical and green alternative to increasing our reliance on fossil fuels — an alternative that we must fully explore.

Building new gas-burning power plants is a throwback to the days when our reliance on fossil fuels was unquestioned. What's more, the California Public Utilities Commission has said that the new power plants proposed by the SFPUC are not necessary to meet The City's energy needs. And a study conducted at The City's request made clear that we could ensure the closure of the polluting Mirant Power Plant without building a single new gas-burning plant.

With a decision of this importance before us, it is critical that we weigh the facts and consider the alternatives before making a permanent black mark on San Francisco's record of environmental stewardship.

*Michela Alioto-Pier represents District 2 on the San Francisco Board of Supervisors.*

*Examiner*

# CERTIFICATE OF SERVICE

On March 21, 2008, a true and correct copy of the foregoing REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO CCSF'S MOTION TO DISMISS was served electronically via the Court's e-filing system to Counsel of Record.

BRIGHTLINE DEFENSE PROJECT

_____
Joshua Arce, Esq.

Req. for Jud. Notice in Opposition to CCSF Mot. to Dismiss
C-07-4936-CRB