December 23, 2004

Michael Leavitt -Administrator
US Environmental Protection Agency
USEPA Headquarters (1101A)
Ariel Rios Building
1200 Pennsylvania Ave NW
Washington, DC 20460
E-mail: leavitt.michael@epa.gov

Yasmin Yorker.
US Environmental Protection Agency
Office of Civil Rights Team (1201A)
1200 Pennsylvania Ave NW
Washington, DC 20460
E-mail: Yorker.Yasmin@epa.gov

Sebastian Aloot, Staff Attorney
Or to whom it may concern,
Coordination and Review Section
Civil Rights Division
Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
E-mail: sebastian.aloot@usdoj.gov

**Petition of CAlifornians for Renewable Energy, Inc. (CARE) to Object to and Protest Reopening of Title V Major Facility Review Permit for Los Medanos Energy Center LLC, Pittsburg, California**

Pursuant to the Clean Air Act, CAA 505(b)(2), and the Code of Federal Regulations, 40 C.F.R. 70.8(d), and other LORS,[1] CARE respectfully objects to, protests and requests the setting aside of the November 9, 2004, "Reopening of Title V Major Facility Review Permit for the Los Medanos Energy Center LLC Los Medanos Energy Center District Facility No. B1866," issued by the Bay Area Air Quality Management District (BAAQMD or District). In addition to all other grounds previously asserted by anyone in this proceeding, based on evidence and comments previously provided, all of which are fully incorporated by this

1

reference as if restated in full here, the grounds for this appeal include, without limitation, the failure to (1) provide Petitioners relevant information on the facility's compliance to conditions for its original Title V Permit, and whether there was substantial evidence to support the finding that the applicant, Calpine, had been or was in compliance with all applicable LORS, (2) hold a requested public hearing on such, and (3) allow a 30-day public comment period on the Settlement Agreement between Calpine and the District over 66 notices of violation (NOVs).

CARE is a non-profit public benefit corporation organized and operating under the laws of California for the purpose of, among other things, educating the public about, and encouraging public agencies to consider, alternative forms of renewable energy as a means of avoiding dependence on declining supplies of fossil fuels and the harmful air emissions their use occasions. CARE is the only party to this proceeding actively representing the community interests of residential customers who are members of CARE and reside, work in or regularly pass through the area of the Los Medanos Energy Center and the affected community of Pittsburg, California, and who have shouldered the disparate environmental and socioeconomic burden of Calpine's 550 MW Los Medanos and 880 MW Delta Energy Center(s).

Without limitation, CARE hereby files the following objections and protests pursuant to CAA 505(b)(2), and 40 C.F.R. 70.8(d), providing that,

> any person may petition the Administrator within 60 days after the expiration of the 45-day review period specified in paragraph (1) to take such action. A copy of such petition shall be provided to the permitting authority and the applicant by the petitioner. The petition shall be based only on objections to the permit that were raised with reasonable specificity during the public comment period provided by the permitting agency (unless the petitioner demonstrates in the petition to the Administrator that it was impracticable to raise such objections within such period or unless

---

[1] Laws, ordinances, regulations and standards.

the grounds for such objection arose after such period).

As to the issues identified above, CARE has duly submitted comments and evidence regarding relevant issues that include the failure of the District to provide relevant information such as the lack of substantial evidence to support the essential finding that at all relevant times Calpine was in compliance with all applicable LORS, particularly the conditions of operation imposed when the Title V permit was initially granted and subsequently re-approved.

CARE has also provided comments and evidence concerning the District's failure to hold a requested public hearing on such information, relevant portions of which were subsequently released and made available to CARE and other members of the public no earlier than November 19, 2004, several months after the public comment period allowed by BAAQMD was closed.[2]

As to the failure to allow a 30-day public comment period on the BAAQMD's Settlement Agreement with Calpine, which was released along with the information on the failure to comply with Title V permit conditions of operation, and the imposition of civil penalties for Calpine's continual violations of applicable LORS, CARE contends that under the circumstances described in this petition, the failure to disclose material that is not only relevant but absolutely vital to well informed and meaningful public participation meets the requirement "that it was impracticable to raise such objections within such period [and] ... the grounds for such objection arose after such period."

---

[2] Facts and circumstances compel CARE to conclude that this was no accident or coincidence and, as further discussed below, this appears to be a conspiracy to avoid consideration of the pertinent evidence and information, and thus deprive CARE and other members of the public of their rights to properly participate in BAAQMD's administrative process.

3

**The District Failed to Timely Provide
Evidence and Information on NOVs**

The Los Medanos Energy Center Title V Permit was remanded back to BAAQMD by the US EPA Administrator in response to a successful appeal by CARE of the original BAAQMD Title V Permit issued for the facility for, among other things, the failure to provide a statement of basis. The District's Notice on the Permit failed to identify this and related facts and circumstances, when it stated as follows:

> The District is reopening it for the limited purposes of: (i) responding to certain issues raised by the United States Environmental Protection Agency in its May 24, 2004, Order Denying In Part And Granting In Part Petition For Objection To Permit ("Order"); (ii) adding three sources to the permit; (iii) removing obsolete conditions; (iv) responding to changes in federal turbine standards since the permit was originally issued; and (v) incorporating certain other minor corrections and changes. The District is not reopening the permit for other purposes. [District's response to comments at paragraph 2.]

BAAQMD took this position, and engaged in such furtive inherently fraudulent action, for the exclusive purpose of keeping out the evidence and information submitted by CARE and others establishing Calpine's continual, unrelenting failure to comply with applicable LORS, thus precluding a finding that Calpine has achieved or will achieve such compliance in the future.

The major flaw in the District's Title V Permit is that it fails to recognize that once the public decides to actively participate in a project's Title V Permit review process, the District's administrative process must be transparent as regards the Title V Permit applicant's prior performance to conditions required in its original permit. In its responses to CARE's comments and evidence, BAAQMD admits it failed to provide CARE and other members of the public information on the NOVs issued against Calpine on the facility's performance of such conditions. The District also denied CARE's request for a Public Hearing on

4

these matters.

Subsequent to release of the November 19, 2004, Compliance records, CARE ascertained that these records are clear evidence of Calpine's Los Medanos Energy Center continuous, unrelenting violations of its CO, NOx, ammonia, and VOC emission restrictions.  The material released by BAAQMD in such an untimely manner establish Calpine's failure to report exceedance of these conditions of operation within the required 96 hours, failure to report its violations in its semi annual reports, failure of its source testing for VOCs, and failure to disclose being in non-compliance for 263 days by failing to prepare an air episode plan for the facility. This material is not only relevant but absolutely vital -- the omitted evidence and information has a direct, substantial effect on the health & safety of the public in or within breathing distance of the Calpine facilities.

The issues relating to emissions of CO, NOx, and VOC [aka POCs] where raised by CARE in its comment letter and specifically regarding the fact that there is an existing "300 pound per tuning period limitation and the applicant is requesting a 600 pound per period NOx limitation during cold start up and combuster tuning episodes." In other words, Calpine not only violated and continues violating the conditions of operation, but is now requesting permission to go beyond the limits it has previously ignored -- all of which was accomplished without the proper analysis and consideration.

Calpine has amassed a huge number of NOVs of emission control LORS promulgated by the BAAQMD.  After being advised that despite the pending NOVs, and the penalties and fines they may generate due to the unrepentant attitude they reflect, the District nevertheless considers Calpine to be in full compliance with all applicable LORs.  After the close of the public comment period on the Title V Permit, petitioners became aware of this substantial evidence of Calpine's extremely large number of violations of BAAQMD LORS

5

regulating toxic emissions at two other nearby powerplants operated by Calpine. The evidence initially consisted of a list of 66 BAAQMD NOVs.

BAAQMD thus failed and refused to consider, among other things, the nature and scope of the violations, and whether they were intentional and likely to continue (*i.e.*, whether Calpine is willing to abide by the law and meet its obligations) as demonstrated in granting final approval to the Permit without public release of these crucial compliance documents first.

### The District Itself Invited Requests for a Public Hearing Yet Denied the Public's Request for a Public Hearing After All NOVs Became Public

The BAAQMD itself invited public comments and requests for a public hearing as shown in the attached (B1866pn8-12-04.pdf) where it states,

> The District invites written comment on the issues identified in EPA's order, as well as any proposed changes. All comments must be received by September 20, 2004. The public may also request a public hearing for this reopening of the permit. [August 12 2004 Notice at paragraph 4.]

In issuing its November 9, 2004, Permit without allowing for the lawfully requested Public Hearing, and without having provided CARE the lawfully requested information on enforcement action taken on NOVs relevant to the Applicant's performance to its original Title V Permit conditions of operation, the District violated its own Title V permitting process. The District failed to provide CARE as a representative of the public an opportunity to meaningful and informed public participation in the Title V Permit approval. The NOV information was not released by the District until November 19, 2004, at which time CARE and other members of the public first learned and received a copy of the Settlement Agreement between Calpine and BAAQMD.[3]

---

[3] It is ludicrous to believe that without such vital information CARE and other members of the public were allowed an adequate chance to participate in the overall

6

**The District Failed to Recognize that the "Order" was in Response to a Title V Complaint Filed by CARE Against the District's Actions**

The May 24, 2004, EPA Administrator's Order Granting In Part Petition For Objection To Permit (Order) required that the BAAQMD do a statement of basis. The District has never complied with this Order in regard to the Los Medanos facility, and in attempting to explain its patently defective decisions, BAAQMD discloses certain important concepts in ways favorable to the public:

> The commenter did allude to its claim that it cannot comment on the permit reopening until it receives all of the enforcement-confidential documents that are the subject of its Public Records Act request. But even assuming that this contention were true, it would not provide a reason to hold a public hearing. Even if the District were required to await the completion of the enforcement process and the release of additional documents in order to reopen the permit, as the commenter contends, doing so would not necessarily require a public hearing. …. there is a significant countervailing public interest that counsels against holding a public hearing where it is not warranted. The District has been required to reopen the permit in response to EPA's Order, and the District does not believe it appropriate to delay unnecessarily in responding to that Order. Holding a public hearing would cause a significant delay in doing so. Where the circumstances do not warrant holding a public hearing, this would undermine the public interest in having the District respond promptly to EPA's order. [District's response to comments at page 4 paragraph 7 and 8.]

In a November 15, 2004, e-mail, District counsel stated in regards to the May 24, 2004, EPA Administrator's Order that "the reopening of the permit was in response to EPA's order, not in response to CARE's proposal ..."  But what the District failed to recognize in the e-mail and its response to public comments on the Reopened Title V Permit was that the "Order" was in response to a Title V Complaint filed against the facility's original Title V Permit issued by the District

---

administrative decision making process. Yet, this is precisely the position the District is taking.

7

by CARE and Our Children's Earth (OCE). It is an obvious abuse of discretion for the District to use this as an argument to wrongly conclude that "the circumstances do not warrant holding a public hearing, this would undermine the public interest in having the District respond promptly to EPA's order ..." In fact, by denying the requested hearing the District is the one that is attempting to "undermine the public interest," including the public's procedural due process rights.

### The District Acted Prejudicially in Determining that CARE's & Pittsburg Unified School District's Title VI Civil Rights Complaint is Meritless

CARE brought a civil rights complaint under Title VI the Civil Rights Act of 1964, 28 U.S.C. § 1447, 42 U.S.C. §§ 1971, 1975a–1975d, 2000a– 2000h-6, and Executive Order 12898, against the approval of the Los Medanos Energy Center and Delta Energy Center(s) in Pittsburg California, by the California Energy Commission (CEC), California Air Resources Board (CARB), and BAAQMD. The complaint was filed with US EPA on April 17, 2000 (USEPA OCR File No: 2R-00-R9). CARE was subsequently advised that the US EPA Office of Civil Rights had accepted CARE's complaint for investigation only in regard to CARB and BAAQMD, which receive federal funding, but not CEC, which does not. CARE participated with BAAQMD and CARB in an Alternative Dispute Settlement process funded by the US EPA through monthly meetings from June through December 2002.

In a November 15, 2004, e-mail, the District characterized CARE's April 17, 2000, Title VI Complaint as follows:

> CARE's 3/21/04 proposal to "settle" its Title VI complaint against the District. To set the record straight, the reopening of the permit was in response to EPA's order, not in response to CARE's proposal. The District did receive and consider CARE's proposal, but does not believe it to be an appropriate method of resolving a Title VI complaint. The District continues to believe that it has fully complied with Title VI and all other applicable legal requirements,

8

>and that CARE's complaint is meritless and will be rejected by EPA." [November 15, 2004, e-mail from District counsel at paragraph 1.]

As regards to District counsel's prejudicial statement "that CARE's complaint is meritless and will be rejected by EPA," if CARE's Complaint was/is "meritless," why then did US EPA commission a mediator to attempt to resolve this complaint informally through an Alternative Dispute Resolution (ADR) process at a cost of in excess of $100,000 in taxpayer funds? And why did BAAQMD agree to participate in that process, which can certainly be interpreted as a waiver of any objection the District may have had?

CARE has been open to settle this matter informally, and the offer for a request for Supplemental Environmental Program (SEP) pursuant to the Policy posted on the BAAQMD website was made in good faith by CARE.

The Civil Rights Complaint was against the California Energy Commission (CEC) for failing to incorporate Title VI into its demographic analysis as permitting authority for plants' PSD Permit, which failed to identify that the community of Pittsburg, California, was 63% people of color, predominantly African American, and that the then proposed projects Los Medanos and Delta Energy Centers "disparately" impacted the low-income children of color of the Pittsburg Unified School District.

The complaint included a resolution from the Pittsburg Unified School District concurring completely with CARE's position.  The School District thus became a co-complainant with CARE.

The complaint was to the BAAQMD for acting as an agent of the CEC while simultaneously acting as the Air Permitting authority for the CEC, without performing an independent evaluation of the projects' compliance with the

9

requirements of the federal Clean Air Act (CAA) and the California Environmental Quality Act (CEQA) first.

CARE objects to and protests against the District's November 15, 2004, e-mail. Taking such a blatantly improper position provides further evidence of the District's intent to discriminate against CARE's members and the constituents of the Pittsburg Unified School District, who are predominantly low-income children of color. For this reason we are also sending this Petition to the US EPA Office of Civil Rights, and the Coordination and Review Section Civil Rights Division of the US Department of Justice. Clearly, the matters stated in this complaint require further investigation and appropriate remedial action.

### The District Failed to Provide a 30-day Public Comment Period on its Settlement Agreement as was Done in the Settlement Agreement Regarding EPA's Approval of the BAAQMD's Title V Program

Left unresolved from CARE's Title VI Complaint ADR process was the mitigation to be offered up for the Pittsburg community to mitigate the two Calpine plants' impacts on air emissions locally. This is intended to be an additional Title V and Title VI Civil Rights Complaint against the BAAQMD's permitting Calpine's continued operation of its facilities with 66 each NOVs now finally purportedly resolved on November 9th, 2004 (untimely for the purposes of public comment on the Permit) listed resolved through a Settlement Agreement on the outstanding violations with Calpine.

> Finally, the fact that the District had not finally resolved the outstanding violations – and therefore could not publicly release sensitive enforcement-confidential documents – by the close of the public comment period did not render it "impossible to comment" on the permit reopening, as the commenter contends. The commenter requested detailed enforcement-sensitive information in a public records request, and the District replied that it could not provide

10

such documents until the violations were finally settled.[4] [District's response to comments at page 2 paragraph 6.]

CARE respectfully objects to BAAQMD's failure to provide an opportunity for public comment on the Settlement Agreement and requests a 30-day public comment period be Noticed in the Federal Register on this Settlement Agreement as was done in the Settlement Agreement Regarding EPA's Approval of the Bay Area Air Quality Management District's Title V Program. On January 7, 2003, the U.S. Department of Justice (on behalf of EPA) signed a settlement with Communities for a Better Environment and Our Children's Earth (OCE) Foundation to resolve the groups' challenge to EPA's approval of the CAA Title V operating permits program for Bay Area Air Quality Management District. A copy of the Settlement is available at the Region 9 web site:

- [Settlement Agreement](#) (16 K PDF )
- [Federal Register Notice announceing a 30-day public comment period on the settlement agreement](#) (January 14, 2003)

Why is this Settlement Agreement on this Title V Permit between Calpine and BAAQMD, any different from one between the EPA and OCE, especially in light of the fact the EPA recently delegated its Title V Permit authority back to BAAQMD? To do otherwise than to allow public comment deprives us of our procedural due process rights as well as statutory and constitutional rights.

We provide a copy of this settlement agreement, and ask if the US EPA Administrator had an opportunity to review and comment on this Settlement Agreement? Does your grant of permitting authority back to BAAQMD include exemptions to the public participation process on Settlement Agreements with

---

[4] Now that the violations are finally resolved, the District is providing the documents the commenter requested.

chronic violators like Calpine as BAAQMD has done here, and under what statutory authority?

### The District's Failure to Provide Relevant Performance Compliance Records Violated the California Public Records Act

While recognizing that state variance provisions do not affect federal enforcement, due process requires that BAAQMD be required to provide Petitioners any relevant information on the facility in accordance with the California Public Records Act. As non-attorney we contacted the only expert attorney we know on the California Public Records Act, Mr. Terry Francke, of California Aware who provided me Pro Bono, consultation on this matter. He advised us that the BAAQMD "waived its claim of exemption" for the NOVs from the CPRA once the BAAQMD communicated with the Violator on the nature of the Violation subject to the law enforcement investigation and action. He explained, "Do you know the reason these exemptions exist? It is so the cops do not provide the criminal advanced notice of their violation of the law which enables them to destroy the evidence before the cops catch them." The transcript from the California Energy Commission's (CEC's) 8-20-2003 Business Meeting at which time the District's counsel Mr. Bunger first publicly stated the nature of the violations (or lack thereof).

> 23 MR. BUNGER: Yes, I am the district
> 24 counsel for the District, and it is my offices'
> 25 responsibility to deal with notices of violation,
> 1 and I have just a brief comment, which is that
> 2 there is a distinction between a facility being
> 3 out of physical compliance, which is what the
> 4 Applicant's appear to be referring to, and whether
> 5 or not they've paid civil penalties on the NOV's.
> 6 It is correct that on a number of these
> 7 NOV's the civil penalties have not yet been paid,
> 8 but it is not correct that they are out of
> 9 compliance. They have been in physical compliance
> 10 for many, many months now.
> 11 And so, from the District perspective,

>   12 as Mr. Hill put forward, there is not an ongoing
>   13 compliance problem that we're aware of at any of
>   14 the Calpine facilities within the District.

Since this information was publicly disclosed by the District as part of this public CEC meeting, at which the Violator was present, the District clearly waived its right to claim an exemption from the California Public Records Act, at that time, 8-20-2003 and furthermore such exemption would not have applied during the Title V comment period on the Los Medanos Permit issued November 9, 2004.

Mr. Francke further informed us that as a result of the passage of Proposition 59 on November 2, 2004, that "perspective" legal action can be taken against the District now that the information is being released post election. We contend this means that we shouldn't waive any of our rights for judicial and administrative review of the District's actions to date on this matter, and this is to clarify that we do not waive any of rights in this regard as demonstrated by this Petition.

Mr. Francke also advised us to send the BAAQMD a letter formally requesting your recognition of failure to comply with the requirements of the CPRA, and a promise that in the future when a Notice of Violation is filed on a Violator that the public be immediately notified of an opportunity to receive a copy of the Notice and any subsequent enforcement action that may follow.   PLEASE CONSIDER THIS PETITION SUCH A LETTER.

To do otherwise provides the Violator an opportunity to know what is being violated, and what enforcement action will occur while in this case the public (AKA the victim) is denied access to this information, which in our understanding of the law is a clear violation of our due process and equal protection rights. As the attached Settlement Agreement makes clear at page 3 paragraph 10 this is

13

an agreement by Calpine with the BAAQMD to pay what is "designated as a civil penalty" for the NOVs in issue here.

### CARE's Major Concern and Avoiding the Appearance of Impropriety

Of utmost concern to CARE, its members and staff, as well as the public generally, which CARE represents, is the simple fact that in making its decisions to approve and re-approve the Calpine project(s), BAAQMD has been able to completely avoid consideration of critical evidence and information establishing that Calpine has continually and unrepentantly failed to fully or adequately comply with relevant LORS that include conditions of operation imposed by the District.

Due to the violations, there is not substantial evidence in the record to support the crucial finding that Calpine has been in compliance with applicable LORS or will be in compliance in the future.  Because it significantly interfered with and deprived CARE of its right of well informed and meaningful public participation, as well as CARE's constitutional rights that include the right to procedural due process and equal protection under the law, CARE has repeatedly raised this issue, and has repeatedly provided evidence and information documenting the violations, so far to no avail.

In the most part, CARE has not been represented by legal counsel in these matters, and CARE has been compelled to rely on the opinions, advice and instructions of legal counsel for the various agencies involved, including the US EPA, who have generally indicated that the administrative process for raising these issues and obtaining a remedy for them continues unabated.  Despite its obvious reliance on these opinions, advice and instructions, CARE has never been told whether a final decision has been rendered as to which CARE can seek judicial review, or whether there is or there has ever been any kind of deadline for seeking judicial relief.

Unless properly informed otherwise, CARE will continue to rely on the previously mentioned opinions, advice and instructions.  However, CARE can not help feel, and is compelled to state, that if the US EPA continues to fail and refuse to take these matters into proper consideration, its actions appear to be in accordance with and in support of the actions taken by BAAQMD and other agencies in violation of CARE's statutory and constitutional rights.  In other words, the continual failure to act on CARE's evidence and information that includes that described above appears to be part of a conspiracy to deprive CARE of these rights.  If nothing else, this gives rise to an appearance of impropriety that the US EPA should avoid by granting the relief requested by CARE.

## Conclusion

Wherefore we respectfully request that the EPA Administrator accept these objections and protests to the November 9th 2004, Reopening of the Title V Major Facility Review Permit for the Los Medanos Energy Center LLC Los Medanos Energy Center District Facility No. B1866 by BAAQMD for failure to provide Petitioners relevant information on the facility's compliance to conditions for its original Title V Permit issued by BAAQMD on September 1, 2001, for its failure to hold a requested public hearing on such, and for failing to allow a 30-day public comment period on its Settlement Agreement with Calpine by the District over 66 each Violations of its conditions of operation, herein referred to as NOVs. We respectfully request the EPA to Order the District to hold a public hearing on the November 9th, 2004 Reopen Title V Permit in Pittsburg California, and a 30-day public comment period on its Settlement Agreement with Calpine for NOVs.

        James MacDonald – Secretary, CARE
        274 Pebble Beach Loop,
        Pittsburg, CA 94565
        (925) 439-7665


        Robert Sarvey – Treasurer, CARE
        501 W. Grantline
        Tracy, CA 95376
        (209) 835-7162


        _____
        Michael E. Boyd – President, CARE
        5439 Soquel Drive
        Soquel, CA 95073
        (831) 465-9809


        _____
        Lynne Brown – Vice-President, CARE
        Resident, Bayview Hunters Point
        24 Harbor Rd.
        San Francisco, CA 94124
        (415) 285-4628

cc. by mail:

Brian Bunger, Esq.
Alexander Crockett, Esq.
District Counsel & Assistant Counsel
Bay Area Air Quality Management District
BAAQMD
939 Ellis St.
San Francisco, CA 94109
bbunger@baaqmd.gov
ACrockett@baaqmd.gov

Title V Permit Applicant
Los Medanos Energy Center
750 E 3rd Street
Pittsburg CA 94565

16