IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SF CHAPTER OF A. PHILIP RANDOLPH INSTITUTE, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL., <br><br> Defendants. | No. C 07-04936 CRB <br><br> **ORDER GRANTING MOTIONS TO DISMISS** |

Plaintiffs San Francisco Chapter of the A. Philip Randolph Institute, Californians for Renewable Energy, Lynne Brown, and Regina Hollins seek sweeping relief from this Court in the form of an order compelling the Environmental Protection Agency ("EPA") to comply with the Supreme Court's decision in Massachusetts v. EPA, 127 S. Ct. 1438 (2007), by immediately determining whether carbon dioxide "cause[s], or contribute[s] to, air pollution which may reasonably be anticipated to endanger public health or welfare," 42 U.S.C. § 7521(a)(1). Plaintiffs also seek an order prohibiting Defendant Bay Area Air Quality Management District ("BAAQMD") from issuing an "Authority to Construct" permit for two power plants to be owned and operated by Defendant City & County of San Francisco ("CCSF"), thereby preventing the plants' construction. Defendants EPA, BAAQMD, and CCSF have filed motions to dismiss, which are GRANTED for the reasons set forth below.

The hearing scheduled for Friday, April 11, 2008 is VACATED.

**BACKGROUND**

Plaintiffs' action challenges two proposed natural gas-burning power plants to constructed in and around San Francisco. See Complaint ¶ 1 ("Compl."). The first power plant – proposed by CCSF as part of the San Francisco Electric Reliability Project ("SFERP") – would be situated in the Potrero Hill neighborhood of San Francisco and generate 146 megawatts of power.

The SFERP plant has proceeded through numerous stages of a thorough licensing process. In October of 2006, the California Energy Commission approved CCSF's Application for Certification to construct and operate the SFERP plant. See CCSF Request for Judicial Notice ("RJN") Exh. B. In approving the application, the Commission concluded that the SFERP "will provide a degree of economic benefits and electricibility reliability to the local area." Id. at 1. The Commission also found that so long as CCSF followed conditions set forth in the approval, the project would operate in conformity with federal and state air quality standards. Id.

As part of the Commission's certification process, CCSF was obligated to obtain a Determination of Compliance from BAAQMD. In January of 2006, BAAQMD issued a revised Final Determination of Compliance, concluding that the SFERP plant would accord with all applicable federal and state air quality laws, provided that enumerated conditions were satisfied. See CCSF RJN Exh. C at 1.

On October 23, 2007, the San Francisco Public Utilities Commission held a public hearing to consider a resolution authorizing the Commission's General Manager, Susan Leal, to complete negotiations and execute certain agreements necessary to construct the SFERP. See CCSF RJN Exh. F. According to the complaint, BAAQMD Air Quality Engineering Manager Barry Young testified at the hearing that:

> General Manager [Leal] and her SFPUC staff . . . failed to inform the public that the 2004 San Francisco Action Plan's goal of closing the old Potrero power plant has been nearly totally accomplished by a December 2006 change in BAAQMD's rules regarding gas turbines, misrepresented that the SFERP power plant offers health benefits over the old Potrero power plant when it presents a 'similar health concern' according to the BAAQMD, and declined to

2

1  partcipate in 2006 proceedings with the BAAQMD that could have led to shut
2  down of the old Potrero power plant without the construction of new fossil fuel-burning power plants.

Compl. ¶ 128. General Manager Leal then dispatched a member of her staff to take the testifying official's microphone away from him. Id. ¶ 129. The minutes from the October 23 meeting reflect that Plaintiffs' counsel also commented at the hearing, asking the SFPUC to consider all of the issues and options and bring a "green" alternative to the California Independent System Operator that they could choose instead of the out-dated gas-burning power plants. See CCSF RJN Exh. F.

On October 30, 2007, the San Francisco Board of Supervisors approved a resolution urging the SFPUC "to move expeditiously to finalize documents and agreements necessary to develop" the SFERP project and to present those documents and agreements to the Board for review. CCSF RJN Exh. I at 5. The next day, the SFPUC authorized General Manager Leal to complete negotiations and execute agreements related to developing the SFERP project. See CCSF EJN H at 2.

Pursuant to the request of Supervisor Alioto-Pier, the Board of Supervisors conducted a hearing on January 28, 2008 to consider an alternative to the SFERP. At the hearing, Plaintiffs' counsel again made a statement. See CCSF RJN Exh. K at 3.

At this point in time, only one step in the regulatory process remains. The BAAQMD must incorporate the air quality conditions of certification into an "Authority to Construct" permit. When that occurs, the Board of Supervisors will be asked to approve the SFERP project.

The second power plant challenged by Plaintiffs is a 49-megawatt gas-burning plant to be located near the San Francisco International Airport. See Compl. ¶ 3. This second plant has also undergone substantial review, and its construction awaits only the BAAQMD's construction permit, and approval by the Board of Supervisors.

Plaintiffs come to this Court after various efforts to terminate Defendants' project by other means. First, Plaintiffs appealed the BAAQMD's determination that the power projects would comply with federal and state air quality standards to BAAQMD's Hearing

3

1  Board.  See BAAQMD RJN Exh. 1.  The Hearing Board denied the appeal on April 20,
2  2006.  See BAAQMD RJN Exh. 3.

3  Next, Plaintiffs appealed the California Energy Commission's approval of the power
4  plants to the California Supreme Court, which has original jurisdiction over such claims.  See
5  Cal. Pub. Res. Code § 25531(a).  The California Supreme Court summarily denied review in
6  a one-sentence order dated February 28, 2007.  See BAAQMD RJN Exh. 6.

7  Plaintiffs filed their complaint in this Court on September 24, 2007, asserting five
8  causes of action: (1) for mandamus relief under federal law, 28 U.S.C. § 1361 ; (2) under the
9  Administrative Procedure Act, 5 U.S.C. § 706(1); (3) for public nuisance; (4) for deprivation
10 of the constitutional right to procedural due process, 42 U.S.C. § 1983; and (5) for mandamus
11 relief under state law, California Code Civil Procedure § 1085(a).

12 All three defendants now move to dismiss Plaintiffs' complaint.  In addition,
13 Defendant BAAQMD moves for sanctions, in an effort to recover attorney's fees expended
14 on this litigation.

## STANDARD OF REVIEW

16 A motion to dismiss under Federal Rule of Civil Procedure 12(b) (6) will be granted if
17 the pleading fails to state a cognizable legal theory or if it fails to allege sufficient facts under
18 a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
19 1990).  For purposes of a motion to dismiss, the court will "presume all reasonable inferences
20 in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.
21 1987).  However, mere conclusions couched as factual allegations are not sufficient to state a
22 cause of action.  See Papasan v. Allain, 478 U.S. 265, 286 (1986).  If the plaintiff is unable to
23 cure the defect by amendment, then courts may dismiss a case without leave to amend.  See
24 Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

25 To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the
26 plaintiff must prove that the Court has jurisdiction to decide the case.  See Kokkonen v.
27 Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  Where, as here, the defendants forward a
28 facial challenge – that is, attack the sufficiency of the allegations to support subject matter

4

jurisdiction – the Court accepts the allegations of the complaint as true and construes them in the light most favorable to the plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

## DISCUSSION

I. Federal Writ of Mandamus

In their first cause of action, Plaintiffs seek mandamus relief as to all three defendants. See Compl. ¶¶ 90-100. At root, Plaintiffs seek an order: (1) compelling the EPA to immediately determine whether carbon dioxide causes air pollution that may reasonably be anticipated to endanger public health or welfare; and (2) halting the BAAQMD and CCSF from permitting or constructing the two power plants at issue until the EPA renders an endangerment finding.

The federal mandamus statute gives federal district courts jurisdiction over actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. But mandamus relief is only available where: (1) the plaintiff's claim is clear and certain; (2) the duty of the officer is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available. Fallini v. Hodel, 783 F.2d 1343, 1345 (9th Cir. 1986). Plaintiffs' argument that Defendants are obligated to immediately issue an endangerment finding and halt construction of the power plants in the meantime is thoroughly unpersuasive.

Plaintiffs justify their application for a writ of mandamus on the possibility that the proposed plants might violate the Clean Air Act if a series of potential events occurs. For the scenario imagined by Plaintiffs to unfold, the following events would have to take place: (1) the EPA must respond to the Supreme Court's directive in Massachusetts v. EPA, 127 S. Ct. 1438 (2007), to determine whether carbon dioxide released from motor vehicles "cause[s], or contribute[s] to, air pollution which may reasonably be anticipated to endanger public health and welfare," 42 U.S.C. § 7521(a)(1); (2) the EPA must conclude that carbon dioxide may, in fact, be reasonably anticipated to endanger public health and welfare; (3) the EPA must then – either sua sponte or in response to a petition for rulemaking – conclude that carbon dioxide

5

may also reasonably be anticipated to endanger public health and welfare when released from stationary power plants, see 42 U.S.C. § 7408(a)(1)(A); (4) in response to the listing of carbon dioxide as an air pollutant, the EPA must issue air quality criteria for carbon dioxide emissions, see 42 U.S.C. § 7409; and (5) those air quality criteria must set standards that are not satisfied by CCSF's proposed power plants, as currently designed.

While Plaintiffs' theory is rather convoluted, the reason why it cannot sustain a writ of mandamus is simple: the EPA has violated no duty that is so plain as to be free from doubt simply because it has not yet responded to the Supreme Court's directive. The Supreme Court was careful not to place a time limit on the EPA, and indeed did not even reach the question whether an endangerment finding had to be made at all. See Massachusetts v. EPA, 127 S. Ct. at 1463. The notion that this Court would fill the void by ordering the EPA, by writ of mandamus, to immediately respond to the Supreme Court's decision is so far afield from notions of comity and propriety that it need not be seriously considered. No plain duty has been violated, therefore no writ of mandamus will issue.

As for Defendants BAAQMD and CCSF, Count One must be dismissed because § 1361 applies only to federal officers. As Plaintiffs concede, if Count One is dismissed as to the EPA, it must also be dismissed as to BAAQMD and CCSF. See Plaintiffs Opp. to CCSF Motion at 7.

II. Administrative Procedure Act

The Administrative Procedure Act provides that a court may compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Plaintiffs seek relief under § 706(1) against EPA and BAAQMD on the ground that the EPA has unreasonably delayed in responding to the Supreme Court's decision in Massachusetts v. EPA. Count Two must be dismissed because the EPA has not unreasonably delayed as a matter of law, and the APA does not reach state actors such as BAAQMD.

Whether a federal agency has unreasonably delayed turns on six factors: (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to

1  proceed in the enabling statute, that statutory scheme may supply content for this rule of
2  reason; (3) delays that might be reasonable in the sphere of economic regulation are less
3  tolerable when human health and welfare are at stake; (4) the court should consider the effect
4  of expediting delayed action on agency activities of a higher or competing priority; (5) the
5  court should also take into account the nature and extent of the interests prejudiced by the
6  delay; and (6) the court need not find any impropriety lurking behind agency lassitude in
7  order to hold that agency action is unreasonably delayed. Independence Min. Co., Inc. v.
8  Babbitt, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (citing Telecomm. Research & Action Ctr. v.
9  FCC, 750 F.2d 70, 80 (D.C. Cir. 1984).

10  Cases in which courts have afforded relief pursuant to § 706(1) "have involved delays
11  of years, not months." In re Cal. Power Exchange Corp., 245 F.3d 1110, 1125 (9th Cir.
12  2001). Here, the matter was remanded to the EPA in September of 2007, just ten days before
13  Plaintiffs filed their complaint. See Massachusetts v. EPA, 249 Fed. Appx. 829 (D.C. Cir.
14  2007). The EPA's delay does not qualify, as a matter of law, as unreasonable under the rule
15  of reason.

16  As the Supreme Court recognized, EPA "has significant latitude as to the . . . timing . .
17  . of its regulations. . . ." Massachusetts v. EPA, 127 S. Ct. at 1462. Even if Plaintiffs could
18  challenge the EPA's failure to respond to a court's directive in another case through this
19  litigation – which the Court doubts – its challenge is currently premature. Accordingly,
20  Count Two must be dismissed as to EPA.

21  Count Two must also be dismissed as to BAAQMD because the APA only applies to
22  federal agencies. See 5 U.S.C. § 701(b)(1) (defining federal agency as "each authority of the
23  Government of the United States").

24  III. Public Nuisance

25  In Count Three, Plaintiffs forward a claim for public nuisance and seek an order
26  prohibiting BAAQMD from issuing an Authority to Construct permit, and enjoining CCSF
27  from constructing or operating the two power plants. Count Three must also be dismissed
28  because it is unripe as to CCSF and unsustainable as to BAAQMD.

7

A public nuisance is one which "affects at the same time an entire community or neighborhood, or any considerable number of persons." Cal. Civ. Code § 3480.  To prevail on a claim of public nuisance, the plaintiff must establish that the alleged nuisance is both substantial and unreasonable.  See People ex rel. Gallo v. Acuna, 14 Cal. 4th 1090, 1105 (1997).  Section 3482 of the California Civil Code furnishes a defense to nuisance claims, providing that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance."  Case law interpreting § 3482 suggests that a nuisance claim cannot lie against a state agency that issues permits allowing the discharge of pollutants so long as the permits are issued pursuant to statutory authority.  See Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 888 (9th Cir. 2001).  Even if the Court takes Plaintiffs' factual allegations as true, it is clear that the action Plaintiffs challenge – BAAQMD's issuance of the Authority to Construct permit – would be done pursuant to express statutory authority.  Specifically, California Health & Safety Code §§ 42300-42316 govern and expressly authorize the issuance of permits for sources of air pollution provided certain conditions are met.  Because Plaintiffs do not allege that BAAQMD has erred in its execution of the authority accorded by §§ 42300-42316, no public nuisance claim may lie.

Further, Plaintiffs cannot challenge the operation of the power plants as a nuisance because such a claim is unripe.  "In considering whether a case is ripe for review, a court must evaluate '[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'"  Winter v. California Med. Review, Inc., 900 F.2d 1322, 1325 (9th Cir. 1990) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).  "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  Standard Alaska Prod. Co. v. Schaible, 874 F.2d 624, 627 (9th Cir. 1989).  Here, Plaintiffs' nuisance claim against CCSF requires further factual development.  The power plants have not yet been approved, and may never be, at least not in their current form.  To adjudicate a nuisance claim directed at a power plant that may never be built or may be substantially modified would improperly elevate Plaintiffs' interest "in prompt consideration of allegedly unlawful . . . action" over

8

1  Defendants' "interest in crystallizing" their final decision before that decision is subjected to
2  judicial review. Mississippi Valley Gas Co. v. Federal Energy Regulatory Comm'n, 68 F.3d
3  503, 508 (D.C. Cir. 1995). In the interest of avoiding potentially-unnecessary adjudication of
4  Plaintiffs' nuisance claim, Count Three is dismissed as to CCSF.

### IV. 42 U.S.C. § 1983

In Count Four, Plaintiffs allege that CCSF's proposed power plants will infringe upon their property and liberty interests, and that they have been denied their due process rights as a result of the SFPUC's misrepresentations and failure to disclose facts that would discourage support for the plants. See Compl. ¶¶ 124, 133. While Plaintiffs' complaint is hardly a model of clarity, it appears that they believe procedural due process rights were violated because CCSF failed to provide adequate pre-deprivation processes.

To state a procedural due process claim, Plaintiffs must allege: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. See Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000). Plaintiffs' claim fails at the first instance because they have not alleged a property or liberty interest entitled to constitutional protection. Fairly construed, Plaintiffs' complaint alleges that the following rights have been deprived: (1) the right to be free from global warming pollution; (2) the right to property value; and (3) the right to quality of life. See Compl. ¶ 124. However characterized, the gist of Plaintiffs' claim is that if CCSF is permitted to construct a power plant near Plaintiffs' property, they will be deprived of the right to a clean environment and to the value of their real property. Courts presented with analogous claims have concluded that the Fourteenth Amendment's due process clause does not provide a remedy for deprivations of such rights.

In BAM Historic District Association v. Koch, 723 F.2d 233, 237 (2d Cir. 1983), the Second Circuit rejected an effort to enjoin the operation of a shelter for homeless men on due process grounds. The plaintiffs argued that operation of the shelter in their neighborhood would reduce property values and diminish their quality of life. The court concluded that governmental action that merely reduces property values in part – as opposed to action that

9

1  physically "takes" property or renders it wholly valueless – "has never been held to 'deprive'
2  a person of property within the meaning of the Fourteenth Amendment." Id.; see also Fulilar
3  v. City of Irwindale, 760 F. Supp. 164, 166 (C.D. Cal. 1991) ("[G]overnmental action
4  allegedly causing a decline in property values has never been held to deprive a person of
5  property within the meaning of the Fourteenth Amendment."). Moreover, while the "liberty"
6  interest protected by the Fourteenth Amendment extends beyond freedom from bodily
7  restraint and includes the opportunity to make a range of personal decisions concerning one's
8  life, family, and private pursuits, "it does not include the maintenance of transient levels of
9  the quality of neighborhood life. The Fourteenth Amendment does not impose upon states
10 and localities either an Administrative Procedure Act to regulate every governmental action
11 nor an Environmental Policy Act to regulate those governmental actions that may affect the
12 quality of neighborhood life." Id.

13     As in BAM, Plaintiffs seek redress for the alleged deprivation of rights not protected
14 by the due process clause. Plaintiffs also allege deprivation of the right to be free of climate
15 change pollution, but that right is not protected by the Fourteenth Amendment either. Cf.
16 Pinkney v. Ohio Environmental Protection Agency, 375 F. Supp. 305, 310 (N.D. Ohio 1974)
17 ("[T]he Court has not found a guarantee of the fundamental right to a healthful environment
18 implicitly or explicitly in the Constitution. Therefore, in light of the prevailing test of a
19 fundamental right, the Court is unable to rule that the right to a healthful environment is a
20 fundamental right under the Constitution."). When a plaintiff has no protected property or
21 liberty interest at stake, he cannot state a claim under § 1983 for denial of his due process
22 rights. Accordingly, Count Four must be dismissed for failure to state a claim.

23     V. State Writ of Mandamus

24     In Count Five, Plaintiffs seek a writ of mandamus pursuant to California Code of Civil
25 Procedure § 1085(a), which would compel CCSF to comply with the San Francisco
26 Precautionary Principle by creating a new energy plan that would accomplish reliability
27 goals with less pollution. Because the law does not "clearly establish[] the petitioner's right
28

10

to such action," Count Five must be dismissed. Thelander v. City of El Monte, 147 Cal. App. 3d 736, 748 (1983).

Plaintiffs' mandamus claim requires a showing that "(1) the respondent has a clear, present, and usually ministerial duty to act, and (2) the petitioner has a clear, present, and beneficial right to performance of that duty." State Bd. of Educ. v. Honig, 13 Cal. App. 4th 720, 741 (1993). Even assuming that CCSF would have to develop a new energy plan to satisfy the precepts set forth in San Francisco's Precautionary Principle, Plaintiffs' claim would still fail because as a matter of law, Plaintiffs do not have a clear right to performance. That is so because the Precautionary Principle legislation adopted by the San Francisco Board of Supervisors expressly provides that the ordinance does not impose an obligation on CCSF officials and may not "provide any basis for . . . judicial relief including, but not limited to a writ of mandamus or an injunction." See CCSF RJN Exh. L. Thus, the plain text of the Precautionary Principle ordinance makes it unambiguously clear that Plaintiffs do not have the right to compel adherence to the principles articulated therein. Accordingly, Claim Six fails and must be dismissed.

### VI. Motion for Sanctions

Defendant BAAQMD moves for Rule 11 sanctions against Plaintiffs' counsel for signing and failing a frivolous complaint. Defendant seeks over $36,000 in attorney's fees incurred in defending against the complaint.

An attorney is subject to Rule 11 sanctions for, among other reasons, presenting to the court "claims, defenses, and other legal contentions . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]" Fed. R. Civ. P. 11(b)(2). When, as here, a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted).

11

Sanctions should be reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." Operating Eng'rs Pension Trust v. A-C Co., 859 F.2d 1336, 1344 (9th Cir. 1988). Although it is a close call, the Court does not find that this is the exceptional case where sanctions are appropriate. Accordingly, the motion for sanctions is DENIED.

## CONCLUSION

All five of Plaintiffs' claims are fatally flawed and therefore Defendants' motions to dismiss are GRANTED. The motion for sanctions is DENIED.

**IT IS SO ORDERED.**



Dated: March 28, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE